1   ALEXIS A. AMEZCUA (CA SBN 247507)
     AAmezcua@mofo.com
2   MORRISON & FOERSTER LLP
     425 Market Street
3   San Francisco, California  94105-2482
     Telephone: 415.268.7000
4   Facsimile: 415.268.7522

5   Attorneys for Defendant
     APPLE INC.

6

7

8                UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  WILLIAM RUTTER, JACQUELINE TABAS, NATASHA GARAMANI, CONNIE TABAS, 12  TRISTAN YOUNG, KASRA ELIASIEH, ROBERT BARKER, AND CINDY RUTTER, on 13  behalf of themselves and all others similarly situated, | Case No. **DEFENDANT APPLE INC.'S NOTICE OF REMOVAL** |
| 14  Plaintiffs, 15  v. 16  APPLE INC., and DOES 1-10, 17  Defendants. | [Removed from the Superior Court of the State of California, Santa Clara County, Case No. 21CV380480] |

18

19            **Defendant Apple Inc.'s Notice of Removal**

20        Defendant Apple Inc. ("Apple"), pursuant to 28 U.S.C. § 1441, removes to this Court the

21   state action described below, which is within the original jurisdiction of this Court and properly

22   removed under 28 U.S.C. §§ 1332, 1441, 1446, and 1453.  Pursuant to 28 U.S.C. § 1446(d),

23   copies of this Notice of Removal are being served upon counsel for Plaintiffs William Rutter,

24   Jacqueline Tabas, Natasha Garamani, Connie Tabas, Tristan Young, Kasra Eliasieh, Robert

25   Barker, and Cindy Rutter (collectively, "Plaintiffs") and filed with the Clerk of the California

26   Superior Court for the County of Santa Clara, as an exhibit to a Notice to State Court of Removal

27   to Federal Court.  A copy of the Notice being filed in state court is attached hereto (without

28   exhibits) as **Exhibit A**.

DEFENDANT APPLE INC.'S NOTICE OF REMOVAL

sf-4485494

                                          1

## PROCEDURAL HISTORY AND TIMELINESS OF REMOVAL

1. On April 21, 2021, Plaintiffs filed a purported class action captioned *Rutter, et al. v. Apple Inc., et al.*, Case No. 21CV380480, against Apple in the California Superior Court for the County of Santa Clara ("State Court Action").

2. Apple was served with the State Court Action Summons and Complaint on April 28, 2021. This notice is filed within 30 days after the receipt by Apple of said Summons and Complaint and is therefore timely pursuant 28 U.S.C. § 1446(b). Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon Apple in the State Court Action are attached to this Notice as **Exhibit B**.

3. The California Superior Court for the County of Santa Clara is located within the Northern District of California. 28 U.S.C. § 84(a). This Notice of Removal is therefore properly filed in this Court pursuant to 28 U.S.C. § 1441(a).

## NO JOINDER NECESSARY

4. Because there are no other defendants in this action, no consent to removal is necessary.

## ALLEGATIONS OF THE COMPLAINT

5. This Complaint alleges a putative class action against Apple on behalf of all U.S. consumers who subscribed to Apple's iCloud storage service within the last four years. (Compl. ¶ 199.) Plaintiffs allege that Apple engages in deceptive business practices related to its iCloud storage service. Specifically, Plaintiffs allege that Apple fails to properly disclose to its customers the service offerings or the fee structure of its iCloud storage service. (*Id*. ¶¶ 30-32.) Plaintiffs also allege that Apple's iCloud storage service fee structure violates California's Automatic Renewal Law and California's Unfair Competition Law. (*Id*. ¶¶ 34, 55-96.)

6. Plaintiffs seek to represent the following class of individuals:

All U.S. consumers who have subscribed to the iCloud service, from 4 years prior to the filing of this complaint to the present.

(Compl. ¶ 199.)

7.       Plaintiffs also seek to represent the following sub-classes of individuals, which are defined in the Complaint as:

A. All U.S. consumers who have subscribed to the iCloud service and never exceeded the 5GB level, from 4 years prior to the filing of this complaint to the present.

B. All U.S. consumers who have subscribed to the iCloud service and exceeded the 5GB level, paying for iCloud service, from 4 years prior to the filing of this complaint to the present.

C. All U.S. consumers who have subscribed to the iCloud service, who relied upon Apple's representations, whether

    1.  Before product purchase;

    2.  At the time of product activation; or

    3.  When free storage almost exhausted,

that iCloud's free service would be all they would likely need/a reasonable person would, who subsequently learned that they would need to pay.

D. All U.S. consumers who have subscribed to the iCloud service, who relied upon Apple's failure to mention the incipient cost of iCloud and subsequently learned of it, when free storage almost exhausted but either:

    1.  were dissuaded from adjusting downward because they:

        a)  did not know the cancellation policy; or

        b)  knew that cancellation meant no pro rata refund; or

        c)  did not remember Apple ID; or

        d)  did not know how to cancel; or

        e)  did know how to cancel but feared losing data; or

    2.  tried to adjust downward but could not do so; or

    3.  succeeded in adjusting downward:

        a)  but lost data; or

        b)  but did not receive a pro rata refund.

E. All U.S. consumers who have subscribed to the iCloud service, who relied upon Apple's

representations that iCloud's storage and pricing can be adjusted up or down in accordance with their storage needs, who subsequently found those representations to be untrue:

1. in that they have been dissuaded from adjusting downward b/c they:

    a) did not know the cancellation policy; or

    b) knew that cancellation meant no pro rata refund; or

    c) did not remember Apple ID; or

    d) did not know how to cancel; or

    e) did know how to cancel but feared losing data; or

2. in that they tried to adjust downward but could not do so; or

3. in that they succeeded in adjusting downward:

    a) but lost data; or

    b) but did not receive a pro rata refund.

F. Other subclasses include:

1. Those aged 65 or older;

2. Those who obtained iCloud through the purchase of particular products (e.g., iPhone, iMac);

3. Those who made in-store or online purchase of products;

4. California residents; and

5. Those presently (or at the time) grouped by applicable monthly charges ($0.99/$2.99/$9.99/other) or annual charges.

(Compl. ¶¶ 200(A)-(F).)

8. The Complaint seeks, *inter alia*, damages, restitution, contract rescission, injunctive relief, attorney's fees, and costs. (Compl., Demand for Relief.)

9. Apple disputes Plaintiffs' allegations and that any class should be certified. Plaintiffs' Complaint lacks merit, and Apple denies that the Plaintiffs or the putative class members have been harmed in any way.

NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

sf-4485494

**BASIS FOR REMOVAL**

10.     This action is within the original jurisdiction of this Court, and removal is therefore proper under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), which grants district courts original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 and any member of the class of plaintiffs is a citizen of a State different from any defendant.  As set forth below, this action satisfies each of the requirements of § 1332(d)(2) for original jurisdiction under CAFA.  *See Coleman v. Estes Express Lines, Inc.*, 631 F.3d 1010, 1016 (9th Cir. 2011) (citing *Lowdermilk v. U.S. Bank, N.A.*, 479 F.3d 994, 1000-01 (9th Cir. 2007).

11.     <u>Covered Class Action</u>.  This action meets the CAFA definition of a class action, which is "any civil action filed under [R]ule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure."  28 U.S.C. §§ 1332(d)(1)(B), 1453(a) & (b).  (Compl. ¶¶ 199-204.)

12.     <u>Class Action Consisting of More than 100 Members</u>.  The Complaint alleges that, as of 2018, Apple's iCloud storage service had "850 million [] users, 170 million of whom were paying customers" (Compl. ¶ 8), and that "[t]here are so many potential class members that individual joinder of class members is impractical." (*Id.* ¶ 201.)  Thus, while Apple disputes that there is any merit to Plaintiffs' allegations or putative class claims, according to the allegations of the Complaint, the aggregate number of putative class members is greater than 100 persons for the purposes of 28 U.S.C. § 1332(d)(5)(B).

13.     <u>Diversity</u>.  The required diversity of citizenship under CAFA is satisfied because "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  Plaintiffs purport to represent a putative nationwide class of all U.S. consumers who subscribed to Apple's iCloud service within the last four years.  (Compl. ¶ 199.)  Plaintiffs allege that Apple is a "California corporation headquartered in Cupertino," California.  (*Id.* ¶ 1.)  Thus, according to the allegations of the Complaint, the diversity requirements of CAFA are satisfied.  28 U.S.C. § 1332(d)(2)(A).

14. <u>Amount in Controversy</u>.  Under CAFA, the claims of the individual class members are aggregated to determine if the amount in controversy exceeds the required "sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. §§ 1332(d)(2), (d)(6).  Plaintiffs seek damages, restitution, injunctive relief, punitive damages, and attorney's fees.  (Compl. ¶ 208.) Without conceding any merit to the Complaint's damages allegations or causes of action, the amount in controversy here satisfies CAFA's jurisdictional threshold.

15. <u>Amount in Controversy – Compensatory Damages</u>.  The amount in controversy with respect to compensatory damages alone exceeds $5,000,000.  Plaintiffs repeatedly assert under each cause of action that they and the putative class members "lost money as a result of Apple's unfair competition," stemming from Apple's iCloud storage service fee structure. (Compl. ¶¶ 51, 64, 71, 78, 93, 108, 126, 140, 152, 163, 174, 186, 195.)  Plaintiffs further allege that, as of 2018, 170 million users paid for Apple's iCloud storage service, with the average revenue per user falling between $2-3.  (*Id.* ¶ 8.)  Plaintiffs seek a return of all such funds.  (*Id.* ¶ 13.)  Based on these figures, the annual revenue Plaintiffs allege Apple receives from its iCloud storage service far exceeds $5,000,000.  (*Id.*)  While Apple disputes that it is liable to Plaintiffs or any putative class member, and does not concede any merit to the figures in the Complaint, for purposes of satisfying the jurisdictional prerequisites of CAFA, the matter in controversy exceeds $5,000,000.

16. <u>Amount in Controversy – Punitive Damages</u>.  The Complaint also seeks punitive damages.  (Compl., Demand for Relief.)  Punitive damages are considered part of the amount in controversy.  *See Sanchez v. Wal-Mart Stores, Inc.*, No. S-06-cv-2573 DFL KJM, 2007 U.S. Dist. LEXIS 33746, at *5-6 (E.D. Cal. May 8, 2007) (including punitive damages for amount in controversy under CAFA); *Alexander v. FedEx Ground Package Sys., Inc.*, No C 05-0038 MHP, 2005 U.S. Dist. LEXIS 5129, at *15 (N.D. Cal. Mar. 25, 2005) (same).  Apple believes that no damages, compensatory or punitive, should or will be awarded in this case; however, for purposes of the amount in controversy requirement, claimed punitive damages are another reason the amount in controversy is satisfied.

17.     <u>Amount in Controversy – Attorney's Fees</u>.  Plaintiffs also seek an award of attorney's fees.  (Compl., Demand for Relief.)  This amount is also included in the amount in controversy calculation.  *See Mo. State Life Ins. Co v. Jones*, 290 U.S. 199, 202 (1993); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *amended by* 2006 U.S. App. LEXIS 3376 (9th Cir. Feb. 13, 2006); *see also e.g.*, *Sanchez*, 2007 U.S. Dist. LEXIS 33746, at *6 (including attorney's fees in calculation).

18.     <u>No CAFA Exclusions</u>.  The action does not fall within any exclusion to removal jurisdiction recognized by 28 U.S.C. § 1332(d), and therefore this action is removable pursuant to CAFA, 28 U.S.C. §§ 1332(d) and 1453(b).

## **CONCLUSION**

19.     For all of the reasons state above, this action is within the original jurisdiction of this Court pursuant to 28 U.S.C. § 1332(d).  Accordingly, this action is removable pursuant to 28 U.S.C. §§ 1441(a) and 1453.

Dated:  May 28, 2021                           ALEXIS A. AMEZCUA
                                                MORRISON & FOERSTER LLP


                                       By:     */s/ Alexis A. Amezcua*
                                                ALEXIS A. AMEZCUA

                                               Attorneys for Defendant
                                               APPLE INC.

NOTICE OF REMOVAL OF STATE COURT CIVIL ACTION

sf-4485494

# EXHIBIT A

1    ALEXIS A. AMEZCUA (SBN 247507)
     AAmezcua@mofo.com
2    MORRISON & FOERSTER LLP
     425 Market Street
3    San Francisco, CA 94105-2482
     Tel:  (415) 268-7000
4    Fax:  (415) 268-7522

5    Attorneys for Defendant
     APPLE INC.
6

7

8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        FOR THE COUNTY OF SANTA CLARA

10

11   WILLIAM RUTTER, JACQUELINE TABAS,        Case No.: 21CV380480
     NATASHA GARAMANI, CONNIE TABAS,
12   TRISTAN YOUNG, KASRA ELIASIEH,           CLASS ACTION
     ROBERT BARKER, AND CINDY RUTTER, on
13   behalf of themselves and all others similarly   **DEFENDANT APPLE INC.'S NOTICE OF**
     situated,                                **REMOVAL**
14
                        Plaintiffs,
15
            v.                                Complaint filed: April 21, 2021
16
     APPLE INC., AND DOES 1-10,               Judicial Officer:
17                                            Trial Date: None Set
                        Defendants.
18

19

20

21

22

23

24

25

26

27

28

_____

1   TO PLAINTIFFS, THEIR COUNSEL OF RECORD, AND THE CLERK OF THE SUPERIOR

2   COURT OF THE STATE OF CALIFORNIA, COUNTY OF SANTA CLARA:

3         PLEASE TAKE NOTICE that on May 28, 2021, Defendant Apple Inc. filed a Notice of

4   Removal of this action in the United States District Court for the Northern District of California.  A

5   true and correct copy of said Notice of Removal (without exhibits) is attached hereto as **Exhibit A** and

6   is served and filed herewith.

7         PLEASE TAKE FURTHER NOTICE that, pursuant to 28 U.S.C. § 1446, the filing of said

8   Notice affects the removal of this action to the federal court, and this Court is directed to "proceed no

9   further unless and until the case is remanded."  28 U.S.C. § 1446(d).

10

11

12    Dated:  May 28, 2021                          ALEXIS A. AMEZCUA
                                                     MORRISON & FOERSTER LLP
13

14

15                                            By:  _____
                                                     ALEXIS AMEZCUA
16
                                                   Attorneys for Defendant
17                                                 APPLE INC.

18

19

20

21

22

23

24

25

26

27

28
                                                2

_____
                         DEFENDANT APPLE INC.'S NOTICE OF REMOVAL

# EXHIBIT B

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

E-FILED
4/21/2021 11:33 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
21CV380480
Reviewed By: R. Walker
Envelope: 6291165

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Apple Inc.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

William Rutter, Jacqueline Tabas, Natasha Garamani, Connie Tabas, Tristan Young, Kasra Eliasieh, Robert Barker, and Cindy Rutter, on behalf of themselves and all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is: *(El nombre y dirección de la corte es):*

**21CV380480**

Santa Clara Superior Court (Downtown Superior Court)
191 North First Street, San Jose, California 95113

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
David M. Rosenberg-Wohl, Hershenson Rosenberg-Wohl, APC, 3080 Washington St., San Francisco, CA 94115

DATE: ~~April 19, 2021~~
*(Fecha)* 4/21/2021 11:33 PM     Clerk of Court     Clerk, by     R. Walker     , Deputy
*(Secretario)*     *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☒ on behalf of *(specify)*: Apple Inc.
   under: ☒ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

[ Print this form ]   [ Save this form ]   

Exhibit B, Page 10

E-FILED
4/21/2021 11:33 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
21CV380480
Reviewed By: R. Walker

DAVID M. ROSENBERG-WOHL (Cal. Bar No. 132924)
HERSHENSON ROSENBERG-WOHL,
A PROFESSIONAL CORPORATION
3080 Washington St.
San Francisco, CA 94115
(415) 317-7756
david@hrw-law.com

PATRICK C. COOPER (Cal Bar No.142349)
WARD & COOPER, LLC
2100 Southbridge Parkway, Suite 645
Birmingham, AL 35209
(205) 871-5404
patrickcharles003@yahoo.com

## SUPERIOR COURT OF CALIFORNIA

## FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| WILLIAM RUTTER, JACQUELINE TABAS, NATASHA GARAMANI, CONNIE TABAS, TRISTAN YOUNG, KASRA ELIASIEH, ROBERT BARKER, AND CINDY RUTTER, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> vs. <br><br> APPLE INC., AND DOES 1-10, <br><br> Defendants. | Case No.: **21CV380480** <br><br> **COMPLAINT [CLASS ACTION]** |

Plaintiffs, William Rutter, Jacqueline Tabas, Natasha Garamani, Connie Tabas, Tristan Young, Kasra Eliasieh, Robert Barker, and Cindy Rutter ("Plaintiffs"), by and through the undersigned counsel, bring this Complaint on behalf of themselves and all other consumers similarly situated throughout the United States (as described in the Class Action Allegations below) against Defendant, Apple, Inc., and Does 1-10 ("Defendants") for damages, restitution, declaratory and injunctive relief, along with attorneys' fees.

COMPLAINT [CLASS ACTION] - 1

1  Plaintiffs are ignorant of the true names and capacities of defendants sued herein as Does

2  1-10, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will

3  amend this complaint to allege the true names and capacities of these fictitiously named

4  defendants when that information is ascertained. Plaintiffs are informed and believe and thereon

5  allege that each of these fictitiously names defendants is responsible in some manner for the

6  occurrences herein alleged, and that Plaintiffs' injuries as herein alleged were directly and legally

7  caused by the aforementioned defendants. Plaintiffs are informed and believe and thereon allege

8  that, at all times herein mentioned, each of these defendants was the agent and employee of each

9  of the remaining defendant and, in doing the things hereinafter alleged, was acting within the

10  course and scope of such agency and employment.

11  Plaintiffs allege as follows:

12
13
14                              **Apple and Its iCloud Service**

15  1.  Defendant Apple Inc. ("Apple") is a California corporation headquartered in Cupertino,

16      in Silicon Valley.

17  2.  Formerly known as Apple Computer Company (then Apple Computer, Inc.), Apple

18      developed a strong market presence through its consumer-friendly computers such as the

19      iMac. Recently, Apple dropped "Computer" from its name and broadened its reach into

20      developing cellular telephones and offering computer-based services (for example, Apple

21      Pay, Apple Music, iTunes, App Store, iCloud).

22  3.  At present, Apple's services business is its second-largest segment, following the iPhone.

23      And that services segment is huge.

24  4.  Apple's revenue in 2020 was approximately $285 billion. As of the first quarter of this

25      year, 2021, Apple's services business generated over $15.76 billion in revenue.

COMPLAINT [CLASS ACTION] - 2

5.   As of 2018, iCloud was responsible for 15% of Apple's service revenue.

6.   iCloud is a computer data storage service through which Apple customers are able to store their data (both that generated on Apple products and non-Apple products) remotely, i.e., "in the cloud," as a supplement or alternative to storing data on personal computer devices.

7.   Apple provides iCloud service at differing levels of capacity with increasingly stepped-up pricing. In the US market, there are 5GB of storage provided at no cost. The three levels of capacity and their respective pricing, per month, are 50GB (at $0.99/mo.), 200GB (at $1.99/mo.) and 2TB (at $9.99/mo.).

8.   As of 2018, there were 850 million iCloud users, 170 million of whom were paying customers (20%). The average revenue per user (ARPU) is $2-3/month. For the average consumer, the cost is about $30/yr. Multiplied by 170 million users, however, the amount Apple receives for its iCloud service, annually, is $5.1 billion. The number continues to grow.

9.   And at the root of that growing $5.1 billion annual revenue is deception. What this purportedly consumer-friendly company has done is sell its computer devices with the iCloud service built in and activated at the same time as the consumer signs in with an Apple ID. Apple products are not advertised as containing the iCloud service, and to the extent there is any meaningful disclosure about iCloud, Apple mentions the service as a feature in that 5GB of storage is provided free.

10.   What Apple does not mention, most crucially, is that the consumer will quickly use up the free storage and will shortly need to pay a monthly fee to retain what has been stored for free. That is the plan: Apple has chosen to tell consumers about their iCloud storage

COMPLAINT [CLASS ACTION] - 3

only when its they are approaching its limit, and by then consumers are dependent, having stored months and months of photographs, documents, emails and texts without a second thought. That combination of ignorant increasing dependence, anxiety and small monthly payments to keep the service is as intentional as it is effective. Consumers pay.

11. But we no longer live in Roman society where the phrase *caveat emptor* ("let the buyer beware") is on the pavement in front of stores where sharp-eyed sellers hawk their wares. We live in a society which protects consumers from corporate over-reaching and requires corporations such as Apple to be sure that when they offer products and services to the public, they do so in a way that permits informed choice.

12. In its rush to develop its service business, Apple has not just ignored consumer choice – it has played its consumers for suckers, abusing their confidence in the company's consumer-friendly product line to lure them into paying forever for a data storage scheme they do not understand and do not need.

13. Apple's iCloud billion-dollar revenue stream is entirely ill-gotten gain: it is the result of unfair business practices and breach of its own agreement with its consumers. Apple 's practices should be declared in violation of law, Apple should be enjoined from these practices, and Apple should be compelled to return this money to its consumers. All of it.

**Plaintiffs**

14. Plaintiffs here are US residents, consumers who have purchased Apple computer devices on which iCloud was installed, don't remember ever signing up for iCloud, encountered it first when their data accumulation pushed against the 5GB cap for free storage, and have struggled for months with how to manage the service so as to use the storage level they need – and none have been successful.

COMPLAINT [CLASS ACTION] - 4

15. These plaintiffs span the range of computer use sophistication for the sort of reasonable consumer using Apple's iCloud service.

16. William Rutter, presently a Pennsylvania resident but formerly a California resident, is a sophisticated consumer who has figured out how to manage his computer data so that he can keep within the 5GB limit. Even so, he has had to dig deep into Apple's website to figure out how to do this; remaining within the 5GB is a puzzle to solve an exciting challenge.

17. By contrast, Jacqueline Tabas, a California resident, has not been able to figure out how to manage her data at all and simply pays as needed – she figures she's just stuck in Apple's net.

18. Some have tried but have been stymied. Natasha Garamani, a Colorado resident, currently pays for the 200GB, tried to manage her account at the 50GB level but could not remember her password, required to try to lower her storage level and gave up.

19. Some have tried with limited but ultimately fruitless success. Some have tried to remove data. Connie Tabas, a California resident over the age of 65, currently pays for the 200GB level. At each previous level, she has tried to manage her account, achieved a modicum of success, only to lose that in short order and need to purchase the successive level. Tristan Young, currently an Arizona resident but formerly a Georgia and Colorado resident, could not figure out how to stay within the 50GB level and having had previous trouble with the 5GB level, simply chose to pay for the 2TB level to minimize the risk of having the problem again. Kasra Eliasieh, a California resident, lost his photos when he ran out of storage when he exceeded the 50GB level. Having been previously unable to manage his data so as to stay within the 5GB level, he gave up and paid more.

COMPLAINT [CLASS ACTION] - 5

20.   Some have sought additional help, but to no avail. Robert Barker, a California resident, has tried to remove data from his phone and even spoken with Apple support about the matter but regularly buts up against the 5GB limit and expects simply to have to bite the bullet and pay for the next level. Cindy Rutter, currently a resident both of Wyoming and California over the age of 65, could not figure out how to manage her account and even sought out help from Apple to manage her account but could not understand the steps sufficiently to manage the data. She is currently at the 2TB level.

**Superior Court, Santa Clara County, Is Proper Venue for All U.S. Plaintiffs**

21.   Under the iCloud Terms and Conditions agreement, both Apple and all of its U.S. consumers of the iCloud service "agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Santa Clara, California, to resolve any dispute or claim arising from this Agreement" (Section X.B.). See also Cal. Civ. Proc. Code § 395.5.

**California Law Applies Nationwide**

22.   Under the iCloud Terms and Conditions agreement, both Apple and all of its U.S. consumers of the iCloud service agree that "this Agreement and the relationship between you and Apple shall be governed by the laws of the State of California."

**FACTUAL ALLEGATIONS**

23.   No consumer has freely chosen the iCloud service.

24.   When consumers purchase their first computer product from Apple, Apple asks the consumer to create an Apple ID (usually an email address), at which point Apple presents the consumer with its Terms and Conditions screen, the software licenses specific to the particular version of the applicable Apple operating system (iOS).

COMPLAINT [CLASS ACTION] - 6

25.   Upon the consumer's creation of an Apple ID, Apple instantly signs the consumer up for the iCloud service that Apple provides to store the consumer's data generated by the computer product.

26.   When it provides the consumer the iCloud service, Apple does not tell the consumer what the service is, what it does, that it is free, initially, or that it will soon become costly.  No reasonable consumer is going to dig for and review the iCloud terms and conditions to inquire about a service that has not been promoted, was not the reason for the purchase, and brings with it no additional cost.

27.   If such an enterprising consumer were inspired to learn the details at this point, nothing would ring alarm bells. As stated in the iCloud Terms and Conditions: "iCloud is automatically enabled when you are running devices on iOS 9 or later and sign in with your Apple ID during device setup…". "When iCloud is enabled, your content will be automatically sent to and stored by Apple, so you can later access that content or have content wirelessly pushed to your other iCloud-enabled devices or computers."

28.   The iCloud service is not just automatically enabled once the consumer's Apple device is activated and begins to save their data, the iCloud service stays active, continually collecting the consumer's data unless or until the consumer takes affirmative steps to cancel the service.

29.   And iCloud is free. The Terms and Conditions state: "Your Account is allocated 5GB of storage capacity as described in the iCloud feature pages." The consumer may, but need not, purchase additional storage: "Additional storage is available for purchase, as described below."

COMPLAINT [CLASS ACTION] - 7

30.  Apple does not explain that its free storage is *temporary* – that the consumer will soon run out of room and have to pay to continue – and *conditional* – that the consumer will have to learn, under time pressure, how to manage the storage of data on the computer efficiently so as to continue to stay within the 5GB free storage.

31.  Like all good drug pushers, Apple makes the first hit free. Once the customer is hooked, then the costs kick in. And, predictably, Apple makes it extremely difficult to manage your habit or, God forbid, quit.

32.  Apple first notifies the consumer concerning the possible cost of the iCloud service when the consumer begins to approach the limit of the 5GB storage that has been provided for free. At that point, Apple announces that the consumer may "upgrade" to 50GB for $0.99/month and that if the consumer wants to continue to use the service to back up data s/he must either upgrade and begin to pay or "reduce the amount of storage you are using." There is a link highlighted in blue to "Upgrade" but there is no link, nor even small print, indicating how a consumer might go about reducing storage, so as to continue using the product as provided.

33.  This is the first time the consumer is asked to think about the iCloud service the consumer has – but, notably, there is nothing about its utility or its need, only a choice to begin to pay (at this point, a relatively small monthly charge) or take unknown steps toward reversing the storage process that has been underway since the consumer activated the computer.

34.  Only once the consumer agrees to upgrade, does the consumer now receive monthly communication from Apple that the iCloud service is in place. The consumer begins to receive monthly receipts to the email associated with the Apple ID. This receipt indicates

COMPLAINT [CLASS ACTION] - 8

the amount of storage (i.e., 50 GB Storage Plan), the term of the plan (i.e., monthly), and the price (i.e., $0.99). The payments are automatically charged to the consumer's credit card associated with the Apple ID. The consumer is told that Apple will bill the consumer each plan period until the consumer cancels "by downgrading to the free storage plan" but neither provides a link nor explains just how a consumer might do that. Nor does Apple indicate that data presently stored by the consumer on the iCloud product can be preserved if the consumer were to downgrade. Nor does Apple explain what happens in terms of a refund (whether full or partial) if a consumer downgrades in response to the notice.

35. Apple does, however, encourage a consumer to upgrade. Apple states that Apple will provide a full refund within 15 days of a monthly subscription upgrade (or within 45 days after a yearly payment). While Apple notes that partial refunds are available "where required by law," there is no link allowing a consumer to know if that applies in the consumer's jurisdiction and if so, what that might mean.

36. Questions about the bill? Apple directs the consumer to "Official Apple Support" but it is an iTunes page that has nothing clearly to do with iCloud.

37. If the consumer types "iCloud" into the "What can we help you with?" Search Support bar, nothing about the "bill" appears. The consumer can further click on either "iCloud Support" or "Manage your iCloud storage". Two other options deal with the iCloud Keychain. Nothing about a bill.

38. iCloud support leads a consumer to "Find my iPhone," "iCloud storage, "iCloud Photos," "iCloud backup" and "iCloud Drive." Again, nothing about a bill.

COMPLAINT [CLASS ACTION] - 9

39.   Questions about how to downgrade? If the consumer clicks "downgrading," Apple directs

the consumer to an "iCloud help" page. Nothing about downgrading.

40.   If a consumer clicks the large icon that is the focus of the page, nothing happens. If the

consumer clicks the small icon on the very left of the screen at the top of a list of icons,

entitled "iCloud basics," the consumer sees "What is iCloud?", "Ways to use iCloud,"

"Set up iCloud," "Use iCloud.com," "Change iCloud feature settings," and "Trouble

signing in." Again, nothing about downgrading. (Nor do any of the links, when clicked,

actually lead to anything about downgrading.)

41.   If a consumer types "downgrading" into the "Search iCloud Help" bar, the answer is "0

results for 'downgrading.'" The same for "downgrade."

## CAUSES OF ACTION

### First Cause of Action:

### Cal. Bus. & Prof. Code secs. 17600 (continuous service offer) and

### 17200 (unfair competition)

42.   Plaintiffs reallege paragraphs 1-41 above and incorporate them here.

43.   Apple's iCloud service is a "continuous service," under California Business and Professions

Code section 17601(e), which means "a plan or arrangement in which a subscription or

purchasing agreement continues until the consumer cancels the service."

44.   The purpose of California's Automatic Renewal Law, set forth beginning at California

Business and Professions Code section 17600 *et seq.*, is "to end the practice of ongoing

charging of consumer … cards or … accounts without the consumers' explicit consent for …

ongoing deliveries of service."

COMPLAINT [CLASS ACTION] - 10

45. Under California Business and Professions Code section 17602(a)(1), it is unlawful for Apple to "[f]ail to present the … continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity … to the request for the consent to the offer." Where, as here, iCloud is given as "a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial."

46. "Clear and conspicuous" under California Business and Professions Code section 17601(c) means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."

47. Because Apple failed to obtain the consent of consumers before binding them to a continuous service offer under which Apple plans to extract regular payments and in fact ultimately extracts increasing payments, Apple has violated section 17602(a)(1) of the California Business and Professions Code.

48. Too, Apple was obligated to provide to consumers during the period of the 5 GB service and certainly before the consumer pays for the 50 GB service, an "acknowledgement" of "how to cancel, and allow the consumer to cancel," the continuous service offer, under California Business and Professions Code section 17602(a)(3).

49. Because Apple failed to provide an "acknowledgement" of "how to cancel, and allow the consumer to cancel," the continuous service offer, Apple has violated section 17602(a)(3) of the California Business and Professions Code.

COMPLAINT [CLASS ACTION] - 11

50. Because Apple has violated section 17602, Apple has committed "unlawful … business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

51. Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

52. Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

53. Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

54. Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 (see paragraphs 23 and 24 above) and complies with section 382 of the California Code of Civil Procedure, as set forth below in paragraphs 197-202.

## Second Cause of Action

### Cal. Bus. & Prof. Code secs. 17600 (automatic renewal offer) and 17200 (unfair competition)

55. Plaintiffs reallege paragraphs 1-54 above and incorporate them here.

COMPLAINT [CLASS ACTION] - 12

56. Once a consumer bites the bullet and begins to pay for the iCloud service, that service continues at a given rate (i.e., 0.99/mo.) until the next level of storage (i.e., 50 GB) is reached unless the consumer takes steps to cancel the service.

57. Because that "paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term," the paid iCloud service is an "automatic renewal" plan under California Business and Professions Code section 17601(a).

58. To be sure a consumer has agreed to the automatic renewal plan, Apple's obligation is to present to the consumer, before the consumer makes a commitment to purchase, the "automatic renewal offer terms" under California Business and Professions Code section 17602(a)(1). This includes a "clear and conspicuous … description of the cancellation policy that applies to the offer." California Business and Professions Code section 17601(b)(2).

59. As with a continuous service offer, "clear and conspicuous" under California Business and Professions Code section 17601(c) means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."

60. But neither in the emails advising customers that they are close to exceeding their allocated 5 GB of free storage nor in any other manner, does Apple explain, much less in clear and conspicuous terms, Apple's cancellation policy.

61. Nor does Apple provide to any consumer who has agreed to pay for iCloud, as it must, under California Business & Professions Code section 17602(a)(3), a post-purchase "acknowledgement" including the "cancellation policy."

COMPLAINT [CLASS ACTION] - 13

62. Because Apple does not explain its cancellation policy for its automatic renewal offer, either before the consumer pays for the iCloud subscription or afterwards in an acknowledgement, Apple has violated section 17602.

63. Because Apple has violated section 17602, Apple has committed "unlawful ... business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

64. Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

65. Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

66. Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

67. Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 (see paragraphs 44 and 45 above) and complies with section 382 of the California Code of Civil Procedure, as set forth below in paragraphs 197-202.

**Third Cause of Action**

**Cal. Bus. & Prof. Code secs. 17600 (automatic renewal offer) and**

**17200 (unfair competition)**

COMPLAINT [CLASS ACTION] - 14

68.   Plaintiffs reallege paragraphs 1-67 above and incorporate them here.

69.   Nor does Apple provide to any consumer who has agreed to pay for iCloud, as it must, under California Business & Professions Code section 17602(a)(3), a post-purchase "acknowledgement" including "information regarding how to cancel in a manner that is capable of being retained by the consumer."

70.   Because Apple has violated section 17602, Apple has committed "unlawful ... business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

71.   Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

72.   Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

73.   Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

74.   Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 (see paragraphs 51 and 52 above) and complies with section 382 of the California Code of Civil Procedure, as set forth below in paragraphs 197-202.

**Fourth Cause of Action**

COMPLAINT [CLASS ACTION] - 15

**Cal. Bus. & Prof. Code secs. 17600**

**(continuous service offer and automatic renewal offer)**

**and 17200 (unfair competition)**

75. Plaintiffs reallege paragraphs 1-74 above and incorporate them here.

76. Nor does Apple provide to any consumer who has agreed to pay for iCloud, as it must, under California Business & Professions Code section 17602(b), an "easy-to-use" mechanism for cancellation" described in the post-purchase "acknowledgement."

77. Because Apple has violated section 17602, Apple has committed "unlawful … business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

78. Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

79. Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

80. Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

81. Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 (see paragraphs 58 and 59 above) and complies with

COMPLAINT [CLASS ACTION] - 16

1    section 382 of the California Code of Civil Procedure, as set forth below in paragraphs 197-

2    202.

3    **Fifth Cause of Action**

4    **Cal. Bus. & Prof. Code secs. 17600**

5

6    **(continuous service offer and automatic renewal offer)**

7    **and 17200 (unfair competition)**

8    82.    Plaintiffs reallege paragraphs 1-81 above and incorporate them here.

9
10   83.    Apple's iCloud service is a "continuous service," under California Business and Professions

11          Code section 17601(e), which means "a plan or arrangement in which a subscription or

12          purchasing agreement continues until the consumer cancels the service."

13   84.    The purpose of California's Automatic Renewal Law, set forth beginning at California

14          Business and Professions Code section 17600 *et seq.*, is "to end the practice of ongoing

15          charging of consumer … cards or … accounts without the consumers' explicit consent for …
16
17          ongoing deliveries of service."

18   85.    Under California Business and Professions Code section 17602(a)(1), it is unlawful for Apple

19          to "[f]ail to present the … continuous service offer terms in a clear and conspicuous manner

20          before the subscription or purchasing agreement is fulfilled and in visual proximity … to the

21          request for the consent to the offer." Where, as here, iCloud is given as "a free gift or trial, the
22
23          offer shall include a clear and conspicuous explanation of the price that will be charged after

24          the trial ends or the manner in which the subscription or purchasing agreement pricing will

25          change upon conclusion of the trial."

26   86.    "Clear and conspicuous" under California Business and Professions Code section 17601(c)

27          means "in larger type than the surrounding text, or in contrasting type, font, or color to the

28   COMPLAINT [CLASS ACTION] - 17

1    surrounding text of the same size, or set off from the surrounding text of the same size by

2    symbols or other marks, in a manner that clearly calls attention to the language."

3  87.  Once a consumer bites the bullet and begins to pay for the iCloud service, that service

4    continues at a given rate (i.e., 0.99/mo.) until the next level of storage (i.e., 50 GB) is reached

5    unless the consumer takes steps to cancel the service.

6

7  88.  Because that "paid subscription or purchasing agreement is automatically renewed at the end

8    of a definite term for a subsequent term," the paid iCloud service is an "automatic renewal"

9    plan under California Business and Professions Code section 17601(a).

10

11  89.  To be sure a consumer has agreed to the automatic renewal plan, Apple's obligation is to

12    present to the consumer, before the consumer makes a commitment to purchase, the

13    "automatic renewal offer terms" under California Business and Professions Code section

14    17602(a)(1). This includes a "clear and conspicuous ... description of the cancellation policy

15    that applies to the offer." California Business and Professions Code section 17601(b)(2).

16

17  90.  As with a continuous service offer, "clear and conspicuous" under California Business and

18    Professions Code section 17601(c) means "in larger type than the surrounding text, or in

19    contrasting type, font, or color to the surrounding text of the same size, or set off from the

20    surrounding text of the same size by symbols or other marks, in a manner that clearly calls

21    attention to the language."

22

23  91.  Because Apple failed to obtain the consent of consumers before binding them to a continuous

24    service offer and automatic renewal offer – in fact an escalating price subscription, Apple has

25    violated section 17602(a)(1) of the California Business and Professions Code.

26  92.  Because Apple has violated section 17602, Apple has committed "unlawful ... business act[s]

27    or practice[s]" under section 17200 of the California Business and Professions Code.

28

COMPLAINT [CLASS ACTION] - 18

93.   Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

94.   Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

95.   Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

96.   Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 (see paragraphs 23 and 24 above) and complies with section 382 of the California Code of Civil Procedure, as set forth below in paragraphs 197-202.

### Sixth Cause of Action

### Breach of contract and

### Cal. Bus. & Prof. Code section 17200 (unfair competition)

97.   Plaintiffs reallege paragraphs 1-96 above and incorporate them here.

98.   Apple's Terms of Service, most recently dated 9/19/19, entitled "Welcome to iCloud," is a "legal agreement" that Apple has designed that "governs your use of the iCloud product, software, services, and websites (collectively referred to as the "service").

COMPLAINT [CLASS ACTION] - 19

99.   Even though "iCloud is automatically enabled," Apple recites, "[b]y clicking 'agree,' you are agreeing that these terms will apply if you choose to access or use the service."

100.  These contractual terms have remained the same for some time, as they appear in the earlier Terms of Service dated 9/25/18 and 9/19/17.

101.  In these Terms of Service, Apple promises that consumers may "downgrade[] … your storage plan," (IIIA), "cancel your subscription," (IIIB), and "stop using the Service at any time," (VII A).

102.  In fact, Apple has designed it so that consumers may not easily downgrade, cancel or stop using iCloud. That is because Apple fails to explain how consumers may keep that which they have stored on iCloud anywhere once they downgrade, cancel or stop using the service – whether retaining some data on a reduced capacity plan, or choosing to store some data on other media such as the Apple computer or a standalone drive.

103.  How to keep what has been stored to date if one downgrades, cancels or stops using iCloud is a material part of the contract. It is implicit in the promise that consumers may manage their iCloud service, as expressly stated throughout the contract (e.g., sections IIIA, IIIB and VIIA).

104.  Apple's failure to explain how to manage stored data upon downgrading, canceling or stopping the use of iCloud is a breach of the express terms of its contract, as well as the implied covenant of good faith and fair dealing in the operation of the contract.

105.  Apple's email communication with its customers in the period in which customers approach the limitation of their storage, described above in paragraph 34, adopts this promise of flexible management and creates an implied in fact contract.

COMPLAINT [CLASS ACTION] - 20

106.  Apple's failure to explain how to manage stored data upon downgrading, canceling or stopping the use of iCloud is a breach of the implied in fact terms of its contract, as well as the implied covenant of good faith and fair dealing in the operation of the contract.

107.  Because Apple has breached its contract, Apple has committed "unlawful … business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

108.  Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

109.  Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

110.  Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

111.  Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 (see paragraphs 58 and 59 above) and complies with section 382 of the California Code of Civil Procedure, as set forth below in paragraphs 197-202.

## Seventh Cause of Action

## Breach of contract and

## Cal. Bus. & Prof. Code section 17200 (unfair competition)

COMPLAINT [CLASS ACTION] - 21

112. Plaintiffs reallege paragraphs 1-111 above and incorporate them here.

113. Apple's Terms of Service, most recently dated 9/19/19, entitled "Welcome to iCloud," is a "legal agreement" that Apple has designed that "governs your use of the iCloud product, software, services, and websites (collectively referred to as the "service").

114. In these Terms of Service, Apple promises that consumers are "allocated 5GB of storage capacity" in the iCloud service at no cost.

115. This 5GB of iCloud storage never goes away. Nor is it presented as "the first 5GB of storage.

116. Consumers may stay at the 5GB level or purchase more: "Additional storage is available for purchase on a subscription basis." Presently, and for some time now, the storage amounts and prices/months available on a subscription basis for US consumers are these: $0.99/mo. for 50GB; $2.99/mo. for 200GB and $9.99/mo. for 2TB. Each of Apple's paid tiers of the iCloud service includes the free 5GB of storage.

117. In fact, Apple has designed it so that consumers may not easily retain the 5GB of storage Apple has promised and provided.

118. Apple fails to explain, before consumers are provided a free iCloud subscription, that the backup process is inexorable, cumulative, and quick to reach the 5GB limit -- at which point consumers will need to begin to pay for the service.

119. Apple fails to explain, after consumers are provided a free iCloud subscription and while they are approaching their 5GB limit, how consumers may so manage their service as to retain the contracted for 5GB storage.

120. Apple's terms and conditions has a section entitled "payment" that explains how Apple will charge, on a subscription basis, for upgrades and downgrades, as well as a section entitled "Right of Withdrawal" that explains that consumers can cancel within 14 days of purchase of

COMPLAINT [CLASS ACTION] - 22

1    a paid-for iCloud storage level, but Apple says nothing about data management so that

2    consumers can retain the 5GB Apple has promised and provided.

3    121.   The 5GB of iCloud storage provided at no cost is a material part of the contract. Being able to

4        keep it is implicit in the promise that consumers may elect to purchase more storage (e.g.,

5        sections IC and III), and that they may manage their iCloud service, as expressly stated

6        throughout the contract (e.g., sections IIIA, IIIB and VIIA).

7

8    122.   Apple's failure to explain how to retain the 5GB of iCloud, whether in advance of the

9        contract, after its formation or during its term, is a breach of the express terms of its contract,

10        as well as the implied covenant of good faith and fair dealing in the operation of the contract.

11

12   123.   Apple's email communication with its customers in the period in which customers approach

13        the limitation of their storage, described above in paragraph 34, in which Apple indicates that

14        a consumer can reduce storage adopts the promise that consumers may retain the no-cost 5GB

15        of iCloud storage and creates an implied in fact contract.

16

17   124.   Apple's failure to explain how to so manage data and reduce storage so as to retain the 5GB of

18        iCloud storage is a breach of the implied in fact terms of its contract, as well as the implied

19        covenant of good faith and fair dealing in the operation of the contract.

20   125.   Because Apple has breached its contract, Apple has committed "unlawful … business act[s] or

21        practice[s]" under section 17200 of the California Business and Professions Code.

22

23   126.   Each consumer subscribing to iCloud has purchased an Apple computer product, the price of

24        which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury

25        in fact under section 17204 and has lost money as a result of Apple's unfair competition.

26   127.   Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has

27        suffered additional injury in fact.

28
COMPLAINT [CLASS ACTION] - 23

128.    Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

129.    Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 (see paragraphs 58 and 59 above) and complies with section 382 of the California Code of Civil Procedure, as set forth below in paragraphs 197-202.

**Eighth Cause of Action**

**Cal. Civ. Code section 1770 (CLRA) and**

**Cal. Bus. & Prof. Code section 17200 (unfair competition)**

130.    Plaintiffs reallege paragraphs 1-129 above and incorporate them here.

131.    Apple lures consumers into paying for iCloud.

132.    Before introduction, Apple omitted it from product advertising but built it in, played it as a feature not a liability upon signup, and didn't mention it until just about to expire.

133.    Once introduced, Apple was silent concerning iCloud, not communicating anything to consumers, suggesting consumers would not need more than the 5GB. In its Terms and Conditions, Apple promises that consumers are "allocated 5GB of storage capacity" in the iCloud service at no cost (i.e., section IC). This 5GB of iCloud storage is a huge amount of storage. It never goes away. Nor is it presented as "the first 5GB of storage. Consumers may stay at the 5GB level – they may, but are not obligated, to purchase more (e.g., section III).

COMPLAINT [CLASS ACTION] - 24

Consumers don't lose data if they exceed the 5GB level. More, Apple notes that consumers can downgrade at any time if exceed.

134.    At the point that consumers begin to approach the limit of the 5GB storage, Apple now threatens the consumer into paying for more storage. Emails note imminent loss of data. In its Terms and Conditions, Apple emphasizes the urgency of consumer action, threatens data loss either if the consumer simply stops using the service by setting aside the Apple product or by continued use of the product generates data that exceeds the allotted amount.

135.    In fact, Apple has designed it so that consumers may not easily manage and/or delete certain data (i.e., downgrade) so as to retain the promised 5GB of storage. Apple does not make easily accessible what the cancellation/downgrade policy is, or how to downgrade. Reasonable consumers are concerned about data loss if downgrade. Reasonable consumers attempting the process lose data.

136.    Because Apple represented its iCloud service had characteristics that it did not have; because Apple advertised its iCloud service with intent not to sell it as advertised; and because Apple represented that the transaction by which it signed consumers up for iCloud subscriptions conferred or involved rights, remedies … that it did not have or involve, Apple violated the CLRA in committing *acts that are illegal under Civil Code 1770(a)(5), (9) and (14) respectively*.

137.    Plaintiffs designates the County of Santa Clara, a county in which Apple "is doing business" under California Civil Code § 1780(d). *See* Declarations stating these facts, attached to this Complaint as Exhibits 1-8.

COMPLAINT [CLASS ACTION] - 25

138.    More than 30 days prior to the commencement of this action, on November 14, 2018, the undersigned counsel wrote, by certified mail, return receipt requested, to Apple at One Apple Park Way in Cupertino, California, 95014, demanding that Apple correct, repair, replace or otherwise rectify the goods or services in violation of unlawful practices detailed by CLRA section 1770. *See* Exhibit 9 hereto. Apple responded by way of counsel on January 9, 2019. By that letter, Apple did not communicate any appropriate correction, repair, replacement, or other remedy of the matters identified in the letter and now set forth in this complaint, or agreed to make such response within a reasonable time. Following considerable additional work and investigation, the undersigned counsel has decided to proceed with this action. *See* Exhibit 10 hereto.

139.    Because Apple has violated California Civil Code section 1770, Apple has committed "unlawful … business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

140.    Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

141.    Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

142.    Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

COMPLAINT [CLASS ACTION] - 26

143.    Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, at least nominal damages in compensation, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 (see paragraphs 23 and 24 above) and complies with section 382 of the California Code of Civil Procedure, as set forth below in paragraphs 197-202.

**Ninth Cause of Action**

**Cal. Bus. & Prof. Code section 17500 (FAL) and**

**Cal. Bus. & Prof. Code section 17200 (unfair competition)**

144.    Plaintiffs reallege paragraphs 1-143 above and incorporate them here.

145.    Apple lures consumers into paying for iCloud.

146.    Before introduction, Apple omitted it from product advertising but built it in, played it as a feature not a liability upon signup, and didn't mention it until just about to expire.

147.    Once introduced, Apple was silent concerning iCloud, not communicating anything to consumers, suggesting consumers would not need more than the 5GB. In its Terms and Conditions, Apple promises that consumers are "allocated 5GB of storage capacity" in the iCloud service at no cost (i.e., section IC). This 5GB of iCloud storage is a huge amount of storage. It never goes away. Nor is it presented as "the first 5GB of storage. Consumers may stay at the 5GB level – they may, but are not obligated, to purchase more (e.g., section III). Consumers don't lose data if they exceed the 5GB level. More, Apple notes that consumers can downgrade at any time if exceed.

148.    At the point that consumers begin to approach the limit of the 5GB storage, Apple now threatens the consumer into paying for more storage. Emails note imminent loss of data.

COMPLAINT [CLASS ACTION] - 27

In its Terms and Conditions, Apple emphasizes the urgency of consumer action, threatens data loss either if the consumer simply stops using the service by setting aside the Apple product or by continued use of the product generates data that exceeds the allotted amount.

149. In fact, Apple has designed it so that consumers may not easily manage and/or delete certain data (i.e., downgrade) so as to retain the promised 5GB of storage. Apple does not make easily accessible what the cancellation/downgrade policy is, or how to downgrade. Reasonable consumers are concerned about data loss if downgrade. Reasonable consumers attempting the process lose data.

150. Because Apple advertised its iCloud service with intent not to sell it as advertised, Apple violated the FAL in committing *acts that are illegal under California Business & Professions Code 17500.*

151. Because Apple has violated California Business & Professions Code section 17500, Apple has committed "unlawful ... business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

152. Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

153. Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

154. Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented

COMPLAINT [CLASS ACTION] - 28

1    with either having to pay an increasing amount of money for the next highest level or taking

2    affirmative steps to cancel.

3  155.   Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive

4       relief, at least nominal damages in compensation, and restitution under California Business

5       and Professions Code section 17203 and may pursue representative claims or relief on behalf

6       of others because these consumers meet the standing requirements of section 17204 (see

7       paragraphs 23 and 24 above) and complies with section 382 of the California Code of Civil

8       Procedure, as set forth below in paragraphs 197-202.

9                          **Tenth Cause of Action**

10

11                **Cal. Bus. & Prof. Code section 17200 (unfair competition)**

12

13  156.   Plaintiffs reallege paragraphs 1-155 above and incorporate them here.

14  157.   Apple lures consumers into paying for iCloud.

15  158.   Before introduction, Apple omitted it from product advertising but built it in, played it as

16       a feature not a liability upon signup, and didn't mention it until just about to expire.

17

18  159.   Once introduced, Apple was silent concerning iCloud, not communicating anything to

19       consumers, suggesting consumers would not need more than the 5GB. In its Terms and

20       Conditions, Apple promises that consumers are "allocated 5GB of storage capacity" in the

21       iCloud service at no cost (i.e., section IC). This 5GB of iCloud storage is a huge amount of

22       storage. It never goes away. Nor is it presented as "the first 5GB of storage. Consumers may

23       stay at the 5GB level – they may, but are not obligated, to purchase more (e.g., section III).

24       Consumers don't lose data if they exceed the 5GB level. More, Apple notes that consumers

25       can downgrade at any time if exceed.

26

27

28

COMPLAINT [CLASS ACTION] - 29

160.   At the point that consumers begin to approach the limit of the 5GB storage, Apple now threatens the consumer into paying for more storage. Emails note imminent loss of data. In its Terms and Conditions, Apple emphasizes the urgency of consumer action, threatens data loss either if the consumer simply stops using the service by setting aside the Apple product or by continued use of the product generates data that exceeds the allotted amount.

161.   In fact, Apple has designed it so that consumers may not easily manage and/or delete certain data (i.e., downgrade) so as to retain the promised 5GB of storage. Apple does not make easily accessible what the cancellation/downgrade policy is, or how to downgrade. Reasonable consumers are concerned about data loss if downgrade. Reasonable consumers attempting the process lose data.

162.   Apple has committed "unfair … business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

163.   Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

164.   Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

165.   Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

COMPLAINT [CLASS ACTION] - 30

166.   Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, at least nominal damages in compensation, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 (see paragraphs 23 and 24 above) and complies with section 382 of the California Code of Civil Procedure, as set forth below in paragraphs 197-202.

**Eleventh Cause of Action**

**Cal. Bus. & Prof. Code section 17200 (unfair competition)**

167.   Plaintiffs reallege paragraphs 1-166 above and incorporate them here.

168.   Apple lures consumers into paying for iCloud.

169.   Before introduction, Apple omitted it from product advertising but built it in, played it as a feature not a liability upon signup, and didn't mention it until just about to expire.

170.   Once introduced, Apple was silent concerning iCloud, not communicating anything to consumers, suggesting consumers would not need more than the 5GB. In its Terms and Conditions, Apple promises that consumers are "allocated 5GB of storage capacity" in the iCloud service at no cost (i.e., section IC). This 5GB of iCloud storage is a huge amount of storage. It never goes away. Nor is it presented as "the first 5GB of storage. Consumers may stay at the 5GB level – they may, but are not obligated, to purchase more (e.g., section III). Consumers don't lose data if they exceed the 5GB level. More, Apple notes that consumers can downgrade at any time if exceed.

171.   At the point that consumers begin to approach the limit of the 5GB storage, Apple now threatens the consumer into paying for more storage. Emails note imminent loss of data. In its Terms and Conditions, Apple emphasizes the urgency of consumer action, threatens

COMPLAINT [CLASS ACTION] - 31

data loss either if the consumer simply stops using the service by setting aside the Apple product or by continued use of the product generates data that exceeds the allotted amount.

172. In fact, Apple has designed it so that consumers may not easily manage and/or delete certain data (i.e., downgrade) so as to retain the promised 5GB of storage. Apple does not make easily accessible what the cancellation/downgrade policy is, or how to downgrade. Reasonable consumers are concerned about data loss if downgrade. Reasonable consumers attempting the process lose data.

173. Apple has committed "fraudulent … business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

174. Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

175. Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

176. Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

177. Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, at least nominal damages in compensation, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 (see

COMPLAINT [CLASS ACTION] - 32

paragraphs 23 and 24 above) and complies with section 382 of the California Code of Civil

Procedure, as set forth below in paragraphs 197-202.

**Twelfth Cause of Action**

**Cal. Wel. & Inst. Code section 15610.30(a)(1) (financial elder abuse) and**

**Cal. Bus. & Prof. Code section 17200 (unfair competition)**

178.   Plaintiffs reallege paragraphs 1-177 above and incorporate them here.

179.   Apple lures consumers into paying for iCloud, many of whom are aged 65 or older.

180.   Before introduction, Apple omitted it from product advertising but built it in, played it as a feature not a liability upon signup, and didn't mention it until just about to expire.

181.   Once introduced, Apple was silent concerning iCloud, not communicating anything to consumers, suggesting consumers would not need more than the 5GB. In its Terms and Conditions, Apple promises that consumers are "allocated 5GB of storage capacity" in the iCloud service at no cost (i.e., section IC). This 5GB of iCloud storage is a huge amount of storage. It never goes away. Nor is it presented as "the first 5GB of storage. Consumers may stay at the 5GB level – they may, but are not obligated, to purchase more (e.g., section III). Consumers don't lose data if they exceed the 5GB level. More, Apple notes that consumers can downgrade at any time if exceed.

182.   At the point that consumers begin to approach the limit of the 5GB storage, Apple now threatens the consumer into paying for more storage. Emails note imminent loss of data. In its Terms and Conditions, Apple emphasizes the urgency of consumer action, threatens data loss either if the consumer simply stops using the service by setting aside the Apple product or by continued use of the product generates data that exceeds the allotted amount.

COMPLAINT [CLASS ACTION] - 33

183. In fact, Apple has designed it so that consumers may not easily manage and/or delete certain data (i.e., downgrade) so as to retain the promised 5GB of storage. Apple does not make easily accessible what the cancellation/downgrade policy is, or how to downgrade. Reasonable consumers are concerned about data loss if downgrade. Reasonable consumers attempting the process lose data.

184. Apple thus takes, obtains, and/or retains money of elders and dependent adults with the intent to defraud, which is illegal under Cal. Wel. & Inst. Code section 15610.30(a)(1).

185. Apple has committed "unlawful … business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

186. Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

187. Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

188. Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

189. Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, at least nominal damages in compensation, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 (see

COMPLAINT [CLASS ACTION] - 34

paragraphs 23 and 24 above) and complies with section 382 of the California Code of Civil

Procedure, as set forth below in paragraphs 197-202.

**Thirteenth Cause of Action**

**Cal. Civ. Code section 1770 (CLRA) and**

**Cal. Bus. & Prof. Code section 17200 (unfair competition)**

190.   Plaintiffs reallege paragraphs 1-189 above and incorporate them here.

191.   Apple, upon a customer's stopping to use iCloud, eliminates the customer's continued

access to iCloud while simultaneously refusing to provide a pro rata refund.

192.   Accordingly, Apple has imposed unconscionable contract terms.

193.   Because Apple engaged in an unconscionable practice, Apple violated the CLRA in

committing acts that are illegal under Civil Code 1770(a)(19).

194.   Because Apple has violated California Civil Code section 1770, Apple has committed

"unlawful … business act[s] or practice[s]" under section 17200 of the California Business

and Professions Code.

195.   Each consumer subscribing to iCloud has purchased an Apple computer product, the price of

which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury

in fact under section 17204 and has lost money as a result of Apple's unfair competition.

196.   Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has

suffered additional injury in fact.

197.   Any consumer subscribing to iCloud has an imminent risk of using up their particular amount

of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented

with either having to pay an increasing amount of money for the next highest level or taking

affirmative steps to cancel.

COMPLAINT [CLASS ACTION] - 35

198.   Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, at least nominal damages in compensation, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 (see paragraphs 23 and 24 above) and complies with section 382 of the California Code of Civil Procedure, as set forth below in paragraphs 199-204.

## Class Action Allegations

199.   **Class definition:** All U.S. consumers who have subscribed to the iCloud service, from 4 years prior to the filing of this complaint to the present.

200.   **Subclasses:**

A. All U.S. consumers who have subscribed to the iCloud service and never exceeded the 5GB level, from 4 years prior to the filing of this complaint to the present.

B. All U.S. consumers who have subscribed to the iCloud service and exceeded the 5GB level, paying for iCloud service, from 4 years prior to the filing of this complaint to the present.

C. All U.S. consumers who have subscribed to the iCloud service, who relied upon Apple's representations, whether

   1.   Before product purchase;

   2.   At the time of product activation; or

   3.   When free storage almost exhausted,

that iCloud's free service would be all they would likely need/a reasonable person would, who subsequently learned that they would need to pay.

COMPLAINT [CLASS ACTION] - 36

D. All U.S. consumers who have subscribed to the iCloud service, who relied upon Apple's failure to mention the incipient cost of iCloud and subsequently learned of it, when free storage almost exhausted but either:

    1.  were dissuaded from adjusting downward because they:

        a)  did not know the cancellation policy; or

        b)  knew that cancellation meant no pro rata refund; or

        c)  did not remember Apple ID; or

        d)  did not know how to cancel; or

        e)  did know how to cancel but feared losing data; or

    2.  tried to adjust downward but could not do so; or

    3.  succeeded in adjusting downward:

        a)  but lost data; or

        b)  but did not receive a pro rata refund.

E. All U.S. consumers who have subscribed to the iCloud service, who relied upon Apple's representations that iCloud's storage and pricing can be adjusted up or down in accordance with their storage needs, who subsequently found those representations to be untrue:

    1.  in that they have been dissuaded from adjusting downward b/c they:

        a)  did not know the cancellation policy; or

        b)  knew that cancellation meant no pro rata refund; or

        c)  did not remember Apple ID; or

        d)  did not know how to cancel; or

        e)  did know how to cancel but feared losing data; or

COMPLAINT [CLASS ACTION] - 37

2.   in that they tried to adjust downward but could not do so; or

3.   in that they succeeded in adjusting downward:

   a)  but lost data; or

   b)  but did not receive a pro rata refund.

F. Other subclasses include:

1.  Those aged 65 or older;

2.  Those who obtained iCloud through the purchase of particular products (e.g., iPhone, iMac);

3.  Those who made in-store or online purchase of products;

4.  California residents; and

5.  Those presently (or at the time) grouped by applicable monthly charges ($0.99/$2.99/$9.99/other) or annual charges.

201.   Numerosity. There are so many potential class members that individual joinder of class members is impractical.

202.   Commonality. As is clear from paragraphs 1-196, there are questions of law or fact that apply equally to all subscribers to the iCloud service and are therefore common to class members.

203.   Typicality. The claims of the Plaintiffs here, putative class representatives, are typical of those of absent class members.

204.   Adequacy of representation. Class counsel is experienced in litigating class actions, and Plaintiffs intend to fairly and adequately protect the interests of absent class members.

**PUBLIC INJUNCTIVE RELIEF AND ATTORNEYS' FEES UNDER CCP 1021.5**

205.   Plaintiffs reallege paragraphs 1-204 above and incorporate them here.

COMPLAINT [CLASS ACTION] - 38

206. Plaintiffs are informed, and on that basis alleges that relief addressing the procedures that are the subject of this claim will provide a significant benefit, both pecuniary and nonpecuniary, on the general public; that the necessity for and financial burden of private enforcement are such as to make an award of attorneys' fees appropriate – for how else would an attorney ever go the effort and expense of bringing an action simply focused on requiring Apple to change its policies to comply with the law; and such fees would not be paid out of any recovery for Plaintiffs, as Plaintiffs to the extent they seek public injunctive relief seek no damages at all.

207. Accordingly, as demonstrated, an award of attorneys' fees under California Code of Civil Procedure section 1021.5 is appropriate and merited.

## DEMAND FOR RELIEF

208. WHEREFORE, Plaintiffs prays for judgment against all Defendants that:

    a. Defendants be declared in violation of the aforementioned laws;

    b. Defendants be preliminarily and permanently enjoined from committing the acts alleged herein;

    c. Defendants be ordered to pay Plaintiffs' actual, consequential, incidental and special damages.

    d. Defendants be ordered to provide restitution to Plaintiffs;

    e. Defendants be ordered to pay Plaintiffs' attorneys' fees and costs under the doctrine of tort of another, to the extent available under the statutes sued hereunder, and pursuant to Cal. Code Civ. Proc. § 1021.5;

    f. Plaintiffs be entitled to rescind their contracts;

    g. Plaintiffs be entitled to reform their contracts;

COMPLAINT [CLASS ACTION] - 39

h.  Defendants be ordered to pay statutory damages and/or civil penalties;

i.  Defendants be ordered to pay punitive damages;

j.  Plaintiffs be awarded costs of suit;

k.  Plaintiffs be entitled to pre-judgment (and, if appropriate, post-judgment) interest;

l.  Plaintiffs be awarded such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs respectfully request a jury trial on all issues triable thereby.

Dated this 21st of April, 2021.

/s/ David M. Rosenberg-Wohl
David M. Rosenberg-Wohl
HERSHENSON ROSENBERG-WOHL
A PROFESSIONAL CORPORATION

COMPLAINT [CLASS ACTION] - 40

## DECLARATION OF WILL RUTTER

1. I am Will Rutter.
2. I know the facts in this declaration from my own experience and knowledge and would testify to them if called as a witness.
3. I currently live in Pennsylvania.
4. I grew up in the San Francisco Bay Area.
5. I regularly have used Apple products and received email from Apple Inc., which I understand to be located in Santa Clara County.
6. Due to the fact that Apple Inc. - as evidenced by its advertising generally - has its principal place of business in Cupertino, California, I state on information and belief that Apple Inc. has done and continues to do substantial business in California.

I declare under penalty of perjury under the laws of the United States of American and the State of California that the foregoing is true and correct.

Executed on December 19, 2020

Will Rutter

EXH. 1

### DECLARATION OF JACQUELINE TABAS

1.  I am Jacqueline Tabas. I know the facts in this declaration from my own experience and knowledge and would testify to them if called as a witness.

2.  I live in San Francisco, which is situated in the County of San Francisco, State of California. I regularly receive and respond to email in this county. I signed up for my Apple ID, and began using iCloud while living in California.

3.  Due to the fact that Apple Inc. – as evidenced by its advertising generally and its email message to me concerning iCloud – has its principal place of business in Cupertino, California, I state on information and belief that Apple Inc. has done and continues to do substantial business in California.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on October 21, 2018

Jacqueline Tabas

EXH. 2

### DECLARATION OF NATASHA GARAMANI

1. I am Natasha Garamani.
2. I know the facts in this declaration from my own experience and knowledge and would testify to them if called as a witness.
3. I currently live in Colorado.
4. I have spent time in the San Francisco Bay Area.
5. I regularly have used Apple products and received email from Apple Inc., which I understand to be located in Santa Clara County.
6. Due to the fact that Apple Inc. - as evidenced by its advertising generally - has its principal place of business in Cupertino, California, I state on information and belief that Apple Inc. has done and continues to do substantial business in California.

I declare under penalty of perjury under the laws of the United States of American and the State of California that the foregoing is true and correct.

Executed on January 12, 2021

Natasha

EXH. 3

Exhibit B, Page 53

### DECLARATION OF CONNIE TABAS

1. I am Connie Tabas. I know the facts in this declaration from my own experience and knowledge and would testify to them if called as a witness.

2. I live in San Francisco, which is situated in the County of San Francisco, State of California. I regularly receive and respond to email in this county. I signed up for my Apple ID, and began using iCloud while living in California.

3. Due to the fact that Apple Inc. – as evidenced by its advertising generally and its email message to me concerning iCloud – has its principal place of business in Cupertino, California, I state on information and belief that Apple Inc. has done and continues to do substantial business in California.


I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.


Executed on October 21, 2018

*Connie Tabas*

Connie Tabas

DocuSign Envelope ID: CEF314D0-162D-40AD-952E-5A3D33381287

### DECLARATION OF TRISTAN YOUNG

1.  I am Tristan Young. I know the facts in this declaration from my own experience and
    knowledge and would testify to them if called as a witness.

2.  I currently live in Arizona. I regularly receive email from Apple Inc., which I understand to
    be located in Santa Clara County.

3.  Due to the fact that Apple Inc. - as evidenced by its advertising generally and its email
    message to me concerning iCloud - has its principal place of business in Cupertino,
    California, I state on information and belief that Apple Inc. has done and continues to do
    substantial business in California.

I declare under penalty of perjury under the laws of the United States of American and the State
of California that the foregoing is true and correct.

Executed on December 6th 2020

Tristan Young

EX4_5

### DECLARATION OF KASRA ELIASIEH

1. I am Kasra Eliasieh. I know the facts in this declaration from my own experience and knowledge and would testify to them if called as a witness:

2. I live in San Francisco, which is situated in the County of San Francisco, State of California. I regularly receive and respond to email in this county. I signed up for my Apple ID, and began using iCloud while living in California.

3. Due to the fact that Apple Inc. – as evidenced by its advertising generally and its email message to me concerning iCloud – has its principal place of business in Cupertino, California, I state on information and belief that Apple Inc. has done and continues to do substantial business in California.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on October 21, 2018

Kasra Eliasieh

1

EXH. 6

## DECLARATION OF ROBERT BARKER

1. I am Robert Barker. I know the facts in this declaration from my own experience and knowledge and would testify to them if called as a witness.

2. I live in Cobb, which is situated in the County of Lake, State of California. I regularly receive and respond to email in this county. I signed up for my Apple ID, and began using iCloud while living in California.

3. Due to the fact that Apple Inc. – as evidenced by its advertising generally and its email message to me concerning iCloud – has its principal place of business in Cupertino, California, I state on information and belief that Apple Inc. has done and continues to do substantial business in California.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on October 26, 2018

Robert Barker

## DECLARATION OF CYNTHIA RUTTER

1.  I am Cynthia Rutter. I know the facts in this declaration from my own experience and
    knowledge and would testify to them if called as a witness.

2.  I began using Apple's iCloud product sometime after obtaining my Apple ID.

3.  Due to the fact that Apple Inc. – as evidenced by its advertising generally and its email
    messages to me concerning iCloud – has its principal place of business in Cupertino,
    California, I state on information and belief that Apple Inc. has done and continues to do
    substantial business in California, particularly within the county of Santa Clara, and that
    this is the place where the transaction or a substantial portion of the transaction in
    which I was provided iCloud took place.

4.  I live in Wyoming. Nonetheless, the Apple Terms and Conditions agreement explains
    that I must bring any action that I have arising out the iCloud product in courts located
    within the county of Santa Clara County and that this dispute is to be governed by
    California law.

I declare under penalty of perjury under the laws of the United States of America and
the State of Wyoming that the foregoing is true and correct.

Executed on December 20, 2018                    _Cynthia Rutter_

                                                 Cynthia Rutter

1

HERSHENSON
ROSENBERG-WOHL
A PROFESSIONAL CORPORATION
315 Montgomery St. 8th Fl.
San Francisco, CA 94104
(415) 829-4330

November 14, 2018

Apple Inc.
One Apple Park Wy
Cupertino, CA 95014

*VIA CERTIFIED/REGISTERED MAIL, RETURN RECEIPT REQUESTED*

Re:     <u>Notice under California's CLRA, section 1782</u>

To Whom It May Concern:

This office represents Connie Tabas, Jacqueline Tabas, Kasra Eliasieh, Robert Barker and Tristan Young, on behalf of themselves and others similarly situated ("Plaintiffs"). Plaintiffs are consumers who risk paying, have paid, and continue to pay Defendants on a monthly basis to store documents, photographs and other data through the iCloud product offered by Apple Inc. ("Apple").

No consumer purchases the iCloud product by itself. When a consumer purchases any product or service from Apple, Apple provides the consumer with an Apple ID and a free iCloud product. It is difficult, if not impossible, to choose to have the iCloud product – the choice is made for the consumer by Apple. As stated in the iCloud Terms and Conditions: "iCloud is automatically enabled when you are running devices on iOS 9 or later and sign in with your Apple ID during device setup, unless you are upgrading the device and have previously chosen not to enable iCloud." iCloud remains enabled on all consumer accounts unless turned off. "You can disable iCloud in Settings. When iCloud is enabled, your content will be automatically sent to and stored by Apple, so you can later access that content or have content wirelessly pushed to your other iCloud-enabled devices or computers."

When it provides the consumer the iCloud product, Apple does not tell the consumer what the product is, what it does, and that it is free for only a small amount of data/period of time. Apple first notifies the consumer concerning the possible cost of the iCloud product when the consumer reaches the limit of the 5GB storage that is provided for free. At that point, Apple announces that the consumer may "upgrade" to 50GB for $0.99/month and that if the consumer wants to continue to use the service to back up data s/he must either upgrade and begin to pay of "reduce the amount of storage you are using." There is a link highlighted in blue to "Upgrade" but there is no link, nor even small print, indicating how a consumer might go about reducing storage, so as to continue using the product as provided. Once the consumer agrees to upgrade, the consumer now receives monthly receipts to the email associated with the Apple ID. This receipt indicates the amount of storage (i.e., 50 GB Storage Plan), the term of the plan (i.e., monthly), and the price (i.e., $0.99). The payments are automatically charged to the consumer's credit card associated with the Apple ID.

The consumer is told that Apple will bill the consumer each plan period until the consumer cancels "by downgrading to the free storage plan" but neither provides a link nor explains just how a consumer might do that. Nor does Apple indicate that data presently stored by the consumer on the iCloud product can be preserved if the consumer were to downgrade. Nor does Apple explain what happens in terms of a refund (whether full or partial) if a consumer downgrades in response to the notice. Apple does, however, encourage a consumer to upgrade. It states that Apple will provide a full refund within 15 days of a monthly subscription upgrade (or within 45 days after a yearly payment). While Apple notes that partial refunds are available "where required by law," there is no link allowing a consumer to know if that applies in the consumer's jurisdiction and if so, what that might mean.

Questions about the bill? Apple directs the consumer to "Official Apple Support," but it is an iTunes page that has nothing clearly to do with iCloud. If the consumer types "iCloud" into the "What can we help you with?" "Search Support" bar, nothing about the "bill" appears. The consumer can further click on either "iCloud Support" or "Manage your iCloud storage." Two other options deal with the iCloud Keychain. Nothing about a bill. iCloud support leads a consumer to "Find my iPhone," "iCloud storage," "iCloud Photos," "iCloud backup" and "iCloud Drive." Again, nothing about a bill.

Questions about how to downgrade? If the consumer clicks "downgrading," Apple directs the consumer to an "iCloud help" page. Nothing about downgrading. If a consumer clicks the large icon that is the focus of the page, nothing happens. If the consumer clicks the small icon on the very left of the screen at the top of a list of icons, entitled "iCloud basics," the consumer sees "What is iCloud?," "Ways to use iCloud," "Set up iCloud," "Use iCloud.com," "Change iCloud feature settings," and "Trouble signing in." Again, nothing about downgrading. (Nor do any of the links, when clicked, actually lead to anything about downgrading.) If a consumer types "downgrading" into the "Search iCloud Help" bar, the answer is "0 results for 'downgrading.'" The same for "downgrade."

In the course of using Apple products, Plaintiffs have involuntarily been signed up to receive iCloud and either have run out of the free iCloud storage and have been presented with the need to pay (at first) $0.99 to upgrade or will be in this situation shortly. Because the price is small and there is no easy alternative explained, Plaintiffs have been or will be compelled to purchase any upgrade or risk losing stored material, becoming locked into the monthly contract. Because Apple provides neither advance notice of the monthly charge nor any way to understand how to withdraw from the monthly cost of the product, Plaintiffs have continued paying for the product. Plaintiffs cannot figure out how to avoid having to pay Apple for this product, whether by keeping/going back to the smaller amount of free storage, or otherwise. iCloud appears to be a cheaper and more intuitive way to save data than alternatives offered by Apple such as Time Machine or external hard drives that require set up and which are offered at a single lump sum that appears far more significant than anything that is likely to be spent on a monthly iCloud product.

The conduct set forth constitutes statements representing that goods or services have characteristics they do not have, advertising goods or services with intent not to sell them as advertised, representing that a transaction confers or involves rights, remedies or obligations that it does not have or involve, and representing that a part or service is needed when it is not, in violation of Cal. Civ. Code §§ 1770(a)(5), (9), (14) and (15), all to the damage of Plaintiffs here.

Plaintiffs are entitled to actual damages, an injunction, restitution, rescission, civil penalties, punitive damages, attorneys' fees, as well as any relief a court deems proper under section 1780(a). Because the conduct described above has caused damage to other consumers similarly situated, Plaintiffs may bring an action for the relief described on behalf of not just themselves but other consumers under section 1781(a). Under section 1782(a)(2), Plaintiffs demand that Apple correct, replace or otherwise rectify the goods/services described above in a way that makes them whole, makes similarly situated consumers whole, and makes sure that no other consumers are subject to this conduct.

Thank you very much.

Very truly yours,

HERSHENSON ROSENBERG-WOHL, a Professional Corporation

By:

David M. Rosenberg-Wohl

EXH. 9
2

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415-268-7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS,
DENVER, HONG KONG, LONDON,
LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI,
SINGAPORE, TOKYO, WASHINGTON, D.C.

January 9, 2019

Writer's Direct Contact
+1 (415) 268.6557
AAmezcua@mofo.com

**CONFIDENTIAL**

*Via U.S. Mail and E-Mail*

David M. Rosenberg-Wohl
Hershenson Rosenberg-Wohl, PC
315 Montgomery St., 8th Fl.
San Francisco, CA 94104
David@hrw-law.com

Re:    *Tabas, et al. v. Apple Inc.*, Response to CLRA Demand Letter

Dear Mr. Rosenberg-Wohl:

This letter responds to your November 14, 2018 letter regarding Connie Tabas, Jacqueline Tabas, Kasra Eliasieh, Robert Barker, and Tristan Young's request for relief based on California's Consumers Legal Remedies Act, California Civil Code Section 1750, *et seq.* ("CLRA"). In the letter, you contend that Apple has violated the CLRA with respect to Apple's alleged statements regarding iCloud storage. Apple denies that contention.

Your clients cannot plead or prove any violation of the CLRA. The CLRA requires a prospective claimant to notify the potential defendant "of the particular alleged violations" Cal. Civ. Code § 1782(a)(1), but your letter fails to identify any conduct by Apple that violated the statute. Your letter does not identify any specific misrepresentation or omission by Apple regarding iCloud, as required for a violation of the CLRA. Moreover, your contention that it is difficult to downgrade to free iCloud storage or that consumers are not provided with information on how to reduce iCloud storage not only does not establish a violation of the CLRA, it is simply incorrect. The iCloud Terms & Conditions, which you quote, provide instructions on how to cancel and/or downgrade, and you acknowledge that consumers are offered 5GB of storage for *free*. Further, information about how to downgrade and manage or reduce storage is readily accessed through Settings on the device itself, as well as by simply typing search terms such as "downgrade iCloud," "manage storage" or "manage iCloud" on the Apple Support website (or, indeed, in Google or on the general Apple.com website itself). (*See, e.g.,* https://support.apple.com/en-us/HT207594; https://support.apple.com/en-us/HT207689; and https://support.apple.com/en-us/HT204247.)

sf-3976558

EXH. 10

**MORRISON** | **FOERSTER**

January 9, 2019
Page Two

There is thus no harm to consumers (and, consequently, no standing for any of your clients), since they can choose not to upgrade to receive additional iCloud storage—and therefore continue to receive 5GB of free storage—and those that have opted for a higher storage amount may cancel or downgrade. Rather than identifying any CLRA violation, the gravamen of your clients' claims appears to be that they were "compelled" to purchase iCloud storage because "the price is small" and iCloud is a "cheaper and more intuitive way to save data" than any available alternative. Your letter offers no authority for your clients' apparent claims that Apple violated the CLRA by offering its customers first *free*, then, for a "small" fee, "intuitive" storage, particularly given your admission that iCloud is the least expensive and easiest storage option available. In short, there was no injury.

If you would like Apple to further assess your clients' claims, please provide us with documentation and details regarding Connie Tabas, Jacqueline Tabas, Kasra Eliasieh, Robert Barker, and Tristan Young's iCloud purchases and any other related iCloud upgrades, monthly fees, or refunds. If the intent of this letter is to secure a refund for your clients' iCloud purchases or to obtain help for their use of iCloud, let us know.

Finally, because you have indicated that your letter constitutes a notice and demand pursuant to Section 1782(a), this letter serves as Apple's response in accordance with Sections 1782(b), (c), and (e). Evidence Code Section 1152 protects this response, and nothing in this response is intended as, or constitutes an admission or a waiver of any of Apple's defenses, rights, or remedies. This response is confidential and is entitled to all applicable protections of law. This letter is not intended to comprehensively list all of the reasons your clients' CLRA claims are without merit, and Apple is prepared to vigorously defend against their claims.

If you have any questions regarding the matters set forth in this letter or would like to discuss this issue further, please do not hesitate to contact me.

Sincerely,

Alexis A. Amezcua

cc:    Penelope A. Preovolos, Ashley Nakamura (via e-mail only)

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>David M. Rosenberg-Wohl (SBN 132924)<br>Hershenson Rosenberg-Wohl, A Professional Corporation<br>3080 Washington St., San Francisco, CA 94115 | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: (415) 317-7756          FAX NO. *(Optional):* <br>ATTORNEY FOR *(Name):* Plaintiffs | **Electronically Filed**<br>**by Superior Court of CA,**<br>**County of Santa Clara,**<br>**on 4/21/2021 11:33 PM**<br>**Reviewed By: R. Walker**<br>**Case #21CV380480**<br>**Envelope: 6291165** |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara | |
|---|---|
| STREET ADDRESS: 191 North First St. | |
| MAILING ADDRESS: 191 North First St. | |
| CITY AND ZIP CODE: San Jose, 95113 | |
| BRANCH NAME: Downtown Superior Court | |

CASE NAME:
Rutter, et al. v. Apple Inc.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|---|
| [x] **Unlimited**<br>(Amount demanded exceeds $25,000) | [ ] **Limited**<br>(Amount demanded is $25,000) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **21CV380480** |
| | | | JUDGE: |
| | | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[x] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify):* 13 (continuous service option, automatic renewal offer; unfair competition, et al.)
5. This case [x] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 19, 2021

David M. Rosenberg-Wohl                                    *David Rosenberg-Wohl*
(TYPE OR PRINT NAME)                                     (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |
|---|---|---|

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET
**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

For your protection and privacy, please press the Clear This Form button after you have printed the form.
[Print this form] [Save this form] [Clear this form]

Exhibit B, Page 64

# CIVIL LAWSUIT NOTICE

**ATTACHMENT CV-5012**

**21CV380480**

**Superior Court of California, County of Santa Clara**
**191 North First St., San José, CA 95113**

CASE NUMBER: _____

## PLEASE READ THIS ENTIRE FORM

*PLAINTIFF* (the person suing): Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint*, *Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

---

*DEFENDANT* (The person sued): **You must do each of the following to protect your rights:**

1. You must file a **written response** to the *Complaint, using the proper legal form or format,* in the Clerk's Office of the Court, within **30 days** of the date you were served with the *Summons* and *Complaint*;
2. You must serve by mail a copy of your written response on the Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

**Warning: If you, as the Defendant, do not follow these instructions, you may automatically lose this case.**

---

*RULES AND FORMS:* You must follow the California Rules of Court and the Superior Court of California, County of <_CountyName_> Local Civil Rules and use proper forms. You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 201 North First Street, San José (408-882-2900 x-2926).

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: http://www.sccsuperiorcourt.org/civil/rule1toc.htm

*CASE MANAGEMENT CONFERENCE (CMC):* You must meet with the other parties and discuss the case, in person or by telephone at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

*You or your attorney must appear at the CMC.* You may ask to appear by telephone – see Local Civil Rule 8.

| | |
|---|---|
| Your Case Management Judge is: | **Hon. Sunil R. Kulkarni** Department: **1** |
| The 1st CMC is scheduled for: (Completed by Clerk of Court) | |
| Date: **08/19/21** Time: **2:30 pm** in Department: **1** | |
| The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed) | |
| Date: _____ Time: _____ in Department: _____ | |

*ALTERNATIVE DISPUTE RESOLUTION (ADR):* If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

**Reset Form**

---

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA**
**191 N. FIRST STREET**
**SAN JOSE, CA  95113-1090**

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 4/23/2021 6:43 AM
Reviewed By: R. Walker
Case #21CV380480
Envelope: 6300864**

TO:    FILE COPY

RE:                    **Rutter, et al. v. Apple Inc.**
CASE NUMBER:    **21CV380480**

**ORDER DEEMING CASE COMPLEX AND STAYING DISCOVERY
AND RESPONSIVE PLEADING DEADLINE**

WHEREAS, the Complaint was filed by Plaintiffs **WILLIAM RUTTER** ("Plaintiff"), et al. in the Superior Court of California, County of Santa Clara, on **April 21, 2021** and assigned to Department **1** (Complex Civil Litigation), the **Honorable Sunil R. Kulkarni**  presiding, pending a ruling on the complexity issue;

IT IS HEREBY ORDERED that:

The Court determines that the above-referenced case is **COMPLEX** within the meaning of California Rules of Court 3.400.  The matter remains assigned, for all purposes, including discovery and trial, to Department **1** (Complex Civil Litigation), the **Honorable Sunil R. Kulkarni**  presiding.

The parties are directed to the Court's local rules and guidelines regarding electronic filing and to the Complex Civil Guidelines, which are available on the Court's website.

Pursuant to California Rules of Court, Rule 3.254, the creation and maintenance of the Master Service List shall be under the auspices of (1) Plaintiff **WILLIAM RUTTER**, as the first-named party in the Complaint, and (2) the first-named party in each Cross-Complaint, if any.

Pursuant to Government Code section 70616(c), each party's complex case fee is due within ten (10) calendar days of this date.

Plaintiff shall serve a copy of this Order on all parties forthwith and file a proof of service within seven (7) days of service.

Any party objecting to the complex designation must file an objection and proof of service within ten (10) days of service of this Order.  Any response to the objection must be filed within seven (7) days of service of the objection.  The Court will make its ruling on the submitted pleadings.

The Case Management Conference remains set for **August 19, 2021 at 2:30 p.m. in Department 1** and all counsel are ordered to attend by **CourtCall**.

Counsel for all parties are ordered to meet and confer in person at least 15 days prior to the First Case Management Conference and discuss the following issues:

1. Issues related to recusal or disqualification;
2. Issues of law that, if considered by the Court, may simplify or further resolution of the case, including issues regarding choice of law;
3. Appropriate alternative dispute resolution (ADR), for example, mediation, mandatory settlement conference, arbitration, mini-trial;
4. A plan for preservation of evidence and a uniform system for identification of documents throughout the course of this litigation;
5. A plan for document disclosure/production and additional discovery; which will generally be conducted under court supervision and by court order;

-----
Updated on 3/11/21.

1

6.  Whether it is advisable to address discovery in phases so that information needed to conduct meaningful ADR is obtained early in the case (counsel should consider whether they will stipulated to limited merits discovery in advance of certification proceedings), allowing the option to complete discovery if ADR efforts are unsuccessful;
7.  Any issues involving the protection of evidence and confidentiality;
8.  The handling of any potential publicity issues;

Counsel for Plaintiff is to take the lead in preparing a Joint Case Management Conference Statement to be filed 5 calendar days prior to the First Case Management Conference, and include the following:

1.  a brief objective summary of the case;
2.  a summary of any orders from prior case management conferences and the progress of the parties' compliance with said orders;
3.  significant procedural and practical problems that may likely be encountered;
4.  suggestions for efficient management, including a proposed timeline of key events; and
5.  any other special consideration to assist the court in determining an effective case management plan.

To the extent the parties are unable to agree on the matters to be addressed in the Joint Case Management Conference Statement, the positions of each party or of various parties should be set forth separately and attached to this report as addenda.  The parties are encouraged to propose, either jointly or separately, any approaches to case management they believe will promote the fair and efficient handling of this case.  The Court is particularly interested in identifying potentially dispositive or significant threshold issues the early resolution of which may assist in moving the case toward effective ADR and/or a final disposition.

**STAY ON DISCOVERY AND RESPONSIVE PLEADING DEADLINE** Pending further order of this Court, the service of discovery and the obligation to respond to any outstanding discovery is stayed. However, Defendant(s) shall file a Notice of Appearance for purposes of identification of counsel and preparation of a service list. The filing of such a Notice of Appearance shall be without prejudice to the later filing of a motion to quash to contest jurisdiction.  Parties shall not file or serve responsive pleadings, including answers to the complaint, motions to strike, demurrers, motions for change of venue and cross-complaints until a date is set at the First Case Management Conference for such filings and hearings.

This Order is issued to assist the Court and the parties in the management of this "Complex" case through the development of an orderly schedule for briefing and hearings.  This Order shall not preclude the parties from continuing to informally exchange documents that may assist in their initial evaluation of the issues presented in this Case.

Plaintiff shall serve a copy of this Order on all the parties in this matter forthwith.

SO ORDERED.

Date: _____  April 22, 2021

_____
Hon. **Sunil R. Kulkarni**
Judge of the Superior Court

If you, a party represented by you, or a witness to be called on behalf of that party need an accommodation under the American with Disabilities Act, please contact the Court Administrator's office at (408) 882-2700, or use the Court's TDD line, (408) 882-2690 or the Voice/TDD California Relay Service, (800) 735-2922.

-----
Updated on 3/11/21.

2