ALEXIS A. AMEZCUA (CA SBN 247507)
AAmezcua@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WILLIAM RUTTER, JACQUELINE TABAS, NATASHA GARAMANI, CONNIE TABAS, TRISTAN YOUNG, KASRA ELIASIEH, ROBERT BARKER, AND CINDY RUTTER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., and DOES 1-10,<br><br>Defendants. | Case No. 4:21-cv-04077-HSG<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: October 7, 2021<br>Time: 2:00 p.m.<br>Department: Courtroom 2 – 4th Floor<br>Judge: The Honorable Haywood S. Gilliam Jr.<br><br>Complaint Filed: April 21, 2021 |

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on October 7, 2021, at 2:00 p.m., or as soon thereafter as the motion may be heard in Courtroom 2 on the 4th Floor of the United States Courthouse, 1301 Clay Street, Oakland, California, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), defendant Apple Inc. ("Apple") will and hereby does move to dismiss all of the causes of action in plaintiffs William Rutter, Jacqueline Tabas, Natasha Garamani, Connie Tabas, Tristan Young, Kasra Eliasieh, Robert Barker, and Cindy Rutter's ("Plaintiffs") Complaint filed in California state court on April 21, 2021, and removed to this Court on May 28, 2021 (ECF No. 1-2) ("Complaint" or "Compl.").  This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Alexis A. Amezcua filed herewith, Apple's Request for Judicial Notice, and the pleadings and evidence on file in this matter, oral arguments of counsel, and such other materials and arguments as may be presented in connection with the hearing on the Motion.

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 2

        A.      Apple's iCloud Service Is Provided Free of Charge for Up to 5GB of
                Storage .................................................................................................... 3

        B.      Apple Communicates Each Aspect of iCloud to Users Before, During, and
                After Set-Up and During Use of the Service ........................................... 3

                1.      Communication As Free 5GB Storage Limit Approaches.......... 4

                2.      Managing Storage on iCloud ................................................... 4

        C.      The Named Plaintiffs Never Allege They Did Not Want, Need, or Use the
                Service They Paid For, or Received For Free .......................................... 6

III.    LEGAL STANDARDS........................................................................................ 6

        A.      Rule 12(b)(1) ......................................................................................... 6

        B.      Rule 12(b)(6) ......................................................................................... 7

IV.     ARGUMENT ...................................................................................................... 7

        A.      Each of Plaintiffs' Claims Fails Because Plaintiffs Have Not and Cannot
                Allege Standing...................................................................................... 7

                1.      Plaintiffs Lack Article III Standing to Pursue Any Claim ......... 7

                2.      Plaintiffs Also Lack Statutory Standing for Their Claims ........ 10

                        a.      There Is No Private Right of Action under the ARL,
                                Therefore Plaintiffs Lack Standing for Claims Premised on
                                the ARL........................................................................ 10

                        b.      Plaintiffs Lack Standing under the Additional Statutory
                                Standing Requirements of the UCL, FAL, and CLRA ........ 11

        B.      The Complaint Is Improperly Pled under Rule 8 ................................... 14

        C.      All Plaintiffs' Claims Fail to Satisfy Rule 9(b)'s Particularity Requirement ....... 14

        D.      Plaintiffs Have Not Stated a Claim for Breach of Contract and Their
                Contract-Based CLRA Claim Likewise Fails ........................................ 17

V.      CONCLUSION ................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*24 Hour Fitness, Inc. v. Super. Ct.*,
   6 Cal. App. 4th 1199 (1998) ...................................................................................18

*A&M Procedure Co. v. FMC Corp.*,
   135 Cal. App. 3d 473 (1982)..................................................................................18

*Appling v. State Farm Mut. Auto. Ins. Co.*,
   340 F.3d 769 (9th Cir. 2003)..................................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................7

*Bayol v. Zipcar, Inc.*,
   78 F.Supp.3d 1252 (N.D. Cal. 2015) .....................................................................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................7, 14

*Bly-Magee v. Cal.*,
   236 F.3d 1014 (9th Cir. 2001)................................................................................14

*Davidson v. Apple, Inc.*,
   No. 16-CV-04942-LHK, 2017 WL 976048 (N.D. Cal. Mar. 14, 2017) .................18

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018)..................................................................................14

*Doe v. SuccessfulMatch.com*,
   70 F. Supp. 3d 1066 (N.D. Cal. 2014) ..............................................................12, 16

*Durrell v. Sharp Healthcare*,
   183 Cal.App.4th 1350 (2010) .................................................................................16

*Friedman v. Mercedes Benz USA LLC*,
   No. CV 12-7204 GAF, 2013 WL 8336127 (C.D. Cal. June 12, 2013)...................16

*In re Google, Inc. Privacy Policy Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014) ......................................................................15

*Hall v. Time Inc.*,
   158 Cal. App. 4th 847 (2008) .................................................................................12

*Herrera v. Estee Lauder Cos., Inc.*,
    No. SACV 12-01169-CJC(ANx), 2012 WL 12507876 (C.D. Cal. Sep. 20,
    2012) ................................................................................................................11

*Kwan v. SanMedica Int'l*,
    854 F.3d 1088 (9th Cir. 2017)............................................................................7

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) ..........................................................................13, 16

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014).............................................................................6

*Lopes v. Reddit, Inc.*,
    No. 20-CV-08086-NC, 2021 WL 2416897 (N.D. Cal. June 14, 2021) ....................14

*Lopez v. Stages of Beauty, LLC*,
    307 F. Supp. 3d 1058 (S.D. Cal. 2018) ................................................................11

*Lopez v. YP Holdings, LLC*,
    No. CV188791-MWF (MAAx), 2019 WL 6354387 (C.D. Cal. July 9, 2019)...............13

*Lusson v. Apple, Inc.*,
    No. 16-CV-00705-VC, 2016 WL 10932723 (N.D. Cal. June 20, 2016) ..................15

*Marilao v. McDonald's Corp.*,
    632 F. Supp. 2d 1008 (S.D. Cal. 2009) ...............................................................12

*Marolda v. Symantec Corp.*,
    672 F. Supp. 2d 992 (N.D. Cal. 2009) ................................................................16

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011).............................................................................6

*Mayron v. Google, Inc.*
    No. 2015-1-CV-275940,) 2016 WL 6822258 (Cal. Super. Ct. Feb. 26, 2016) ..........10

*Mayron v. Google LLC*,
    54 Cal. App. 5th 566 (2020) ........................................................................10-12

*Melegrito v. CitiMortgage Inc.*,
    No. C 11-01765 LB, 2011 WL 2197534 (N.D. Cal. June 6, 2011) ........................17

*Meyer v. Sprint Spectrum L.P.*,
    45 Cal. 4th 634 (2009) ......................................................................................13

*Moon v. Cnty. of Orange*,
    No. SACV 19-258 JVS (KESx), 2020 WL 2332164 (C.D. Cal. Mar. 18, 2020) ..................14

*Papasan v. Dometic Corp.*,
    No. 16-CV-02117-HSG, 2017 WL 4865602 (N.D. Cal. Oct. 27, 2017) .............................8, 16

*Parducci v. Overland Sols.*,
    399 F.Supp.3d 969 (N.D. Cal. 2019) .............................................................15, 16

*Rahman v. Mott's LLP*,
    No. CV 13--3482, 2014 WL 5282106 (N.D. Cal. Oct. 14, 2014)............................................9

*Robinson v. OnStar, LLC*,
    No. 15-CV-1731 JLS (MSB), 2020 WL 364221 (S.D. Cal. Jan. 22, 2020) ............................10

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004)..........................................................................6

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .............................................................................7, 9

*TransUnion LLC v. Ramirez*,
    No. 20-297, 2021 WL 2599472, 141 S. Ct. 2190 (2021).....................................1, 8, 9

*Turnier v. Bed Bath & Beyond Inc.*,
    No. 3:20-cv-00288-L-MSB, 2021 WL 409720 (S.D. Cal. Feb. 5, 2021) ...............................11

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)..........................................................................15

*Williams v. Apple, Inc.*,
    449 F.Supp.3d 892 (N.D. Cal. 2020) ...................................................................16

*In re Wilshire Courtyard*,
    729 F.3d 1279 (9th Cir. 2013)..........................................................................6

*Wood v. Motorola Mobility, Inc.*,
    2012 WL 892166 (N.D. Cal. Mar. 14, 2012)............................................................13

**Statutes**

Bus. & Prof. Code § 17204 ......................................................................................12

Bus. & Prof. Code § 17535 ......................................................................................13

Bus. & Prof. Code § 17600 ......................................................................................10

Civ. Code § 1770(a) ...........................................................................................18

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Having inexplicably delayed filing the Complaint for more than two years after they raised these issues in a CLRA demand letter, Plaintiffs have now cobbled together nearly incomprehensible (and internally contradictory) factual and legal claims. Those claims must be dismissed in their entirety, as Plaintiffs lack Article III and statutory standing, fail to allege any injury attributable to Apple, and otherwise fail to allege facts sufficient to support any of their claims.

Apple's iCloud service provides users with storage for up to 5GB of data free of charge; the 5GB of storage never terminates. Should a user require more than 5GB of data, Apple presents various pricing plans for additional storage, and provides users numerous opportunities to learn how to manage their data to stay below 5GB or at the level they desire. None of the named Plaintiffs disputes that the 5GB of storage was free to them; two of the named Plaintiffs have never exceeded that amount, and all Plaintiffs continue to use iCloud to the present. Of the Plaintiffs who did exceed 5GB, none allege that they did not need or use the higher storage amount, that they were unable to downgrade to a lower amount, or that any alleged inability to manage their data is due to Apple's conduct. Indeed, they do not point to any legal basis for requiring Apple to provide further information about how to manage their personal data, let alone requiring Apple to enable them to keep the data they personally chose to create, download, and maintain within the 5GB of free storage. Nor do Plaintiffs identify any way in which Apple allegedly misrepresented the way iCloud works.

Instead, Plaintiffs vaguely claim that California's Automatic Renewal Law ("ARL") requires more from Apple. The ARL, however, contains no such obligation, does not even apply to the 5GB of storage as it is not subject to recurring charges, and provides no private right of action. Perhaps knowing that to be true, Plaintiffs attempt to combine a number of causes of action—the Unfair Competition Law ("UCL"), the False Advertising Law ("FAL"), the Consumers Legal Remedies Act ("CLRA"), breach of contract, and elder abuse. But as the Supreme Court recently held in *TransUnion LLC v. Ramirez*, No. 20-297, 2021 WL 2599472,

141 S. Ct. 2190 (2021), the alleged violation of a statute does not provide Article III standing unless the plaintiff has been *concretely harmed as a result of the violat*ion.  The same is true under the statutory standing requirements of each of the statutes on which Plaintiffs purport to rely.  Here, there can be no concrete (or any) injury to those still under 5GB (having paid nothing), or those over 5GB who never allege that they did not need or use the higher storage, and never allege injury as a result of any conduct by Apple.

All of the claims also fail to be pled appropriately under Rule 8—Plaintiffs nonsensically combine various causes of action, failing to provide adequate notice of exactly the statutes they rely on or the conduct complained of.  Further, Rule 9(b) applies to the entirety of the Complaint because all Plaintiffs' claims sound in fraud.  Rule 9(b) requires that Plaintiffs plead with specificity the alleged misrepresentations they were exposed to and relied on, but the Complaint is devoid of any such allegations.  Finally, the breach of contract claims fail for the additional reason that Plaintiffs do not allege any contract term that Apple has breached.

The Complaint should be dismissed in its entirety.

## II.  FACTUAL BACKGROUND

Each of Plaintiffs' claims are premised on the notion that Apple misrepresented iCloud's storage parameters and should have made managing one's personal data on iCloud easier. (Compl. ¶¶ 48-49, 60-62, 69, 76, 91, 134-36, 147-50, 159-61, 170-72, 181-83, 191-93.)  To allegedly support their claims, Plaintiffs reference, rely on, and quote the iCloud Terms and Conditions and various Apple communications and Apple Support webpages throughout the Complaint.[1]  Plaintiffs' claims fail as a matter of law because they lack standing, do not state a claim for breach of the parties' contract, and fail to meet the pleading requirements of Rule 8 and Rule 9(b), which is the basis of this Motion.  However, putting the factual allegations in context reveals that Plaintiffs' Complaint is in fact premised on a number of inaccuracies.

---

[1] Accordingly, Apple files herewith a Request for Judicial Notice regarding these documents.

### A. Apple's iCloud Service Is Provided Free of Charge for Up to 5GB of Storage

Apple's iCloud service offers users a variety of services, including storing "photos, files, notes, and more" across a user's Apple devices, so that such content "is safe, up to date, and available" wherever the user is. (Declaration of Alexis Amezcua (Amezcua Decl.) ¶ 2, Amezcua Decl. Ex. A, iCloud Terms and Conditions ("iCloud Ts & Cs").) At set-up of an Apple device, a user may opt into iCloud or choose not to enable an iCloud account. (*Id*., Introduction (referring to a user choosing not to enable iCloud).) A user may also opt into, disable, or manage their iCloud storage at any time through Settings on any device. (*Id*., Section VII.A.) When a user opts into iCloud for the first time, they are presented with the iCloud Terms and Conditions, which explain not only how iCloud is enabled and disabled, but also how to manage one's data and where to find more information about storage plans and pricing. (*Id.*, Introduction & Section A.) The iCloud Terms and Conditions specifically inform the user that "[y]ou are solely responsible for . . . all activities that occur on or throughout your [iCloud] account. . . [.]" (*Id*., Section IV.A.)

Each iCloud user is provided 5GB of iCloud storage—at no charge to the user, and which never goes away. (Compl. ¶¶ 7-8, 29; *see also* Amezcua Decl. ¶ 3, Amezcua Decl. Ex. B ("iCloud Information").) Depending on a user's individual needs, Apple offers three levels of capacity for purchase: 50GB at $0.99 per month; 200GB at $2.99 per month; and 2TB at $9.99 per month. (Compl. ¶ 7 (erroneously identifying pricing); *see also* Amezcua Decl. Ex. B, iCloud Information.)

### B. Apple Communicates Each Aspect of iCloud to Users Before, During, and After Set-Up and During Use of the Service

According to Plaintiffs, "Apple first notifies a consumer about the possible cost of iCloud when the consumer begins to approach the limit of the 5GB storage that has been provided for free." (Compl. at ¶ 32.) To the contrary, Apple communicates to users regarding opting into and disabling iCloud, payment structure, how to manage one's data, and where to direct questions

regarding iCloud during each stage of iCloud use.  (*See* Amezcua Decl. Ex. A., iCloud Ts & Cs; Amezcua Decl. ¶ 4, Amezcua Decl. Ex. C ("iCloud capacity email"); Amezcua Decl. ¶ 5, Amezcua Decl. Ex. D ("iCloud receipt").)

### 1. Communication As Free 5GB Storage Limit Approaches

As Plaintiffs concede, Apple provides email notifications as the user approaches the 5GB free storage limit, alerting the user at different points that their storage is almost full, providing the user's current usage amount, and detailing that the user can either (1) manage and reduce their data to stay within the free 5GB level, or (2) upgrade and purchase additional iCloud storage on a monthly basis.  (*See* Amezcua Decl. Ex. C, iCloud capacity email; Compl. ¶ 32.)  These email notifications also advise the user that, if he or she exceeds the storage plan, their devices will stop backing up to iCloud.  (*See* Amezcua Decl. Ex. C, iCloud capacity email; *see also* Amezcua Decl. Ex. A, iCloud Ts & Cs at I.C. ("Exceeding any applicable . . . storage capacity . . . may prevent you from backing up to iCloud, adding documents, or receiving new email sent to your iCloud email address.").)  In these emails, Apple provides the cost for the next level of additional iCloud storage, as well as a hyperlink to a user's account, an Apple Support page regarding iCloud, and the iCloud Terms and Conditions.  (*See* Ex. C, iCloud capacity email; Amezcua Decl. ¶ 5, Amezcua Decl. Ex. E ("iCloud Support: Manage Storage").)[2]

### 2. Managing Storage on iCloud

Users may upgrade or downgrade their storage on their device at any time.  (*See* Amezcua Decl. Ex. A, iCloud Ts & Cs, Section III.A; Amezcua Decl. Ex. B, iCloud Information.)  Indeed, according to Plaintiffs, as of 2018, only 20% of iCloud users upgraded from the free 5GB storage;

---

[2] The Complaint claims that the hyperlink to the Apple Support page directs a user to "an iTunes page that has nothing clearly to do with iCloud" and inexplicably repeatedly alleges that Apple provides "[n]othing about a bill."  (Compl. ¶¶ 36-38.)  Not so.  By clicking on the "Support" link included with an email notifying a user that the 5GB threshold approaches, the user is taken to a page entitled "iCloud Support," which discusses how to set up iCloud, how to retrieve a forgotten password, and much more regarding iCloud.  (*See* Amezcua Decl. Ex. D, iCloud receipt.)  The monthly receipt provided to users when they upgrade iCloud provides:  "If you have any questions about your bill, contact support," which takes a user to an Apple webpage entitled "Billing and Subscriptions."  (*See* Amezcua Decl. Ex. C, iCloud capacity email; Amezcua Decl. ¶ 7, Amezcua Decl. Ex. F ("Billing and Subscriptions").)

the other 80% thus remained at 5GB or below.  (Compl. ¶ 8.)  Contrary to Plaintiffs' contentions, Apple provides users with resources they can consult throughout the process of using iCloud and managing their data.  For example, Apple provides a support page where users can find step-by-step instructions for how to downgrade or cancel their iCloud subscription.  (*See* Amezcua Decl. ¶ 8, Amezcua Decl. Ex. G ("iCloud Support: Downgrade or Cancel").)  The iCloud Terms and Conditions also provide information on how to manage one's iCloud data, including how to downgrade.  (*See* Amezcua Decl. Ex. A, iCloud Ts & Cs, Section III.A.)  Apple's support page further details "what happens when you downgrade your [iCloud] storage plan."  (*See* Amezcua Decl. Ex. G, iCloud Support: Downgrade or Cancel.)  On the same support page, Apple provides a link to additional resources users can consult to learn how to back up their iCloud storage or how they can delete data to free up additional iCloud storage.  (*Id*.)  Should a user elect to manage their storage by purchasing additional iCloud storage, they can select the iCloud subscription plan best suited to their data needs.  (*See* Amezcua Decl. Ex. A, iCloud Ts & Cs, Section III.A.)  Upon upgrading, the user is provided with a receipt detailing their payment, providing that their iCloud subscription will automatically renew each month until the user either cancels or downgrades to the free 5GB level of iCloud storage, and providing a hyperlink to the Apple Support page regarding how to downgrade or cancel your iCloud storage plan.  (Compl. ¶ 34; *see also* Amezcua Decl. Ex. D, iCloud receipt.)  If a user elects to downgrade their storage at any point, Apple informs the user that iCloud will not sync or update their information if their storage exceeds their plan.  (*See* Amezcua Decl. Ex. G, iCloud Support: Downgrade or Cancel.)

Nowhere does Apple represent to users that it will take on the task of managing individual users' data to remain under 5GB.  The iCloud service is "designed and intended for personal use on an individual basis."  (*See* Amezcua Decl. Ex. A, iCloud Ts & Cs, Section IV.A.)  Only a given user knows how they want to use their iCloud storage.  (*See* Amezcua Decl. Ex. E, iCloud Support: Manage Storage (identifying various ways in which a user may use iCloud, including for photos, back-ups, videos, documents, etc.).)  Which photos, videos, documents, etc. a user chooses to keep is up to that user.

**C. The Named Plaintiffs Never Allege They Did Not Want, Need, or Use the Service They Paid For, or Received For Free**

Plaintiffs are eight Apple device users who each use various levels of Apple's iCloud storage service. (Compl. ¶¶ 14, 17-20.)  Two of the named plaintiffs (William Rutter and Robert Barker) admit that they have successfully managed their data and stayed within the 5GB of free storage. (*Id.* ¶14, 20.)  None of the named plaintiffs, including those who exceeded the 5GB of free storage, allege that they paid for a service they did not want or need.  Nor do they allege that they did not use the storage amount for which they paid.  The Complaint admits Apple provides information on its website about how to manage data (*see* Compl. ¶ 16); Plaintiffs do not point to any obligation requiring that Apple provide further information on this point, nor do they allege that Apple misrepresented the ability to manage data.[3]  All of the named plaintiffs continue to use iCloud storage to the present. (Compl. ¶¶ 16-20.)  None allege that they would have acted any differently or altered their data needs or preferences had Apple made different iCloud disclosures.

## III. LEGAL STANDARDS

### A. Rule 12(b)(1)

"[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  The plaintiff has the burden of proving subject matter jurisdiction. *See In re Wilshire Courtyard*, 729 F.3d 1279, 1284 (9th Cir. 2013) ("The burden of establishing subject matter jurisdiction rests on the party asserting that the court has jurisdiction.").  Rule 12(b)(1) jurisdictional attacks may be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, the challenger asserts that the allegations contained in a complaint are "insufficient on their face to invoke federal jurisdiction." *Id.* at 1039.  "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6) . . . [.]" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

---

[3] For example, Plaintiff Garamani admits that she (1) wanted iCloud storage at the 50GB level (so, not free); and (2) could not manage her account because she forgot her password. (Compl. ¶18.)

### B. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The Court does not credit allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).

## IV. ARGUMENT

### A. Each of Plaintiffs' Claims Fails Because Plaintiffs Have Not and Cannot Allege Standing

As a threshold matter, the Complaint is subject to dismissal because Plaintiffs have not and cannot allege standing. *First*, Plaintiffs lack Article III standing because they have not suffered an injury in fact. *Second*, Plaintiffs are barred from pursuing standalone ARL claims because the ARL does not create a private right of action. *Third*, Plaintiffs lack statutory standing to pursue their claims because they have not alleged an economic injury that is the result of Apple's alleged conduct.

#### 1. Plaintiffs Lack Article III Standing to Pursue Any Claim

To establish standing, Article III of the United States Constitution requires plaintiffs to show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent', not conjectural or hypothetical." *Id*. at 1548. A plaintiff may not allege only a "bare procedural violation" of a statute divorced from a concrete injury. *Id*. at 1549. In *TransUnion*

*LLC*, the Supreme Court recently reaffirmed this point: the alleged violation of a statute does not provide Article III standing unless there is concrete injury. 2021 WL 2599472 at *8 ("But under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court.") (emphasis in original).

Plaintiffs have not alleged a concrete injury. No Plaintiff alleges that he or she did not receive the free 5GB of iCloud storage, that they overpaid for the free 5GB of iCloud storage, that they did not want or use the 5GB of iCloud storage, or that they preferred an alternative. *See, e.g., Papasan v. Dometic Corp.*, No. 16-CV-02117-HSG, 2017 WL 4865602, at *5 (N.D. Cal. Oct. 27, 2017) (Gilliam, J.) (finding named California plaintiff lacked standing where her allegations were "vague and speculative," she "allege[d] in a conclusory manner that she 'unknowingly overpaid' for her refrigerator," and she confirmed that she "at all times used [it] for the purpose for which it was intended"). Instead, Plaintiffs repeatedly concede that the 5GB of iCloud storage was *free* and that they continue to use iCloud storage at various levels. (Compl.¶ 10 (referring to "the free storage" and "what has been stored for free"); ¶ 29 (alleging "iCloud is free"); ¶ 32 (referring to the 5GB of iCloud as "storage that has been provided for free"); ¶¶ 16-20 (describing each Plaintiffs' use of iCloud storage).) There is no injury here.

Plaintiffs attempt to allege that they suffered an injury because the 5GB of free storage is a "free trial" for which Apple failed to make the requisite disclosures under the ARL. (Compl. ¶¶ 45, 85.) But this too is belied by Plaintiffs own allegations. As Plaintiffs concede, the 5GB of iCloud storage "never goes away," "[c]onsumers may stay at the 5GB level," and it is not "presented as 'the *first* 5GB of storage.'" (Compl. ¶¶ 115, 133, 147, 159, 170, 181 (emphasis added).) In other words, consumers do not lose the 5GB of storage, are never required to pay for it, and are never required by Apple to upgrade to paid storage. (*See* Compl. ¶¶ 115, 133, 147, 159, 170, 181*; see generally* Amezcua Decl. Ex. A, iCloud Ts & Cs.) There is no "free trial" given these facts. Indeed, Plaintiff William Rutter and Plaintiff Barker admit that they, along with 80% of iCloud users, have managed their data and stayed within the free 5GB of iCloud storage. (Compl. ¶¶ 8, 16, 20.) Therefore, they have never paid for storage and cannot have

1  experienced economic harm or injury of any kind. (Compl. ¶¶ 8, 16, 20.) Plaintiffs have not

2  alleged an injury in fact under this theory either.

3      Plaintiffs who elected to upgrade from the free 5GB of iCloud storage likewise suffered

4  no injury. These Plaintiffs do not claim that Apple's alleged failure to make certain disclosures

5  caused them harm or affected them in any way at all. They do not allege that they would not have

6  upgraded if Apple made the disclosures they allege were not made; that they were billed for a

7  service they did not want or use; that they attempted to downgrade their storage and were unable

8  to as a result of any conduct by Apple; or that they were unaware that the upgraded storage plan

9  renewed automatically unless cancelled.[4] (Compl. ¶¶ 16-20.) Rather, Plaintiffs indicate that they

10  continued using and *still* use the iCloud storage service. (Compl. ¶ 14 (alleging they have sought

11  to "manage the [iCloud] service so as to use the storage level they need").)[5]

12      The heart of Plaintiffs' claims is that they were injured because Apple did not manage or

13  help them manage their own data to stay within 5GB of iCloud storage. Plaintiffs, however, can

14  point to no obligation Apple had to undertake such efforts, nor allege that such management of

15  each individual's personal photos, email, and other data by Apple would be feasible.[6] The lack of

16  such allegations is fatal as both *Spokeo* and *TransUnion* make clear that Plaintiffs are required to

17  allege an injury that *results* from the alleged "invasion of a legally protected interest." *Spokeo,*

18  *Inc.*, 136 S. Ct. at 1548; *TransUnion LLC*, 2021 WL 2599472, at *8 (noting that "an injury in law

19  is not an injury in fact," and a plaintiff must be "*concretely harmed* by a defendant's statutory

20

21      [4] Plaintiff Garamani alleges that she tried "to manage her account at the 50GB level but
could not remember her password, [sic] required to lower her storage." (Compl. ¶ 18.) She does
22  not allege that she made any effort to obtain a new password, nor that she was unable to
downgrade due to any conduct by Apple. (*Id.*)

23

24      [5] Plaintiffs likewise fail to satisfy the requirements for Article III standing to seek
injunctive relief. "To have standing to obtain injunctive relief, a plaintiff must allege that a 'real
25  or immediate threat' exists that he will be wronged again." *Rahman v. Mott's LLP*, No. CV 13--
3482 SI, 2014 WL 5282106, at *5 (N.D. Cal. Oct. 14, 2014) (citing *City of Los Angeles v. Lyons*,
461 U.S. 95, 111 (1983)). As described above, Plaintiffs have not pled any allegations sufficient
26  to show that they have been wronged, let alone that they face an immediate threat of repeat injury.

27      [6] Apple does make information available to users about how they can manage their data
and steps to take if they have questions. (*See supra* Section II.B.2)

28

violation" (emphasis in original)).

Plaintiffs' alleged inability to manage their storage to stay within the free 5GB does not result from any alleged statutory violation or alleged misrepresentation or omission by Apple. In fact, to the extent Plaintiffs premise their theory on purported violations of the ARL, the ARL does not apply to the 5GB of free storage. By the express terms of the statute itself, the ARL applies only to "the practice of ongoing *charging* of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." *See* Cal. Bus. & Prof. Code § 17600 (emphasis added). It is undisputed that there is no charge, let alone a recurring charge, for the 5GB of iCloud storage. As for the upgraded plans, Plaintiffs cannot show injury, as discussed above. And, to the extent Plaintiffs purport to rely on the ARL's Section 17603 "unconditional gift" provision, that provision applies only to goods, not services like iCloud. *See e.g., Robinson v. OnStar, LLC*, No. 15-CV-1731 JLS (MSB), 2020 WL 364221, at *23 (S.D. Cal. Jan. 22, 2020) (holding that "Section 17603 of the ARL is of no help to Plaintiff because that provision applies to 'goods' and not 'services'").[7] In short, Plaintiffs have not alleged an injury as required for Article III standing and the Court should dismiss the Complaint in its entirety.

## 2. Plaintiffs Also Lack Statutory Standing for Their Claims

### a. There Is No Private Right of Action under the ARL, Therefore Plaintiffs Lack Standing for Claims Premised on the ARL

Plaintiffs' Complaint is deliberately ambiguous as to whether Plaintiffs' first five causes of action are asserted under the ARL or the UCL, perhaps in an ill-founded attempt to avoid the standing requirements of the UCL. (*See, e.g.,* Compl. at 10 ("First Cause of Action: Cal. Bus. & Prof. Code secs. 17600 (continuous service offer) and 17200 (unfair competition)").) To the

---

[7] The iCloud storage provided here is clearly a service, as Plaintiffs admit (Compl. ¶ 6 ("iCloud is a computer data storage *service*"); ¶ 7 ("Apple provides iCloud *service*"); ¶ 8 ("Apple receives for its iCloud *service*") (emphasis added); it does not involve tangible, physical materials of any kind, downloaded or otherwise. *See also Mayron v. Google, Inc.* No. 2015-1-CV-275940, 2016 WL 6822258 (Cal. Super. Ct. Feb. 26, 2016) (finding that cloud-based storage "is not a tangible good," but "is intangible and is a service" *affirmed on other grounds by Mayron v. Google LLC*, 54 Cal. App. 5th 566, 572, 269 Cal. Rptr. 3d 86, 89 (2020)).

extent Causes of Action 1 through 5 are premised on the ARL, the law is clear that there is no private right of action to assert claims based on alleged violations of the ARL and that standalone ARL claims are not permitted.[8] The California Court of Appeal has squarely held that "there is no such [private] right [of action] under the automatic renewal law." *See Mayron v. Google LLC*, 54 Cal. App. 5th 566, 573-74 (2020) (affirming dismissal of plaintiff's ARL claim). Federal courts have also concluded that there is no private right of action under the ARL. *Turnier v. Bed Bath & Beyond Inc.*, No. 3:20-cv-00288-L-MSB, 2021 WL 409720 at *1 (S.D. Cal. Feb. 5, 2021) (following *Mayron* and dismissing plaintiff's independent ARL claim); *Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d 1058, 1068-69 (S.D. Cal. 2018) (dismissing claims plaintiff brought directly under the ARL). Thus, Plaintiffs lack standing to bring standalone ARL claims.

### b. Plaintiffs Lack Standing under the Additional Statutory Standing Requirements of the UCL, FAL, and CLRA

Plaintiffs further fail to establish statutory standing for their claims under the UCL, FAL and CLRA.[9] *Herrera v. Estee Lauder Cos., Inc.*, No. SACV 12-01169-CJC(ANx), 2012 WL 12507876 at *2 (C.D. Cal. Sep. 20, 2012) (noting that "[t]he UCL, FAL, and CLRA have independent requirements for standing," all of which require allegations that plaintiff's injury was caused by the alleged statutory violation). As set forth below, Plaintiffs do not and cannot allege injury "caused by" the alleged violations of the ARL, and accordingly they cannot demonstrate injury or standing for the UCL claims premised on the ARL (Causes of Action 1-5). Plaintiffs similarly fail to meet the statutory standing requirements of the UCL, FAL, or CLRA for their non-ARL based claims (Causes of Action 8-13), as Plaintiffs also fail to allege facts demonstrating injury as the result of any alleged violation.

California's UCL has an express standing requirement permitting an action only by a

---

[8] To the extent Causes of Action 1 through 5 are premised on the UCL, they lack standing for the reasons stated in Section IV.A.1 and IV.A.2.a.

[9] As discussed below, all of Plaintiffs' thirteen claims appear to be premised on the UCL, FAL, or CLRA, despite also referencing other statutes. (*See e.g.*, Compl. at 21 ("Seventh Cause of Action: Breach of contract and Cal. Bus. & Prof. Code section 17200 (unfair competition)").)

person who "has suffered injury in fact and has lost money or property *as a result of* the unfair competition." *See* Cal. Bus. & Prof. Code § 17204 (emphasis added). "It is not enough that a plaintiff lost money; to have standing, there must be a causal link between the unlawful practice and the loss." *Mayron*, 54 Cal. App. 5th at 574; *see also Hall v. Time Inc*., 158 Cal. App. 4th 847, 857 (2008), *as modified* (Jan. 28, 2008) (affirming judgment on the pleadings where plaintiff failed to allege causation and therefore lacked UCL standing). Plaintiffs do not meet this standard.

In *Mayron*, the California Court of Appeal specifically addressed what a plaintiff must plead to establish UCL standing in a case based on alleged ARL violations and alleged facts similar to those here. *Mayron* held that the plaintiff must allege that he or she "ordered increased [cloud-based] storage but would not have done so had the disclosures been provided, or that he [or she] would have cancelled the additional storage had it been easier to do so." *Mayron*, 54 Cal. App. 5th at 574. The Complaint here is completely devoid of any such allegations, or any other injury allegedly resulting from the purported ARL violations. (*See generally* Compl.)

*First*, Plaintiffs cannot allege that they suffered an economic injury based on the free 5GB of iCloud storage because, as they concede, it was provided "at no cost." (Compl. ¶ 7.) *See also Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1008, 1012-13 (S.D. Cal. 2009) (plaintiff lacked standing under the UCL to bring a claim arising out of a gift card he received for free). *Second*, Plaintiffs who upgraded their iCloud storage not only received and used the storage they paid for, but they do not allege that they did not need or want the storage. (*See generally* Compl.) Nor do they allege that they attempted to downgrade their storage. (*See* Compl. ¶¶ 16-20.) Accordingly, they cannot establish a causal connection between their payments and any unlawful, unfair, or deceptive business practice by Apple. *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1082 (N.D. Cal. 2014) (acknowledging that plaintiffs cannot assert claims under either the UCL or the CLRA where they "purchased or continued to purchase Defendant's services after discovering Defendant's allegedly fraudulent conduct . . ."). Rather, the Complaint makes clear that all Plaintiffs continue to use their various levels of iCloud storage, and there are no allegations that Plaintiffs would have done otherwise had Apple made different disclosures. (Compl. ¶¶ 16-20);

*see also Lopez v. YP Holdings, LLC*, No. CV188791-MWF (MAAx), 2019 WL 6354387, at *4 (C.D. Cal. July 9, 2019) ("A plaintiff fails to satisfy the causation prong of the statute if he or she would have suffered 'the same harm whether or not a defendant complied with the law.'") (citation omitted). Accordingly, Plaintiffs lack standing to assert their ARL-based UCL claims.

Nor can Plaintiffs establish standing for their UCL, FAL, and CRLA claims to the extent they are not based on the ARL. (*See* Causes of Action 6-13.) All these statutes require lost money or property resulting from the alleged violation. *See e.g.*, Cal. Bus. & Prof. Code § 17535 (FAL); *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 325 (2011); *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 646 (2009) ("[I]n order to bring a CLRA claim, plaintiff must allege loss of money or property *resulting from* the alleged violation."); *Wood v. Motorola Mobility, Inc.*, 2012 WL 892166 at *7 (N.D. Cal. Mar. 14, 2012) (holding plaintiffs lacked standing as they "[did] not allege that they were injured 'as a result of' the . . . violation of the FAL") (citation omitted).

Here, all of Plaintiffs' non-ARL based UCL, FAL and CLRA claims fail to allege injury—loss of money or property—as a result of those alleged violations. Plaintiffs allege that managing data, downgrading to stay within the free 5GB of storage, and stopping the use of iCloud is "not easy." (Compl. ¶¶ 132-35, 146-49, 158-61, 169-72, 180-83; 191.) These allegations, however, fail to identify any harm as a result of allegedly unlawful conduct by Apple, nor do Plaintiffs point to any obligation for Apple to have done more in this regard. No plaintiff alleges that he or she did not receive the 5GB of free iCloud storage or the upgraded storage they paid for; that they did not want the upgraded storage they paid for; or that they were unable to downgrade their storage due to Apple's conduct. (*See generally* Compl.) Indeed, William Rutter admits that he has "figured out how to manage his computer data so that he can keep within the 5GB limit" (Compl. ¶ 16); none of the Plaintiffs claim they tried to downgrade and were unable to do so, or that they consulted Apple's myriad Support pages on these topics and were still unable to downgrade. Further, that Plaintiffs may have been unable to manage their own data does not state a harm that flows from any alleged violation by Apple. Apple had no obligation to manage Plaintiffs' storage for them and could not have done so given that data management is dependent on an individual user's choices. To assist users with making their data management

choices, Apple made information available on Apple Support regarding managing storage. (*See supra* Section II.B.2.)

For all of the above reasons, Plaintiffs fail to allege any injury caused by Apple and thus all of their claims—the entirety of the Complaint—must be dismissed for lack of standing.

### B. The Complaint Is Improperly Pled under Rule 8

Plaintiffs' Complaint is subject to dismissal for an additional reason—it fails to meet the minimum pleading requirements of Rule 8. Rule 8 requires that a plaintiff provide a "short and plain statement" of the facts in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 554–55 (quoting Fed. R. Civ. P. 8(a)(2)). Here, eleven of Plaintiffs' causes of action combine two claims, as Plaintiffs tack on a UCL claim to each cause of action making it unclear what legal theory they aim to pursue, and in some instances makes the Complaint nonsensical and incomprehensible. Such ambiguous pleading does not provide Apple with fair notice of the specific claims asserted against it, which is an additional ground for dismissal. *See, e.g., Lopes v. Reddit, Inc.,* No. 20-CV-08086-NC, 2021 WL 2416897, at *1 (N.D. Cal. June 14, 2021) (dismissing complaint where it did not comply with Rule 8 and Rule 10, in part because "certain paragraphs cover[ed] multiple claims"); *Moon v. Cnty. of Orange*, No. SACV 19-258 JVS (KESx), 2020 WL 2332164 at * 3 (C.D. Cal. Mar. 18, 2020) (dismissing plaintiffs' "convoluted and incomprehensible" complaint for failure to comply with FRCP 8).

### C. All Plaintiffs' Claims Fail to Satisfy Rule 9(b)'s Particularity Requirement

Claims sounding in fraud must additionally comply with the heightened pleading requirements of Rule 9(b), which requires that a complaint "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The pleader must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)); *see also Bly-Magee v. Cal.*, 236

F.3d 1014, 1019 (9th Cir. 2001) (citation omitted) (Rule 9(b) requires allegations "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged").  "When an entire complaint is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

All Plaintiffs' claims rest on the same alleged "unified course of fraudulent conduct"—that Apple allegedly misrepresented iCloud's storage limitations and omitted certain disclosures regarding its fee structure and the process for users to downgrade and/or cancel their iCloud storage subscription.[10]  (Compl. ¶¶ 48-49, 60-62, 69, 76, 91, 134-36, 147-50, 159-61, 170-72, 181-83, 191-93); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, at 1125 (2009). (finding claim of "nondisclosure is a claim for misrepresentation in a cause of action for fraud and must be plead with particularity under Rule 9(b)").  Because these claims all sound in fraud, Ninth Circuit law requires that they meet the heightened pleading standard of Rule 9(b) regardless of the underlying state law.  *See id.* at 1125 (applying Rule 9(b) to CLRA and UCL claims where plaintiff alleged and relied on a "unified course of fraudulent conduct"); *see also In re Google, Inc. Priv. Policy Litig.*, 58 F. Supp. 3d 968, 984 (N.D. Cal. 2014) ("If the unlawful conduct is part of a uniform course of fraudulent conduct, it must meet Rule 9(b)'s heightened pleading standards."); *Lusson v. Apple, Inc.*, No. 16-CV-00705-VC, 2016 WL 10932723, at *2-3 (N.D. Cal. June 20, 2016) (finding that plaintiff's UCL and FAL claims premised on misrepresentations and omissions "sound in fraud" and must be pled with specificity); *Parducci v. Overland Sols.*, 399 F.Supp.3d 969, 977 (N.D. Cal. 2019) (applying Rule 9(b) to elder abuse claim because claim "sounds in fraud").

---

[10] From what may be gleaned from the Complaint, it asserts five fraud-based "unlawful" claims under the UCL, framed as ARL claims based on alleged omissions (COA 1 through 5), as well as an "unfair" UCL claim (COA 10), a "fraud" UCL claim (COA 11), CLRA claims (COA 8 and 13), a FAL claim (COA 9), and an Elder Abuse claim (COA 12) based on alleged misrepresentations or omissions.  The Complaint also asserts two breach of contract claims labeled as "Breach of contract and Cal. Bus. & Prof. Code section 17200 (unfair competition)." To the extent these claims are premised on the UCL, they likewise must meet Rule 9(b)'s heightened pleading requirement for the reasons cited above.

Here, Plaintiffs' claims require, at a minimum, a showing that each Plaintiff (i) was exposed to an alleged misrepresentation or omission, and (ii) relied on that misrepresentation or omission.[11]  Plaintiffs' threadbare allegations, however, fall far short of satisfying Rule 9(b).  Not a single Plaintiff alleges that he or she was exposed to any specific iCloud marketing materials, advertisements or other statements by Apple, let alone "the who, what, when, where, and how" of the misconduct alleged.  *Kearns*, 567 F.3d at 1124.  Of the Plaintiffs who chose to upgrade to additional iCloud storage, *none* allege that they did so after being exposed to any specific statements by Apple.  (Compl. ¶¶ 17-20.)  Having failed to plead they were even exposed to an alleged misrepresentation or omission, Plaintiffs likewise fail to allege they relied on any such statements or omissions or that they would have acted differently absent the alleged misrepresentation or omission, let alone do so with the requisite specificity.[12]  *See Durrell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1363 (2010) ("Where a UCL claim sounds in fraud, regardless of the specific UCL prong invoked by the plaintiff, the 'as a result of' language imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action.");

*see also Friedman v. Mercedes Benz USA LLC*, No. CV 12-7204 GAF (CWx), 2013 WL

_____

[11] *See, e.g.*, *Doe v. SuccessfulMatch.com*, 70 F.Supp.3d at 1075 ("[T]o adequately plead a CLRA claim, a plaintiff must allege that she relied on the defendant's alleged misrepresentation and that she suffered economic injury as a result."); *Williams v. Apple, Inc.*, 449 F.Supp.3d 892, 912 (N.D. Cal. 2020) ("Plaintiffs alleging claims under the FAL and UCL are required to plead and prove actual reliance on the misrepresentations or omissions at issue.") (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 326-27(2011)); *Parducci*, 399 F.Supp.3d at 977 (dismissing elder abuse claim, among other claims, that "sounds in fraud" where the claim was "deficient under Rule 9(b)," as plaintiff did not "state with particularity the circumstances constituting fraud or mistake" and "the who, what, when, where, and how of the misconduct charged" (citations omitted).)

[12] To the extent Plaintiffs argue that their claims are based on an alleged omission, Rule 9(b) still requires pleading with specificity, which Plaintiffs have not done here.  *See Papasan* 2017 WL 4865602, at *5 (stating that for claims sounding or grounded in fraud, the "claim must state 'the who, what, when, where, and how' of the alleged conduct, and 'set forth an explanation as to why [a] statement or omission complained of was false and misleading'" (citations omitted)); *see also Marolda v. Symantec Corp.,* 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009) ("It became apparent at oral argument that plaintiff labors under the misapprehension that because the alleged misrepresentation was an omission or nondisclosure, rather than an outright false representation, it need not be pleaded with specificity required for elements of fraud.  The Ninth Circuit has recently clarified that claims of nondisclosure and omission, as varieties of misrepresentations, are subject to the pleading standards of Rule 9(b)." (citing *Kearns*, 567 F.3d at 1126–27)).

8336127 at *6 (C.D. Cal. June 12, 2013) (finding that plaintiff could not plead actual reliance on marketing and advertising materials he did not see).

Accordingly, Plaintiffs' allegations are insufficient to state a claim under Rule 9(b). The Court should dismiss all Plaintiffs' claims for this additional reason.

### D. Plaintiffs Have Not Stated a Claim for Breach of Contract and Their Contract-Based CLRA Claim Likewise Fails

Plaintiffs' breach of contract claims (Causes of Action 6 and 7) fail for the additional reason that Plaintiffs have not identified any provision in the iCloud Terms and Conditions that Apple allegedly breached. "To state a claim for breach of contract, a plaintiff must show the following: (1) that a contract existed; (2) the plaintiff performed his duties or was excused from performing his duties under the contract; (3) the defendant breached the contract; and (4) the plaintiff suffered damages as a result of that breach." *Melegrito v. CitiMortgage Inc.*, No. C 11-01765 LB, 2011 WL 2197534, at *12 (N.D. Cal. June 6, 2011). "Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity." *Id.* (citing *Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal. App. 4th 1, 5, 58 Cal. Rptr. 3d 54 (2007)).

Here, at most, Plaintiffs allege that Apple breached its agreement with them by failing to explain how to manage their data and how to retain the 5GB of free iCloud storage. (Compl. ¶¶ 102-105; 122-25.) Plaintiffs, however, do not—and cannot—point to anything in the iCloud Terms and Conditions that creates such obligations. Moreover, Apple provided this exact information in the Terms and Conditions and on its Apple Support website. (*See supra* Section II.B.2.) To the extent Plaintiffs attempt to allege a breach of the implied covenant of good faith and fair dealing, it is well settled that the implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 779 (9th Cir. 2003). Plaintiffs' breach of contract claims fail to state a claim for these reasons, in addition to those above.

Additionally, Plaintiffs appear to assert a contract-based CLRA claim in Cause of Action 13, which also fails. According to Plaintiffs, Apple imposed on them certain unspecified unconscionable contract terms. (Compl.¶¶ 190-192.) Not only have Plaintiffs failed to identify specific terms, but a contract term is only unconscionable if it is both procedurally and substantively unconscionable—a showing Plaintiffs do not even attempt to meet. *A&M Procedure Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 485 (1982). In any event, procedural unconscionability focuses on "surprise" resulting from the "significant imbalance" in the contracting parties' bargaining power and requires a showing that there were "no reasonable market alternatives." *Bayol v. Zipcar, Inc.*, 78 F.Supp.3d 1252, 1261 (N.D. Cal. 2015). A contract term is substantively unconscionable only if it is "so one-sided as to shock the conscience, or . . . impose harsh oppressive terms." *24 Hour Fitness, Inc. v. Super. Ct.*, 6 Cal. App. 4th 1199, 1213 (1998).

Here, Plaintiffs fail to specify which specific iCloud terms they allege to be unconscionable, let alone how the iCloud terms are "so one-sided as to shock the conscience." *Id.* Plaintiffs also fail to allege that they lacked reasonable market alternatives to iCloud. *See, e.g., Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2017 WL 976048, at *12 (N.D. Cal. Mar. 14, 2017) (finding Apple's 1-year Limited Warranty was not unconscionable where, *inter alia*, there was no oppression as plaintiffs did "not allege that they lacked other options for purchasing [smartphones] or for obtaining additional warranty protections from Apple itself" and did not allege they were surprised by the terms). Plaintiffs' CLRA claim also fails for two additional reasons: (1) Plaintiffs lack any injury and therefore do not have standing as discussed above in Section IV, and (2) the 5GB of iCloud storage is free and therefore does not meet the criteria for a CLRA claim. *See* Cal. Civ. Code § 1770(a) (CLRA applies only to a "transaction: resulting in the *sale* of goods or services") (emphasis added). This claim, like all Plaintiffs' claims, is subject to dismissal.

## V. CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety.

Dated: July 14, 2021

ALEXIS A. AMEZCUA
MORRISON & FOERSTER LLP


By:    /s/ Alexis A. Amezcua
       ALEXIS A. AMEZCUA

       Attorneys for Defendant
       APPLE INC.