DAVID M. ROSENBERG-WOHL (Cal. Bar No. 132924)
HERSHENSON ROSENBERG-WOHL,
A PROFESSIONAL CORPORATION
3080 Washington St.
San Francisco, CA 94115
(415) 317-7756
david@hrw-law.com

PATRICK C. COOPER (Cal Bar No.142349)
WARD & COOPER, LLC
2100 Southbridge Parkway, Suite 645
Birmingham, AL 35209
(205) 871-5404
patrickcharles003@yahoo.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| WILLIAM RUTTER, et al., | Case No.: 4:21-cv-04077-HSG |
| Plaintiffs, | |
| vs. | **AM. COMPLAINT [CLASS ACTION]** |
| APPLE INC., et al., | |
| Defendants. | |

Plaintiffs, William Rutter, Jacqueline Tabas, Natasha Garamani, Connie Tabas, Tristan Young, Kasra Eliasieh, Robert Barker, and Cindy Rutter ("Plaintiffs"), by and through the undersigned counsel, bring this Complaint on behalf of themselves and all other consumers similarly situated throughout th e United States (as described in the Class Action Allegations below) against Defendant, Apple Inc., and Does 1-10 ("Defendants") for damages, restitution, declaratory and injunctive relief, along with attorneys' fees.

Plaintiffs are ignorant of the true names and capacities of defendants sued herein as Does 1-10, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will

amend this complaint to allege the true names and capacities of these fictitiously named defendants when that information is ascertained. Plaintiffs are informed and believe and thereon allege that each of these fictitiously names defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiffs' injuries as herein alleged were directly and legally caused by the aforementioned defendants. Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, each of these defendants was the agent and employee of each of the remaining defendant and, in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment.

Plaintiffs allege as follows:

### Apple and Its iCloud Service

1.  Defendant Apple Inc. ("Apple") is a California corporation headquartered in Cupertino, in Silicon Valley.

2.  Formerly known as Apple Computer Company (then Apple Computer, Inc.), Apple developed a strong market presence through its consumer-friendly computers such as the iMac. Recently, Apple dropped "Computer" from its name and broadened its reach into developing cellular telephones and offering computer-based services (for example, Apple Pay, Apple Music, iTunes, App Store, iCloud).

3.  At present, Apple's services business is its second-largest segment, following the iPhone. And that services segment is huge.

4.  Apple's revenue in 2020 was approximately $285 billion. As of the first quarter of this year, 2021, Apple's services business generated over $15.76 billion in revenue.

5.  As of 2018, iCloud was responsible for 15% of Apple's service revenue.

AM. COMPLAINT [CLASS ACTION] - 2

6.      iCloud is a computer data storage service through which Apple customers are able to store their data (both that generated on Apple products and non-Apple products) remotely, i.e., "in the cloud," as a supplement or alternative to storing data on personal computer devices.

7.      Apple provides iCloud service at differing levels of capacity with increasingly stepped-up pricing. In the US market, there are 5GB of storage provided at no cost. The three levels of capacity and their respective pricing, per month, are 50GB (at $0.99/mo.), 200GB (at $1.99/mo.) and 2TB (at $9.99/mo.).

8.      As of 2018, there were 850 million iCloud users, 170 million of whom were paying customers (20%). The average revenue per user (ARPU) is $2-3/month. For the average consumer, the cost is about $30/yr. Multiplied by 170 million users, however, the amount Apple receives for its iCloud service, annually, is $5.1 billion. The number continues to grow.

9.      And at the root of that growing $5.1 billion annual revenue is deception. What this purportedly consumer-friendly company has done is sell its computer devices with the iCloud service built in and activated at the same time as the consumer signs in with an Apple ID. Apple products are not advertised as containing the iCloud service, and to the extent there is any meaningful disclosure about iCloud, Apple mentions the service as a feature in that 5GB of storage is provided free.

10.     What Apple does not mention, most crucially, is that the consumer will quickly use up the free storage and will shortly need to pay a monthly fee to retain what has been stored for free. That is the plan: Apple has chosen to tell consumers about their iCloud storage only when its they are approaching its limit, and by then consumers are dependent,

having stored months and months of photographs, documents, emails and texts without a second thought. That combination of ignorant increasing dependence, anxiety and small monthly payments to keep the service is as intentional as it is effective. Consumers pay.

11.     But we no longer live in Roman society where the phrase *caveat emptor* ("let the buyer beware") is on the pavement in front of stores where sharp-eyed sellers hawk their wares. We live in a society which protects consumers from corporate over-reaching and requires corporations such as Apple to be sure that when they offer products and services to the public, they do so in a way that permits informed choice.

12.     In its rush to develop its service business, Apple has not just ignored consumer choice – it has played its consumers for suckers, abusing their confidence in the company's consumer-friendly product line to lure them into paying forever for a data storage scheme they do not understand and do not need.

13.     Apple's iCloud billion-dollar revenue stream is entirely ill-gotten gain: it is the result of unfair business practices and breach of its own agreement with its consumers. Apple 's practices should be declared in violation of law, Apple should be enjoined from these practices, and Apple should be compelled to return this money to its consumers. All of it.

**Plaintiffs**

14.     Plaintiffs here are US residents, consumers who have purchased Apple computer devices on which iCloud was installed, don't remember ever signing up for iCloud, encountered it first when their data accumulation pushed against the 5GB cap for free storage, and have struggled for months with how to manage the service so as to use the storage level they need – and none have managed to do it as they believe Apple represented they could.

AM. COMPLAINT [CLASS ACTION] - 4

15.   These plaintiffs span the range of computer use sophistication for the sort of reasonable consumer using Apple's iCloud service.

16.   William Rutter, presently a Pennsylvania resident but formerly a California resident, is a sophisticated consumer who has figured out how to manage his computer data so that he can keep within the 5GB limit. Even so, he has had to dig deep into Apple's website to figure out how to do this; remaining within the 5GB is a puzzle to solve an exciting challenge. Nonetheless, he considers Apple's representations and omissions regarding iCloud to be deceptive and unfair.

17.   By contrast, Jacqueline Tabas, a California resident, has not been able to figure out how to manage her data at all and simply pays as needed – she figures she's just stuck in Apple's net and having begun to use iCloud, forever stuck with the system and its increasing price.

18.   Some have tried to manage their storage but have been stymied. Natasha Garamani, a Colorado resident, currently pays for the 200GB, tried to manage her account at the 50GB level but could not remember her password, required to try to lower her storage level, and ultimately gave up.

19.   Some have tried to remove data. Connie Tabas, a California resident over the age of 65, currently pays for the 200GB level. At each previous level, she has tried to manage her account, achieved a modicum of success, only to lose that in short order and need to purchase the successive level. Tristan Young, currently an Arizona resident but formerly a Georgia and Colorado resident, could not figure out how to stay within the 50GB level and having had previous trouble with the 5GB level, simply chose to pay for the 2TB level to minimize the risk of having the problem again. Kasra Eliasieh, a California

resident, lost his photos when he ran out of storage when he exceeded the 50GB level. Having been previously unable to manage his data so as to stay within the 5GB level, he gave up and paid more.

20.   Some have sought additional help, but to no avail. Robert Barker, a California resident, has tried to remove data from his phone and even spoken with Apple support about the matter but regularly buts up against the 5GB limit and expects simply to have to bite the bullet and pay for the next level. Cindy Rutter, currently a resident both of Wyoming and California over the age of 65, could not figure out how to manage her account and even sought out help from Apple to manage her account but could not understand the steps sufficiently to manage the data. She felt compelled to accept the 2TB level.

21.   Each of these plaintiffs have acquired the iCloud service in accord with the factual allegations below in paragraphs 24-42. None can manage their iCloud service in the way they would like and in the way they believe they have been assured they can by Apple. None would have chosen iCloud if they had known it would be so unmanageable and expensive as it has turned out for each of them; each would have looked for a different product or service. Apple's representations and its omissions, in light of what it did represent, were substantial factors in plaintiffs' acquisition of the iCloud service and either payment for it or continual risk of payment for it. More, had iCloud been accurately advertised, it would have been presented as a standalone option at a discrete price and not built into the price of the computer purchased by plaintiffs. The result of honest advertising – both through explicit representations of what iCloud was and how it would work, and through omissions of what iCloud was and how it would work in light of what was in fact represented -- and the consequent likely opting out by consumers

such as plaintiffs from the iCloud service would have been a lower cost of the computer

product hosting the iCloud service that each of the plaintiffs purchased.

**Superior Court, Santa Clara County, Is Proper Venue for All U.S. Plaintiffs**

22.    Under the iCloud Terms and Conditions agreement, both Apple and all of its U.S.

consumers of the iCloud service "agree to submit to the personal and exclusive

jurisdiction of the courts located within the county of Santa Clara, California, to resolve

any dispute or claim arising from this Agreement" (Section X.B.). See also Cal. Civ.

Proc. Code § 395.5.

**California Law Applies Nationwide**

23.    Under the iCloud Terms and Conditions agreement, both Apple and all of its U.S.

consumers of the iCloud service agree that "this Agreement and the relationship between

you and Apple shall be governed by the laws of the State of California."

**FACTUAL ALLEGATIONS**

24.    No consumer has freely chosen the iCloud service.

25.    When consumers purchase their first computer product from Apple, Apple asks the

consumer to create an Apple ID (usually an email address), at which point Apple presents

the consumer with its Terms and Conditions screen, the software licenses specific to the

particular version of the applicable Apple operating system (iOS).

26.    Upon the consumer's creation of an Apple ID, Apple instantly signs the consumer up for

the iCloud service that Apple provides to store the consumer's data generated by the

computer product.

27.    When it provides the consumer the iCloud service, Apple does not tell the consumer what

the service is, what it does, that it is free, initially, or that it will soon become costly.  No

AM. COMPLAINT [CLASS ACTION] - 7

1
2
3
4

reasonable consumer is going to dig for and review the iCloud terms and conditions to inquire about a service that has not been promoted, was not the reason for the purchase, and brings with it no additional cost.

5
6
7
8
9
10
11

28.     If such an enterprising consumer were inspired to learn the details at this point, nothing would ring alarm bells. As stated in the iCloud Terms and Conditions: "iCloud is automatically enabled when you are running devices on iOS 9 or later and sign in with your Apple ID during device setup…". "When iCloud is enabled, your content will be automatically sent to and stored by Apple, so you can later access that content or have content wirelessly pushed to your other iCloud-enabled devices or computers."

12
13
14
15
16

29.     The iCloud service is not just automatically enabled once the consumer's Apple device is activated and begins to save their data, the iCloud service stays active, continually collecting the consumer's data unless or until the consumer takes affirmative steps to cancel the service.

17
18
19
20

30.     And iCloud is free. The Terms and Conditions state: "Your Account is allocated 5GB of storage capacity as described in the iCloud feature pages." The consumer may, but need not, purchase additional storage: "Additional storage is available for purchase, as described below."

21
22
23
24
25
26
27

31.     Apple does not explain that its free storage is *temporary* – that the consumer will soon run out of room and have to pay to continue – and *conditional* – that the consumer will have to learn, under time pressure, how to manage the storage of data on the computer efficiently so as to continue to stay within the 5GB free storage.

28

32.    Like all good drug pushers, Apple makes the first hit free. Once the customer is hooked, then the costs kick in. And, predictably, Apple makes it extremely difficult to manage your habit or, God forbid, quit.

33.    Apple first notifies the consumer concerning the possible cost of the iCloud service when the consumer begins to approach the limit of the 5GB storage that has been provided for free. At that point, Apple announces that the consumer may "upgrade" to 50GB for $0.99/month and that if the consumer wants to continue to use the service to back up data s/he must either upgrade and begin to pay or "reduce the amount of storage you are using." There is a link highlighted in blue to "Upgrade" but there is no link, nor even small print, indicating how a consumer might go about reducing storage, so as to continue using the product as provided.

34.    This is the first time the consumer is asked to think about the iCloud service the consumer has – but, notably, there is nothing about its utility or its need, only a choice to begin to pay (at this point, a relatively small monthly charge) or take unknown steps toward reversing the storage process that has been underway since the consumer activated the computer.

35.    Only once the consumer agrees to upgrade, does the consumer now receive monthly communication from Apple that the iCloud service is in place. The consumer begins to receive monthly receipts to the email associated with the Apple ID. This receipt indicates the amount of storage (i.e., 50 GB Storage Plan), the term of the plan (i.e., monthly), and the price (i.e., $0.99). The payments are automatically charged to the consumer's credit card associated with the Apple ID. The consumer is told that Apple will bill the consumer each plan period until the consumer cancels "by downgrading to the free storage plan"

but neither provides a link nor explains just how a consumer might do that. Nor does Apple indicate that data presently stored by the consumer on the iCloud product can be preserved if the consumer were to downgrade. Nor does Apple explain what happens in terms of a refund (whether full or partial) if a consumer downgrades in response to the notice.

36. Apple does, however, encourage a consumer to upgrade. Apple states that Apple will provide a full refund within 15 days of a monthly subscription upgrade (or within 45 days after a yearly payment). While Apple notes that partial refunds are available "where required by law," there is no link allowing a consumer to know if that applies in the consumer's jurisdiction and if so, what that might mean.

37. Questions about the bill? Apple directs the consumer to "Official Apple Support" but it is an iTunes page that has nothing clearly to do with iCloud.

38. If the consumer types "iCloud" into the "What can we help you with?" Search Support bar, nothing about the "bill" appears. The consumer can further click on either "iCloud Support" or "Manage your iCloud storage". Two other options deal with the iCloud Keychain. Nothing about a bill.

39. iCloud support leads a consumer to "Find my iPhone," "iCloud storage, "iCloud Photos," "iCloud backup" and "iCloud Drive." Again, nothing about a bill.

40. Questions about how to downgrade? If the consumer clicks "downgrading," Apple directs the consumer to an "iCloud help" page. Nothing about downgrading.

41. If a consumer clicks the large icon that is the focus of the page, nothing happens. If the consumer clicks the small icon on the very left of the screen at the top of a list of icons, entitled "iCloud basics," the consumer sees "What is iCloud?", "Ways to use iCloud,"

"Set up iCloud," "Use iCloud.com," "Change iCloud feature settings," and "Trouble signing in." Again, nothing about downgrading. (Nor do any of the links, when clicked, actually lead to anything about downgrading.)

42.   If a consumer types "downgrading" into the "Search iCloud Help" bar, the answer is "0 results for 'downgrading.'" The same for "downgrade."

## CAUSES OF ACTION

### First Cause of Action:

### Cal. Bus. & Prof. Code sec. 17600 (continuous service offer) as unfair competition under Cal. Bus. & Prof. Code sec. 17200

43.   Plaintiffs reallege paragraphs 1-42 above and incorporate them here.

44.   Apple's iCloud service is a "continuous service," under California Business and Professions Code section 17601(e), which means "a plan or arrangement in which a subscription or purchasing agreement continues until the consumer cancels the service."

45.   The purpose of California's Automatic Renewal Law, set forth beginning at California Business and Professions Code section 17600 *et seq.*, is "to end the practice of ongoing charging of consumer … cards or … accounts without the consumers' explicit consent for … ongoing deliveries of service."

46.   Under California Business and Professions Code section 17602(a)(1), it is unlawful for Apple to "[f]ail to present the … continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity … to the request for the consent to the offer." Where, as here, iCloud is given as "a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after

the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial."

47. "Clear and conspicuous" under California Business and Professions Code section 17601(c) means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."

48. Because Apple failed to obtain the consent of consumers before binding them to a continuous service offer under which Apple plans to extract regular payments and in fact ultimately extracts increasing payments, Apple has violated section 17602(a)(1) of the California Business and Professions Code.

49. Too, Apple was obligated to provide to consumers during the period of the 5 GB service and certainly before the consumer pays for the 50 GB service, an "acknowledgement" of "how to cancel, and allow the consumer to cancel," the continuous service offer, under California Business and Professions Code section 17602(a)(3).

50. Because Apple failed to provide an "acknowledgement" of "how to cancel, and allow the consumer to cancel," the continuous service offer, Apple has violated section 17602(a)(3) of the California Business and Professions Code.

51. Because Apple has violated section 17602, Apple has committed "unlawful … business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

52. Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

53.     Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

54.     Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

55.     Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 and comply with section 382 of the California Code of Civil Procedure.

**<u>Second Cause of Action</u>**

**Cal. Bus. & Prof. Code sec. 17600 (automatic renewal offer) as unfair competition under Cal. Bus. & Prof. Code sec. 17200**

56.     Plaintiffs reallege paragraphs 1-55 above and incorporate them here.

57.     Once a consumer bites the bullet and begins to pay for the iCloud service, that service continues at a given rate (i.e., 0.99/mo.) until the next level of storage (i.e., 50 GB) is reached unless the consumer takes steps to cancel the service.

58.     Because that "paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term," the paid iCloud service is an "automatic renewal" plan under California Business and Professions Code section 17601(a).

59.     To be sure a consumer has agreed to the automatic renewal plan, Apple's obligation is to present to the consumer, before the consumer makes a commitment to purchase, the

AM. COMPLAINT [CLASS ACTION] - 13

"automatic renewal offer terms" under California Business and Professions Code section 17602(a)(1). This includes a "clear and conspicuous … description of the cancellation policy that applies to the offer." California Business and Professions Code section 17601(b)(2).

60.  As with a continuous service offer, "clear and conspicuous" under California Business and Professions Code section 17601(c) means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."

61.  But neither in the emails advising customers that they are close to exceeding their allocated 5 GB of free storage nor in any other manner, does Apple explain, much less in clear and conspicuous terms, Apple's cancellation policy.

62.  Nor does Apple provide to any consumer who has agreed to pay for iCloud, as it must, under California Business & Professions Code section 17602(a)(3), a post-purchase "acknowledgement" including the "cancellation policy."

63.  Because Apple does not explain its cancellation policy for its automatic renewal offer, either before the consumer pays for the iCloud subscription or afterwards in an acknowledgement, Apple has violated section 17602.

64.  Because Apple has violated section 17602, Apple has committed "unlawful … business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

65.  Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

66.  Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

67.  Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

68.  Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 and comply with section 382 of the California Code of Civil Procedure.

### Third Cause of Action

**Cal. Bus. & Prof. Code sec. 17600 (automatic renewal offer) as unfair competition under Cal. Bus. & Prof. Code sec. 17200**

69.  Plaintiffs reallege paragraphs 1-68 above and incorporate them here.

70.  Nor does Apple provide to any consumer who has agreed to pay for iCloud, as it must, under California Business & Professions Code section 17602(a)(3), a post-purchase "acknowledgement" including "information regarding how to cancel in a manner that is capable of being retained by the consumer."

71.  Because Apple has violated section 17602, Apple has committed "unlawful … business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

72.  Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

73.  Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

74.  Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

75.  Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 and comply with section 382 of the California Code of Civil Procedure.

### Fourth Cause of Action

### Cal. Bus. & Prof. Code secs. 17600

### (continuous service offer and automatic renewal offer) as unfair competition under

### Cal. Bus. & Prof. Code sec. 17200

76.  Plaintiffs reallege paragraphs 1-75 above and incorporate them here.

77.  Nor does Apple provide to any consumer who has agreed to pay for iCloud, as it must, under California Business & Professions Code section 17602(b), an "easy-to-use" mechanism for cancellation" described in the post-purchase "acknowledgement."

AM. COMPLAINT [CLASS ACTION] - 16

78.   Because Apple has violated section 17602, Apple has committed "unlawful … business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

79.   Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

80.   Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

81.   Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

82.   Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 and comply with section 382 of the California Code of Civil Procedure.

**Fifth Cause of Action**

**Cal. Bus. & Prof. Code sec. 17600**

**(continuous service offer and automatic renewal offer) as unfair competition under**

**Cal. Bus. & Prof. Code sec. 17200**

83.   Plaintiffs reallege paragraphs 1-82 above and incorporate them here.

AM. COMPLAINT [CLASS ACTION] - 17

84. Apple's iCloud service is a "continuous service," under California Business and Professions Code section 17601(e), which means "a plan or arrangement in which a subscription or purchasing agreement continues until the consumer cancels the service."

85. The purpose of California's Automatic Renewal Law, set forth beginning at California Business and Professions Code section 17600 *et seq*., is "to end the practice of ongoing charging of consumer … cards or … accounts without the consumers' explicit consent for … ongoing deliveries of service."

86. Under California Business and Professions Code section 17602(a)(1), it is unlawful for Apple to "[f]ail to present the … continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity … to the request for the consent to the offer." Where, as here, iCloud is given as "a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial."

87. "Clear and conspicuous" under California Business and Professions Code section 17601(c) means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."

88. Once a consumer bites the bullet and begins to pay for the iCloud service, that service continues at a given rate (i.e., 0.99/mo.) until the next level of storage (i.e., 50 GB) is reached unless the consumer takes steps to cancel the service.

89.   Because that "paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term," the paid iCloud service is an "automatic renewal" plan under California Business and Professions Code section 17601(a).

90.   To be sure a consumer has agreed to the automatic renewal plan, Apple's obligation is to present to the consumer, before the consumer makes a commitment to purchase, the "automatic renewal offer terms" under California Business and Professions Code section 17602(a)(1). This includes a "clear and conspicuous … description of the cancellation policy that applies to the offer." California Business and Professions Code section 17601(b)(2).

91.   As with a continuous service offer, "clear and conspicuous" under California Business and Professions Code section 17601(c) means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."

92.   Because Apple failed to obtain the consent of consumers before binding them to a continuous service offer and automatic renewal offer – in fact an escalating price subscription, Apple has violated section 17602(a)(1) of the California Business and Professions Code.

93.   Because Apple has violated section 17602, Apple has committed "unlawful … business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

94.   Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

95.   Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

96. Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

97. Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 and comply with section 382 of the California Code of Civil Procedure.

**Sixth Cause of Action**

**Breach of contract and breach of contract as unfair competition under**

**Cal. Bus. & Prof. Code section 17200**

98. Plaintiffs reallege paragraphs 1-97 above and incorporate them here.

99. Apple's Terms of Service, most recently dated 9/19/19, entitled "Welcome to iCloud," is a "legal agreement" that Apple has designed that "governs your use of the iCloud product, software, services, and websites (collectively referred to as the "service").

100. Even though "iCloud is automatically enabled," Apple recites, "[b]y clicking 'agree,' you are agreeing that these terms will apply if you choose to access or use the service."

101. These contractual terms have remained the same for some time, as they appear in the earlier Terms of Service dated 9/25/18 and 9/19/17.

102. In these Terms of Service, Apple promises that consumers may "downgrade[] … your storage plan," (IIIA), "cancel your subscription," (IIIB), and "stop using the Service at any time," (VII A).

AM. COMPLAINT [CLASS ACTION] - 20

103.   In fact, Apple has designed it so that consumers may not easily downgrade, cancel or stop using iCloud. That is because Apple fails to explain how consumers may keep that which they have stored on iCloud anywhere once they downgrade, cancel or stop using the service – whether retaining some data on a reduced capacity plan, or choosing to store some data on other media such as the Apple computer or a standalone drive.

104.   How to keep what has been stored to date if one downgrades, cancels or stops using iCloud is a material part of the contract. It is implicit in the promise that consumers may manage their iCloud service, as expressly stated throughout the contract (e.g., sections IIIA, IIIB and VIIA).

105.   Apple's failure to explain how to manage stored data upon downgrading, canceling or stopping the use of iCloud is a breach of the express terms of its contract, as well as the implied covenant of good faith and fair dealing in the operation of the contract.

106.   Apple's email communication with its customers in the period in which customers approach the limitation of their storage, described above, adopts this promise of flexible management and creates an implied in fact contract.

107.   Apple's failure to explain how to manage stored data upon downgrading, canceling or stopping the use of iCloud is a breach of the implied in fact terms of its contract, as well as the implied covenant of good faith and fair dealing in the operation of the contract.

108.   Because Apple has breached its contract, Apple has committed "unlawful … business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

109.   Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

110.   Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

111.   Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

112.   Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 and comply with section 382 of the California Code of Civil Procedure.

**Seventh Cause of Action**

**Breach of contract and breach of contract as unfair competition under**

**Cal. Bus. & Prof. Code section 17200**

113.   Plaintiffs reallege paragraphs 1-112 above and incorporate them here.

114.   Apple's Terms of Service, most recently dated 9/19/19, entitled "Welcome to iCloud," is a "legal agreement" that Apple has designed that "governs your use of the iCloud product, software, services, and websites (collectively referred to as the "service").

115.   In these Terms of Service, Apple promises that consumers are "allocated 5GB of storage capacity" in the iCloud service at no cost.

116.   This 5GB of iCloud storage never goes away. Nor is it presented as "the first 5GB of storage.

117.   Consumers may stay at the 5GB level or purchase more: "Additional storage is available for purchase on a subscription basis." Presently, and for some time now, the storage amounts and

prices/months available on a subscription basis for US consumers are these: $0.99/mo. for 50GB; $2.99/mo. for 200GB and $9.99/mo. for 2TB. Each of Apple's paid tiers of the iCloud service includes the free 5GB of storage.

118.    In fact, Apple has designed it so that consumers may not easily retain the 5GB of storage Apple has promised and provided.

119.    Apple fails to explain, before consumers are provided a free iCloud subscription, that the backup process is inexorable, cumulative, and quick to reach the 5GB limit -- at which point consumers will need to begin to pay for the service.

120.    Apple fails to explain, after consumers are provided a free iCloud subscription and while they are approaching their 5GB limit, how consumers may so manage their service as to retain the contracted for 5GB storage.

121.    Apple's terms and conditions has a section entitled "payment" that explains how Apple will charge, on a subscription basis, for upgrades and downgrades, as well as a section entitled "Right of Withdrawal" that explains that consumers can cancel within 14 days of purchase of a paid-for iCloud storage level, but Apple says nothing about data management so that consumers can retain the 5GB Apple has promised and provided.

122.    The 5GB of iCloud storage provided at no cost is a material part of the contract. Being able to keep it is implicit in the promise that consumers may elect to purchase more storage (e.g., sections IC and III), and that they may manage their iCloud service, as expressly stated throughout the contract (e.g., sections IIIA, IIIB and VIIA).

123.    Apple's failure to explain how to retain the 5GB of iCloud, whether in advance of the contract, after its formation or during its term, is a breach of the express terms of its contract, as well as the implied covenant of good faith and fair dealing in the operation of the contract.

124. Apple's email communication with its customers in the period in which customers approach the limitation of their storage, described above, in which Apple indicates that a consumer can reduce storage adopts the promise that consumers may retain the no-cost 5GB of iCloud storage and creates an implied in fact contract.

125. Apple's failure to explain how to so manage data and reduce storage so as to retain the 5GB of iCloud storage is a breach of the implied in fact terms of its contract, as well as the implied covenant of good faith and fair dealing in the operation of the contract.

126. Because Apple has breached its contract, Apple has committed "unlawful … business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

127. Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

128. Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

129. Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

130. Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 and comply with section 382 of the California Code of Civil Procedure.

AM. COMPLAINT [CLASS ACTION] - 24

**Eighth Cause of Action**

**Violation of Cal. Civ. Code section 1770 (CLRA) and violation of same as unfair**

**competition under**

**Cal. Bus. & Prof. Code section 17200**

131.   Plaintiffs reallege paragraphs 1-130 above and incorporate them here.

132.   Apple lures consumers into paying for iCloud.

133.   Before introduction, Apple omitted it from product advertising but built it in, played it as a feature not a liability upon signup, and didn't mention it until just about to expire.

134.   Once introduced, Apple was silent concerning iCloud, not communicating anything to consumers, suggesting consumers would not need more than the 5GB. In its Terms and Conditions, Apple promises that consumers are "allocated 5GB of storage capacity" in the iCloud service at no cost (i.e., section IC). This 5GB of iCloud storage is a huge amount of storage. It never goes away. Nor is it presented as "the first 5GB of storage. Consumers may stay at the 5GB level – they may, but are not obligated, to purchase more (e.g., section III). Consumers don't lose data if they exceed the 5GB level. More, Apple notes that consumers can downgrade at any time if exceed.

135.   At the point that consumers begin to approach the limit of the 5GB storage, Apple now threatens the consumer into paying for more storage. Emails note imminent loss of data. In its Terms and Conditions, Apple emphasizes the urgency of consumer action, threatens data loss either if the consumer simply stops using the service by setting aside the Apple product or by continued use of the product generates data that exceeds the allotted amount.

136.   In fact, Apple has designed it so that consumers may not easily manage and/or delete certain data (i.e., downgrade) so as to retain the promised 5GB of storage. Apple does not make easily accessible what the cancellation/downgrade policy is, or how to downgrade. Reasonable consumers are concerned about data loss if downgrade. Reasonable consumers attempting the process lose data.

137.   Because Apple represented its iCloud service had characteristics that it did not have; because Apple advertised its iCloud service with intent not to sell it as advertised; and because Apple represented that the transaction by which it signed consumers up for iCloud subscriptions conferred or involved rights, remedies … that it did not have or involve, Apple violated the CLRA in committing *acts that are illegal under Civil Code 1770(a)(5), (9) and (14) respectively*.

138.   Plaintiffs designates the County of Santa Clara, a county in which Apple "is doing business" under California Civil Code § 1780(d). *See* Declarations stating these facts, attached to this Complaint as Exhibits 1-8.

139.   More than 30 days prior to the commencement of this action, on November 14, 2018, the undersigned counsel wrote, by certified mail, return receipt requested, to Apple at One Apple Park Way in Cupertino, California, 95014, demanding that Apple correct, repair, replace or otherwise rectify the goods or services in violation of unlawful practices detailed by CLRA section 1770. *See* Exhibit 9 hereto. Apple responded by way of counsel on January 9, 2019. By that letter, Apple did not communicate any appropriate correction, repair, replacement, or other remedy of the matters identified in the letter and now set forth in this complaint, or agreed to make such response within a reasonable

time. *See* Exhibit 10 hereto. Following considerable additional work and investigation, the undersigned counsel has decided to proceed with this action.

140.    Because Apple has violated California Civil Code section 1770, Apple has committed "unlawful … business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

141.    Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

142.    Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

143.    Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

144.    Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, at least nominal damages in compensation, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 and comply with section 382 of the California Code of Civil Procedure.

## Ninth Cause of Action

**Violation of Cal. Bus. & Prof. Code section 17500 (FAL) and same as unfair competition under**

**Cal. Bus. & Prof. Code section 17200**

AM. COMPLAINT [CLASS ACTION] - 27

145.   Plaintiffs reallege paragraphs 1-144 above and incorporate them here.

146.   Apple lures consumers into paying for iCloud.

147.   Before introduction, Apple omitted it from product advertising but built it in, played it as a feature not a liability upon signup, and didn't mention it until just about to expire.

148.   Once introduced, Apple was silent concerning iCloud, not communicating anything to consumers, suggesting consumers would not need more than the 5GB. In its Terms and Conditions, Apple promises that consumers are "allocated 5GB of storage capacity" in the iCloud service at no cost (i.e., section IC). This 5GB of iCloud storage is a huge amount of storage. It never goes away. Nor is it presented as "the first 5GB of storage. Consumers may stay at the 5GB level – they may, but are not obligated, to purchase more (e.g., section III). Consumers don't lose data if they exceed the 5GB level. More, Apple notes that consumers can downgrade at any time if exceed.

149.   At the point that consumers begin to approach the limit of the 5GB storage, Apple now threatens the consumer into paying for more storage. Emails note imminent loss of data. In its Terms and Conditions, Apple emphasizes the urgency of consumer action, threatens data loss either if the consumer simply stops using the service by setting aside the Apple product or by continued use of the product generates data that exceeds the allotted amount.

150.   In fact, Apple has designed it so that consumers may not easily manage and/or delete certain data (i.e., downgrade) so as to retain the promised 5GB of storage. Apple does not make easily accessible what the cancellation/downgrade policy is, or how to downgrade. Reasonable consumers are concerned about data loss if downgrade. Reasonable consumers attempting the process lose data.

AM. COMPLAINT [CLASS ACTION] - 28

151. Because Apple advertised its iCloud service with intent not to sell it as advertised, Apple violated the FAL in committing *acts that are illegal under California Business & Professions Code 17500.*

152. Because Apple has violated California Business & Professions Code section 17500, Apple has committed "unlawful … business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

153. Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

154. Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

155. Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

156. Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, at least nominal damages in compensation, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 and comply with section 382 of the California Code of Civil Procedure.

### Tenth Cause of Action

### Cal. Bus. & Prof. Code section 17200 (unfair competition)

157. Plaintiffs reallege paragraphs 1-156 above and incorporate them here.

AM. COMPLAINT [CLASS ACTION] - 29

158.   Apple lures consumers into paying for iCloud.

159.   Before introduction, Apple omitted it from product advertising but built it in, played it as a feature not a liability upon signup, and didn't mention it until just about to expire.

160.   Once introduced, Apple was silent concerning iCloud, not communicating anything to consumers, suggesting consumers would not need more than the 5GB. In its Terms and Conditions, Apple promises that consumers are "allocated 5GB of storage capacity" in the iCloud service at no cost (i.e., section IC). This 5GB of iCloud storage is a huge amount of storage. It never goes away. Nor is it presented as "the first 5GB of storage. Consumers may stay at the 5GB level – they may, but are not obligated, to purchase more (e.g., section III). Consumers don't lose data if they exceed the 5GB level. More, Apple notes that consumers can downgrade at any time if exceed.

161.   At the point that consumers begin to approach the limit of the 5GB storage, Apple now threatens the consumer into paying for more storage. Emails note imminent loss of data. In its Terms and Conditions, Apple emphasizes the urgency of consumer action, threatens data loss either if the consumer simply stops using the service by setting aside the Apple product or by continued use of the product generates data that exceeds the allotted amount.

162.   In fact, Apple has designed it so that consumers may not easily manage and/or delete certain data (i.e., downgrade) so as to retain the promised 5GB of storage. Apple does not make easily accessible what the cancellation/downgrade policy is, or how to downgrade. Reasonable consumers are concerned about data loss if downgrade. Reasonable consumers attempting the process lose data.

163.  Apple has committed "unfair … business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

164.  Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

165.  Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

166.  Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

167.  Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, at least nominal damages in compensation, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 and comply with section 382 of the California Code of Civil Procedure.

**Eleventh Cause of Action**

**Cal. Bus. & Prof. Code section 17200 (unfair competition)**

168.  Plaintiffs reallege paragraphs 1-167 above and incorporate them here.

169.  Apple lures consumers into paying for iCloud.

170.  Before introduction, Apple omitted it from product advertising but built it in, played it as a feature not a liability upon signup, and didn't mention it until just about to expire.

AM. COMPLAINT [CLASS ACTION] - 31

171.    Once introduced, Apple was silent concerning iCloud, not communicating anything to consumers, suggesting consumers would not need more than the 5GB. In its Terms and Conditions, Apple promises that consumers are "allocated 5GB of storage capacity" in the iCloud service at no cost (i.e., section IC). This 5GB of iCloud storage is a huge amount of storage. It never goes away. Nor is it presented as "the first 5GB of storage. Consumers may stay at the 5GB level – they may, but are not obligated, to purchase more (e.g., section III). Consumers don't lose data if they exceed the 5GB level. More, Apple notes that consumers can downgrade at any time if exceed.

172.    At the point that consumers begin to approach the limit of the 5GB storage, Apple now threatens the consumer into paying for more storage. Emails note imminent loss of data. In its Terms and Conditions, Apple emphasizes the urgency of consumer action, threatens data loss either if the consumer simply stops using the service by setting aside the Apple product or by continued use of the product generates data that exceeds the allotted amount.

173.    In fact, Apple has designed it so that consumers may not easily manage and/or delete certain data (i.e., downgrade) so as to retain the promised 5GB of storage. Apple does not make easily accessible what the cancellation/downgrade policy is, or how to downgrade. Reasonable consumers are concerned about data loss if downgrade. Reasonable consumers attempting the process lose data.

174.    Apple has committed "fraudulent … business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

175. Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

176. Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

177. Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

178. Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, at least nominal damages in compensation, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 and comply with section 382 of the California Code of Civil Procedure.

## Twelfth Cause of Action

### Cal. Wel. & Inst. Code section 15610.30(a)(1) (financial elder abuse) and same as unfair competition under

### Cal. Bus. & Prof. Code section 17200

179. Plaintiffs reallege paragraphs 1-178 above and incorporate them here.

180. Apple lures consumers into paying for iCloud, many of whom are aged 65 or older.

181. Before introduction, Apple omitted it from product advertising but built it in, played it as a feature not a liability upon signup, and didn't mention it until just about to expire.

182. Once introduced, Apple was silent concerning iCloud, not communicating anything to consumers, suggesting consumers would not need more than the 5GB. In its Terms and Conditions, Apple promises that consumers are "allocated 5GB of storage capacity" in the iCloud service at no cost (i.e., section IC). This 5GB of iCloud storage is a huge amount of storage. It never goes away. Nor is it presented as "the first 5GB of storage. Consumers may stay at the 5GB level – they may, but are not obligated, to purchase more (e.g., section III). Consumers don't lose data if they exceed the 5GB level. More, Apple notes that consumers can downgrade at any time if exceed.

183. At the point that consumers begin to approach the limit of the 5GB storage, Apple now threatens the consumer into paying for more storage. Emails note imminent loss of data. In its Terms and Conditions, Apple emphasizes the urgency of consumer action, threatens data loss either if the consumer simply stops using the service by setting aside the Apple product or by continued use of the product generates data that exceeds the allotted amount.

184. In fact, Apple has designed it so that consumers may not easily manage and/or delete certain data (i.e., downgrade) so as to retain the promised 5GB of storage. Apple does not make easily accessible what the cancellation/downgrade policy is, or how to downgrade. Reasonable consumers are concerned about data loss if downgrade. Reasonable consumers attempting the process lose data.

185. Apple thus takes, obtains, and/or retains money of elders and dependent adults with the intent to defraud, which is illegal under Cal. Wel. & Inst. Code section 15610.30(a)(1).

186. Apple has committed "unlawful … business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

187.   Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

188.   Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

189.   Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

190.   Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, at least nominal damages in compensation, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 and comply with section 382 of the California Code of Civil Procedure.

## Thirteenth Cause of Action

## Violation of Cal. Civ. Code section 1770 (CLRA) and same as unfair competition under Cal. Bus. & Prof. Code section 17200

191.   Plaintiffs reallege paragraphs 1-190 above and incorporate them here.

192.   Apple, upon a customer's stopping to use iCloud, eliminates the customer's continued access to iCloud while simultaneously refusing to provide a pro rata refund.

193.   Accordingly, Apple has imposed unconscionable contract terms.

194.   Because Apple engaged in an unconscionable practice, Apple violated the CLRA in committing acts that are illegal under Civil Code 1770(a)(19).

AM. COMPLAINT [CLASS ACTION] - 35

195. Because Apple has violated California Civil Code section 1770, Apple has committed "unlawful … business act[s] or practice[s]" under section 17200 of the California Business and Professions Code.

196. Each consumer subscribing to iCloud has purchased an Apple computer product, the price of which incorporates the introductory 5 GB storage iCloud service and thus has suffered injury in fact under section 17204 and has lost money as a result of Apple's unfair competition.

197. Any consumer who is paying any fee for the iCloud service beyond the 5 GB storage rate has suffered additional injury in fact.

198. Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to cancel.

199. Any such consumer is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, at least nominal damages in compensation, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 and comply with section 382 of the California Code of Civil Procedure.

### Class Action Allegations

200. **Class definition:** All U.S. consumers who have subscribed to the iCloud service, from 4 years prior to the filing of this complaint to the present.

201. **Subclasses**:

   A. All U.S. consumers who have subscribed to the iCloud service and never exceeded the 5GB level, from 4 years prior to the filing of this complaint to the present.

AM. COMPLAINT [CLASS ACTION] - 36

B.  All U.S. consumers who have subscribed to the iCloud service and exceeded the 5GB level, paying for iCloud service, from 4 years prior to the filing of this complaint to the present.

C.  All U.S. consumers who have subscribed to the iCloud service, who relied upon Apple's representations, whether

    1.  Before product purchase;

    2.  At the time of product activation; or

    3.  When free storage almost exhausted,

that iCloud's free service would be all they would likely need/a reasonable person would, who subsequently learned that they would need to pay.

D.  All U.S. consumers who have subscribed to the iCloud service, who relied upon Apple's failure to mention the incipient cost of iCloud and subsequently learned of it, when free storage almost exhausted but either:

    1.  were dissuaded from adjusting downward because they:

        a)  did not know the cancellation policy; or

        b)  knew that cancellation meant no pro rata refund; or

        c)  did not remember Apple ID; or

        d)  did not know how to cancel; or

        e)  did know how to cancel but feared losing data; or

    2.  tried to adjust downward but could not do so; or

    3.  succeeded in adjusting downward:

        a)  but lost data; or

        b)  but did not receive a pro rata refund.

E.  All U.S. consumers who have subscribed to the iCloud service, who relied upon Apple's representations that iCloud's storage and pricing can be adjusted up or down in accordance with their storage needs, who subsequently found those representations to be untrue:

    1.  in that they have been dissuaded from adjusting downward b/c they:

        a)  did not know the cancellation policy; or

        b)  knew that cancellation meant no pro rata refund; or

        c)  did not remember Apple ID; or

        d)  did not know how to cancel; or

        e)  did know how to cancel but feared losing data; or

    2.  in that they tried to adjust downward but could not do so; or

    3.  in that they succeeded in adjusting downward:

        a)  but lost data; or

        b)  but did not receive a pro rata refund.

F.  Other subclasses include:

    1.  Those aged 65 or older;

    2.  Those who obtained iCloud through the purchase of particular products (e.g., iPhone, iMac);

    3.  Those who made in-store or online purchase of products;

    4.  California residents; and

    5.  Those presently (or at the time) grouped by applicable monthly charges ($0.99/$2.99/$9.99/other) or annual charges.

202.   Numerosity. There are so many potential class members that individual joinder of class members is impractical.

203.   Commonality. As is clear from paragraphs 1-199, there are questions of law or fact that apply equally to all subscribers to the iCloud service and are therefore common to class members.

204.   Typicality. The claims of the Plaintiffs here, putative class representatives, are typical of those of absent class members.

205.   Adequacy of representation. Class counsel is experienced in litigating class actions, and Plaintiffs intend to fairly and adequately protect the interests of absent class members.

**PUBLIC INJUNCTIVE RELIEF AND ATTORNEYS' FEES UNDER CCP 1021.5**

206.   Plaintiffs reallege paragraphs 1-205 above and incorporate them here.

207.   Plaintiffs are informed, and on that basis alleges that relief addressing the procedures that are the subject of this claim will provide a significant benefit, both pecuniary and nonpecuniary, on the general public; that the necessity for and financial burden of private enforcement are such as to make an award of attorneys' fees appropriate – for how else would an attorney ever go the effort and expense of bringing an action simply focused on requiring Apple to change its policies to comply with the law; and such fees would not be paid out of any recovery for Plaintiffs, as Plaintiffs to the extent they seek public injunctive relief seek no damages at all.

208.   Accordingly, as demonstrated, an award of attorneys' fees under California Code of Civil Procedure section 1021.5 is appropriate and merited.

**DEMAND FOR RELIEF**

209.   WHEREFORE, Plaintiffs prays for judgment against all Defendants that:

AM. COMPLAINT [CLASS ACTION] - 39

a.  Defendants be declared in violation of the aforementioned laws;

b.  Defendants be preliminarily and permanently enjoined from committing the acts alleged herein;

c.  Defendants be ordered to pay Plaintiffs' actual, consequential, incidental and special damages.

d.  Defendants be ordered to provide restitution to Plaintiffs;

e.  Defendants be ordered to pay Plaintiffs' attorneys' fees and costs under the doctrine of tort of another, to the extent available under the statutes sued hereunder, and pursuant to Cal. Code Civ. Proc. § 1021.5;

f.  Plaintiffs be entitled to rescind their contracts;

g.  Plaintiffs be entitled to reform their contracts;

h.  Defendants be ordered to pay statutory damages and/or civil penalties;

i.  Defendants be ordered to pay punitive damages;

j.  Plaintiffs be awarded costs of suit;

k.  Plaintiffs be entitled to pre-judgment (and, if appropriate, post-judgment) interest;

l.  Plaintiffs be awarded such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs respectfully request a jury trial on all issues triable thereby.

Dated this 4th of August, 2021.

/s/ David M. Rosenberg-Wohl

David M. Rosenberg-Wohl
HERSHENSON ROSENBERG-WOHL
A PROFESSIONAL CORPORATION

AM. COMPLAINT [CLASS ACTION] - 40

## DECLARATION OF WILL RUTTER

1. I am Will Rutter.
2. I know the facts in this declaration from my own experience and knowledge and would testify to them if called as a witness.
3. I currently live in Pennsylvania.
4. I grew up in the San Francisco Bay Area.
5. I regularly have used Apple products and received email from Apple Inc., which I understand to be located in Santa Clara County.
6. Due to the fact that Apple Inc. - as evidenced by its advertising generally - has its principal place of business in Cupertino, California, I state on information and belief that Apple Inc. has done and continues to do substantial business in California.

I declare under penalty of perjury under the laws of the United States of American and the State of California that the foregoing is true and correct.

Executed on December 19. 2020

Will Rutter

## DECLARATION OF JACQUELINE TABAS

1.  I am Jacqueline Tabas. I know the facts in this declaration from my own experience and
    knowledge and would testify to them if called as a witness.

2.  I live in San Francisco, which is situated in the County of San Francisco, State of
    California. I regularly receive and respond to email in this county. I signed up for my
    Apple ID, and began using iCloud while living in California.

3.  Due to the fact that Apple Inc. – as evidenced by its advertising generally and its email
    message to me concerning iCloud – has its principal place of business in Cupertino,
    California, I state on information and belief that Apple Inc. has done and continues to do
    substantial business in California.


    I declare under penalty of perjury under the laws of the United States of America and

the State of California that the foregoing is true and correct.


Executed on October 21, 2018                    _____

                                                        Jacqueline Tabas

DECLARATION OF NATASHA GARAMANI

1. I am Natasha Garamani.
2. I know the facts in this declaration from my own experience and knowledge and would testify to them if called as a witness.
3. I currently live in Colorado.
4. I have spent time in the San Francisco Bay Area.
5. I regularly have used Apple products and received email from Apple Inc., which I understand to be located in Santa Clara County.
6. Due to the fact that Apple Inc. - as evidenced by its advertising generally - has its principal place of business in Cupertino, California, I state on information and belief that Apple Inc. has done and continues to do substantial business in California.

I declare under penalty of perjury under the laws of the United States of American and the State of California that the foregoing is true and correct.

Executed on January 12, 2021

Natasha

EXH. 3

## DECLARATION OF CONNIE TABAS

1. I am Connie Tabas. I know the facts in this declaration from my own experience and knowledge and would testify to them if called as a witness.

2. I live in San Francisco, which is situated in the County of San Francisco, State of California. I regularly receive and respond to email in this county. I signed up for my Apple ID, and began using iCloud while living in California.

3. Due to the fact that Apple Inc. – as evidenced by its advertising generally and its email message to me concerning iCloud – has its principal place of business in Cupertino, California, I state on information and belief that Apple Inc. has done and continues to do substantial business in California.


I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.


Executed on October 21, 2018

*Connie Tabas*

Connie Tabas

DocuSign Envelope ID: CEF314D0-162D-40AD-952E-5A3D33381287

DECLARATION OF TRISTAN YOUNG

1.   I am  Tristan Young. I know the facts in this declaration from my own experience and

knowledge and would testify to them if called as a witness.

2.   I currently live in Arizona. I regularly receive email from Apple Inc., which I understand to

be located in Santa Clara County.

3.   Due to the fact that Apple Inc.-  as evidenced by its advertising generally and its email

message to me concerning iCloud - has its principal place of business in Cupertino,

California, I state on information and belief that Apple Inc. has done and continues to do

substantial business in California.

I declare under penalty of perjury under the laws of the United States of American and the State
of California that the foregoing is true and correct.

Executed on December _6th_ 2020

Tristan Young

EX4-5

## DECLARATION OF KASRA ELIASIEH

1. I am Kasra Eliasieh. I know the facts in this declaration from my own experience and knowledge and would testify to them if called as a witness.

2. I live in San Francisco, which is situated in the County of San Francisco, State of California. I regularly receive and respond to email in this county. I signed up for my Apple ID, and began using iCloud while living in California.

3. Due to the fact that Apple Inc. – as evidenced by its advertising generally and its email message to me concerning iCloud – has its principal place of business in Cupertino, California, I state on information and belief that Apple Inc. has done and continues to do substantial business in California.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on October 21, 2018

Kasra Eliasieh

1

DECLARATION OF ROBERT BARKER

1.  I am Robert Barker. I know the facts in this declaration from my own experience and
    knowledge and would testify to them if called as a witness.

2.  I live in Cobb, which is situated in the County of Lake, State of California. I regularly
    receive and respond to email in this county. I signed up for my Apple ID, and began
    using iCloud while living in California.

3.  Due to the fact that Apple Inc. – as evidenced by its advertising generally and its email
    message to me concerning iCloud – has its principal place of business in Cupertino,
    California, I state on information and belief that Apple Inc. has done and continues to do
    substantial business in California.


I declare under penalty of perjury under the laws of the United States of America and
the State of California that the foregoing is true and correct.


Executed on October 26, 2018

                                        Robert Barker

DECLARATION OF CYNTHIA RUTTER

1.  I am Cynthia Rutter. I know the facts in this declaration from my own experience and

    knowledge and would testify to them if called as a witness.

2.  I began using Apple's iCloud product sometime after obtaining my Apple ID.

3.  Due to the fact that Apple Inc. – as evidenced by its advertising generally and its email

    messages to me concerning iCloud – has its principal place of business in Cupertino,

    California, I state on information and belief that Apple Inc. has done and continues to do

    substantial business in California, particularly within the county of Santa Clara, and that

    this is the place where the transaction or a substantial portion of the transaction in

    which I was provided iCloud took place.

4.  I live in Wyoming. Nonetheless, the Apple Terms and Conditions agreement explains

    that I must bring any action that I have arising out the iCloud product in courts located

    within the county of Santa Clara County and that this dispute is to be governed by

    California law.


    I declare under penalty of perjury under the laws of the United States of America and

the State of Wyoming that the foregoing is true and correct.


Executed on December 20, 2018                      *Cynthia Rutter*

                                                   Cynthia Rutter

1

HERSHENSON
ROSENBERG-WOHL
A PROFESSIONAL CORPORATION
315 Montgomery St., 8ᵗʰ Fl.
San Francisco, CA 94104
(415) 829-4330

November 14, 2018

Apple Inc.
One Apple Park Wy
Cupertino, CA 95014

*VIA CERTIFIED/REGISTERED MAIL, RETURN RECEIPT REQUESTED*

Re:        <u>Notice under California's CLRA, section 1782</u>

To Whom It May Concern:

This office represents Connie Tabas, Jacqueline Tabas, Kasra Eliasieh, Robert Barker and Tristan Young, on behalf of themselves and others similarly situated ("Plaintiffs"). Plaintiffs are consumers who risk paying, have paid, and continue to pay Defendants on a monthly basis to store documents, photographs and other data through the iCloud product offered by Apple Inc. ("Apple").

No consumer purchases the iCloud product by itself. When a consumer purchases any product or service from Apple, Apple provides the consumer with an Apple ID and a free iCloud product. It is difficult, if not impossible, to choose to have the iCloud product – the choice is made for the consumer by Apple. As stated in the iCloud Terms and Conditions: "iCloud is automatically enabled when you are running devices on iOS 9 or later and sign in with your Apple ID during device setup, unless you are upgrading the device and have previously chosen not to enable iCloud." iCloud remains enabled on all consumer accounts unless turned off. "You can disable iCloud in Settings. When iCloud is enabled, your content will be automatically sent to and stored by Apple, so you can later access that content or have content wirelessly pushed to your other iCloud-enabled devices or computers."

When it provides the consumer the iCloud product, Apple does not tell the consumer what the product is, what it does, and that it is free for only a small amount of data/period of time. Apple first notifies the consumer concerning the possible cost of the iCloud product when the consumer reaches the limit of the 5GB storage that is provided for free. At that point, Apple announces that the consumer may "upgrade" to 50GB for $0.99/month and that if the consumer wants to continue to use the service to back up data s/he must either upgrade and begin to pay of "reduce the amount of storage you are using." There is a link highlighted in blue to "Upgrade" but there is no link, nor even small print, indicating how a consumer might go about reducing storage, so as to continue using the product as provided. Once the consumer agrees to upgrade, the consumer now receives monthly receipts to the email associated with the Apple ID. This receipt indicates the amount of storage (i.e., 50 GB Storage Plan), the term of the plan (i.e., monthly), and the price (i.e., $0.99). The payments are automatically charged to the consumer's credit card associated with the Apple ID.

The consumer is told that Apple will bill the consumer each plan period until the consumer cancels "by downgrading to the free storage plan" but neither provides a link nor explains just how a consumer might do that. Nor does Apple indicate that data presently stored by the consumer on the iCloud product can be preserved if the consumer were to downgrade. Nor does Apple explain what happens in terms of a refund (whether full or partial) if a consumer downgrades in response to the notice. Apple does, however, encourage a consumer to upgrade. It states that Apple will provide a full refund within 15 days of a monthly subscription upgrade (or within 45 days after a yearly payment). While Apple notes that partial refunds are available "where required by law," there is no link allowing a consumer to know if that applies in the consumer's jurisdiction and if so, what that might mean.

Questions about the bill? Apple directs the consumer to "Official Apple Support," but it is an iTunes page that has nothing clearly to do with iCloud. If the consumer types "iCloud" into the "What can we help you with?" "Search Support" bar, nothing about the "bill" appears. The consumer can further click on either "iCloud Support" or "Manage your iCloud storage." Two other options deal with the iCloud Keychain. Nothing about a bill. iCloud support leads a consumer to "Find my iPhone," "iCloud storage," "iCloud Photos," "iCloud backup" and "iCloud Drive." Again, nothing about a bill.

Questions about how to downgrade? If the consumer clicks "downgrading," Apple directs the consumer to an "iCloud help" page. Nothing about downgrading. If a consumer clicks the large icon that is the focus of the page, nothing happens. If the consumer clicks the small icon on the very left of the screen at the top of a list of icons, entitled "iCloud basics," the consumer sees "What is iCloud?", "Ways to use iCloud," "Set up iCloud," "Use iCloud.com," "Change iCloud feature settings," and "Trouble signing in." Again, nothing about downgrading. (Nor do any of the links, when clicked, actually lead to anything about downgrading.) If a consumer types "downgrading" into the "Search iCloud Help" bar, the answer is "0 results for 'downgrading.'" The same for "downgrade."

In the course of using Apple products, Plaintiffs have involuntarily been signed up to receive iCloud and either have run out of the free iCloud storage and have been presented with the need to pay (at first) $0.99 to upgrade or will be in this situation shortly. Because the price is small and there is no easy alternative explained, Plaintiffs have been or will be compelled to purchase any upgrade or risk losing stored material, becoming locked into the monthly contract. Because Apple provides neither advance notice of the monthly charge nor any way to understand how to withdraw from the monthly cost of the product, Plaintiffs have continued paying for the product. Plaintiffs cannot figure out how to avoid having to pay Apple for this product, whether by keeping/going back to the smaller amount of free storage, or otherwise. iCloud appears to be a cheaper and more intuitive way to save data than alternatives offered by Apple such as Time Machine or external hard drives that require set up and which are offered at a single lump sum that appears far more significant than anything that is likely to be spent on a monthly iCloud product.

The conduct set forth constitutes statements representing that goods or services have characteristics they do not have, advertising goods or services with intent not to sell them as advertised, representing that a transaction confers or involves rights, remedies or obligations that it does not have or involve, and representing that a part or service is needed when it is not, in violation of Cal. Civ. Code §§ 1770(a)(5), (9), (14) and (15), all to the damage of Plaintiffs here.

Plaintiffs are entitled to actual damages, an injunction, restitution, rescission, civil penalties, punitive damages, attorneys' fees, as well as any relief a court deems proper under section 1780(a). Because the conduct described above has caused damage to other consumers similarly situated, Plaintiffs may bring an action for the relief described on behalf of not just themselves but other consumers under section 1781(a). Under section 1782(a)(2), Plaintiffs demand that Apple correct, replace or otherwise rectify the goods/services described above in a way that makes them whole, makes similarly situated consumers whole, and makes sure that no other consumers are subject to this conduct.

Thank you very much.

Very truly yours,

HERSHENSON ROSENBERG-WOHL, a Professional Corporation

By: _____

David M. Rosenberg-Wohl

EXH. 9
2

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA  94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415-268-7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS,
DENVER, HONG KONG, LONDON,
LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI,
SINGAPORE, TOKYO, WASHINGTON, D.C.

January 9, 2019

Writer's Direct Contact
+1 (415) 268.6557
AAmezcua@mofo.com

**CONFIDENTIAL**

***Via U.S. Mail and E-Mail***

David M. Rosenberg-Wohl
Hershenson Rosenberg-Wohl, PC
315 Montgomery St., 8th Fl.
San Francisco, CA 94104
David@hrw-law.com

Re:     *Tabas, et al. v. Apple Inc.*, Response to CLRA Demand Letter

Dear Mr. Rosenberg-Wohl:

This letter responds to your November 14, 2018 letter regarding Connie Tabas, Jacqueline Tabas, Kasra Eliasieh, Robert Barker, and Tristan Young's request for relief based on California's Consumers Legal Remedies Act, California Civil Code Section 1750, *et seq.* ("CLRA").  In the letter, you contend that Apple has violated the CLRA with respect to Apple's alleged statements regarding iCloud storage.  Apple denies that contention.

Your clients cannot plead or prove any violation of the CLRA.  The CLRA requires a prospective claimant to notify the potential defendant "of the particular alleged violations" Cal. Civ. Code § 1782(a)(1), but your letter fails to identify any conduct by Apple that violated the statute.  Your letter does not identify any specific misrepresentation or omission by Apple regarding iCloud, as required for a violation of the CLRA.  Moreover, your contention that it is difficult to downgrade to free iCloud storage or that consumers are not provided with information on how to reduce iCloud storage not only does not establish a violation of the CLRA, it is simply incorrect.  The iCloud Terms & Conditions, which you quote, provide instructions on how to cancel and/or downgrade, and you acknowledge that consumers are offered 5GB of storage for *free*.  Further, information about how to downgrade and manage or reduce storage is readily accessed through Settings on the device itself, as well as by simply typing search terms such as "downgrade iCloud," "manage storage" or "manage iCloud" on the Apple Support website (or, indeed, in Google or on the general Apple.com website itself).  (*See, e.g.,* https://support.apple.com/en-us/HT207594; https://support.apple.com/en-us/HT207689; and https://support.apple.com/en-us/HT204247.)

sf-3976558

**MORRISON** | **FOERSTER**

January 9, 2019
Page Two

There is thus no harm to consumers (and, consequently, no standing for any of your clients), since they can choose not to upgrade to receive additional iCloud storage—and therefore continue to receive 5GB of free storage—and those that have opted for a higher storage amount may cancel or downgrade.  Rather than identifying any CLRA violation, the gravamen of your clients' claims appears to be that they were "compelled" to purchase iCloud storage because "the price is small" and iCloud is a "cheaper and more intuitive way to save data" than any available alternative.  Your letter offers no authority for your clients' apparent claims that Apple violated the CLRA by offering its customers first *free*, then, for a "small" fee, "intuitive" storage, particularly given your admission that iCloud is the least expensive and easiest storage option available.  In short, there was no injury.

If you would like Apple to further assess your clients' claims, please provide us with documentation and details regarding Connie Tabas, Jacqueline Tabas, Kasra Eliasieh, Robert Barker, and Tristan Young's iCloud purchases and any other related iCloud upgrades, monthly fees, or refunds.  If the intent of this letter is to secure a refund for your clients' iCloud purchases or to obtain help for their use of iCloud, let us know.

Finally, because you have indicated that your letter constitutes a notice and demand pursuant to Section 1782(a), this letter serves as Apple's response in accordance with Sections 1782(b), (c), and (e).  Evidence Code Section 1152 protects this response, and nothing in this response is intended as, or constitutes, an admission or a waiver of any of Apple's defenses, rights, or remedies.  This response is confidential and is entitled to all applicable protections of law.  This letter is not intended to comprehensively list all of the reasons your clients' CLRA claims are without merit, and Apple is prepared to vigorously defend against their claims.

If you have any questions regarding the matters set forth in this letter or would like to discuss this issue further, please do not hesitate to contact me.

Sincerely,

Alexis A. Amezcua

cc:   Penelope A. Preovolos, Ashley Nakamura (via e-mail only)

EXH. 10