ALEXIS A. AMEZCUA (CA SBN 247507)
AAmezcua@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WILLIAM RUTTER, JACQUELINE TABAS, NATASHA GARAMANI, CONNIE TABAS, TRISTAN YOUNG, KASRA ELIASIEH, ROBERT BARKER, AND CINDY RUTTER, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>APPLE INC., and DOES 1-10,<br><br>                    Defendants. | Case No. 4:21-cv-04077-HSG<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: December 16, 2021<br>Time: 2:00 p.m.<br>Department: Courtroom 2 – 4th Floor<br>Judge: The Honorable Haywood S.<br>          Gilliam, Jr.<br><br> FAC Filed:  August 4, 2021 |

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on December 16, 2021, at 2:00 p.m., or as soon thereafter as the motion may be heard in Courtroom 2 on the 4th Floor of the United States Courthouse, 1301 Clay Street, Oakland, California, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), defendant Apple Inc. ("Apple") will and hereby does move to dismiss all of the causes of action in plaintiffs William Rutter, Jacqueline Tabas, Natasha Garamani, Connie Tabas, Tristan Young, Kasra Eliasieh, Robert Barker, and Cindy Rutter's ("Plaintiffs") First Amended Complaint filed in this Court on August 4, 2021 (ECF No. 17) ("FAC").  This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Alexis Amezcua filed herewith, Apple's Request for Judicial Notice, and the pleadings and evidence on file in this matter, oral arguments of counsel, and such other materials and arguments as may be presented in connection with the hearing on the Motion.

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................ 3

       A.     Apple's iCloud Service Is Provided Free of Charge for Up to 5GB of
              Storage ..................................................................................................... 3

       B.     Apple Communicates Each Aspect of iCloud to Users Before, During, and
              After Set-Up and During Use of the Service ........................................... 4

              1.     Communication As Free 5GB Storage Limit Approaches.......... 4

              2.     Managing Storage on iCloud ..................................................... 5

       C.     The Named Plaintiffs Never Allege They Did Not Need or Use the Service
              They Paid For, or Received For Free ....................................................... 6

III.   LEGAL STANDARDS......................................................................................... 6

       A.     Rule 12(b)(1) ........................................................................................... 6

       B.     Rule 12(b)(6) ........................................................................................... 7

IV.    ARGUMENT ....................................................................................................... 7

       A.     Each of Plaintiffs' Claims Fails Because Plaintiffs Have Not and Cannot
              Allege Standing........................................................................................ 7

              1.     Plaintiffs Lack Article III Standing to Pursue Any Claim ......... 8

              2.     Plaintiffs Also Lack Standing under Additional Standing
                     Requirements of the UCL, FAL, and CLRA ............................ 12

       B.     The FAC Is Improperly Pled under Rule 8 ........................................... 15

       C.     All Plaintiffs' Claims Fail to Satisfy Rule 9(b)'s Particularity Requirement ....... 16

       D.     Plaintiffs Have Not Stated a Claim for Breach of Contract and Their
              Contract-Based CLRA Claim Likewise Fails ....................................... 19

V.     CONCLUSION .................................................................................................. 20

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*24 Hour Fitness, Inc. v. Super. Ct.,*
5
    66 Cal. App. 4th 1199 (1998) .....................................................................................20

6

*A&M Procedure Co. v. FMC Corp.,*
7
    135 Cal. App. 3d 473 (1982)......................................................................................20

8

*Appling v. State Farm Mut. Auto. Ins. Co.,*
    340 F.3d 769 (9th Cir. 2003)......................................................................................19

9

*Ashcroft v. Iqbal,*
10
    556 U.S. 662 (2009) .....................................................................................................7

11

*Bayol v. Zipcar, Inc.,*
    78 F.Supp.3d 1252 (N.D. Cal. 2015) .........................................................................20

12

*Bell Atl. Corp. v. Twombly,*
13
    550 U.S. 544 (2007)..............................................................................................7, 15

14

*Bly-Magee v. Cal.,*
15
    236 F.3d 1014 (9th Cir. 2001)....................................................................................16

16

*Davidson v. Apple, Inc.,*
    No. 16-CV-04942-LHK, 2017 WL 976048 (N.D. Cal. Mar. 14, 2017) .....................20

17

*Davidson v. Kimberly-Clark Corp.,*
18
    889 F.3d 956 (9th Cir. 2018)......................................................................................16

19

*Doe v. SuccessfulMatch.com,*
20
    70 F. Supp. 3d 1066 (N.D. Cal. 2014) ................................................................13, 17

21

*Durrell v. Sharp Healthcare,*
    183 Cal.App.4th 1350 (2010) ....................................................................................18

22

*Friedman v. Mercedes Benz USA LLC,*
23
    No. CV 12-7204 GAF, 2013 WL 8336127 (C.D. Cal. June 12, 2013)......................18

24

*In re Google, Inc. Priv. Policy Litig.,*
25
    58 F. Supp. 3d 968 (N.D. Cal. 2014) .........................................................................17

26

*Great Pacific Sec. v. Barclays Capital, Inc.,*
    743 F.App'x. 780 (9th Cir. 2018)...............................................................................17

27

*Hall v. Time Inc.,*
28
    158 Cal. App. 4th 847 (2008), *as modified* (Jan. 28, 2008)......................................12

*Herrera v. Estee Lauder Cos., Inc.*,
No. SACV 12-01169-CJC(ANx), 2012 WL 12507876
(C.D. Cal. Sep. 20, 2012) ..................................................................................................12

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (2009) ...............................................................................................17, 18

*Kwan v. SanMedica Int'l*,
854 F.3d 1088 (9th Cir. 2017).............................................................................................7

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) ......................................................................................................14

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014).............................................................................................7

*Lopes v. Reddit, Inc.*,
No. 20-CV-08086-NC, 2021 WL 2416897 (N.D. Cal. June 14, 2021) ...........................16

*Lopez v. YP Holdings, LLC*,
No. CV188791-MWF, 2019 WL 6354387 (C.D. Cal. July 9, 2019)................................13

*Marilao v. McDonald's Corp.*,
632 F. Supp. 2d 1008 (S.D. Cal. 2009) ...........................................................................13

*Marolda v. Symantec Corp.*,
672 F. Supp. 2d 992 (N.D. Cal. 2009) .............................................................................18

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011)..............................................................................................6

*Mayron v. Google, Inc.*
No. 2015-1-CV-275940, 2016 WL 6822258 (Cal. Super. Ct. Feb. 26, 2016),
*aff'd on other grounds*, 54 Cal. App. 5th 566 (2020) .....................................................11

*Mayron v. Google LLC*,
54 Cal. App. 5th 566 (2020) .......................................................................................12, 13

*Melegrito v. CitiMortgage Inc.*,
No. C 11-01765 LB, 2011 WL 2197534 (N.D. Cal. June 6, 2011) .................................19

*Meyer v. Sprint Spectrum L.P.*,
45 Cal. 4th 634 (2009) ......................................................................................................14

*Moon v. Cnty. of Orange*,
No. SACV 19-258, 2020 WL 2332164 (C.D. Cal. Mar. 18, 2020) .................................16

*Papasan v. Dometic Corp.*,
    No. 16-CV-02117-HSG, 2017 WL 4865602
    (N.D. Cal. Oct. 27, 2017) (Gilliam, J.)...............................................................8, 18

*Parducci v. Overland Sols.*,
    399 F.Supp.3d 969 (N.D. Cal. 2019) ...............................................................17

*Rahman v. Mott's LLP*,
    No. CV 13--3482 SI, 2014 WL 5282106 (N.D. Cal. Oct. 14, 2014) .....................10

*Robinson v. OnStar, LLC*,
    No. 15-CV-1731 JLS (MSB), 2020 WL 364221 (S.D. Cal. Jan. 22, 2020) ............11

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004)...........................................................................7

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ...............................................................................8, 11

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ..........................................................................2, 8, 11

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)..........................................................................16

*In re Wilshire Courtyard*,
    729 F.3d 1279 (9th Cir. 2013)............................................................................6

*Wood v. Motorola Mobility, Inc.*,
    No. C-11-04409-YGR, 2012 WL 892166 (N.D. Cal. Mar. 14, 2012)....................14

**Statutes**

Cal. Bus. & Prof. Code § 17204 .........................................................................12

Cal. Bus. & Prof. Code § 17535 .........................................................................14

Cal. Bus. & Prof. Code § 17600 .........................................................................11

Cal. Civ. Code § 1770(a) ...................................................................................20

**Rules**

 Fed. Rule Civ. P. 9(b) ......................................................................................16

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.      INTRODUCTION**

3          Plaintiffs' First Amended Complaint ("FAC") must be dismissed in its entirety.  Other

4   than addressing typographical errors and revising the headings for some causes of action, the

5   FAC adds a single substantive paragraph in an attempt to allege injury.  (*See* FAC ¶ 21.)  That

6   attempt fails.  Plaintiffs' injury theory now wholly depends on their claim that they are unable to

7   manage their iCloud service "in the way they would like," and "in the way they believe they have

8   been assured they can."  (*Id*.)  But Plaintiffs do not identify *any* alleged misrepresentation by

9   Apple regarding users' ability to manage their data, nor any information about how to manage

10  their data that Apple allegedly was legally required to, but did not, disclose.  Nor do Plaintiffs

11  identify any way in which Apple allegedly misrepresented the way iCloud works or its cost.

12  Indeed, they do not claim to have viewed or relied upon even one representation by Apple

13  regarding iCloud, much less regarding their ability to manage their data.  Having delayed filing

14  the Complaint for more than two years after they raised these issues in a CLRA demand letter,

15  and having had the opportunity to amend their pleading after reviewing Apple's motion to

16  dismiss the Complaint, Plaintiffs' claims still fail both factually and legally.  Plaintiffs lack

17  Article III and statutory standing, fail to allege any injury attributable to alleged misconduct by

18  Apple, and otherwise fail to allege facts sufficient to support any of their claims.

19          Apple's iCloud service provides users with storage for up to 5GB of data free of charge;

20  the 5GB of storage never terminates.  Should a user require more than 5GB of data, Apple

21  presents various pricing plans for additional storage, and provides users numerous opportunities

22  to learn how to manage their data to stay below 5GB or at the level they desire.  None of the

23  named Plaintiffs disputes that the 5GB of storage was free to them; two of the named Plaintiffs

24  have never exceeded that amount, and all Plaintiffs continue to use iCloud to the present.  Of the

25  Plaintiffs who did exceed 5GB, none allege that they did not need or use the higher storage

26  amount or that they attempted to downgrade to a lower amount and were unable to do so.

27  Plaintiffs now conclusorily allege that they were assured by Apple that they could manage their

28  data in some unidentified way, but again do not cite a single representation to support that

1  allegation, nor to support any legal obligation by Apple to assist them to do so.

2         Instead, Plaintiffs vaguely claim that California's Automatic Renewal Law ("ARL")

3  requires more from Apple.  The ARL, however, contains no such obligation and does not even

4  apply to the 5GB of storage as it is not subject to recurring charges.  Indeed, none of the ARL's

5  requirements relates to data storage or management, and Plaintiffs never suggest that they do.

6  And even if the ARL did apply here, the Supreme Court recently held in *TransUnion LLC v.*

7  *Ramirez*, 141 S. Ct. 2190 (2021), that the alleged violation of a statute does not provide Article III

8  standing unless the plaintiff has been *concretely harmed as a result of the violat*ion.  The same is

9  true under the statutory standing requirements of each of the statutes on which Plaintiffs purport

10 to rely.  Here, there can be no injury to those still under 5GB (having paid nothing), or those over

11 5GB who never allege that they did not need or use the higher storage.  Critically, no Plaintiff

12 alleges that their purported inability to manage their data *results from* violation of any cognizable

13 legal obligation by Apple.  Thus, all Plaintiffs' claims under the Unfair Competition Law

14 ("UCL"), the False Advertising Law ("FAL"), the Consumers Legal Remedies Act ("CLRA"),

15 for breach of contract, and elder abuse are subject to dismissal.

16        Further, Plaintiffs' ARL-based claims and breach of contract claims are not properly pled

17 under Rule 8—Plaintiffs nonsensically bring identical claims in various causes of action and

18 combine other causes of action within one, failing to provide adequate notice of exactly the

19 statutes they rely on or the conduct complained of.  Moreover, Rule 9(b) applies to the entirety of

20 the FAC because all Plaintiffs' claims sound in fraud.  Rule 9(b) requires that Plaintiffs plead

21 with specificity the alleged misrepresentations they were exposed to and relied on.  The FAC is

22 devoid of any such allegations; despite Plaintiffs' amended allegations about what they "would

23 like" and "believe[d]," they provide no factual allegations as to how or why those beliefs are a

24 result of Apple's statements or other conduct.  (*See* FAC ¶ 21.)  The breach of contract claims fail

25 for the additional reason that Plaintiffs do not allege any contract term that Apple allegedly has

26 breached.

27        At its core, the FAC takes issue with managing one's data on iCloud, but fails to provide

28 any factual or legal basis for its claims.  The FAC should be dismissed in its entirety.

DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
ny- 2217106

2

## II.     FACTUAL BACKGROUND

Throughout, the FAC references, relies on, and quotes the iCloud Terms and Conditions and various Apple communications and Apple Support webpages.[1]  As discussed below, however, putting Plaintiffs' claims into context reveals that a number of Plaintiffs' allegations contradict the very documents to which they point.[2]  Indeed, even if Plaintiffs' mischaracterizations were taken as true, they fail to state a claim for the reasons set forth.

### A.     Apple's iCloud Service Is Provided Free of Charge for Up to 5GB of Storage

Apple's iCloud service offers users a variety of services, including storing "photos, files, notes, and more" across a user's Apple devices, so that such content "is safe, up to date, and available" wherever the user is.  (Declaration of Alexis Amezcua ("Amezcua Decl."), Ex. A, iCloud Terms and Conditions ("iCloud Ts & Cs").)  At set-up of an Apple device, a user may opt into iCloud or choose not to enable an iCloud account.  (*Id*., Introduction (referring to a user choosing not to enable iCloud).)  A user may also opt into, disable, or manage their iCloud storage at any time through Settings on any device.  (*Id*., Section VII.A.)  When a user opts into iCloud for the first time, they are presented with the iCloud Terms and Conditions, which explain not only how iCloud is enabled and disabled, but also how to manage one's data and where to find more information about storage plans and pricing.  (*Id.*, Introduction & Section A.)  The iCloud Terms and Conditions specifically inform the user that "[y]ou are solely responsible for . . . all activities that occur on or throughout your [iCloud] account. . . [.]"  (*Id*., Section IV.A.)

Each iCloud user is provided 5GB of iCloud storage—at no charge to the user, and which never goes away.  (FAC ¶¶ 7-8, 30; *see also* Amezcua Decl., Ex. B ("iCloud Information").)  Depending on a user's individual needs, Apple offers three levels of capacity for purchase:  50GB at $0.99 per month; 200GB at $2.99 per month; and 2TB at $9.99 per month.  (FAC ¶ 7

---

[1] Accordingly, Apple files herewith a Request for Judicial Notice regarding these documents.

[2] Notably, as discussed further below, Plaintiffs do not allege that they ever viewed or relied upon any of these representations.

(erroneously identifying pricing)[3]; *see also* Amezcua Decl., Ex. B, iCloud Information.)

## B. Apple Communicates Each Aspect of iCloud to Users Before, During, and After Set-Up and During Use of the Service

According to Plaintiffs, "Apple first notifies a consumer about the possible cost of iCloud when the consumer begins to approach the limit of the 5GB storage that has been provided for free." (FAC ¶ 33.) To the contrary, Apple communicates to users regarding opting into and disabling iCloud, payment structure, how to manage one's data, and where to direct questions regarding iCloud during each stage of iCloud use. (*See* Amezcua Decl., Ex. A., iCloud Ts & Cs; *id*., Ex. C ("iCloud Capacity Email"); *id*., Ex. D ("iCloud Receipt").)

### 1. Communication As Free 5GB Storage Limit Approaches

As Plaintiffs concede, Apple provides email notifications as the user approaches the 5GB free storage limit, alerting the user at different points that their storage is almost full, providing the user's current usage amount, and detailing that the user can either (1) manage and reduce their data to stay within the free 5GB level, or (2) upgrade and purchase additional iCloud storage on a monthly basis. (*See* Amezcua Decl., Ex. C, iCloud Capacity Email; FAC ¶ 33.) These email notifications also advise the user that, if he or she exceeds the storage plan, their devices will stop backing up to iCloud. (*See* Amezcua Decl., Ex. C, iCloud Capacity Email; *see also id*., Ex. A, iCloud Ts & Cs at I.C. ("Exceeding any applicable . . . storage capacity . . . may prevent you from backing up to iCloud, adding documents, or receiving new email sent to your iCloud email address.").) In these emails, Apple provides the cost for the next level of additional iCloud storage, as well as a hyperlink to a user's account, an Apple Support page regarding iCloud, and the iCloud Terms and Conditions. (*See* Amezcua Decl., Ex. C., iCloud Capacity Email; *id*., Ex. E ("iCloud Support: Manage Storage").)[4]

---

[3] The availability of pricing information on Apple's website, to which the FAC cites (albeit erroneously), also undermines Plaintiffs' contention that they did not know iCloud would be as "expensive as it has turned out." (FAC ¶ 21.)

[4] The FAC claims that the hyperlink to the Apple Support page directs a user to "an iTunes page that has nothing clearly to do with iCloud" and inexplicably repeatedly alleges that Apple provides "[n]othing about a bill." (FAC ¶¶ 37-39.) Not so. By clicking on the "Support" link included with an email notifying a user that the 5GB threshold approaches, the user is taken

### 2.    Managing Storage on iCloud

Users may upgrade or downgrade their storage on their device at any time.  (*See* Amezcua Decl., Ex. A, iCloud Ts & Cs, Section III.A; *id.*, Ex. B, iCloud Information.)  Indeed, according to Plaintiffs, as of 2018, only 20% of iCloud users upgraded from the free 5GB storage; the other 80% thus remained at 5GB or below.  (FAC ¶ 8.)  Contrary to Plaintiffs' contentions, Apple provides users with resources they can consult throughout the process of using iCloud and managing their data.  For example, Apple provides a support page where users can find step-by-step instructions for how to downgrade or cancel their iCloud subscription.  (*See* Amezcua Decl., Ex. G ("iCloud Support: Downgrade or Cancel").)  The iCloud Terms and Conditions also provide information on how to manage one's iCloud data, including how to downgrade.  (*See* Amezcua Decl., Ex. A, iCloud Ts & Cs, Section III.A.)  Apple's support page further details "what happens when you downgrade your [iCloud] storage plan."  (*See* Amezcua Decl., Ex. G, iCloud Support: Downgrade or Cancel.)  On the same support page, Apple provides a link to additional resources users can consult to learn how to back up their iCloud storage or how they can delete data to free up additional iCloud storage.  (*Id.*)  Should a user elect to manage their storage by purchasing additional iCloud storage, they can select the iCloud subscription plan best suited to their data needs.  (*See* Amezcua Decl., Ex. A, iCloud Ts & Cs, Section III.A.)  Upon upgrading, the user is provided with a receipt detailing their payment, providing that their iCloud subscription will automatically renew each month until the user either cancels or downgrades to the free 5GB level of iCloud storage, and providing a hyperlink to the Apple Support page regarding how to downgrade or cancel your iCloud storage plan.  (FAC ¶ 35; *see also* Amezcua Decl., Ex. D, iCloud Receipt.)  If a user elects to downgrade their storage at any point, Apple informs the user that iCloud will not sync or update their information if their storage exceeds their

---

to a page entitled "iCloud Support," which discusses how to set up iCloud, how to retrieve a forgotten password, and much more regarding iCloud.  (*See* Amezcua Decl., Ex. D, iCloud Receipt.)  The monthly receipt provided to users when they upgrade iCloud provides:  "If you have any questions about your bill, contact support," which takes a user to an Apple webpage entitled "Billing and Subscriptions."  (*See* Amezcua Decl., Ex. C, iCloud Capacity Email; *id.*, Ex. F ("Billing and Subscriptions").)

1   plan.  (*See* Amezcua Decl., Ex. G, iCloud Support: Downgrade or Cancel.)

2          Nowhere does Apple represent to users that it will take on the task of managing individual

3   users' data to remain under 5GB.  The iCloud service is "designed and intended for personal use

4   on an individual basis."  (*See* Amezcua Decl., Ex. A, iCloud Ts & Cs, Section IV.A.)  Only a

5   given user knows how they want to use their iCloud storage.  (*See* Amezcua Decl., Ex. E, iCloud

6   Support: Manage Storage (identifying various ways in which a user may use iCloud, including for

7   photos, back-ups, videos, documents, etc.).)  Which photos, videos, documents, etc. a user

8   chooses to keep is up to that user.

9                  **C.      The Named Plaintiffs Never Allege They Did Not Need or Use the
10                          Service They Paid For, or Received For Free**

11         Plaintiffs are eight Apple device users who each use various levels of Apple's iCloud

12  storage service.  (FAC ¶¶ 14, 16-20.)  Two of the named plaintiffs (William Rutter and Robert

13  Barker) admit that they have successfully managed their data so as to stay within the 5GB of free

14  storage.  (*Id.* ¶¶ 16, 20.)  None of the named plaintiffs, including those who exceeded the 5GB of

15  free storage, allege that they paid for a service they did not need.  Nor do they allege that they did

16  not use the storage amount for which they paid.  The FAC admits Apple provides information on

17  its website about how to manage data (*see id.* ¶ 16); Plaintiffs do not point to any obligation

18  requiring that Apple provide further information on this point, nor do they allege that Apple

19  misrepresented the ability to manage data.[5]  All of the named plaintiffs continue to use iCloud

20  storage to the present.  (*Id.* ¶¶ 16-20.)

21  **III.   LEGAL STANDARDS**

22                  **A.      Rule 12(b)(1)**

23         "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction

24  under Federal Rule of Civil Procedure 12(b)(1)."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067

25  (9th Cir. 2011).  The plaintiff has the burden of proving subject matter jurisdiction.  *See In re*

26  _____

27         [5] For example, Plaintiff Garamani admits that she (1) wanted iCloud storage at the 50GB
     level (so, not free); and (2) could not manage her account because she forgot her password.  (FAC
28  ¶ 18.)

1  *Wilshire Courtyard*, 729 F.3d 1279, 1284 (9th Cir. 2013) ("The burden of establishing subject

2  matter jurisdiction rests on the party asserting that the court has jurisdiction.").  Rule 12(b)(1)

3  jurisdictional attacks may be either facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d

4  1035, 1039 (9th Cir. 2004).  In a facial attack, the challenger asserts that the allegations contained

5  in a complaint are "insufficient on their face to invoke federal jurisdiction." *Id.* at 1039.  "The

6  district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6) . . . [.]"

7  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

8  ### B.    Rule 12(b)(6)

9  Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a complaint if it

10  fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

11  dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

12  face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard

13  requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant

14  has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must provide

15  "more than labels and conclusions." *Twombly*, 550 U.S. at 555.  The Court does not credit

16  allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.

17  *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).

18  ## IV.    ARGUMENT

19  ### A.    Each of Plaintiffs' Claims Fails Because Plaintiffs Have Not and Cannot
Allege Standing

20

21  In an attempt to allege injury, Plaintiffs add a single substantive paragraph to the FAC,

22  premising their entire injury theory on their alleged inability to manage their iCloud service "in

23  the way they would like" and "in the way they believe they have been assured they can."  (FAC

24  ¶ 21.)  As with the original Complaint, the FAC is subject to dismissal because Plaintiffs have not

25  and cannot allege standing, despite this addition.  Plaintiffs lack Article III standing because they

26  have not suffered an injury in fact.  Additionally, Plaintiffs lack statutory standing to pursue their

27  claims because they have not alleged an economic injury that is the result of any alleged statutory

28  violation by Apple.

DEFENDANT APPLE INC.'S MOTION TO DISMISS PLANTIFFS' FIRST AMENDED COMPLAINT

1

**1.    Plaintiffs Lack Article III Standing to Pursue Any Claim**

2          To establish standing, Article III of the United States Constitution requires plaintiffs to

3    show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct

4    of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo,*

5    *Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

6    560–61 (1992)).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an

7    invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or

8    imminent,' not conjectural or hypothetical."  *Spokeo*, 136 St. Ct. at 1548.  A plaintiff may not

9    allege only a "bare procedural violation" of a statute divorced from a concrete injury.  *Id.* at 1549.

10   In *TransUnion LLC*, the Supreme Court recently reaffirmed this point:  the alleged violation of a

11   statute does not provide Article III standing unless that violation <u>*causes*</u> concrete injury.  141 S.

12   Ct. at 2205 ("But under Article III, an injury in law is not an injury in fact.  Only those plaintiffs

13   who have been *concretely harmed* by a defendant's statutory violation may sue that private

14   defendant over that violation in federal court.").

15         Having had an opportunity to amend their pleading, Plaintiffs still have not alleged a

16   concrete injury.  Plaintiffs claim that they were unable to manage their data "in the way they

17   would like" and "in the way they believe they have been assured they can by Apple" (FAC ¶ 21),

18   but they allege no injury flowing from any misconduct on the part of Apple.  That is, Plaintiffs

19   still do not allege that they did not receive the free 5GB of iCloud storage, that they overpaid for

20   the free 5GB of iCloud storage, or that they did not want or use the 5GB of iCloud storage.  *See,*

21   *e.g., Papasan v. Dometic Corp.*, No. 16-CV-02117-HSG, 2017 WL 4865602, at *5 (N.D. Cal.

22   Oct. 27, 2017) (Gilliam, J.) (finding named California plaintiff lacked standing where her

23   allegations were "vague and speculative," she "allege[d] in a conclusory manner that she

24   'unknowingly overpaid' for her refrigerator," and she confirmed that she "at all times used [it] for

25   the purpose for which it was intended").

26         Instead, Plaintiffs make a conclusory allegation that they would not have "chosen iCloud

27   if they had known it would be so unmanageable and expensive" and "each would have looked for

28   a different product or service."  (FAC ¶ 21.)  Plaintiffs, however, point to no legal violation,

1   breach of a legal duty, misrepresentation or omission by Apple that allegedly resulted in

2   Plaintiffs' inability to manage their own data.  (*See generally* FAC.)  Nor do Plaintiffs allege that

3   they ever looked for or considered such an alternative (at the time of purchase or to this day), or

4   that their inability to manage their data resulted in any way from the iCloud service, rather than

5   the individual choices they made about their data.  (*See generally* FAC.)

6        Further, Plaintiffs still concede that the 5GB of storage is free and provided "at no cost,"

7   that the upgraded iCloud storage plans have "small monthly payments," and that they continue to

8   use iCloud.  (FAC ¶ 7 (alleging 5GB of storage is "provided at no cost"); ¶ 10 (referring to "the

9   free storage" and "what has been stored for free"); ¶ 30 (alleging "iCloud is free"); ¶ 33 (referring

10  to the 5GB of iCloud as "storage that has been provided for free"); ¶¶ 16-20 (describing each

11  Plaintiffs' use of iCloud storage); *see also id.*, Ex. 9 ("Notice under California's CLRA, section

12  1782" noting that "the price is small" for iCloud and iCloud is a "cheaper and more intuitive way

13  to save data" than any available alternative).)  There is no injury here.

14       Nor does Plaintiffs' single new paragraph do anything to strengthen the allegation that

15  they suffered an injury because the 5GB of free storage is purportedly a "free trial" for which they

16  claim Apple failed to make the requisite disclosures under the ARL.  (FAC ¶¶ 45, 85.)  As

17  Plaintiffs continue to concede, the 5GB of iCloud storage "never goes away," "[c]onsumers may

18  stay at the 5GB level," and it is not "presented as 'the *first* 5GB of storage.'" (*Id.* ¶¶ 116, 134,

19  148, 160, 171, 182 (emphasis added).)  In other words, consumers do not lose the 5GB of storage,

20  are never required to pay for it, and are never required by Apple to upgrade to paid storage.  (*See

21  id.* ¶¶ 116, 117, 134, 148, 160, 171, 182*; see generally* Amezcua Decl. Ex. A, iCloud Ts & Cs.)

22  There is no "free trial" given these facts.  Tellingly, Plaintiff William Rutter and Plaintiff Barker

23  admit that they, along with 80% of iCloud users, have managed their data and stayed within the

24  free 5GB of iCloud storage.  (*Id.* ¶¶ 8, 16, 20.)  Therefore, they have never paid for storage and

25  cannot have experienced economic harm or injury of any kind.  (*Id.* ¶¶ 8, 16, 20.)  Plaintiffs have

26  not alleged an injury in fact under this theory either.

27       Plaintiffs who elected to upgrade from the free 5GB of iCloud storage likewise still do not

28  allege an injury.  These Plaintiffs do not claim that any legal violation or breach of a legal duty by

Apple, including Apple's alleged failure to make certain disclosures under the ARL, caused them harm or affected them in any way at all.  For example, they do not allege that they would not have upgraded if Apple made the ARL disclosures they allege were not made; that they were billed for a service they did not want or use; that they attempted to downgrade their storage and were unable to as a result of any conduct by Apple; or that they were unaware that the upgraded storage plan renewed automatically unless cancelled.[6]  (FAC ¶¶ 16-20.)  Rather, Plaintiffs indicate that they continued using and *still* use the iCloud storage service.  (*Id.* ¶ 14 (alleging they have sought to "manage the [iCloud] service so as to use the storage level they need").)[7]

Plaintiffs also now claim that had iCloud been "honest[ly] advertis[ed]" there would have been "the consequent likely opting out by consumers such as plaintiffs[.]"  (*Id.* ¶ 21.)  But Plaintiffs offer no factual support whatsoever for their sheer speculation regarding such hypothetical "opting out."  Plaintiffs do not allege that they themselves have ever opted out or attempted to opt out of iCloud, or that they have even considered an alternative storage service.  Further, Plaintiffs do not identify such an alternative, let alone allege facts to suggest that it would be easier or cheaper to manage their storage under any such alternative, where their storage issues result from their personal choices about their data.  Similarly, Plaintiffs do not allege any misrepresentation or omission on which to base their claim that iCloud was not "honestly advertised."  Further, Plaintiffs still continue to use iCloud and, according to Plaintiffs, 80% of users have managed their data and stayed within the free 5GB of iCloud storage with the information Apple has provided.  (*Id.* ¶ 8.)  Plaintiffs' "opt out" theory is pure speculation, unsupported by any facts and, indeed, contradicted by the facts Plaintiffs do allege.

---

[6] Plaintiff Garamani alleges that she tried "to manage her account at the 50GB level but could not remember her password, [sic] required to lower her storage[.]"  (FAC ¶ 18.)  She does not allege that she made any effort to obtain a new password, nor that she was unable to downgrade due to any conduct by Apple.  (*Id.*)

[7] Plaintiffs likewise fail to satisfy the requirements for Article III standing to seek injunctive relief.  "To have standing to obtain injunctive relief, a plaintiff must allege that a 'real or immediate threat' exists that he will be wronged again."  *Rahman v. Mott's LLP*, No. CV 13--3482 SI, 2014 WL 5282106, at *5 (N.D. Cal. Oct. 14, 2014) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  As described above, Plaintiffs have not pled any allegations sufficient to show that they have been wronged, let alone that they face an immediate threat of repeat injury.

The heart of Plaintiffs' claims is that they were injured because Apple did not manage or help them manage their own data to stay within 5GB of iCloud storage.  Plaintiffs, however, can point to no obligation Apple had to undertake such efforts, nor allege that such management of each individual's personal photos, email, and other data by Apple would be feasible or advisable given principles of consumer choice as to privacy and data protection.[8]  The lack of such allegations is fatal as both *Spokeo* and *TransUnion* make clear that Plaintiffs are required to allege an injury that *results* from the alleged "invasion of a legally protected interest."  *Spokeo, Inc.*, 136 S. Ct. at 1548; *TransUnion LLC*, 141 S. Ct. at 2205 (noting that "an injury in law is not an injury in fact," and a plaintiff must be "*concretely harmed* by a defendant's statutory violation").

Further, to the extent Plaintiffs premise their theory on purported violations of the ARL, the ARL does not apply to the 5GB of free storage.  By the express terms of the statute itself, the ARL applies only to "the practice of ongoing *charging* of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service."  *See* Cal. Bus. & Prof. Code § 17600 (emphasis added). It is undisputed that there is no charge, let alone a recurring charge, for the 5GB of iCloud storage.  As for the upgraded plans, Plaintiffs cannot show injury, as discussed above.  And, to the extent Plaintiffs purport to rely on the ARL's Section 17603 "unconditional gift" provision, that provision applies only to goods, not services like iCloud.  *See e.g., Robinson v. OnStar, LLC*, No. 15-CV-1731 JLS (MSB), 2020 WL 364221, at \*23 (S.D. Cal. Jan. 22, 2020) (holding that "Section 17603 of the ARL is of no help to Plaintiff because that provision applies to 'goods' and not 'services'").[9]  In short, Plaintiffs have not alleged an injury as required for Article III standing

---

[8] Apple does make information available to users about how they can manage their data and steps to take if they have questions.  (*See supra* Section II.B.2)

[9] The iCloud storage provided here is clearly a service, as Plaintiffs admit (FAC ¶ 6 ("iCloud is a computer data storage *service*") (emphasis added); ¶ 7 ("Apple provides iCloud *service*") (emphasis added); ¶ 8 ("Apple receives for its iCloud *service*") (emphasis added); it does not involve tangible, physical materials of any kind, downloaded or otherwise.  *See also Mayron v. Google, Inc.* No. 2015-1-CV-275940, 2016 WL 6822258 (Cal. Super. Ct. Feb. 26, 2016) ("*Mayron I*") (finding that cloud-based storage "is not a tangible good," but "is intangible and is a service") *aff'd on other grounds*, 54 Cal. App. 5th 566, 572 (2020)).

1   and the Court should dismiss the FAC in its entirety.

2           **2.      Plaintiffs Also Lack Standing under Additional Standing Requirements of the UCL, FAL, and CLRA**

3

4           Plaintiffs further fail to establish statutory standing for their claims under the UCL, FAL

5   and CLRA even after amending their pleading.[10]  *Herrera v. Estee Lauder Cos.*, No. SACV 12-

6   01169-CJC(ANx), 2012 WL 12507876, at *2 (C.D. Cal. Sep. 20, 2012) (noting that "[t]he UCL,

7   FAL, and CLRA have independent requirements for standing," all of which require allegations

8   that plaintiff's injury was caused by the alleged statutory violation).  As set forth below, Plaintiffs

9   do not and cannot allege injury "caused by" the alleged violations of the ARL, and accordingly

10  they cannot demonstrate injury or standing for the UCL claims premised on the ARL (Causes of

11  Action 1-5).  Plaintiffs similarly fail to meet the statutory standing requirements of the UCL,

12  FAL, or CLRA for their non-ARL based claims (Causes of Action 6-13), as Plaintiffs also fail to

13  allege facts demonstrating injury as the result of any alleged violation of those statutes.

14          California's UCL has an express standing requirement permitting an action only by a

15  person who "has suffered injury in fact and has lost money or property *as a result of* the unfair

16  competition."  *See* Cal. Bus. & Prof. Code § 17204 (emphasis added).  "It is not enough that a

17  plaintiff lost money; to have standing, there must be a causal link between the unlawful practice

18  and the loss."  *See Mayron v. Google LLC*, 54 Cal. App. 5th 566, 574 (2020) ("*Mayron II*")

19  (affirming dismissal of plaintiff's ARL claim); *see also Hall v. Time Inc.*, 158 Cal. App. 4th 847,

20  857 (2008), *as modified* (Jan. 28, 2008) (affirming judgment on the pleadings where plaintiff

21  failed to allege causation and therefore lacked UCL standing).  Plaintiffs do not meet this

22  standard.

23          In *Mayron II*, the California Court of Appeal specifically addressed what a plaintiff must

24  plead to establish UCL standing in a case based on alleged ARL violations and alleged facts

25  similar to those here.  *Mayron II* held that the plaintiff must allege that he or she "ordered

26  ───────────────
            [10] As discussed below, all of Plaintiffs' thirteen claims appear to be premised on the UCL,
27  FAL, or CLRA, despite also referencing other claims.  (*See e.g.*, FAC at 22 ("Seventh Cause of
    Action:  Breach of contract and breach of contract as unfair competition under Cal. Bus. & Prof.
28  Code section 17200").)

1    increased [cloud-based] storage but would not have done so had the disclosures been provided, or

2    that he [or she] would have cancelled the additional storage had it been easier to do so." *Mayron*

3    *II*, 54 Cal. App. 5th at 574.  The FAC here is completely devoid of any such allegations, or any

4    other injury allegedly resulting from the purported ARL violations.  (*See generally* FAC.)  While

5    the ARL focuses on the auto-renewal of subscriptions, the crux of Plaintiffs' claims is not that

6    they did not want their iCloud subscriptions to auto-renew or that they did not know the

7    subscriptions would renew, but that Plaintiffs were unable to manage their own data "in the way

8    they believe they have been assured they can by Apple."  (FAC. ¶ 21.)  The ARL, however, does

9    not require any disclosures regarding data management.

10          With regard to what the ARL does require to be disclosed, Plaintiffs still do not allege loss

11   *as a result of* an alleged ARL violation.  *First*, Plaintiffs cannot allege that they suffered an

12   economic injury based on the free 5GB of iCloud storage because, as they concede, it was

13   provided "at no cost."  (*Id.* ¶ 7.)  *See also Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1008,

14   1012-13 (S.D. Cal. 2009) (plaintiff lacked standing under the UCL to bring a claim arising out of

15   a gift card he received for free).  *Second*, Plaintiffs who upgraded their iCloud storage not only

16   received and used the storage they paid for, but they do not allege that they did not need or want

17   the storage.  (*See generally* FAC.)  Nor do they allege that they attempted to downgrade their

18   storage.  (*See* FAC ¶¶ 16-20.)  Accordingly, they cannot establish a causal connection between

19   their payments and any unlawful, unfair, or deceptive business practice by Apple.  *Doe v.*

20   *SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1082 (N.D. Cal. 2014) (acknowledging that plaintiffs

21   cannot assert claims under either the UCL or the CLRA where they "purchased or continued to

22   purchase Defendant's services after discovering Defendant's allegedly fraudulent conduct . . .").

23   Even more, the FAC makes clear that all Plaintiffs continue to use their various levels of iCloud

24   storage, and there are no allegations that Plaintiffs would have done otherwise had Apple made

25   different disclosures required by the ARL, when the ARL contains no requirement regarding data

26   management.  (FAC ¶¶ 16-20); *see also Lopez v. YP Holdings, LLC*, No. CV188791-MWF

27   (MAAx), 2019 WL 6354387, at *4 (C.D. Cal. July 9, 2019) ("A plaintiff fails to satisfy the

28   causation prong of the statute if he or she would have suffered 'the same harm whether or not a

1   defendant complied with the law.'") (citation omitted).  Accordingly, Plaintiffs lack standing to

2   assert their ARL-based UCL claims.

3         Plaintiffs not only fail to point to any requirement of the ARL regarding the disclosure of

4   how to manage one's data, they fail to point to *any requirement of any statute*, which would

5   require Apple to say or do more regarding data management.  As a result, for the same reasons

6   Plaintiffs cannot establish standing for their ARL-based claims, they also fail to establish standing

7   for their UCL, FAL, and CRLA claims separate and apart from the ARL.  (*See* Causes of Action

8   6-13.)  All these statutes require lost money or property resulting from the alleged violation.  *See*

9   *e.g.*, Cal. Bus. & Prof. Code § 17535 (FAL); *Kwikset Corp. v. Super. Ct*., 51 Cal. 4th 310, 325

10   (2011); *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 646 (2009) ("[I]n order to bring a CLRA

11   claim, plaintiff must allege loss of money or property *resulting from* the alleged violation.");

12   *Wood v. Motorola Mobility, Inc.*, No. C-11-04409-YGR, 2012 WL 892166 at *7 (N.D. Cal. Mar.

13   14, 2012) (holding plaintiffs lacked standing as they "[did] not allege that they were injured 'as a

14   result of' the . . . violation of the FAL") (citation omitted).

15         Here, none of Plaintiffs' non-ARL based UCL, FAL and CLRA claims meet this standard.

16   Plaintiffs allege that managing data, downgrading to stay within the free 5GB of storage, and

17   stopping the use of iCloud is "not eas[y]."  (FAC ¶¶ 134-36, 148-50, 160-62, 171-73, 182-84;

18   192.)  Plaintiffs further allege they could not manage their data "in the way they would like" and

19   "in the way they believe they have been assured they can by Apple."  (*Id.* ¶ 21.)  These

20   allegations, however, fail to identify any harm as a result of allegedly unlawful conduct by Apple,

21   nor do Plaintiffs point to any obligation for Apple to have disclosed or done more in this regard.

22   No plaintiff alleges that he or she did not receive the 5GB of free iCloud storage or the upgraded

23   storage they paid for; that they did not want the upgraded storage they paid for; or that they were

24   unable to downgrade their storage due to Apple's conduct.  (*See generally* FAC.)  Indeed,

25   William Rutter admits that he has "figured out how to manage his computer data so that he can

26   keep within the 5GB limit" (FAC ¶ 16) and Robert Barker also admits that his data remains

27   within the 5GB limit (*id.* ¶ 20); none of the Plaintiffs claim they tried to downgrade and were

28   unable to do so, or that they consulted Apple's myriad Support pages on these topics and were

1   still unable to downgrade.  Further, that Plaintiffs may have been unable to manage their own data

2   does not state a harm that flows from any alleged violation by Apple.  Apple had no obligation to

3   manage Plaintiffs' storage for them and could not have done so given that data management is

4   dependent on an individual user's choices.  To assist users with making their data management

5   choices, Apple made information available on Apple Support regarding managing storage.  (*See*

6   *supra* Section II.B.2.)

7        For all of the above reasons, Plaintiffs fail to allege any injury caused by Apple and thus

8   all of their claims—the entirety of the FAC—must be dismissed for lack of standing.

9                    **B.        The FAC Is Improperly Pled under Rule 8**

10       Plaintiffs' FAC is subject to dismissal for an additional reason—it fails to meet the

11  minimum pleading requirements of Rule 8.  Rule 8 requires that a plaintiff provide a "short and

12  plain statement" of the facts in order to "give the defendant fair notice of what the . . . claim is

13  and the grounds upon which it rests."  *Twombly*, 550 U.S. at 554–55 (quoting Fed. R. Civ. P.

14  8(a)(2)).  Here, despite their attempt to amend the heading to various causes of action, Plaintiffs'

15  first five causes of action remain repetitive, convoluted, and appear to assert identical ARL-based

16  claims in separate causes of action.[11]  Further, Plaintiffs' Sixth and Seventh Causes of Action

17  combine two claims, as Plaintiffs tack on a UCL claim to each "breach of contract" cause of

18  action, making it unclear which legal theory they aim to pursue.  Such ambiguous pleading does

19  _____

20       [11] *Compare* FAC at 11-13 ("First Cause of Action: Cal. Bus. & Prof. Code sec. 17600
     (continuous service offer) as unfair competition under Cal. Bus. & Prof. Code sec. 17200"

21   (regarding Apple's alleged failure to present continuous offer terms, an explanation of the price
     after a free trial, and an acknowledgment of how to cancel iCloud)) *and id*. at 13-15 ("Second

22   Cause of Action: Cal. Bus. & Prof. Code sec. 17600 (automatic renewal offer) as unfair
     competition under Cal. Bus. & Prof. Code sec. 17200" (regarding Apple's alleged failure to
     present description of the auto-renewal terms, including the cancellation policy, and failure to

23   provide a post-purchase acknowledgement, including the cancellation policy)) *with id.* at 17-20
     ("Fifth Cause of Action: Cal. Bus. & Prof. Code sec. 17600 (continuous service offer and

24   automatic renewal offer) as unfair competition under Cal. Bus. & Prof. Code sec. 17200"
     (regarding Apple's alleged failure to present continuous offer terms, an explanation of the price

25   after a free trial, and failure to provide a description of the cancellation policy) *and id*. at 15-16
     ("Third Cause of Action: Cal. Bus. & Prof. Code sec. 17600 (automatic renewal offer) as unfair

26   competition under Cal. Bus. & Prof. Code sec. 17200" (regarding Apple's alleged failure to
     provide a post-purchase acknowledgment, including "information regarding how to cancel")).

27

28

not provide Apple with fair notice of the specific claims asserted against it, which is an additional ground for dismissal.  *See, e.g., Lopes v. Reddit, Inc.,* No. 20-CV-08086-NC, 2021 WL 2416897, at *1 (N.D. Cal. June 14, 2021) (dismissing complaint where it did not comply with Rule 8 and Rule 10, in part because "certain paragraphs cover[ed] multiple claims"); *Moon v. Cnty. of Orange*, No. SACV 19-258 JVS (KESx), 2020 WL 2332164, at * 3 (C.D. Cal. Mar. 18, 2020) (dismissing plaintiffs' "convoluted and incomprehensible" complaint for failure to comply with FRCP 8).

### C.   All Plaintiffs' Claims Fail to Satisfy Rule 9(b)'s Particularity Requirement

The entire FAC, like Plaintiffs' original Complaint, sounds in fraud.  It is well settled that claims sounding in fraud must additionally comply with the heightened pleading requirements of Rule 9(b), which requires that a complaint "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The pleader must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)); *see also Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted) (Rule 9(b) requires allegations "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged").  "When an entire complaint is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

Even with the opportunity to amend, Plaintiffs do not come close to satisfying Rule 9(b).  Plaintiffs have merely added a few new, vague allegations that largely repeat their prior threadbare allegations and fail to identify any specific misrepresentations or omissions by Apple concerning iCloud.  (FAC ¶¶ 14, 21.)  All of Plaintiffs' claims still sound in fraud, as they each rest on the core allegations that Apple allegedly misrepresented users' ability to manage their own

1   data.[12]  (*Id.* ¶¶ 14, 21, 49-50, 61-63, 70, 77, 92, 135-37, 148-51, 160-62, 171-73, 182-84, 192-94);

2   *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (2009) (finding claim of "nondisclosure is a

3   claim for misrepresentation in a cause of action for fraud and must be plead with particularity

4   under Rule 9(b)").  As such, Ninth Circuit law requires that these claims meet the heightened

5   pleading standard of Rule 9(b) regardless of the underlying state law.  *See id.* at 1125 (applying

6   Rule 9(b) to CLRA and UCL claims where plaintiff alleged and relied on a "unified course of

7   fraudulent conduct"); *see also In re Google, Inc. Priv. Policy Litig.*, 58 F. Supp. 3d 968, 984

8   (N.D. Cal. 2014) ("If the unlawful conduct is part of a uniform course of fraudulent conduct, it

9   must meet Rule 9(b)'s heightened pleading standards."); *Parducci v. Overland Sols.*, 399

10  F.Supp.3d 969, 977 (N.D. Cal. 2019) (applying Rule 9(b) to dismiss elder abuse claim

11  "sound[ing] in fraud").

12        Here, Plaintiffs' claims require, at a minimum, a showing that each Plaintiff (i) was

13  exposed to an alleged misrepresentation or omission, and (ii) relied on that misrepresentation or

14  omission.[13]  Plaintiffs allege neither.  Plaintiffs opine that they were unable to manage their own

15  data, but fail to identify any Apple representations they were exposed to and relied upon

16  regarding their ability to manage their data.  (FAC ¶¶ 14, 16-21.)  Instead, the FAC makes general

17  references to Apple "advertisements," "assurances" and "representations," but fails to provide the

---

19        [12] Plaintiffs' FAC re-styles Plaintiffs' causes of action, but fails to do so in a way that
20  provides any meaningful clarity as to what the claims are actually asserting.  The FAC appears to
    assert five "unfair" claims under the UCL, each based on repetitive, and in some cases identical,
21  ARL violations pertaining to alleged omissions (COA 1 through 5).  Plaintiffs also assert an
    additional "unfair" UCL claim (COA 10) and a "fraud" UCL claim (COA 11), as well as CLRA
22  claims (COA 8 and 13), a FAL claim (COA 9), and an Elder Abuse claim (COA 12) based on
    alleged misrepresentations or omissions, and all are also plead "as unfair competition" under the
23  UCL.  The FAC also asserts two breach of contract claims, labeled as "Breach of contract and
    breach of contract as unfair competition under Cal. Bus. & Prof. Code section 17200."  To the
24  extent these claims appear to all be premised on the UCL, they must meet Rule 9(b)'s heightened
    pleading requirement for the reasons cited above.

25        [13] *See, e.g., Doe v. SuccessfulMatch.com*, 70 F.Supp.3d at 1075 ("[T]o adequately plead a
26  CLRA claim, a plaintiff must allege that she relied on the defendant's alleged misrepresentation
    and that she suffered economic injury as a result."); *Great Pacific Sec. v. Barclays Capital, Inc.*,
27  743 F.App'x. 780, 783 (9th Cir. 2018) ("Plaintiffs alleging claims under the FAL and UCL are
    required to plead and prove actual reliance on the misrepresentations or omissions at issue.")
28  (citing *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 326-27(2011)).

---

DEFENDANT APPLE INC.'S MOTION TO DISMISS PLANTIFFS' FIRST AMENDED COMPLAINT

ny- 2217106

1   "who, what, when, where, and how" of the alleged misconduct.  That failure is critical.  *See*

2   *Kearns*, 567 F.3d at 1124 (affirming dismissal of Plaintiff's fraud-based claims because

3   Plaintiff's allegations that he saw and relied on unspecified advertisements and sales materials

4   "fail[ed] to allege . . . the particular circumstances surrounding" each alleged misrepresentation as

5   required by Rule 9(b)).  Plaintiffs allege only that their inability to manage their own data is based

6   on what "they *believe* Apple represented" and what "they *believe* they have been assured . . . by

7   Apple," not what Apple *actually* represented or assured them.  (FAC ¶¶ 14, 21 (emphasis added).)

8   Tellingly, not a single Plaintiff connects their attempts to manage their own data to any Apple

9   representation they saw that informed their belief about their ability to do so.  (*Id*. ¶¶ 14, 16- 21.)

10        In short, Plaintiffs' FAC does nothing to amend their prior threadbare allegations.

11   Plaintiffs still fail to identify *any* Apple representations they saw or relied on concerning iCloud,

12   let alone regarding the free 5GB of iCloud storage or attempting to downgrade or otherwise

13   manage iCloud storage.  Having failed to plead they were even exposed to an alleged

14   misrepresentation or omission, Plaintiffs likewise fail to allege they relied on any such statements

15   or omissions, let alone do so with the requisite specificity.[14]  *See Durrell v. Sharp Healthcare*,

16   183 Cal. App. 4th 1350, 1363 (2010) ("Where a UCL claim sounds in fraud, regardless of the

17   specific UCL prong invoked by the plaintiff, the 'as a result of' language imposes an actual

18   reliance requirement on plaintiffs prosecuting a private enforcement action."); *see also Friedman*

19   *v. Mercedes Benz USA LLC*, No. CV 12-7204 GAF (CWx), 2013 WL 8336127, at *6 (C.D. Cal.

20

21

22        [14] To the extent Plaintiffs argue that their claims are based on an alleged omission, Rule
     9(b) still requires pleading with specificity, which Plaintiffs have not done here.  *See Papasan*,
23   2017 WL 4865602, at *5 (stating that for claims sounding or grounded in fraud, the "claim must
     state 'the who, what, when, where, and how' of the alleged conduct, and 'set forth an explanation
24   as to why [a] statement or omission complained of was false and misleading'") (citations
     omitted); *see also Marolda v. Symantec Corp.,* 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009) ("It
25   became apparent at oral argument that plaintiff labors under the misapprehension that because the
     alleged misrepresentation was an omission or nondisclosure, rather than an outright false
26   representation, it need not be pleaded with specificity required for elements of fraud.  The Ninth
     Circuit has recently clarified that claims of nondisclosure and omission, as varieties of
27   misrepresentations, are subject to the pleading standards of Rule 9(b)." (citing *Kearns*, 567 F.3d
     at 1126-27)).  Here, Plaintiffs do not allege any specific omissions; indeed, they never even allege
28   what exactly they believe Apple should have disclosed.

1    June 12, 2013) (finding that plaintiff could not plead actual reliance on marketing and advertising

2    materials he did not see).

3         Accordingly, Plaintiffs' amended allegations are insufficient to state a claim under Rule

4    9(b).  The Court should dismiss all Plaintiffs' claims for this additional reason.

### D.    Plaintiffs Have Not Stated a Claim for Breach of Contract and Their Contract-Based CLRA Claim Likewise Fails

5

6         Plaintiffs have not amended their breach of contract claims (Causes of Action 6 and 7);

7    these claims still fail for the additional reason that Plaintiffs have not identified any provision in

8    the iCloud Terms and Conditions that Apple allegedly breached.  "To state a claim for breach of

9    contract, a plaintiff must show the following: (1) that a contract existed; (2) the plaintiff

10   performed his duties or was excused from performing his duties under the contract; (3) the

11   defendant breached the contract; and (4) the plaintiff suffered damages as a result of that breach."

12   *Melegrito v. CitiMortgage Inc.*, No. C 11-01765 LB, 2011 WL 2197534, at *12 (N.D. Cal. June

13   6, 2011).  "Facts alleging a breach, like all essential elements of a breach of contract cause of

14   action, must be pleaded with specificity."  *Id*. (citing *Levy v. State Farm Mut. Auto. Ins. Co.,* 150

15   Cal. App. 4th 1, 5, 58 Cal. Rptr. 3d 54 (2007)).

16        Here, Plaintiffs continue to allege, at most, that Apple breached its agreement with them

17   by failing to explain how to manage their data and how to retain the 5GB of free iCloud storage.

18   (FAC ¶¶ 103-107; 123-25.)  Plaintiffs, however, do not—and cannot—point to anything in the

19   iCloud Terms and Conditions that creates such obligations.  Moreover, Apple provided this exact

20   information in the Terms and Conditions and on its Apple Support website.  (*See supra*

21   Section II.B.2.)  To the extent Plaintiffs attempt to allege a breach of the implied covenant of

22   good faith and fair dealing, it is well settled that the implied covenant "cannot impose substantive

23   duties or limits on the contracting parties beyond those incorporated in the specific terms of their

24   agreement."  *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 779 (9th Cir. 2003).

25   Plaintiffs' breach of contract claims fail to state a claim for these reasons, in addition to those

26   above.

27

28

1    Additionally, Plaintiffs appear to continue to assert a contract-based CLRA claim in Cause

2    of Action 13, which also fails.  According to Plaintiffs, Apple imposed on them certain

3    unspecified unconscionable contract terms.  (FAC ¶¶ 192-194.)  Not only have Plaintiffs failed to

4    identify specific terms even after an opportunity to amend their pleading, but a contract term is

5    only unconscionable if it is both procedurally and substantively unconscionable—a showing

6    Plaintiffs do not even attempt to meet.  *A&M Procedure Co. v. FMC Corp.*, 135 Cal. App. 3d

7    473, 485 (1982).  In any event, procedural unconscionability focuses on "surprise" resulting from

8    the "significant imbalance" in the contracting parties' bargaining power and requires a showing

9    that there were "no reasonable market alternatives."  *Bayol v. Zipcar, Inc.*, 78 F.Supp.3d 1252,

10   1261 (N.D. Cal. 2015).  A contract term is substantively unconscionable only if it is "so one-sided

11   as to shock the conscience, or . . . impose harsh oppressive terms."  *24 Hour Fitness, Inc. v.*

12   *Super. Ct.*, 66 Cal. App. 4th 1199, 1213 (1998).

13   Here, Plaintiffs fail to specify which specific iCloud terms they allege to be

14   unconscionable, let alone how the iCloud terms are "so one-sided as to shock the conscience."  *Id*.

15   Plaintiffs also fail to allege that they lacked reasonable market alternatives to iCloud.  *See, e.g.,*

16   *Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2017 WL 976048, at *12 (N.D. Cal. Mar. 14,

17   2017) (finding Apple's 1-year Limited Warranty was not unconscionable where, *inter alia*, there

18   was no oppression as plaintiffs did "not allege that they lacked other options for purchasing

19   [smartphones] or for obtaining additional warranty protections from Apple itself" and did not

20   allege they were surprised by the terms).  Plaintiffs' CLRA claim also fails for two additional

21   reasons:  (1) Plaintiffs lack any injury and therefore do not have standing as discussed above in

22   Section IV, and (2) the 5GB of iCloud storage is free and therefore does not meet the criteria for a

23   CLRA claim.  *See* Cal. Civ. Code § 1770(a) (CLRA applies only to a "transaction intended to

24   result or that results in the *sale* or lease of goods or services") (emphasis added).  This claim, like

25   all Plaintiffs' claims, is subject to dismissal.

26   ## V.    CONCLUSION

27   For the foregoing reasons, Apple respectfully requests that the Court dismiss Plaintiffs'

28   FAC in its entirety.

1    Dated:  September 1, 2021                    ALEXIS A. AMEZCUA
                                                 MORRISON & FOERSTER LLP
2

3
                                           By:    /s/ Alexis A. Amezcua
4                                                ALEXIS A. AMEZCUA

5                                                Attorneys for Defendant
                                                 APPLE INC.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT APPLE INC.'S MOTION TO DISMISS PLANTIFFS' FIRST AMENDED COMPLAINT

21