DAVID M. ROSENBERG-WOHL (Cal. Bar No. 132924)
HERSHENSON ROSENBERG-WOHL,
A PROFESSIONAL CORPORATION
3080 Washington St.
San Francisco, CA 94115
(415) 317-7756
david@hrw-law.com

PATRICK C. COOPER (Cal Bar No.142349) (reactivation pending)
WARD & COOPER, LLC
2100 Southbridge Parkway, Suite 645
Birmingham, AL 35209
(205) 871-5404
patrickcharles003@yahoo.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| WILLIAM RUTTER, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> APPLE INC., et al., <br><br> Defendants. | Case No.: 4:21-cv-04077-HSG <br><br> **OPPOSITION TO MOTION TO DISMISS** <br><br> **DATE: DECEMBER 16, 2021** <br> **TIME: 2:00 PM** <br> **DEPT.: COURTROOM 2** <br> **JUDGE: HON. HAYWOOD S. GILLIAM, JR.** |

I. <u>Introduction</u>

Plaintiffs allege that Apple has developed a scheme to sell products (computers) that contain a hidden service (iCloud) which, once discovered, is free (up to 5GB), but is presented by Apple in a way that misleads consumers into thinking that they can manage its use so as to keep the service free, while the truth is that a reasonable consumer cannot do this and will end up paying Apple a monthly storage fee which increases over time.

II. <u>Plaintiffs have adequately alleged injury</u>.

Apple argues that Plaintiffs can be injured by a service that is free, and for those who have paid, continuing to use the product precludes injury. Both arguments are specious.

The injury to the Plaintiffs presently using the free 5GB of storage is that they are stuck with having purchased a product (the computer) which came with a service (iCloud) that they did not choose and cannot manage so as to avoid the intended and substantial risk of a monthly credit card charge which, once incurred, is increasing and continually expensive. This is sufficiently direct injury for standing – not just in terms of the initial payment price for the computer but the substantial risk of future and continually increasing charges for the service.[1] *See Papasan*, cited by Apple, 2017 U.S. Dist. LEXIS 178749, *16 (noting Article III standing requires just "'substantial risk' that the harm will occur") (Gilliam, J). This is not like an allegation consumers overpaid for a defective refrigerator where the risk and amount of future costs is speculative but rather like an allegation that the initial purchase price of the computer was artificially low because it excluded the future income stream from the iCloud service. Am.Cmplt. ¶ 21. *See id*. (distinguishing *Hinojos*).

All Plaintiffs first learned they had iCloud when Apple told them that their data accumulation was nearing the 5GB cap for free storage and all have struggled with Apple's representation they could manage the service on their computer so as to use no more than the storage level they need at a (higher) price than warranted. Am.Cmplt. ¶ 14. Tabas believes

---

[1] Apple asserts that there is no threat of repeated injury alleged here, such that Plaintiffs lack standing even for injunctive relief. MPA at 10:25-28. That is not true. Am.Cmplt. ¶¶ 2-10, 14-21.

there's nothing she can do to manage her data and simply pays her increasing bills as her data accumulates. Am.Cmplt. ¶ 17. Garamani, Tabas, Young, Eliasieh, Barker and C Rutter have all tried but failed, paying for more than they need or want. Am.Cmplt. ¶¶ 18-20. W Rutter has succeeded, but only because he considers it a game to outwit Apple's unfair process. Am.Cmplt. ¶ 16. "None would have chosen iCloud if they had known it would be so unmanageable and expensive as it has turned out for each of them; each would have looked for a different product or service." Am.Cmplt. ¶ 21.

Apple ignores these allegations and strikes at allegations Plaintiffs did not make, viz., noting there are no allegations that Plaintiffs did not receive the 5GB of free storage, MPA at 8:18-19, and that it is impossible to overpay for something that is free, MPA at 8:19-20.

Apple simply misses the significance of other allegations. The fact that Plaintiffs still use iCloud, MPA at 10:6-8, is foundational to Plaintiffs' claim that they have been misled into dependence upon the service. The fact that Plaintiffs have not looked for an alternative, MPA at 8:26-28; 9:2-3, is because, as alleged, Apple concealed the need for that consideration (see above) and once the need arose, Apple's obfuscation of how to manage data upon downgrading or cancelling, as alleged (see above), has removed any realistic option for consideration. The fact alleged that 80% of Apple's iCloud users were below the 5GB limit in 2018, MPA at 9:22-26 and 10:18-20, says more about the growth of the iCloud service and the crucial role of the concealed 5GB introductory offer in the planned injury to Apple customers, Am.Cmplt. ¶¶ 3-9, than it says anything about a purported lack of injury.

Two of Apple's arguments are simply false. Apple says Plaintiffs do not allege that they were billed for services they did not want or use, MPA at 8:20; 10:3-4; 14:22-24. Plaintiffs have alleged just that. Am.Cmplt. ¶¶ 16-20, especially ¶ 21. Apple also argues that because its

monthly charge (starts out) small, MPA at 9:6-13, that is insufficient economic injury for standing; that is not the law. *See, e.g., City of San Jose v. Trump*, 497 F.Supp.3d 680, 710 (N.D. Cal. 2020 "the amount is irrelevant; a dollar of economic harm is still an injury-in-fact for standing purposes") (internal quotations omitted).

The argument that Plaintiffs' injuries are from their individual choices, not Apple's conduct, MPA at 9:4-5; *see also* 8:18, is simply circular reasoning.

III. <u>Plaintiffs have adequately alleged that Apple has violated the law</u>.

Apple tries to deny that its conduct is legally problematic by creating the proverbial "straw man" – Apple asserts again and again there is no law that makes it help customers manage their own data. *See, e.g.,* MPA at 8:28-9:2 ("Plaintiffs, however, point to no legal violation, breach of a legal duty, misrepresentation or omission by Apple that allegedly resulted in Plaintiffs' inability to manage their own data"); and 9:27-10:1; 11:1-5; 13:8-9; 14:3-5, 21; 15:2-4.[2] *See also* MPA at 19:16-20 ("Plaintiffs continue to allege, at most, that Apple breached its agreement with them by failing to explain how to manage their data and how to retain the 5GB of free iCloud storage …. Plaintiffs, however, do not – and cannot – point to anything in the iCloud Terms and Conditions that creates such obligations").

Apple's argument begs the question. There *are* significant laws that require companies to treat their consumers fairly, and these laws apply to selling data management services just as

---

[2] Apple's argument, MPA 15:2-4 ("Apple had no obligation to manage Plaintiffs' storage for them and could not have done so given that data management is dependent on an individual user's choices") depends upon factual allegations neither supported nor appropriate in the context of this motion.

OPPOSITION TO MOTION TO DISMISSDATE: DECEMBER 16, 2021TIME: 2:00 PMDEPT.: COURTROOM 2JUDGE: HON. HAYWOOD S. GILLIAM, JR. - 4

they do to all other products and services. Plaintiffs have alleged four of these: the ARL, UCL, FAL, and CLRA.[3] Furthermore, the contract under which a consumer has purchased a product or service provides a separate basis for a customer's expectation of fair treatment from a company. Apple is arguing, in effect, that its consumers have no legally protected interest in managing the products and services Apple has sold to them and they have paid for, and that Apple may invade any purported interest at will and without consequence. MPA at 11:5-9.[4]

Apple's argument that there is nothing obligating it to treat its customers fairly also proves too much. The fact that Apple places its lack of any legal duty argument in service of its standing argument shows that Apple's argument is not really one of standing but one of substantive law: Apple is arguing that *no* Apple consumer can allege standing because it *cannot* be alleged that Apple has done anything wrong to any of its customers. That is false.

Plaintiffs' UCL claims (based on ARL, COA Nos. 1-5) are adequately stated.[5] Apple does not deny that the ARL applies to its offer of the iCloud as a continuing subscription and

---

[3] Apple has not denied that its Terms and Conditions apply these California laws to its customers nationwide. Am.Cmplt. ¶ 23.

[4] To the contrary, Apple trumpets the importance of its consumers' right to control their own data. MPA at 11:1-5 ("The heart of Plaintiffs' claims is that they were injured because Apple did not manage or help them manage their own data to stay within 5GB of iCloud storage. Plaintiffs, however, can point to no obligation Apple had to undertake such efforts, nor allege that such management of each individual's personal photos, email, and other data by Apple would be feasible or advisable given principles of consumer choice as to privacy and data protection").

[5] Apple says it lacks fair notice of Plaintiffs' claims because COA Nos. 1-5 appear to be the same. MPA at 15:10-16 and 20-27. The 1st - 5th are unfair competition claims; the 1st is based upon the continuous service offer language of the ARL, the 2nd -3rd are based upon the automatic renewal offer language of the ARL (no cancellation policy disclosed, and no cancellation procedure disclosed, respectively), and the 4th - 5th are claims applicable to both the continuous

then as an automatic renewal. Rather, Apple argues that the ARL focuses on auto-renewal, MPA at 13:4-9. That is true enough – that's the name of the law – but that does not take anything away from the statutory requirement that in such an auto-renewal or continuing subscription scheme, Apple is obligated to provide proper notice of its cancellation policy and procedure, which are the central allegations Plaintiff makes under this law.

As for the UCL, FAL and CLRA (non-ARL claims, COA Nos. 6-13),[6] Plaintiffs have sufficiently alleged the context of the misrepresentations and omissions at issue: omissions at the time consumers purchase their computer product on which the iCloud service will be installed without consent, Am.Cmplt. ¶ 24, omissions during time of the creation of the Apple ID that prompts automatic installation and use of iCloud, Am.Cmplt. ¶¶ 25-27, omissions during the time the consumers use up to 5GB of free storage, Am.Cmplt. ¶¶ 28-34, misrepresentations and omissions regarding data management at time the consumer approaches the 5GB limit and is presented with the false choice of paying or managing data storage, Am.Cmplt. ¶¶ 33-34, and thereafter, upon paying for increasingly expensive levels of service than can be neither managed, compared to alternatives, nor cancelled, Am.Cmplt. ¶¶ 35-42.

This is far from Apple's claim that "Plaintiffs do not allege any misrepresentation or omission on which to base their claim that iCloud was not 'honestly advertised,'" MPA at 10:16-

---

service offer and the automatic renewal offer language (no cancellation mechanism identified in post purchase acknowledgement, and no automatic renewal offer terms disclosed, respectively).

[6] Apple says COA Nos. 6 and 7 are confusing because both contract and UCL. MPA at 15:16-16:7. Both state claims for breach of contract and breach as unfair competition (i.e., the latter is predicated on the former, Am.Cmplt. ¶¶ 108 and 126. More, the breaches are distinct: the breach of the 6th is failure to explain how to manage stored data upon downgrading (¶ 107), while the 7th is failure to explain how to manage data so as to retain the free 5GB (¶ 125).

18, or that there's insufficient particularity alleged. MPA at 16:8-17:11, 17:12-18:13, 18:21-18. By contrast, Plaintiffs have provided enough detail so Apple has notice of the particular representations and omissions, and the contexts in which they were made, so that Apple knows what the charges are and that there's a factual basis for them. *See Kearns*, cited by Apple, 567 F.3d at 1124-25; *Papasan*, 2017 U.S. Dist. LEXIS 178749, *15.

Apple's Terms and Conditions likewise contains representations and omissions, but in the context of a contract, these are promises Apple makes to its customers. Apple does not challenge the sufficiency of the contractual language noted by Plaintiffs regarding the rights of consumers to manage their data plans, whether by downgrading, cancelling or stopping use of the service.[7] Am.Cmplt. ¶ 102. Apple expressly embraces Plaintiffs' allegation that Apple promises that the 5GB of free storage does not go away. Am.Cmplt. ¶¶ 116-17. *Cf.* MPA at 9:14-21. Apple asserts Plaintiffs have not identified any provisions of the Terms and Conditions Apple has breached, MPA at 19:16-21, but this is not true, Am.Cmplt. ¶102, followed by ¶¶ 103-107 and ¶¶ 116-17, followed by ¶¶ 118-25.[8]

---

[7] Apple's Amezcua Declaration lacks personal knowledge. The declarant has not established that she created Apple's website or know its history, complete with the dates on which text was introduced, modified, and deleted. Plaintiffs' factual allegations, even those reliant upon Apple's website, must be taken at face value and cannot be controverted or explained by Apple's own reliance upon the website for facts in the context of a motion to dismiss.

[8] While it is true that the implied in law covenant of good faith and fair dealing imposes no substantive duties, MPA at 19:21-25, that covenant is implied "in every contract to ensure one contracting party does not unfairly frustrate the other party's right to receive the benefits of their agreement," *see Appling*, cited by Apple, 340 F.3d at 779 (internal quotations omitted).

OPPOSITION TO MOTION TO DISMISSDATE: DECEMBER 16, 2021TIME: 2:00 PMDEPT.: COURTROOM 2JUDGE: HON. HAYWOOD S. GILLIAM, JR. - 7

And these misrepresentations, omissions, and breaches of promise are alleged to be material, despite Apple's arguments to the contrary, MPA at 10:2-6, 9-16, 20-21; 13:10-14:2; 18:13-19:2. Plaintiffs allege: "None can manage their iCloud service in the way they would like and in the way they believe they have been assured they can by Apple. None would have chosen iCloud if they had known it would be so unmanageable and expensive as it has turned out for each of them; each would have looked for a different product or service. Apple's representations and its omissions, in light of what [they] did represent, were substantial factors in plaintiffs' acquisition of the iCloud service and either payment for it or continual risk of payment for it." AmCmplt. ¶ 21. *See Mayron II*, cited by Apple, 54 Cal.App.5th at 574 (standing established if Plaintiffs alleged they would not have ordered increased storage had disclosures been provided, or would have cancelled the additional storage had it been easier for them to do so).

Apple raises a handful of miscellaneous challenges to particular statutes, none of which are persuasive. The CLRA's focus on conduct "intended to result or that results in the sale or lease of goods or services," MPA at 20:22-24, easily comes into play given the allegations here that the 5GB free storage is intended to obtain a recurring and increasing income stream from Apple's consumers. The unconscionable contract claim under the CLRA, MPA at 20:1-20, adequately alleges both the procedural aspect due to the hidden terms of iCloud service in Apple's sale of its computer products and Plaintiffs' awareness from Apple only at the point of having to pay for continued service, and the substantive aspect of a scheme which a reasonable juror could conclude shocks the conscience and imposes harsh or oppressive terms. *See Bayol*, cited by Apple, at 78 F.Supp.3d at 1261. *See also Davidson*, cited by Apple, 2017 U.S. Dist. LEXIS 36524, *40 (noting not just plaintiffs' failure to allege effective lack of options but lack of surprise).

The ARL's focus on charging of cards without consent applies not just to those who are paying for the iCloud service, MPA at 11:11:16, but those who have paid for the computer itself, as a result of which they have provided their credit card to Apple for continuing charges as incurred. That the ARL's unconditional gift language applies only to goods, not services, MPA at 11:16-21, is of no help to Apple since the services are bundled in and integral to the very computer products that Apple has sold. The ARL's concern with free trials is not in any way negated by the fact that a consumer may, with little use of his or her computer, retain the 5GB storage, MPA at 9:14-22: the allegations here are that Apple's scheme is to use the 5GB storage plan so as to hook its customers, unknowingly, into dependence upon iCloud and upon their projected use thereafter pay, increasingly, for the service. Am.Cmplt. ¶¶ 2-13.

IV. Conclusion

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Apple's motion to dismiss their complaint. In the event that this Court grants the motion, in whole or in part, Plaintiffs seek leave to amend their complaint.

Dated this 27th of September, 2021.

/s/ David M. Rosenberg-Wohl
David M. Rosenberg-Wohl
HERSHENSON ROSENBERG-WOHL
A PROFESSIONAL CORPORATION