UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM RUTTER, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>APPLE INC.,<br><br>　　　　Defendant. | Case No. 21-cv-04077-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 18 |

This putative class action lawsuit alleges that Defendant Apple, Inc. ("Apple") deceives consumers into paying for its "iCloud" subscription service. Dkt. No. 17 ("FAC").[1] Before the Court is Apple's motion to dismiss, which is fully briefed. Dkt. Nos. 18 ("Mot."), 23 ("Opp."), 27 ("Reply"). The Court finds this matter appropriate for disposition without oral argument, *see* Civil L.R. 7-1(b), and **GRANTS** the motion.

I. **BACKGROUND**

iCloud enables users to store their data—like pictures, contacts, and files—on an internet-based platform. FAC ¶ 6. While users can store their first 5GB of data for free, they must pay varying monthly rates to store additional data. *Id.* ¶ 7. The Amended Complaint alleges that Apple deceives consumers into buying products that use iCloud and ultimately misrepresents the cost of iCloud by leading consumers to believe that they can easily maintain their data for free. *Id.* ¶¶ 9-10; Opp. at 1. In reality, Plaintiffs allege, iCloud users quickly exceed the free 5GB of storage and then must pay for an increasingly costly service. FAC ¶¶ 9-10.

Based on those allegations, Plaintiffs allege that Apple violated California's Automatic

---

[1] The named plaintiffs in this case are William Rutter, Jacqueline Tabas, Natasha Garamani, Connie Tabas, Tristan Young, Kasra Eliasieh, Robert Barker, and Cindy Rutter.

1  Renewal Law and bring claims under California's consumer protection statutes.  They also bring
2  two claims for breach of contract and one for elder abuse.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate only where the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Federal Rule of Civil Procedure 9(b) heightens these pleading requirements for all claims that "sound in fraud" or are "grounded in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  The Ninth Circuit has interpreted Rule 9(b) to require that allegations of fraud are "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation marks and citation omitted).

In short, a fraud claim must state "the who, what, when, where, and how" of the alleged

conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading." *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin,* 252 F.3d 423, 429 & n.6 (9th Cir. 2001). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

### III. DISCUSSION

Apple moves to dismiss the Amended Complaint in its entirety. It first contends that Plaintiffs do not have standing to file suit because they have failed to allege an appropriate injury. It then argues that the Amended Complaint fails to state plausible grounds for relief under Rules 8 and 9 of the Federal Rules of Civil Procedure. The Court finds that Plaintiffs have adequately alleged the elements of Article III standing but have not pled any plausible claims.

#### A. Request for Judicial Notice

As an initial matter, Apple asks the Court to take judicial notice of documents it characterizes as follows:

| Exhibit | Description |
|---|---|
| A | Apple's iCloud Terms and Conditions, last revised September 19, 2019 |
| B | Apple's iCloud "Information" webpage |
| C | The email notification Apple provides to users who are approaching the capacity of the 5GB of free iCloud storage (the "iCloud Capacity Email") |
| D | The email receipt from Apple confirming payment for iCloud storage above 5GB |
| E | The Apple Support page for iCloud entitled "Manage your iCloud storage" ("iCloud Support: Manage Storage") |
| F | The Apple "Billing and Subscriptions" webpage |
| G | The Apple Support webpage for iCloud entitled "Downgrade or cancel your iCloud storage plan" |

3

*See* Dkt. No. 18-2; Mot. at 3, n.1. Plaintiffs have not opposed Apple's request or otherwise contested the authenticity of any of those documents.

In *Khoja v. Orexigen Therapeutics*, the Ninth Circuit clarified the judicial notice rule and incorporation by reference doctrine. *See* 899 F.3d 988 (9th Cir. 2018). Under Federal Rule of Evidence 201, a court may take judicial notice of a fact "not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Accordingly, a court may take "judicial notice of matters of public record," but "cannot take judicial notice of disputed facts contained in such public records." *Khoja*, 899 F.3d at 999 (citation and quotations omitted). The Ninth Circuit has clarified that if a court takes judicial notice of a document, it must specify what facts it judicially noticed from the document. *Id*. at 999.

Separately, the incorporation by reference doctrine is a judicially-created doctrine that allows a court to consider certain documents as though they were part of the complaint itself. *Id*. at 1002. This is to prevent plaintiffs from cherry-picking certain portions of documents that support their claims, while omitting portions that weaken their claims. *Id*. Incorporation by reference is appropriate "if the plaintiff refers extensively to the document or the document forms the basis of plaintiff's claim." *Khoja*, 899 F.3d at 1002. However, "the mere mention of the existence of a document is insufficient to incorporate the contents" of a document. *Id*. at 1002. And while a court may assume an incorporated document's contents are true for purposes of a motion to dismiss, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id*.

The Court finds that Apple's iCloud Terms and Conditions are properly subject to incorporation by reference for two reasons. First, the Amended Complaint expressly and extensively references and quotes them.[2] And second, Plaintiffs' two claims for breach of contract

---

[2] *See, e.g.*, FAC ¶ 100 ("Even though 'iCloud is automatically enabled,' Apple recites, '[b]y clicking 'agree,' you are agreeing that these terms will apply if you choose to access or use the service.'"); *id*. ¶ 115 ("In these Terms of Service, Apple promises that consumers are 'allocated 5GB of storage capacity' in the iCloud service at no cost.").

4

are based on the iCloud Terms and Conditions. *See* FAC ¶¶ 98-130. Apple's request is therefore granted as to that document.

Apple also argues that Plaintiffs' claims "reference, rely on, and quote" emails that Apple provides to users, as well as information Apple provides on its Apple Support website about iCloud. Dkt. No. 19 at 4. The Court agrees that the Amended Complaint references Apple's emails and webpages extensively and that Apple's representations in those documents (or lack thereof) form the bases for Plaintiffs' ARL, breach of contract, and consumer protection claims.[3] While these documents may be properly incorporated by reference, however, Apple ultimately seeks to use them to contest the Amended Complaint's factual allegations. In the Court's view, this is an improper attempt to effectively convert the motion to dismiss into one for summary judgment. The Court therefore does not find Apple's emails and webpages necessary or helpful at this stage in the litigation and does not rely on them in resolving the questions of law that Apple's motion raises.

**B.  Standing**

Apple contends that Plaintiffs lack standing under Article III of the U.S. Constitution and California's consumer protection statutes. The Court disagrees and finds that Plaintiffs have plausibly alleged standing to pursue each of their claims.

To have Article III standing, the plaintiff must (1) have suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v.*

---

[3] *See, e.g.*, FAC ¶ 106 ("Apple's email communication with its customers in the period in which customers approach the limitation of their storage, described above, adopts this promise of flexible management and creates an implied in fact contract."); *id.* ¶ 61 ("But neither in the emails advising customers that they are close to exceeding their allocated 5 GB of free storage nor in any other manner, does Apple explain, much less in clear and conspicuous terms, Apple's cancellation policy."); *id.* ¶ 35 ("The consumer begins to receive monthly receipts to the email associated with the Apple ID. This receipt indicates the amount of storage (i.e., 50 GB Storage Plan), the term of the plan (i.e., monthly), and the price (i.e., $0.99)."); *id.* ¶¶ 37-38 ("Questions about the bill? Apple directs the consumer to 'Official Apple Support' but it is an iTunes page that has nothing clearly to do with iCloud. 38. If the consumer types 'iCloud' into the 'What can we help you with?' Search Support bar, nothing about the 'bill' appears. The consumer can further click on either 'iCloud Support' or 'Manage your iCloud storage.' Two other options deal with the iCloud Keychain. Nothing about a bill.'").

5

*Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  The injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Id.* at 339 (internal quotations marks omitted).  A mere "procedural violation" of a statute does not give a plaintiff standing to sue.  They must instead show that the violation caused actual harm.  *Id.* at 342; *see also TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) ("[A]n injury in law is not an injury in fact.").  The elements of standing "must be supported at each stage of litigation in the same manner as any other essential element of the case," so at the motion to dismiss stage the plaintiff must only plausibly allege these elements.  *Lujan*, 504 U.S. at 560-61.

The UCL, FAL, and CLRA have additional standing requirements that require plaintiffs to (1) plead an economic injury, and (2) show that the injury was caused by the challenged conduct.  *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (UCL and FAL); *Herrera v. Estee Lauder Cos., Inc.*, No. SACV 12-01169-CJC(ANx), 2012 WL 12507876, at *2 (S.D. Cal. Sept. 20, 2021) (regarding CLRA).

The Court finds that Plaintiffs have met their burden of alleging the elements of standing under Article III and California's consumer protection statutes.  The Amended Complaint pleads an "injury in fact" and an "economic injury" by alleging that at least some plaintiffs lost money paying for varying levels of an iCloud subscription.  *See, e.g.*,  FAC ¶¶ 52-53, 65-66.[4]  As to causation, the Amended Complaint also pleads that this injury was caused by Plaintiffs' reliance on Apple's representations and its omissions in iCloud's terms and conditions and emailed disclosures.  *See id.* ¶ 21 ("Apple's representations and its omissions, in light of what it did represent, were *substantial factors* in plaintiffs' acquisition of the iCloud service and either payment for it or continual risk of payment for it.") (emphasis added).  And this injury would be

---

[4] *See also* FAC ¶¶ 72-73, 79-80, 94-95, 109-10, 127-28, 141-42, 153-54, 164-65, 175-76, 187-88, 196-97; *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"); *Van v. LLR, Inc.*, 962 F.3d 1160, 1162 (9th Cir. 2020) (holding that a $3.76 loss was not "too little to support Article III standing"); *Hinojo v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) ("[T]he quantum of lost money or property necessary to show [UCL, FAL, and CLRA] standing is only so much as would suffice to establish [Article III] injury in fact.") (citations omitted).

redressable by judicial relief, like an award of damages or restitution.[5]

Apple makes much of the fact that, as alleged, at least two named plaintiffs never exceeded the free 5GB data limit and therefore never paid for iCloud or suffered an economic injury. *See* Mot. at 9. But this does not defeat standing at this stage because only one named plaintiff needs to have standing for the case to proceed. *Pub. Citizen v. Dep't of Transp.*, 316 F.3d 1002, 1014-15 (9th Cir. 2003) ("We need only find that one petitioner has standing to allow a case to proceed."); *Melendres v. Arpaio*, 695 F.3d 990, 999 (9th Cir. 2012) ("The general rule applicable to federal court suits with multiple plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others.") (citations and quotation marks omitted). Because the named Plaintiffs who have suffered a monetary injury have Article III and statutory standing, the Court denies Apple's motion to dismiss on standing grounds.

### C. Automatic Renewal Law

Plaintiffs' first five claims are based on allegations that Apple violated California's Automatic Renewal Law ("ARL"). The ARL exists to protect consumers from unwittingly consenting to services that continue until the consumer cancels or automatically renew at the end of a term. *See Price v. Synapse Grp., Inc.*, No. 16-cv-01524-BAS-BLM, 2017 WL 3131700, at *5 (S.D. Cal. July 24, 2017). Here, no one disputes that iCloud is both an "automatic renewal" and a "continuous service" offering under the ARL because it automatically charges customers each month after they sign up for additional storage and continues to do so until they cancel. *See, e.g.*, FAC ¶¶ 58, 84.

Under the ARL, a business that makes an automatic renewal or continuous service offer must present certain disclosures called "automatic renewal offer terms." Cal. Bus. & Prof. Code §§ 17601(b). Those disclosures are listed below:

---

[5] Plaintiffs also request injunctive relief, which has its own standing requirements. *See, e.g.*, FAC ¶¶ 55, 68. To have standing to pursue injunctive relief, Plaintiffs must prove that there is a "real or immediate threat that [they] will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Because iCloud is a continual and automatic service offering and several plaintiffs will continue to be charged on a regular basis for the service, the Court finds that the Complaint plausibly alleges that there is a "real and immediate" threat that Plaintiffs will lose money in the future. *See* FAC ¶ 35. At this stage, Plaintiffs have standing to request injunctive relief.

> (1) That the subscription or purchasing agreement will continue until the consumer cancels.
>
> (2) The description of the cancellation policy that applies to the offer.
>
> (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.
>
> (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.
>
> (5) The minimum purchase obligation, if any.

*Id.* §§ 17601(b)(1)-(5). Businesses must present these disclosures in a "clear and conspicuous" manner, which means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." *Id.* § 17601(c). A consumer who has been harmed by a violation of the ARL may bring a claim under California consumer protection statutes, including the FAL, CLRA, and UCL.[6]

The Amended Complaint alleges that Apple violated the ARL in five (overlapping) claims. Apple argues that each one fails to state a claim under Rule 12(b)(6). *See* Mot. at 15, 16. For the reasons explained below, the Court agrees with Apple.

Two of Plaintiffs' ARL claims are based on allegations that Apple "failed to obtain the consent of consumers" before binding them via an iCloud agreement. FAC ¶¶ 48, 92. If true, this conduct would violate § 17602(a)(2), which prohibits Apple from charging consumers' credit cards for iCloud "without first obtaining the consumer's affirmative consent to the agreement."

---

[6] *See Arnold v. Hearst Mag. Media, Inc.*, No. 19-cv-1969, 2021 WL 488343, at *6 (S.D. Cal. Feb. 10, 2021); *Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 677 (9th Cir. 2018); *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 269 Cal. Rptr. 3d 86, 88-91 (2020).

Bus. & Prof. § 17602(a)(2). But these claims fail because the Amended Complaint does not plausibly explain why or how iCloud users who pay for storage did not consent to do so. Because Apple provides the first 5GB of data for free, the only users who pay for iCloud are those who choose to upgrade their account for more storage. *See* FAC ¶ 9. In the iCloud Terms and Conditions—which, the Amended Complaint acknowledges, are provided to each user before they subscribe to iCloud—Apple says the following: "By upgrading your storage on your device or computer, Apple will automatically charge on a recurring basis the storage fee for the storage plan you choose, including any applicable taxes, to the payment method associated with your Apple ID[.]" Dkt. No. 18-2 at 6.[7] The Amended Complaint fails to plausibly explain why or how iCloud users who chose to upgrade their storage did not consent to this agreement, so it does not state a claim based on § 17602(a)(2). *See Linda Hall v. Time, Inc.*, No. SACV19001153AGADSX, 2019 WL 8107879, at *3 (C.D. Cal. Sept. 24, 2019) ("[B]ecause Plaintiff clicked through two separate pages containing the automatic renewal agreement before deciding to purchase her People magazine subscription, Plaintiff affirmatively consented to the agreement containing the automatic renewal offer terms."). This is a factual defect and not a legal one, so Plaintiffs are given leave to amend this claim.

The Amended Complaint also alleges that Apple violated § 17602(a)(1), which makes it unlawful for a business to fail to present the renewal terms "in a clear and conspicuous manner" before subscribing a consumer. Bus. & Prof. § 17602(a)(1). Specifically, it alleges that Apple has not disclosed its iCloud cancellation policy at all, much less in the "clear and conspicuous" terms required. *See* FAC ¶ 63 ("Because Apple does not explain its cancellation policy for its automatic renewal offer, either before the consumer pays for the iCloud subscription or afterwards in an acknowledgement, Apple has violated section 17602."); *see also id.* ¶ 61.

---

[7] *See also* FAC ¶¶ 25-26 ("When consumers purchase their first computer product from Apple, Apple asks the consumer to create an Apple ID (usually an email address), at which point Apple presents the consumer with its Terms and Conditions screen, the software licenses specific to the particular version of the applicable Apple operating system (iOS). Upon the consumer's creation of an Apple ID, Apple instantly signs the consumer up for the iCloud service that Apple provides to store the consumer's data generated by the computer product.").

But Apple has disclosed its iCloud cancellation policy. The iCloud Terms and Conditions include a "Termination" section that tells users the following: "You may delete your Apple ID and/or stop using the Service at any time. If you wish to stop using iCloud on your device, you may disable iCloud from a device by opening settings on your device, tapping iCloud, and tapping 'Sign Out.'" Dkt. No. 18-2 at 11. For users who pay for additional data storage, the iCloud Terms and Conditions include an additional "Right of Withdrawal" section. *Id.* at 6. That Section tells users that they can cancel their iCloud subscription "by informing Apple with a clear statement . . . within 14 days from when you receive your email confirmation by contacting Customer Support," and cross-references addresses where users can send their cancellation statement. *Id.* at 6. Based on the iCloud Terms and Conditions, the Court finds as a matter of law that Apple provides a "description of the cancellation policy that applies to the offer" as required by § 17601(b)(2).

Plaintiffs also vaguely contend that the iCloud cancellation policy is not provided in the "clear and conspicuous" terms required by § 17601(c). *See* FAC ¶ 61 ("But neither in the emails advising customers that they are close to exceeding their allocated 5 GB of free storage nor in any other manner, does Apple explain, much less in clear and conspicuous terms, Apple's cancellation policy."). But both the "Termination" and the "Right of Withdrawal" headers in the iCloud Terms and Conditions are bolded and therefore in "contrasting type, font, or color to the surrounding text of the same size," as required by § 17601(c). And in any event, to have standing to pursue such a claim Plaintiffs would first have to plausibly allege that they suffered their economic injuries by *relying* on that statutory violation.[8] The Amended Complaint does not allege that any of the Plaintiffs even read the iCloud Terms and Conditions, so it does not plausibly explain how they

---

[8] *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326, 246 P.3d 877, 887 (2011) ("Proposition 64 requires that a plaintiff's economic injury come 'as a result of' the unfair competition or a violation of the false advertising law. The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation.") (citations and internal punctuation omitted); s*ee also Durnford v. Musclepharm Corp.*, No. 15-CV-00413-HSG, 2015 WL 9258079, at *6 (N.D. Cal. Dec. 18, 2015) (finding that the plaintiff had not adequately alleged reliance because he did not plead that he had read and relied on the allegedly misleading representation), *aff'd in relevant part and rev'd in part*, 907 F.3d 595 (9th Cir. 2018); *Delacruz v. Cytosport, Inc.*, No. C 11-3532 CW, 2012 WL 1215243, at *9 (N.D. Cal. Apr. 11, 2012) (dismissing claims based on misrepresentations made on the defendant's website because the plaintiff did "not plead that she read or relied on any statements on the website").

10

were deceived by the type, font, or color of certain disclosures in them.  *See* FAC ¶ 27 ("No reasonable consumer is going to dig for and review the iCloud terms and conditions to inquire about a service that has not been promoted, was not the reason for the purchase, and brings with it no additional cost.").  The Court accordingly finds that the Amended Complaint does not state a claim based on § 17602(a)(1).  Plaintiffs may amend their § 17602(a)(1) claim to allege facts showing why the cancellation policy and mechanism provided in the iCloud Terms and Conditions are not stated in the required "clear and conspicuous terms" and why Plaintiffs have standing to pursue this claim.

Finally, to the extent Plaintiffs also seek to bring ARL claims based on a violation of § 17602(a)(3) and (b), those claims are also inadequately pled.  § 17602(a)(3) makes it unlawful for a business making an automatic renewal offer to fail to provide its consumers with an "acknowledgement" that includes the automatic renewal terms, the cancellation policy, and "information regarding how to cancel in a manner that is capable of being retained by the consumer."  Bus. & Prof. § 17602(a)(3).  And under § 17602(b), the business must also provide in the acknowledgement either a toll-free telephone number, electronic mail address, a postal address if it directly bills the consumer, or "another cost-effective, timely, and easy-to-use mechanism for cancellation[.]"  *Id.* §17602(b).

Plaintiffs allege that Apple fails to provide "a post-purchase 'acknowledgement'" that includes the cancellation policy.  *See* FAC ¶ 62.  But to begin with, the ARL does not require "post-purchase" disclosures.  *See* Bus. & Prof. § 17602(e)(1) ("The requirements of this article shall apply *only prior to the completion of the initial order* for the automatic renewal or continuous service, except . . . [t]he requirement in paragraph (3) of subdivision (a) *may* be fulfilled after completion of the initial order.") (emphases added).  And as explained above, the iCloud Terms and Conditions provide users with a cancellation policy and a description of where and how they can cancel the service.  Dkt. No. 18-2 at 6, 11.  To the extent Plaintiffs contend that this information was not "capable of being retained by the consumer," they fail to plead any facts to plausibly support that assertion.  These claims are therefore also dismissed.

In summary, all the ARL claims are inadequately pled.  Plaintiffs may amend their ARL

11

1    claims to explain: (1) why iCloud users who chose to upgrade their storage did not consent to the
2    iCloud Terms and Conditions; (2) why the cancellation policy and mechanism provided in the
3    iCloud Terms and Conditions are not stated in clear and conspicuous terms as required by §
4    17602(a)(1) (and why Plaintiffs have standing to pursue this claim); and (3) why iCloud's
5    cancellation terms are not capable of being retained by consumers as required by § 17602(a)(3).

### D.   Contract Claims

Apple also moves to dismiss Plaintiffs' breach of contract and unconscionability claims under Rule 12(b)(6). The Court agrees with Apple that these claims are inadequately pled.

To bring a claim for breach of contract, the complaint must identify a specific provision of the contract allegedly breached by the defendant. *See Progressive West Ins. Co. v. Superior Court*, 135 Cal. App. 4th 263, 281 (2005); *see also Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016). Similarly, the implied covenant of good faith and fair dealing only extends to obligations expressed in the actual contract. *See Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 966 (2015); *see also Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317 (2000) ("[W]here an implied covenant claim alleges a breach of obligations beyond the agreement's actual terms, it is invalid.").

Plaintiffs' breach of contract claims basically allege that Apple promised "flexible [iCloud user] management" but breached this promise by failing to explain to users how they can either "manage stored data upon downgrading, canceling, or stopping the use of iCloud" or stay within the initial free 5GB of iCloud. FAC ¶¶ 106-07, 123. The problem with this claim is that Plaintiffs have failed to identify a provision in the iCloud Terms and Conditions that promises users any form of data storage advice. Plaintiffs' claim for breach of the implied covenant fails for the same reason. Implied covenants exist to protect express contractual provisions, and the Amended Complaint has failed to identify any. *See Cobb*, 233 Cal. App. 4th at 966. If possible, Plaintiffs may amend their breach of contract claims to identify where Apple makes the alleged representations.[9]

---

[9] Plaintiffs also vaguely allege that Apple's email to users approaching the 5GB data storage limit "adopts this promise of flexible management and creates an implied in fact contract." *See* FAC ¶¶

12

Finally, Plaintiffs' unconscionability claim alleges that Apple imposes "unconscionable" terms in violation of the CLRA. FAC ¶¶ 193-95. Plaintiffs allege that the iCloud contract is unconscionable because Apple "eliminates the customer's continued access to iCloud" and "refus[es] to provide a pro rata refund" when users stop using the service. FAC ¶¶ 192-95.

Unconscionability has both procedural and substantive elements. The procedural element addresses how the parties negotiated and formed the contract—with an emphasis on oppression and unfair surprise due to unequal bargaining power—while the substantive element addresses the fairness of the agreement's actual terms. *Von Nothdurft v. Steck*, 227 Cal. App. 4th 524, 535, 173 Cal. Rptr. 3d 827, 835 (2014) (citations omitted). Under California law, both elements must be present for a court to invalidate a contract. *See Baker v. Osborne Dev. Corp.*, 159 Cal. App. 4th 884, 894, 71 Cal. Rptr. 3d 854, 862 (2008). Here, Plaintiffs' unconscionability claim fails and is dismissed because it barely addresses the substantive element and does not address the procedural element at all. *See* FAC ¶¶ 192-95. Although the Court is skeptical that Apple's iCloud Terms and Conditions impose substantively or procedurally unconscionable terms based on the facts alleged, Plaintiffs are nonetheless given leave to amend.

### E. Consumer Protection Claims

The Complaint also brings claims under California's consumer protection statutes. Apple contends that these claims sound in fraud and fail to meet the particularity standards of Rule 9(b). Mot. at 16. The Court finds that these claims are duplicative and redundant and will accordingly analyze them together.[10]

The Complaint pleads claims under the Unfair Competition Law ("UCL"), False

---

106-07. This claim is vague and unclear. To the extent Plaintiffs contend that Apple's emails simply repeat representations made in the iCloud Terms and Conditions, it fails for the same reasons the express breach of contract claims do. If Plaintiffs instead mean that Apple's emails to consumers contain new terms that promise flexible management, they may amend their complaint to clarify as much.

[10] *See, e.g.*, *Paduano v. American Honda Motor Co., Inc.*, 169 Cal. App. 4th 1453, 1468-73 (2009) (analyzing UCL and CLRA claims together); *Neu v. Terminix Intern., Inc.*, No. C 07-6472 CW, 2008 WL 2951390, at *3-*4 (N.D. Cal. July 24, 2008) (analyzing UCL, FAL, and CLRA claims together); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124-27 (N.D. Cal. 2010) (analyzing UCL, FAL, and CLRA claims together).

13

Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA"). *See* FAC ¶¶ 157-78 (UCL claims), 145-56 (FAL), 137 (CLRA). The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Bus. & Prof. § 17200. The FAL prohibits businesses from disseminating information "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id*. § 17500. And the CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person . . . which results in the sale or lease of goods or services." Cal. Civ. Code § 1770(a).

Courts use a "reasonable consumer" standard to determine whether a party has violated the UCL, FAL, or CLRA. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). This standard considers whether "members of the public are likely to be deceived" by the alleged advertising or business practices. *Id.* While this is typically a question of fact that cannot be resolved at the motion to dismiss stage, the plaintiff still bears the burden of pleading a plausible claim. *See id.* at 939 ("Decisions granting motions to dismiss claims under the Unfair Competition Law have occasionally been upheld."); *see also Freeman v. Time, Inc.*, 68 F.3d 285, 285 (9th Cir. 1995) (upholding the dismissal of a claim because the court had the actual advertisement, and no reasonable person would find it deceptive).

Plaintiffs' claims sound in fraud, which means that they must meet the heightened pleading standards of Rule 9(b). *See Kearns*, 567 F.3d at 1125 (noting that UCL claims under the fraud prong must meet the heightened pleading standards of Rule 9(b));[11] *Maisel v. S.C. Johnson & Son, Inc.*, No. 21-cv-00413-TSH, 2021 WL 1788397, at *7 (N.D. Cal. May 5, 2021) ("Rule 9(b)'s heightened pleading standard applies to FAL[] and CLRA causes of actions because they are 'grounded in fraud' or 'sound in fraud.'") (cleaned up and citations omitted). The Court finds that none of Plaintiffs' claims meet this standard.

All of Plaintiffs' consumer protection claims are based on Apple's alleged

---

[11] While only one of Plaintiffs' UCL claims explicitly falls under the fraudulent prong, the second claim (Tenth Cause of Action) is duplicative and nearly reprints the first claim in its entirety. *See* FAC ¶¶ 157-67. The Court will accordingly analyze the claims together.

14

misrepresentations. For example, the UCL and FAL claims allege that Apple "lures customers into paying for iCloud" by misrepresenting that "5GB of iCloud storage is a huge amount of storage [that] never goes away[.]" FAC ¶¶ 148, 169, 171. Similarly, the CLRA claims allege that Apple "suggest[s] consumers would not need more than the 5GB" and thus, falsely advertised the iCloud service and intended "not to sell it as advertised." *Id.* ¶¶ 134, 137.

The problem with these claims is that the Amended Complaint entirely fails to allege *where* or *when* Apple in any way indicated that consumers will require more or less than 5GB of data storage. They are therefore not pled with the particularity required to put Apple on notice of the allegations against it and are dismissed with leave to amend. *See Neubronner*, 6 F.3d at 671.[12]

## IV. CONCLUSION

The Court **GRANTS** Apple's motion. Plaintiff may file an amended complaint within twenty-one days of this order but may not add any new claims or defendants.

**IT IS SO ORDERED.**

Dated: 5/6/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[12] Plaintiffs also tacked on a claim for elder abuse that is entirely duplicative of the consumer protection claims. It therefore fails for the same reasons. At bottom, the Amended Complaint is riddled with conclusory assertions and fails to plausibly explain how Apple took elders' money with an intent to defraud or for a wrongful use. Cal. Welf. & Inst. Code § 15610.3(a)(1); *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (noting that state law claims which allege fraud must be pled with 9(b) particularity requirements); *see also Parducci v. Overland Solutions, Inc.*, 399 F. Supp. 3d 969, 979 (N.D. Cal. 2019) (holding that elder abuse sounds in fraud).

15