1   ALEXIS A. AMEZCUA (CA SBN 247507)
    AAmezcua@mofo.com
2   MORRISON & FOERSTER LLP
    425 Market Street
3   San Francisco, California 94105-2482
    Telephone: 415.268.7000
4   Facsimile: 415.268.7522

5   Attorneys for Defendant
    APPLE INC.

6

7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                        OAKLAND DIVISION

11

12  WILLIAM RUTTER, JACQUELINE TABAS,          Case No. 4:21-cv-04077-HSG
    NATASHA GARAMANI, CONNIE TABAS,
13  TRISTAN YOUNG, KASRA ELIASIEH,             **DEFENDANT APPLE INC.'S NOTICE
    ROBERT BARKER, AND CINDY RUTTER, on        OF MOTION AND MOTION TO
14  behalf of themselves and all               DISMISS PLAINTIFFS' SECOND
    others similarly situated,                 AMENDED COMPLAINT;
15                                             MEMORANDUM OF POINTS AND
                        Plaintiffs,            AUTHORITIES IN SUPPORT
16                                             THEREOF**
         v.
17                                             Date: January 12, 2023
    APPLE INC., and DOES 1-10,                 Time: 2:00 p.m.
18                                             Department: Courtroom 2 – 4th Floor
                        Defendants.            Judge: The Honorable Haywood S.
19                                                    Gilliam, Jr.

20                                              SAC Filed: May 27, 2022

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on January 12, 2023 at 2:00 p.m., or as soon thereafter as the motion may be heard in Courtroom 2 on the 4th Floor of the United States Courthouse, 1301 Clay Street, Oakland, California, pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant Apple Inc. ("Apple") will and hereby does move to dismiss all of the causes of action in plaintiffs William Rutter, Jacqueline Tabas, Natasha Garamani, Connie Tabas, Tristan Young, Kasra Eliasieh, Robert Barker, and Cindy Rutter's ("Plaintiffs") Second Amended Complaint filed in this Court on May 27, 2022 (ECF No. 38) (SAC). This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Alexis Amezcua filed herewith, Apple's Request for Judicial Notice, and the pleadings and evidence on file in this matter, oral arguments of counsel, and such other materials and arguments as may be presented in connection with the hearing on the Motion.

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ............................................................................................................. 1

II.    FACTUAL BACKGROUND ........................................................................................... 3

    A.    Users May Opt In to Apple's iCloud Service and Are Provided iCloud Terms & Conditions ................................................................................................ 3

    B.    Users Can Elect to Upgrade or Downgrade Their iCloud Storage ........................ 4

    C.    The Named Plaintiffs Never Allege They Read the iCloud Terms & Conditions or That Plaintiffs Were Not Permitted to Downgrade Their iCloud Storage ............................................................................................................ 4

III.    LEGAL STANDARDS ................................................................................................... 5

IV.    ARGUMENT .................................................................................................................. 6

    A.    Plaintiffs' Fraud-Based Claims Under the CLRA, FAL, and UCL Fail ................ 6

        1.    Plaintiffs Fail to Plead Exposure to or Reliance on Any Statements in the iCloud Terms & Conditions or iCloud Capacity Email ................... 7

        2.    Plaintiffs Do Not Plead Any Actionable Misrepresentations or Omissions .................................................................................................. 8

        3.    Plaintiffs Do Not Otherwise State a Claim Under the UCL ................... 12

    B.    Plaintiffs' ARL Claim Fails for the Reasons Already Recognized by this Court .................................................................................................................... 13

    C.    Plaintiffs' Unconscionability Claim Under the CLRA Still Fails ........................ 15

    D.    Plaintiffs' Claim for Breach of Contract Still Fails as a Matter of Law ............. 17

        1.    Plaintiffs Fail to Identify Any Specific Provision in the iCloud Terms & Conditions Apple Allegedly Breached ..................................... 18

        2.    Plaintiffs Fail to Identify Any Specific Provision in the iCloud Capacity Email Apple Allegedly Breached ............................................ 19

        3.    Plaintiffs Fail to Identify Any Specific Promise Apple Breached at the Time They Purchased Their Devices ................................................ 19

V.    CONCLUSION ............................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*24 Hour Fitness, Inc. v. Super. Ct.*,
   66 Cal. App. 4th 1199 (1998) ..........................................................................15, 17

*A & M Procedure Co. v. FMC Corp.*,
   135 Cal. App. 3d 473 (1982)................................................................................15

*Appling v. State Farm Mut. Auto. Ins. Co.*,
   340 F.3d 769 (9th Cir. 2003)................................................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................5

*Backhaut v. Apple, Inc.*,
   74 F. Supp. 3d 1033 (N.D. Cal. 2014) .................................................................12

*Baltazar v. Apple, Inc.*,
   No. CV-10-3231-JF, 2011 WL 588209 (N.D. Cal. Feb. 10, 2011) .........................12

*Bauer v. Tacey Goss, P.S.*,
   No. 12-cv-876-JSW, 2012 WL 2838834 (N.D. Cal. July 20, 2012).........................9

*Bayol v. Zipcar, Inc.*,
   78 F. Supp. 3d 1252 (N.D. Cal. 2015) .................................................................15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................5

*Bly-Magee v. Cal.*,
   236 F.3d 1014 (9th Cir. 2001)................................................................................6

*Brown v. Blackbaud, Inc.*,
   No. CV-18-03549-AB, 2019 WL 4509203 (C.D. Cal. July 25, 2019) ...................16

*Caraccioli v. Facebook, Inc.*,
   167 F. Supp. 3d 1056 (N.D. Cal. 2016) ...............................................................17

*Cobb v. Ironwood Country Club*,
   233 Cal. App. 4th 960 (2015) ..............................................................................17

*Daugherty v. American Honda Motor Co. Inc.*,
   144 Cal.App.4th 824, 51 Cal.Rptr.3d 118 (2006).................................................12

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018)..................................................................................6

*Doe v. SuccessfulMatch.com*,
    70 F. Supp. 3d 1066 (N.D. Cal. 2014) .................................................................................7

*Garcia v. Sony Computer Ent. Am., LLC*,
    859 F. Supp. 2d 1056 (N.D. Cal. 2012) ...............................................................................8

*Great Pac. Sec. v. Barclays Capital, Inc.*,
    743 F.App'x. 780 (9th Cir. 2018) ........................................................................................7

*Guz v. Bechtel Nat. Inc.*,
    24 Cal. 4th 317 (2000) ......................................................................................................18

*Haddock v. Countrywide Bank, NA*,
    No. CV 14-6452-PSG, 2015 WL 9257316 (C.D. Cal. Oct. 27, 2015)..................................8

*Haskins v. Symantec Corp.*,
    654 Fed. App'x 338 (9th Cir. 2016)....................................................................................6

*Herskowitz v. Apple Inc.*,
    940 F. Supp. 2d 1131 (N.D. Cal. 2013) .............................................................................13

*Hodges v. Apple Inc.*,
    No. 13-CV-01128-WHO, 2013 WL 4393545 (N.D. Cal. Aug. 12, 2013)...............................12

*Janda v. T-Mobile, USA, Inc.*,
    No. C05-03729 JSW, 2009 WL 667206 (N.D. Cal. Mar. 13, 2009),
    *aff'd*, 378 Fed. Appx. 705 (9th Cir. 2010) ........................................................................13

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009)......................................................................................6, 12

*Kwan v. SanMedica Int'l*,
    854 F.3d 1088 (9th Cir. 2017)............................................................................................5

*Palmer v. Apple Inc.*,
    No. 5:15-cv-05808-RMW, 2016 WL 1535087 (N.D. Cal. Apr. 15, 2016) ..............................8

*Petroleum Sales, Inc. v. Valero Refining Co.*,
    No. C 05-3526, 2006 WL 3708062 (N.D. Cal. Dec. 14, 2006) ..............................................16

*Price v. Apple Inc.*,
    No. 21-CV-02846-HSG, 2022 WL 1032472 (N.D. Cal. Apr. 6, 2022)....................................9

*Progressive W. Ins. Co. v. Superior Court*,
    135 Cal. App. 4th 263 (2005) ...........................................................................................17

*Richardson v. Reliance Nat'l Indemn. Co.*,
    No. C 99-2952 CRB, 2000 WL 284211 (N.D. Cal. Mar. 9, 2000)............................................8

*Royal Primo Corp. v. Whitewater W. Indus., Ltd.*,
  No. 15-cv-04391-JCS, 2016 WL 1718196 (N.D. Cal. Apr. 29, 2016) ........................................9

*Van Dusen v. City of Oakland*,
  No. 13–cv–05023–HSG, 2015 WL 1800587 (N.D. Cal. Apr. 20, 2015)...................................5

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003)...................................................................................................6

*Yastrab v. Apple Inc.*,
  173 F. Supp. 3d 972 (N.D. Cal. 2016) ...................................................................................10

**Statutes**

Cal. Bus. & Prof. Code § 17600 ....................................................................................................14

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.      INTRODUCTION**

3           The Court dismissed Plaintiffs' First Amended Complaint (FAC)—their second attempt to

4    plead allegations sufficient to state a claim—in its entirety.  In doing so, the Court's Order

5    provided specific instructions regarding exactly what Plaintiffs were required (and permitted) to

6    amend.  Yet in the Second Amended Complaint (SAC)—Plaintiffs' *third* effort to plead sufficient

7    claims—Plaintiffs address *not one* of the Court's directives.  Indeed, the SAC ignores them

8    entirely, as detailed below.

9           Rather than heed the Court's instruction, and in contravention of the Court's Order,

10   Plaintiffs seemingly advance a new theory that it is "difficult to downgrade" their iCloud storage.

11   (*See generally* SAC.)  This theory, however, is just a thinly veiled recasting of the "difficult to

12   manage storage" theory presented in their prior pleadings.  Plaintiffs' inability to maintain their

13   data within the 5GB of free iCloud storage Apple provides is not an inability to downgrade to

14   5GB.  The Court has already rejected that theory.  (*See* Order Granting Apple's Motion to

15   Dismiss FAC, ECF No. 37 (hereinafter "Order").)

16          Moreover, this "new" theory fails for exactly the same reasons as the original theory:

17   Plaintiffs still do not allege that any of them ever saw or relied on the iCloud terms and conditions

18   ("iCloud Terms & Conditions"), or any other specific misrepresentation or omission by Apple, let

19   alone a misrepresentation or omission regarding downgrading or managing their iCloud storage.

20   Plaintiffs allege they were deceived because it is "difficult to downgrade" iCloud storage, but the

21   iCloud Terms & Conditions provide only that users are permitted to downgrade their storage and

22   Plaintiffs do not allege otherwise.  In fact, nothing in the iCloud Terms & Conditions even hints

23   at an obligation by Apple to assist Plaintiffs with managing or reducing the data they have chosen

24   to store in order to remain within the 5GB of iCloud storage provided at no cost.

25          The email that is sent to users who near 5GB of iCloud storage, which Plaintiffs appear to

26   rely on, also does not support Plaintiffs' theory that Apple deceived consumers about the alleged

27   "difficulty in downgrading" their storage.  In fact, this email does not even use the term

28   "downgrade" but merely informs users that they have the choice either to upgrade their iCloud

1    storage from the free 5GB or "reduce the amount of storage you are using." (SAC ¶ 13.) The

2    email makes no representation or promise of any kind regarding the user's ability to reduce the

3    personal data they have stored, nor does it refer in any way to a user's ability to downgrade their

4    storage in the future. As the Court already held, Apple had no obligation, and therefore breached

5    no obligation, to manage Plaintiffs' data to enable them to stay within 5GB. (Order at 12.)

6         Further, Plaintiffs still do not and cannot deny that each of the misrepresentations and

7    omissions they allege are expressly contradicted by the disclosures in the iCloud Terms &

8    Conditions. Nor do Plaintiffs deny that the iCloud Terms & Conditions were presented to users

9    the first time they enabled iCloud—as this Court has already held. (*Id.* at 9.) Plaintiffs also do

10   not point to any "unfair" conduct on Apple's part with respect to their alleged inability to manage

11   their data to remain within 5GB. Plaintiffs attempt to re-characterize their claims as based on a

12   purported inability to "downgrade" their storage, but the factual allegations of the SAC make

13   clear that their alleged grievance is unchanged: they complain of their inability to manage their

14   data to stay within 5GB, not their inability to downgrade their storage after having elected an

15   increased storage plan. Notably, two Plaintiffs have succeeded in managing their data to stay

16   within 5GB, negating Plaintiffs' allegations that it is impossible to do so. Plaintiffs' CLRA, FAL,

17   and UCL claims fail.

18        As for Plaintiffs' Automatic Renewal Law (ARL) claim, Plaintiffs once again fail to

19   demonstrate any violation. As the Court recognized, the ARL does not apply to the 5GB of

20   iCloud storage Apple provides at no cost, and Plaintiffs' new allegations do not avoid that ruling.

21   (*Id.* at 9.) Nor do Plaintiffs identify any disclosure required by the ARL that Apple failed to

22   make.

23        Lastly, Plaintiffs again fail to identify any specific contractual term, in the iCloud Terms

24   & Conditions or elsewhere, that is unconscionable or that Apple allegedly breached.

25        The SAC should be dismissed, this time with prejudice.

26

27

28

## II.    FACTUAL BACKGROUND

### A.    Users May Opt In to Apple's iCloud Service and Are Provided iCloud Terms & Conditions

Apple's iCloud service offers users a variety of services, including storing "contacts, calendars, photos, notes, reminders, documents, app data, and iCloud email" across a user's Apple devices, so that such content is accessible on compatible devices wherever the user is. (Declaration of Alexis Amezcua ("Amezcua Decl."), Ex. A, iCloud Terms & Conditions, Introduction.)[1]  At set-up of an Apple device, a user may opt into iCloud or choose not to enable an iCloud account.  (*Id.* (referring to a user choosing not to enable iCloud).)  A user may also opt into, disable, or manage their iCloud storage at any time through Settings on any device.  (*Id.*, Section III.A.)

When a user opts in to iCloud for the first time, they are presented with the iCloud Terms & Conditions, which explain not only how iCloud is enabled and disabled, but also how to manage one's data and where to find more information about storage plans and pricing.  (*Id.*, Introduction & Section III.A.)[2]

Each iCloud user is provided 5GB of iCloud storage—at no charge to the user.  (*Id.*, Section I.C ("Your Account is allocated 5GB of storage capacity as described in the iCloud feature pages.  Additional storage is available for purchase. . . .").)  Depending on a user's

---

[1] The SAC references, relies on, and quotes the iCloud Terms & Conditions and an email users receive as they approach 5 GB of iCloud storage ("iCloud Capacity Email"), both of which are the basis of Plaintiffs' breach of contract claim and their claims of alleged misrepresentations and omissions.  Accordingly, Apple files herewith a Request for Judicial Notice regarding these documents.

[2] Noticeably absent from the SAC is Plaintiffs' prior concession in the FAC that users receive the iCloud Terms & Conditions when signing into iCloud for the first time.  (FAC ¶ 25); *see also* Order at 9 (finding the "Amended Complaint acknowledges [the iCloud Terms & Conditions], are provided to each user before they subscribe to iCloud").  Plaintiffs also attempt to retitle the iCloud Terms & Conditions, which they originally referred to as "Terms and Conditions" in the FAC, to "Legal Agreement."  (*See, e.g.*, SAC ¶ 23.)  These strategic revisions, however, do not alter the fact that the document Plaintiffs reference is the same iCloud Terms & Conditions referenced in the FAC and Apple's prior motion to dismiss, or avoid Plaintiffs' admission that the iCloud Terms & Conditions are presented to users at the time they first sign into iCloud.

individual needs, Apple offers three levels of capacity for purchase: 50GB at $0.99 per month; 200GB at $2.99 per month; and 2TB at $9.99 per month.  (SAC ¶ 18 (erroneously identifying pricing; Amezcua Decl., Ex. A, iCloud Terms & Conditions, Sections I.C. & III).)  Where a user elects to upgrade to paid iCloud storage, the iCloud Terms & Conditions provide that "[y]ou can change your subscription by upgrading or downgrading your storage under the iCloud section of Settings on your device, or under the iCloud pane of System Preferences on your Mac or iCloud for Windows on your PC."  (*See id*., Section III.A.)

The iCloud Terms & Conditions specifically inform the user that "[y]ou are solely responsible for . . . all activities that occur on or throughout your [iCloud] Account. . . [.]"  (*Id*., Section IV.A.)

**B.      Users Can Elect to Upgrade or Downgrade Their iCloud Storage**

When a user approaches the 5GB free storage limit, Apple provides email notifications alerting the user at different points that their storage is almost full, providing the user's current usage amount, and detailing that the user can either (1) reduce their data to stay within the free 5GB level, or (2) upgrade and purchase additional iCloud storage on a monthly basis.  (*See* Amezcua Decl., Ex. B, iCloud Capacity Email; SAC ¶¶ 12–13.)  The iCloud Capacity Email also provides the cost for the next level of additional iCloud storage, as well as a hyperlink to a user's account, an Apple Support page regarding iCloud, and the iCloud Terms & Conditions.  (*See id*.)

**C.      The Named Plaintiffs Never Allege They Read the iCloud Terms & Conditions or That Plaintiffs Were Not Permitted to Downgrade Their iCloud Storage**

Plaintiffs are eight Apple device users who each use various levels of Apple's iCloud storage service.  (SAC ¶¶ 35–41.)  None of the Named Plaintiffs allege that they read or relied on the iCloud Terms & Conditions.  (*See generally* SAC.)  None of the Named Plaintiffs allege that they read or relied on the iCloud Capacity Email.  (*See generally* SAC.)  Similarly, none of the Named Plaintiffs allege how or when they activated iCloud or how or when they upgraded from the free 5GB storage of iCloud to paid storage.  (*See generally* SAC.)  Of particular importance

here, no Named Plaintiff alleges how or when they tried to downgrade but were unable to do so.[3]
Nor do the Named Plaintiffs allege they were not permitted to downgrade their storage.  Plaintiffs
allege only that they "could not understand how to downgrade" (SAC ¶ 63), that they personally
"have struggled to downgrade their data use of the service" (*id*. ¶ 35), and that most of them have
"not been able to figure out how to manage [their] data" (*id*. ¶¶ 38–41).  The Named Plaintiffs'
allegations remain entirely unchanged from the FAC; they merely recycle the allegations of the
FAC regarding the inability of six of the eight Plaintiffs to manage their data as they wish.

### III.    LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a complaint if it
fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to
dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its
face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard
requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant
has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must provide
"more than labels and conclusions." *Twombly*, 550 U.S. at 555.  The Court does not credit
allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.
*Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  Further, the Court is not required
to grant leave to amend if the Court determines that permitting amendment would be futile. *Van
Dusen v. City of Oakland*, No. 13–cv–05023–HSG, 2015 WL 1800587, *6 (N.D. Cal. Apr. 20,
2015) (granting motion to dismiss without leave to amend where Plaintiff had "multiple
opportunities to cure deficiencies in her complaint" and it was "clear any such amendment would
be futile") (internal quotation marks and citation omitted).

---

[3] Two of the named plaintiffs (William Rutter and Robert Barker) admit that they have
successfully managed their data so as to stay within the 5GB of free storage, meaning they have
not upgraded their storage and therefore have nothing to downgrade.  (*Id*. ¶¶ 37, 41.)

1    **IV.    ARGUMENT**

2         **A.    Plaintiffs' Fraud-Based Claims Under the CLRA, FAL, and UCL Fail**

3         In granting Apple's motion to dismiss the FAC, the Court found Plaintiffs' CLRA, FAL,

4    and UCL claims, all of which sounded in fraud, failed to meet Rule 9(b)'s heightened pleading

5    requirement and, therefore, failed "to put Apple on notice of the allegations against it."  (Order at

6    14.)  Despite the Court granting Plaintiffs leave to amend, these claims in the SAC suffer from the

7    same defect.

8         Under Rule 9(b), the pleader must "identify the who, what, when, where, and how of the

9    misconduct charged, as well as what is false or misleading about the purportedly fraudulent

10   statement, and why it is false."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir.

11   2018) (citing *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir.

12   2011)); *see also Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (Rule 9(b) requires

13   allegations "specific enough to give defendants notice of the particular misconduct which is

14   alleged to constitute the fraud charged").  In cases involving alleged misrepresentations, plaintiffs

15   must allege that they read and relied on a specific misrepresentation and plead such facts with

16   particularity under Rule 9(b).  *See Haskins v. Symantec Corp.*, 654 Fed. Appx. 338, 339 (9th Cir.

17   2016) ("Because Haskins's complaint did not allege that she read and relied on a specific

18   misrepresentation by Symantec, she failed to plead her fraud claims with particularity as required

19   by Rule 9(b) of the Federal Rules of Civil Procedure."); *Kearns v. Ford Motor Co.*, 567 F.3d

20   1120, 1126 (9th Cir. 2009) (finding pleadings failed to satisfy the requirements of Rule 9(b)

21   where, for example, plaintiff did not "specify when he was exposed to [ads or sales material] or

22   which ones he found material" and "failed to specify which sales material he relied upon in

23   making his decision to buy a CPO vehicle"). "When an entire complaint, or an entire claim within

24   a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading

25   requirements of Rule 9(b), a district court may dismiss the complaint or claim."  *Vess v. Ciba-*

26   *Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

27         Plaintiffs' CLRA, FAL, and UCL claims continue to sound in fraud.  These claims rest on

28   the core allegations that Apple did not disclose the iCloud service before users neared 5GB of

---

storage and that Apple misrepresented that Plaintiffs could downgrade their iCloud storage. (SAC ¶¶ 55–61, 75, 77.)  But Plaintiffs' first theory fails because Plaintiffs still do not dispute that the iCloud Terms & Conditions are presented to users the first time they enable iCloud, and that the Terms & Conditions disclose what iCloud is, that a user is provided 5GB of iCloud storage for free, that a user may purchase additional storage capacity, and that a user may upgrade or downgrade their storage.  (*See* Amezcua Decl., Ex. A, iCloud Terms & Conditions, Introduction; Section I.C.; Section III.)  Nor can they.  Plaintiffs' second theory is merely a thinly disguised version of their prior rejected theory: they allegedly have been deceived because it is "difficult to manage" their own data, and so they cannot "downgrade" (manage) their iCloud storage to stay within 5GB.  (SAC ¶¶ 36–41 (alleging Plaintiffs have not been able "to figure out how to manage" their own data); *id*. ¶ 35 (alleging Plaintiffs "have struggled to downgrade their data use of the service so as to use the storage level they want and need"); *id*. ¶ 63 (Plaintiffs "could not understand how to downgrade, as Apple represented they could").)  Plaintiffs, however, once again fail to satisfy Rule 9(b)'s heightened pleading requirement; the Court has already found these allegations insufficient to state a claim.

### 1. Plaintiffs Fail to Plead Exposure to or Reliance on Any Statements in the iCloud Terms & Conditions or iCloud Capacity Email

Not once in the SAC do Plaintiffs allege that they saw, read, or relied upon any statement by Apple in deciding to acquire or upgrade their iCloud storage, let alone with the particularity required by Rule 9(b).  (*See generally* SAC.)[4]  Accordingly, all their fraud-based claims fail.

Plaintiffs rely on the iCloud Terms & Conditions for their allegations that Apple misrepresented that Plaintiffs were permitted to downgrade—really, manage—their storage, but Plaintiffs never allege they actually read, let alone relied on, the iCloud Terms & Conditions. (*See generally* SAC.)  This is so even after the Court cautioned Plaintiffs to do so.  (*See* Order at

---

[4] *See, e.g.*, *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1075 (N.D. Cal. 2014) ("[T]o adequately plead a CLRA claim, a plaintiff must allege that she relied on the defendant's alleged misrepresentation and that she suffered economic injury as a result."); *Great Pac. Sec. v. Barclays Capital, Inc.*, 743 Fed. Appx. 780, 783 (9th Cir. 2018) ("Plaintiffs alleging claims under the FAL and UCL are required to plead and prove actual reliance on the misrepresentations or omissions at issue.") (citing *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 326–27(2011)).

1    10–11 (finding the FAC did "not plausibly explain how [Plaintiffs] were deceived" where the

2    FAC did "not allege that any of the Plaintiffs even read the iCloud Terms and Conditions").)

3    Similarly, Plaintiffs do not allege they ever read or relied upon the iCloud Capacity Email, which

4    in any event would have been received only after the Terms & Conditions had been provided to

5    users.  (*See generally* SAC.)

6           The SAC makes only vague and conclusory allegations that Plaintiffs collectively

7    acquired and upgraded iCloud and that Apple made alleged representations and omissions about

8    iCloud and downgrading.  (SAC ¶¶ 45–46.)  Plaintiffs do not allege the specifics of how or when

9    each Plaintiff activated iCloud, how or when they upgraded from the free 5GB storage of iCloud,

10   or how or when they tried to downgrade their iCloud storage but were unable to do so, let alone

11   what they saw and relied on at any of these stages.  (*See generally* SAC.)  These failures are fatal

12   to Plaintiffs' claims.[5]  Further, the Court need not accept Plaintiffs' conclusory allegations as true.

13   *Richardson v. Reliance Nat'l Indemn. Co.*, No. C 99-2952 CRB, 2000 WL 284211, at *4 (N.D.

14   Cal. Mar. 9, 2000) (finding "Plaintiff may not simply 'set forth conclusory allegations of fraud

15   punctuated by a handful of neutral facts'" and "Rule 9(b) requires plaintiffs to plead facts

16   establishing the falsity of a statement at the time it is made.") (quoting *In re GlenFed, Inc. Sec.

17   Litig.*, 42 F.3d 1541, 1547–48 (9th Cir. 1994)).

18              2.      **Plaintiffs Do Not Plead Any Actionable Misrepresentations or
                        Omissions**
19

20           Plaintiffs' fraud-based claims are premised on two theories: (1) Apple did not disclose the

21   _____

22           [5] *See Garcia v. Sony Comput. Entm't Am., LLC*, 859 F. Supp. 2d 1056, 1063 (N.D. Cal.
     2012) ("Although the SAC generally asserts that the statements to be found on the PS3's
23   packaging and Sony's website are misleading and exemplary of defendants' deceptive marketing
     campaign, it does not specifically aver that [plaintiff] relied on those particular statements, or
24   even expressly state that he was aware of them.  These omissions are fatal under Rule 9(b).")
     (internal citation omitted); *Palmer v. Apple Inc.*, No. 5:15-cv-05808-RMW, 2016 WL 1535087, at
25   *5 (N.D. Cal. Apr. 15, 2016) (holding that a plaintiff's allegations were insufficient to state a
     claim under Rule 9(b) where the plaintiff did not allege "which specific advertisements or
26   statements he personally saw or when they were made" or "how those statements were false");
     *Haddock v. Countrywide Bank, NA*, No. CV 14-6452 PSG (FFMx), 2015 WL 9257316, at *22
27   (C.D. Cal. Oct. 27, 2015) (granting motion to dismiss where "FAC conclusorily states that
     Plaintiff relied on the allegedly false representations . . . but offers no other facts to support this
28   assertion," satisfying neither Rule 8 nor Rule 9(b)'s pleading requirements).

1   iCloud service prior to users nearing the limit of the free 5GB Apple provided and (2) Apple

2   misrepresented that users could downgrade iCloud because Plaintiffs could not manage their data

3   and downgrade.  (SAC ¶¶ 12, 21–24, 55–61, 75, 77.)  Plaintiffs do not identify any actionable

4   misrepresentations or omissions to support either theory.

5          Plaintiffs' allegations that Apple did not disclose the iCloud service until users neared

6   5GB of storage is belied by the iCloud Terms & Conditions and Plaintiffs' own admissions in the

7   FAC.  As Plaintiffs conceded in their prior pleading, Apple provides the iCloud Terms &

8   Conditions to a user when they opt in to iCloud for the first time.  (FAC ¶ 25; *see also* Order at 9

9   (finding the "Amended Complaint acknowledges [the iCloud Terms & Conditions], are provided

10  to each user before they subscribe to iCloud").)  The iCloud Terms & Conditions explain what the

11  iCloud service is, how it operates, and that users may change their iCloud subscriptions, among

12  other topics.  (*See* Amezcua Decl., Ex. A, iCloud Terms & Conditions, Introduction; Section I.C.;

13  Section III.)  Plaintiffs' selective pleading in the SAC does not avoid their prior admission that

14  users receive these Terms & Conditions containing the very disclosures Plaintiffs contend were

15  not provided.  *Bauer v. Tacey Goss, P.S.*, No. 12-00876 JSW, 2012 WL 2838834, at *3 (N.D.

16  Cal. July 10, 2012) (finding plaintiffs cannot "avoid the implications of [their prior] factual

17  allegation[s] by omitting them" in an amended complaint with no "credible explanation"); *Royal

18  Primo Corp. v. Whitewater W. Indus., Ltd.*, No. 15-cv-04391-JCS, 2016 WL 1718196, at *3

19  (N.D. Cal. Apr. 29, 2016) (court may consider prior allegations when assessing amended

20  complaint making inconsistent or contradictory allegations); *see also Price v. Apple Inc.*, No. 21-

21  cv-02846-HSG, 2022 WL 1032472, at *7 (N.D. Cal. Apr. 6, 2022) (noting "[l]eave to amend is

22  only warranted 'if the deficiencies can be cured with additional allegations that are consistent

23  with the challenged pleading and that do not contradict the allegations in the original

24  complaint'" (quoting *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011))

25  (Gilliam, J.).

26         Plaintiffs also suggest that Apple should have disclosed at the time their devices were

27  purchased that Plaintiffs were "expected" to reach 5GB of storage and either have to pay for

28  additional storage or downgrade.  (SAC ¶¶ 60–61.)  But Plaintiffs offer no basis for requiring any

such disclosure.  Notably, two of the eight Named Plaintiffs, William Rutter and Robert Barker, never upgraded or exceeded 5GB of iCloud storage and, according to Plaintiffs, the same is true for 80% of iCloud users.  (SAC ¶¶ 37, 41; *see also* FAC ¶ 8 (alleging as of 2018, only 20% of iCloud users upgraded from the free 5GB storage; the other 80% thus remained at 5GB or below).)  Accordingly, the factual premise for the disclosure Plaintiffs seek to require—that users were "expected" to reach and exceed 5GB—is negated both by Plaintiffs Rutter and Barker's experiences and the allegations of the FAC.  Plaintiffs also conceded in the FAC that users "may stay at the 5GB level," undermining their argument that users are expected to reach 5GB.  (FAC ¶134 ("Consumers may stay at the 5GB level—they may, but are not obligated, to purchase more (e.g., section III)"); *see also id*. at ¶ 30 (referencing the iCloud Terms & Conditions and alleging the 5GB of iCloud is free and "*[t]he consumer may, but need not, purchase additional storage*" (emphasis added).)  Nor do Plaintiffs allege any basis for Apple to know or predict how much data any given user would choose to download and retain, or how any user would choose to manage their data, and for this reason as well, there can be no basis for requiring a "disclosure" predicting users' future data usage.[6]  (*See generally* SAC.)

As for Plaintiffs' claims that Apple misrepresented that Plaintiffs could downgrade their iCloud storage, Plaintiffs do not demonstrate how any statement Apple made is false or misleading.  To support their claims, Plaintiffs reference statements in the iCloud Terms & Conditions that "You can change your subscription by upgrading or downgrading your storage. . ." and if a user cancels their paid iCloud subscription "[w]e will reduce your storage back to 5GB and reimburse you[.]"  (SAC ¶¶ 23–24.)  These statements, however, represented only that users are permitted to downgrade their iCloud storage and that their payments will be reduced or eliminated if they do so.  (*See* Amezcua Decl., Ex. A, iCloud Terms & Conditions, Section III.)  Both statements are true, and Plaintiffs have not alleged otherwise.  (*See generally* SAC; *see also Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 979 (N.D. Cal. 2016) (dismissing

---

[6] Apple also informs users that they are "solely responsible" for their iCloud activities. (*See* Amezcua Decl., Ex. A, iCloud Terms & Conditions, Section IV.A.)

1    fraud-based claims where plaintiffs "fail[ed] to particularly explain what is false or misleading

2    about the statements" and therefore did not satisfy Rule 9(b)).)  Plaintiffs never allege they were

3    not permitted to downgrade their iCloud storage (or even that any of them attempted to do so,

4    with the single exception of the named plaintiff who allegedly forgot her password), or did not

5    receive a reimbursement when they downgraded or canceled their iCloud subscriptions.  (*See*

6    *generally* SAC.)

7         In another effort to support their theory that Apple misrepresented users' ability to

8    downgrade, the SAC references a statement in the iCloud Capacity Email explaining that to

9    "continue to access" iCloud, the user needs to either upgrade their storage plan or "reduce the

10   amount of storage you are using."  (SAC ¶ 13.)  The email does not use the term "downgrade," let

11   alone make any promise concerning the user's ability to downgrade their iCloud storage in the

12   future if they choose to upgrade now.  Indeed, if a user's data remains under 5GB, there would be

13   nothing to downgrade.  Nor does the email make any future promise of anything related to iCloud

14   management.  Thus, it is difficult to discern how such an email would mislead or deceive

15   Plaintiffs or a reasonable consumer about the ability to downgrade iCloud storage after they

16   elected to upgrade to a paid subscription; this is especially true given that users would only

17   receive such an email after having agreed to the iCloud Terms & Conditions in the first instance.

18        At heart, the SAC is a repackaged version of Plaintiffs' "difficult to manage" iCloud

19   storage theory from their FAC.  Plaintiffs again allege that they have "struggled to downgrade

20   their data use" (SAC ¶ 35); that they have tried but not been able to "figure out how to manage

21   [their] data" (*id*. ¶¶ 38–41); and that they "could not understand how to downgrade" or it was

22   "difficult" to do so (*id*. ¶¶ 63, 97).  But nowhere do Plaintiffs allege actionable misrepresentations

23   or omissions regarding data management.  (*See generally* SAC.)  In fact, Apple never made any

24   representations regarding Plaintiffs' ability to manage their data or promises to provide data

25   storage advice, including as related to downgrading, in the iCloud Terms & Conditions or iCloud

26   Capacity Email.  But, again, Plaintiffs do not allege they even read the iCloud Terms &

27   Conditions or iCloud Capacity Email to begin with.  Further, for the reasons discussed, Plaintiffs

28   offer no support for their omissions claims.  As Plaintiffs have conceded, the iCloud Terms &

1   Conditions are presented to users when they first enable iCloud, thus negating Plaintiffs' theory

2   that Apple failed to disclose the existence of iCloud until they neared 5GB of storage.  Plaintiffs'

3   other omissions theory, that Apple should have disclosed that users were "expected" to reach

4   5GB, is both without basis and contrary to facts that Plaintiffs admit.  *Baltazar v. Apple Inc.*, No.

5   CV-10-3231-JF, 2011 WL 588209, at *4 (N.D. Cal. Feb. 10, 2011) (noting that to be actionable,

6   an omission must be "contrary to a representation actually made by the defendant, or an omission

7   of a fact the defendant was obliged to disclose" (citing *Daugherty v. Am. Honda Motor Co.*, 144

8   Cal. App. 4th 824, 835 (2006)).

9         Plaintiffs' fraud-based claims should be dismissed.

10        **3.**      **Plaintiffs Do Not Otherwise State a Claim Under the UCL**

11        Plaintiffs fail to state any UCL claim.  Plaintiffs base their UCL "unlawful" claim on

12  allegations that Apple violated the CLRA, FAL, and ARL, and breached its contract with

13  Plaintiffs.  (SAC ¶¶ 68, 76, 90, 100, 115.)  Because Plaintiffs have not stated viable predicate

14  claims under any of these causes of action, Plaintiffs cannot plead an "unlawful" act under the

15  UCL.  *Daugherty*, 144 Cal. App. 4th at 837 (dismissing UCL claim for lack of a violation of

16  statute or other law); *Hodges v. Apple Inc.*, No. 13-cv-01128-WHO, 2013 WL 4393545, at *6

17  (N.D. Cal. Aug. 12, 2013) ("Because Hodges fails to plead with particularity how Apple violated

18  any statute, he also fails to adequately plead a violation under the UCL's 'unlawful' prong.").

19        Plaintiffs' UCL "unfair" claim also fails.  Where, as here, a UCL "unfairness" claim relies

20  on a "unified course of fraudulent conduct," the pleading of that claim also must satisfy Rule

21  9(b)'s heighted standard.  *Kearns*, 567 F.3d at 1125.  Because Plaintiffs' UCL "unfair" claim, like

22  their UCL "fraud" claims, are premised on Apple's alleged failure to disclose iCloud and alleged

23  misrepresentation regarding the ability to downgrade, these claims must be pled with

24  particularity, including actual reliance on the alleged fraudulent conduct.  *Backhaut v. Apple, Inc.*,

25  74 F. Supp. 3d 1033, 1051 (N.D. Cal. 2014) ("As Plaintiffs have failed to plead the details of

26  Apple's alleged fraudulent conduct with sufficient particularity and failed to plead actual reliance,

27  the Court grants Defendant's motion to dismiss Plaintiffs' unfair business practice UCL claim

28

1   based on fraudulent conduct.").  Plaintiffs fail to plead either fraudulent conduct or actual reliance

2   with sufficient particularity.

3       In any event, Plaintiffs do not state a claim under either of the tests used to assess a UCL

4   "unfairness" claim.  With regard to the "tethering test," Plaintiffs have not identified a public

5   policy Apple's conduct allegedly violates and how that policy is tethered to any specific

6   constitutional, regulatory, or statutory provisions.  *Janda v. T-Mobile, USA, Inc.*, No. C 05-03729

7   JSW, 2009 WL 667206, at \*9 (N.D. Cal. Mar. 13, 2009), *aff'd*, 378 Fed. Appx. 705 (9th Cir.

8   2010) (dismissing UCL claim where plaintiffs did not allege "facts sufficient to show that T-

9   Mobile's conduct violates a 'legislatively declared policy'") (quoting *Speigler v. Home Depot*

10  *U.S.A.*, 552 F. Supp. 2d 1036, 1045 (C.D. Cal. 2008)).  And, under the "balancing test," Plaintiffs

11  have not identified conduct that is "immoral, unethical, oppressive, unscrupulous or substantially

12  injurious to consumers."  *See Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145–47 (N.D. Cal.

13  2013).  Indeed, there is nothing "unfair" about the disclosures provided by Apple to iCloud users

14  about free and upgraded storage options depending on users' individual choice and storage needs.

15      Plaintiffs' additional UCL claims should be dismissed.

16  **B.    Plaintiffs' ARL Claim Fails for the Reasons Already Recognized by this**
        **Court**

17

18  The Court specifically granted Plaintiffs leave to amend their ARL claims to plead:

19  (1) why iCloud users who chose to upgrade their storage did not consent to the iCloud Terms &

20  Conditions; (2) why the cancellation policy and mechanism provided in the iCloud Terms &

21  Conditions are not stated in clear and conspicuous terms as required by § 17602(a)(1) (and why

22  Plaintiffs have standing to pursue this claim); and (3) why iCloud's cancellation terms are not

23  capable of being retained by consumers as required by § 17602(a)(3).  (Order at 11–12.)

24  Plaintiffs ignored these instructions.

25      Instead, Plaintiffs abandoned their ARL claims related to the iCloud Terms & Conditions'

26  cancellation policy, and now assert only a claim alleging that Apple failed to obtain the consent of

27  all iCloud users.  Specifically, Plaintiffs argue that iCloud is a "continuous service" or "free gift

28  or trial" and Apple failed to make required disclosures and obtain consent before binding

Plaintiffs to this "continuous service," for which they would later pay.  (SAC ¶¶ 88–89.)  These claims fail.

As this Court already recognized, the ARL does not apply to the free 5GB of iCloud.  The Court explained in its prior decision that Section 17602(a)(2) focuses on "charging consumers' credit cards" without obtaining consent.  (Order at 8.)  Here, the charging of any credit cards is clearly limited to users who chose to upgrade as they are the "only users who pay for iCloud" given that "Apple provides the first 5GB for free."  (*See* Order 8–9.)  Plaintiffs allege nothing new in the SAC that suggests otherwise.

Indeed, the express terms of the ARL itself make clear that the statute applies only to "the practice of ongoing *charging* of consumer credit or debit cards or third-party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service."  *See* Cal. Bus. & Prof. Code § 17600 (emphasis added).  It is undisputed that there is no charge, let alone a recurring charge, for the 5GB of iCloud storage.  (SAC ¶ 86.)  In fact, Plaintiffs have already conceded users are never required to pay for the 5GB of free iCloud storage, which "never goes away," and that users are never required by Apple to upgrade to paid storage.  (*See* FAC ¶¶ 116, 117, 134, 148, 160, 171, 182; *see generally* Amezcua Decl., Ex. A, iCloud Terms & Conditions.)  In other words, there is no "free trial."  And, while Plaintiffs allege "Apple planned to extract regular payments" for iCloud (SAC ¶ 89), this is contradicted by their own prior admissions that "*[t]he consumer may, but need not, purchase additional storage*" (FAC ¶ 30 (emphasis added)) and that "[c]onsumers may stay at the 5GB level—they may, but are not obligated, to purchase more (e.g., section III)" (*id*. ¶ 134).  It is also contradicted by the experience of the named Plaintiffs themselves, two of whom admittedly have never needed or paid for additional storage.  Nothing in the ARL supports Plaintiffs' argument that a seller must make ARL disclosures regarding an *additional* purchase that the purchaser may or may not make in the future.

As for users who elected to upgrade to paid storage, the Court has already found that the iCloud Terms & Conditions sufficiently disclose that Apple would automatically charge a recurring fee based on the upgraded storage plan a user chose:

1
2
3
4
5

> In the iCloud Terms and Conditions—which, the Amended Complaint acknowledges, are provided to each user before they subscribe to iCloud—Apple says the following: "By upgrading your storage on your device or computer, Apple will automatically charge on a recurring basis the storage fee for the storage plan you choose, including any applicable taxes, to the payment method associated with your Apple ID[.]"  The Amended Complaint fails to plausibly explain why or how iCloud users who chose to upgrade their storage did not consent to this agreement, so it does not state a claim based on § 17602(a)(2).

6
7
8

(Order at 9.)  Plaintiffs have not alleged that Apple failed to make any disclosure required by the ARL, and the Court has already rejected Plaintiffs' allegation that users who upgraded their storage did not consent to do so.  Plaintiffs' ARL claim once again fails.

9
10

### C.   Plaintiffs' Unconscionability Claim Under the CLRA Still Fails

11
12
13
14
15

In ruling on Apple's Motion to Dismiss the FAC, the Court dismissed Plaintiffs' unconscionability claim because Plaintiffs failed to address either the substantive or procedural elements of unconscionability.  Although the Court gave Plaintiffs leave to amend this claim, the Court noted it was "skeptical" that Plaintiffs could allege that the iCloud Terms & Conditions impose substantively or procedurally unconscionable terms.  (Order at 13.)  As the Court predicted, the SAC fails to do so.

16
17
18
19
20
21
22
23
24
25
26

A contract term is only unconscionable if it is shown to be both procedurally and substantively unconscionable.  *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 485–86 (1982).  The procedural element focuses on "surprise[]" resulting from the "significant imbalance" in the contracting parties' bargaining power and requires a showing that there were "no reasonable market alternatives."  *Bayol v. Zipcar, Inc.*, 78 F. Supp. 3d 1252, 1261 (N.D. Cal. 2015).  A contract term is substantively unconscionable only if it is "so one-sided as to 'shock the conscience,' or . . . impose harsh oppressive terms."  *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1213 (1998) (quoting *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1532–33 (1997)).  Plaintiffs have once again failed to state an unconscionability claim under the CLRA for four reasons.

27
28

*First*, Plaintiffs fail to identify any specific provisions within the iCloud Terms & Conditions they allege are both substantively and procedurally unconscionable.  Plaintiffs allege

1    only that it is procedurally unconscionable to "present Plaintiffs with a choice that makes it

2    difficult to avoid payment" and that it is substantively "unfair to press Plaintiffs into beginning to

3    pay for a service they cannot effectively leave[.]"  (SAC ¶¶ 98–99.)  But those allegations relate

4    only to Plaintiffs' inability to manage their own data to remain within 5GB of storage.  They do

5    not establish any "surprise" or procedural unconscionability, let alone substantive

6    unconscionability in charging Plaintiffs for the volume of data they elected to upgrade to for data

7    they have chosen to download and retain.

8           *Second*, Plaintiffs' allegation that Apple presents "Plaintiffs with a choice that makes it

9    difficult to avoid payment" does not even attempt to allege "surprise" and does not rise to the

10   level of procedural unconscionability.  Apple presents users with the iCloud Terms & Conditions

11   when they register their Apple ID, a fact the Court has already recognized.  (Order at 9.)  The

12   Terms & Conditions explain what iCloud is, that a user is provided 5GB of iCloud storage for

13   free, that a user may purchase additional storage capacity, and that a user may upgrade or

14   downgrade their storage.  (*See* Amezcua Decl., Ex. A, iCloud Terms & Conditions, Introduction;

15   Section I.C.; Section III.)  Plaintiffs do not allege how any provisions in the iCloud Terms &

16   Conditions resulted in any "surprise" to them and they cannot do so, given these disclosures.

17   *Brown v. Blackbaud, Inc.*, No. CV 18-03549-AB (KSx), 2019 WL 4509203, at *3 (C.D. Cal. July

18   25, 2019) (finding "degree of surprise in this contract is low" where the "objected-to term is not

19   hidden and is in fact affirmatively disclosed").

20          *Third*, Plaintiffs admit that they have reasonable market alternatives to iCloud storage,

21   thereby defeating any claim of procedural unconscionability.  (SAC ¶ 44 ("[E]ach would have

22   looked for a different product or service and *would and could easily have chosen a cheaper

23   manner of storing their data*.  Each would do so still.") (emphasis added); *see also id.* ¶ 99 ("It is

24   substantively unfair to press Plaintiffs into beginning to pay for a service they cannot effectively

25   leave and that *could be obtained elsewhere for a fraction of the cost*.") (emphasis added).)

26   Plaintiffs' admissions doom their unconscionability claim.  *See Petroleum Sales, Inc. v. Valero

27   Refining Co.*, No. C 05-3526 SBA, 2006 WL 3708062, at *17 (N.D. Cal. Dec. 14, 2006)

28   (rejecting procedural unconscionability claim where plaintiff had reasonable market alternatives).

1   The iCloud Terms & Conditions provide that Plaintiffs are permitted to downgrade or cancel their

2   iCloud storage at any time.  Plaintiffs could have exercised this option and elected to store their

3   data using any of the reasonable market alternatives they identify, and can still do so.  (SAC ¶ 19

4   ("Right now, at Walmart, you can buy a 64 GB flash drive for $8.97."); *id.* ¶ 49 (alleging "to the

5   extent they needed more storage, [they] would pay a minimal amount for a thumb drive or stand-

6   alone hard drive").  There is no procedural unconscionability here.

7          Lastly, Plaintiffs do not identify which provisions in the iCloud Terms & Conditions

8   "press Plaintiffs into beginning to pay for a service they cannot effectively leave."  (*Id.* ¶ 99.)

9   Nor do Plaintiffs allege how any such provisions are "so one-sided as to 'shock the conscience,'

10  or . . . impose harsh oppressive terms."  *24 Hour Fitness, Inc.*, 66 Cal. App. 4th at 213 (quoting

11  *Stirlen*, 51 Cal. App. 4th at 1532–33).  Beyond providing information about what iCloud is and

12  how users can either upgrade or downgrade their storage, the iCloud Terms & Conditions also

13  provide users with the option to "stop using the service at *any time*."  (*See* Amezcua Decl., Ex. A,

14  iCloud Terms & Conditions, Section VII.A (emphasis added).)  Plaintiffs' inability to manage the

15  data they chose to download to stay within 5GB, and their choice not to avail themselves of the

16  third-party alternatives they concede exist, cannot support a claim of substantive

17  unconscionability.  Plaintiffs do not (and cannot) identify any substantively unconscionable

18  provisions in the iCloud Terms & Conditions.

19         **D.     Plaintiffs' Claim for Breach of Contract Still Fails as a Matter of Law**

20         The Court previously dismissed Plaintiffs' breach of contract claims because Plaintiffs

21  failed to identify any provision in the iCloud Terms & Conditions allegedly breached by Apple.

22  (Order at 12–13.)  The SAC does not cure this failure.

23         To state a claim for breach of contract, the complaint must identify a specific provision of

24  the contract allegedly breached by the defendant.  *See Progressive W. Ins. Co. v. Superior Court*,

25  135 Cal. App. 4th 263, 281 (2005); *see also Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056,

26  1064 (N.D. Cal. 2016).  Further, the implied covenant of good faith and fair dealing only extends

27  to obligations expressed in the actual contract.  *See Cobb v. Ironwood Country Club*, 233 Cal.

28

App. 4th 960, 966 (2015); *see also Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 327 (2000) ("[W]here an implied covenant claim alleges a breach of obligations beyond the agreement's actual terms, it is invalid."). To the extent Plaintiffs attempt to allege a breach of the implied covenant of good faith and fair dealing, it is well settled that the implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 779 (9th Cir. 2003). While the Court gave Plaintiffs leave to amend their breach of contract claims, Plaintiffs still fail to identify any specific contractual provisions or implied covenants Apple allegedly breached and their claims still fail as a matter of law.

### 1. Plaintiffs Fail to Identify Any Specific Provision in the iCloud Terms & Conditions Apple Allegedly Breached

Plaintiffs allege Apple breached the iCloud Terms & Conditions by making it "effectively impossible" for them to downgrade their iCloud storage and because they "could not understand how to downgrade, as Apple represented they could[.]" (SAC ¶¶ 63, 110.) Noticeably absent from these allegations is any mention of a specific contractual provision that Apple allegedly breached. The iCloud Terms & Conditions indisputably provide that users are permitted to downgrade their iCloud storage, stating "[y]ou can change your subscription by upgrading or downgrading your storage under the iCloud section of Settings on your device[.]" (*See* Amezcua Decl., Ex. A, iCloud Terms & Conditions, Section III.A.) No Plaintiff alleges they did not have this option. Instead, Plaintiffs only vaguely allege they could not "understand how to downgrade" (SAC ¶ 63) or that they had "difficult[y]" with the downgrade process (*id.* ¶¶ 26, 29).[7] Plaintiffs' alleged difficulty in managing their data to enable them to downgrade is not a

---

[7] While the SAC generally alleges the downgrade process is "difficult," Plaintiff Natasha Garamani's alleged difficulties were that she could not "remember her password, required to try to lower her storage level, and ultimately gave up." (SAC ¶ 39.) Moreover, Plaintiffs William Rutter and Robert Barker have managed their data to stay within the free 5GB tier of iCloud and thus do not allege they have ever needed to downgrade their iCloud storage. (*Id.* ¶¶ 37, 41.)

breach of any promise Apple made, let alone one Plaintiffs have identified in the iCloud Terms & Conditions.

### 2.      Plaintiffs Fail to Identify Any Specific Provision in the iCloud Capacity Email Apple Allegedly Breached

Plaintiffs also allege that Apple breached the email provided to users nearing the capacity of their 5GB of free iCloud storage.  Plaintiffs claim the iCloud Capacity Email is an offer "that upon paying for iCloud storage, each could downgrade so as to keep their free 5GB level of storage."  (SAC ¶ 109.)  Plaintiffs' allegation fails for two reasons.  *First*, the iCloud Capacity Email does not contain either an express or an implied promise concerning users' ability to *downgrade* their iCloud storage; it does not even mention the word "downgrade."  (*See* Amezcua Decl., Ex. B, iCloud Capacity Email.)  The email does not set out any terms beyond those provided in the iCloud Terms & Conditions, which a user would necessarily have already agreed to upon setting up their iCloud.  *Second*, the iCloud Capacity Email is not a promise or future contractual undertaking of any kind.  Rather, the email provides only that "[t]o continue to use iCloud and back up your photos, documents, contacts, and more, you need to upgrade your iCloud storage plan *or reduce the amount of storage you are using*."  (*See id*. (emphasis added).)  Plaintiffs have not identified any express or implied promise in the iCloud Capacity Email Apple allegedly breached.

### 3.      Plaintiffs Fail to Identify Any Specific Promise Apple Breached at the Time They Purchased Their Devices

Plaintiffs also attempt to base their breach of contract claim on the allegation that, at the time they purchased their devices, Apple purportedly failed to disclose iCloud.  (SAC ¶¶ 106–108.)  But an alleged failure to disclose is an omissions claim that sounds in fraud; it does not establish a breach of contract.  Plaintiffs' omissions claims fail for the reasons set forth above in Section IV.A.  Further, as with their other breach of contract allegations, Plaintiffs do not identify any specific contractual provision that Apple allegedly breached.

Plaintiffs' breach of contract claim fails as a matter of law.

1    **V.      CONCLUSION**

2          The SAC is Plaintiffs' third attempt to adequately plead their claims.  For the foregoing

3    reasons, they have failed again to do so and further amendment is futile.  Apple respectfully

4    requests that the Court dismiss Plaintiffs' SAC in its entirety with prejudice.

5    Dated: July 18, 2022                              ALEXIS A. AMEZCUA
                                                       MORRISON & FOERSTER LLP
6

7
                                            By:    _/s/ Alexis A. Amezcua_
8                                                  ALEXIS A. AMEZCUA

9                                                  Attorneys for Defendant
                                                   APPLE INC.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28