DAVID M. ROSENBERG-WOHL (Cal. Bar No. 132924)
HERSHENSON ROSENBERG-WOHL,
A PROFESSIONAL CORPORATION
3080 Washington St.
San Francisco, CA 94115
(415) 317-7756
david@hrw-law.com

PATRICK C. COOPER (Cal Bar No.142349)
WARD & COOPER, LLC
2100 Southbridge Parkway, Suite 645
Birmingham, AL 35209
(205) 871-5404
patrickcharles003@yahoo.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| WILLIAM RUTTER, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> APPLE INC., et al., <br><br> Defendants. | Case No.: 4:21-cv-04077-HSG <br><br> **OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br> **DATE: JANUARY 12, 2023** <br> **TIME: 2:00 PM** <br> **DEPT.: COURTROOM 2 – 4TH FL** <br> **JUDGE: HON. HAYWOOD S. GILLIAM, JR.** |

# TABLE OF CONTENTS

I.     Introduction ....................................................................................................1

II.    Apple's Deceptive Scheme and Its Relationship to Contracts with Plaintiffs .............3

       Step One: Purchase of Computer ............................................................4

       Step Two: Signing up for Apple ID and Being Promised iCloud ..........................5

       Step Three: Paying for iCloud post-iCloud Disclosures .........................................9

III.   Apple's legal arguments do not defeat the amended complaint ................................11

       **Breach of contract (2AC, COA 5)** ......................................................11

       **Apple's unfair conduct (2AC, COA 2, 3, 4, & 5)** ............................................12

       **Apple's intentional misrepresentations and omissions (2COA, COA 1)** .......20

IV.   Conclusion ...................................................................................................20

# TABLE OF AUTHORITIES

Statutes

Business and Professions Code section 17200 ..........................................................passim

Business and Professions Code section 17500 ...........................................5, 10, 12, 13, 16

Business and Professions Code section 17600 ...............................................................8

Business and Professions Code section 17601(e) ....................................................... 8, 13

Business and Professions Code section 17602 ........................................................... 9, 14

Civil Code sections 1770(a)(5); (9) and (14) ....................................................... 5, 10, 16

Civil Code section 1770(a)(19) ............................................................................8, 12

Civil Code section 17500 ...................................................................5, 10, 12, 13, 16

Fed. R. Civ. P. 9(b) ...........................................................................................14


Cases

*Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769 (9th Cir. 2003) .......................12

*Arnold v. Hearst Magazine Media, Inc.*, 2021 U.S. Dist. LEXIS 25706 (S.D. Cal.) .......14

*Bayol v. Zipcar, Inc.*, 78 F. Supp. 3d 1252 (N.D. Cal. 2015) ...........................................15

*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*,

    2 Cal.4th 342 (1992) ................................................................................12

*Carrillo v. BMW of N. Am.,* 2020 U.S. Dist. LEXIS 260076 (C.D. Cal.) ........................14

*Chapman v. Skype Inc.*, 220 Cal.App.4th 217 (2013) .....................................................19

*Duttweiler v. Triumph Motorcycles (America) Ltd.*, 2015 U.S. Dist. LEXIS

    109805 (N.D. Cal.) (Gilliam, J.) ..............................................................16

OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINTDATE: JANUARY 12, 2023TIME: 2:00 PMDEPT.: COURTROOM 2 – 4TH FLJUDGE: HON. HAYWOOD S. GILLIAM, JR. -

ii

*Falk v. GMC*, 496 F.Supp.2d 1088 (N.D. Cal. 2007) ...........................................18, 19, 20

*Friedman v. AARP, Inc*., 855 F.3d 1047 (9th Cir. 2017) ....................................................19

*Hien Bui v. Mercedes-Benz USA, LLC*, 2021 U.S. Dist. LEXIS 13409 (S.D. Cal.) .........16

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ...............................................16

*Kinney v. United Healthcare Services, Inc.*, 70 Cal.App.4th 1322 (1999) .....................15

*Lona's Lil Eats, LLC v. Doordash, Inc.*, 2021 U.S. Dist. LEXIS 8930 (N.D. Cal.) .........19

*Madani v. Volkswagen Grp. of Am., Inc.*, 2019 U.S. Dist. LEXIS 133926

(N.D. Cal.) (Gilliam, J.) .......................................................................................18

*Morris v. Redwood Empire Bancorp,* 128 Cal.App.4th 1305 (2005) .............................15

*Obertman v. Electrolux Home Care Prods*., 482 F.Supp.3d 1017 (E.D. Cal. 2020) ........19

*Punian v. Gillette Co.*, 2015 U.S. Dist. LEXIS 111208 (N.D. Cal. Aug. 20, 2015) ...14, 17

*Robinson v. J.M. Smucker Co*., 2019 U.S. Dist. LEXIS 78069 (N.D. Cal.)

(Gilliam, J.) .................................................................................................16, 17

*Speigler v. Home Depot U.S.A*., 552 F.Supp.2d 1036 (C.D. Cal. 2008) ..........................14

I. _Introduction_

Apple says "Plaintiffs address not one of the Court's directives" in amending their complaint (MTD 1:7). That is false. They also want the Second Amended Complaint dismissed. As reframed, all of it states claims against Apple.

Plaintiffs have fully complied with this Court's prior order permitting an amended complaint. "Plaintiff may file an amended complaint within twenty-one days of this order but may not add any new claims or defendants."

Apple interprets this Court's identification of particular problems with the complaint to be a further limitation on what Plaintiffs can amend. For example, Apple says this Court has dispositively rejected Plaintiffs' argument that Apple is legally culpable for promising downgrading while making it impossible to manage data upon doing so (MTD 1:9-2:5). There is no basis for that reading.[1] There was only one claim that this Court dismissed without leave to amend, the ARL claim that Apple had failed to disclose its renewal terms clearly (Order at 10:9-11). There are no new claims here, only amended claims based upon the same set of facts. The claims have been streamlined: instead of 13 claims there are now just 5.

And as summarized immediately below (to be discussed more fully in the following pages), Plaintiffs have specifically addressed each of this Court's particularly identified concerns:

_____

[1] Nor does that reading make legal sense. While it is possible (albeit unlikely) that this Court has already determined that this claim cannot as a matter of law breach express terms of the contract, there is not yet evidence before the Court to interpret this breach under either breach of an implied in fact covenant or the implied covenant of good faith and fair dealing, to say nothing of false advertising and unfair competition claims.

Regarding the ARL claims, the Court allowed Plaintiffs to restate their claims: (1) that Apple failed to obtain the consent of consumers before binding them to the iCloud agreement,[2] and (2) that Apple failed to disclose the cancellation policy and mechanism clearly.[3] Plaintiffs have done that, as discussed below.[4]

Regarding the contract claim, the Court allowed Plaintiffs to restate their claims to make clear how Apple promised consumers the ability to manage their data in the iCloud service. Plaintiffs have done that, as discussed below.

Regarding the unconscionability claim, the Court allowed Plaintiffs to restate their claims to provide greater specificity as to the procedural and substantive elements required by law. Plaintiffs have done that, as discussed below.

Regarding the consumer protection claims, the Court allowed Plaintiffs to restate their claims. The Court specifically stated that Plaintiffs needed to allege where or when Apple represented that consumers would require more or less than 5GB of storage. However, that was only one of the contract claims; the others were to be amended to provide greater particularity. Plaintiffs have done that too, as discussed below.

---

[2] The Court misconstrued Plaintiffs' argument to be focused at the "upgrade" choice, as opposed to the iCloud service choice. As explained below, and as conceded by Apple, Plaintiffs were bound to the iCloud service without their consent; all who paid for it consented but, Plaintiffs argue, not freely, because they had no choice.

[3] Plaintiffs do not pursue any separate claim that Apple failed to provide cancellation terms in a manner capable of being retained.

[4] Apple argues that this Court has already held that the ARL does not apply to the 5GB of storage provided at no cost (MTD 2:19-21). That is a misstatement. As shown below, the ARL explicitly applies to subscription services "continuous service offers" that start out free and then end up costing money.

II.    Apple's Deceptive Scheme and Its Relationship to Contracts with Plaintiffs

The Court's prior order focused exclusively upon the point of payment for iCloud as the consumer approached the 5GB limit. Respectfully, that is looking at the allegations Plaintiffs seek to bring through the wrong end of the telescope. The reframed complaint makes this clear.

There are *three* decision points Apple presents to every one of its consumers, such as Plaintiffs here, that progressively bind consumers to the iCloud service without disclosing what it involves: (1) when the consumer purchase a computer, where the soon to be costly service is built in but not disclosed at all; (2) when the consumer signs into the Apple ecosystem by way of an Apple ID, which turns on the service, without any disclosure that would tell a reasonable consumer that iCloud has now begun collecting data and the need to pay is imminent; and (3) when the consumer's accumulated data approaches the 5GB limit, at which point Apple fully discloses iCloud and offers the choice of paying for increased storage or downgrading to maintain the no cost 5GB, but downgrading is in fact impossible.

Apple's conduct at all three decision points is deceptive and tortious, but the particular contract breached differs depending on the decision point. At the first decision point, the relevant contract is that by which Apple sold and the consumer purchased a computer that was far more expensive than bargained for because it will soon require additional payments for a service that cannot be managed. The contract did not mention iCloud at all. At the second decision point, Apple binds the consumer to the iCloud terms of service ("Terms of Service").[5] The Terms of

---

[5] Apple makes much of the fact that Plaintiffs have at times called this document the "Terms of Service" and at other times "Legal Agreement." The document is the same. It *appears* to be the document attached to the Amezcua Declaration (but its authentication is not established

Service continues to apply at the third decision point.[6] An email sent out to all customers approaching the third decision complements the Terms of Service and becomes part of Apple's contract with consumers paying for iCloud.

Below, we identify how each legal theory alleged in the Second Amended Complaint applies at each of the three steps in the process by which Apple secures a paying iCloud customer:

Step One: Purchase of Computer

Plaintiffs allege that they purchased computers that were priced inaccurately, specifically that the purchase price did not include the soon to be added cost of iCloud. The iCloud service was not mentioned in the computer purchase contract, much less its cost. Other built-in software was mentioned. Other software for which one could pay was mentioned. Nothing was mentioned about iCloud. The silence regarding silence regarding iCloud would not be problematic if iCloud were truly an optional service, but because it was built-in, known to be something that would add significant expense, and was known to be something that could not be managed, the omission of iCloud and its expected cost was a material breach of the purchase price component of the contract of purchase and sale. Plaintiffs so allege (2AC, COA 5).

_____

by her personal knowledge) – and as such has no actual title aside from "Welcome to iCloud." Plaintiffs will select "Terms of Service" since they are arguing that the email sent to Plaintiffs disclosing iCloud as something to purchase is also a contract.

[6] Plaintiffs do not argue, as Apple would have it, that the iCloud Terms of Service became effective only at the decision to pay for the service.

Plaintiffs also allege that this omission was a material misrepresentation inducing the purchase and sale of the computer, meaning Apple omitted any reference to the iCloud service specifically and intentionally because Apple wanted to sell that profitable service without alerting consumers to its hidden existence and inexorable price, which would only appear later, after the consumer had purchased and become dependent upon the computer. This violates the FAL, Business and Professions Code section 17500, and the CLRA, specifically Civil Code section 1770(a)(9) (representing computer with intent not to sell as advertised), along with breach of contract, and as such it is unfair competition under Business and Professions Code section 17200 as an "unlawful ... business act or practice" (2AC, COA Nos. 1, 2 and 5). Separately the conduct is unfair competition under that statute in that the benefits gained by failing to mention iCloud and its eventually significant pricing belong exclusively to Apple; the consumer gets nothing out of this except an inadvertent obligation that they will need to pay to keep (2AC, COA No. 2).

Step Two: Signing up for Apple ID and Being Promised iCloud

Plaintiffs allege that the Terms of Service promise consumers can downgrade paid iCloud service back to the built-in free 5GB of iCloud but that Apple breaches that promise by rendering downgrading impossible for the reasonable consumer. Downgrading is an explicit term of the contract: "You can change your subscription by upgrading or **downgrading** your storage under the iCloud section of Settings on your device, or under the iCloud pane of System Preferences on your Mac or iCloud for Windows on your PC" (III A) (emphasis added). Apple continues: "The applicable storage fee for an upgraded storage plan will take effect immediately; **downgrades** to your storage plan will take effect on the next annual or monthly billing date" (III A) (emphasis added). Downgrading is not defined, but it is different from canceling, which *is* defined.

*Cancelling* is discussed immediately below in Section III B of the Terms of Service under the "Right of Withdrawal" section – "If you choose to cancel your subscription following its initial purchase or, if you are on an annual payment plan, following the commencement of any renewal term, you may do so by informing Apple with a clear statement ..." (III B). The effect of cancellation is clear. Under "Effects of cancellation," Apple states "We will reduce your storage back to 5 GB and reimburse you ..." (III B).[7]

Both downgrading and canceling are different from "termination," which is Section VII. Termination means ceasing to use iCloud altogether, which is accomplished by either deleting the Apple ID or by disabling iCloud within Settings (VII A). Upon termination, the consumer loses all data stored (VII C).

While *canceling* is a mechanical step done by Apple ("**We** will reduce your storage ... [after] we receive your cancellation notice"), *downgrading* is manual data management done by the consumer ("**You** can ... downgrad[e] your storage") (emphasis added). The meaning and method of downgrading are not in the Terms of Service itself but rather on web pages to which the Terms of Service directs the consumer (2AC paras. 26-33). Apple omits these representations, which are specifically identified and part of Apple's contractual obligation, in its Request for Judicial Notice. Those web pages reinforce Apple's promise that downgrading means that the consumer can manage their own data within the iCloud service. Those web pages also demonstrate that it is impossible to do this.

---

[7] Both downgrading and canceling are different from "termination," which is Section VII. Termination means ceasing to use iCloud altogether, which is accomplished by either deleting the Apple ID or by disabling iCloud within Settings (VII A).

The web pages make clear that downgrading *is* data management. When consumers try to downgrade, they are led to a "Manage Storage" button that leads to "Change Storage" and then to "Downgrade Options" (2AC 27 & 28). Yet, that process does not lead to instructions or any method for doing this (2AC 27 & 28). If the consumer wants to downgrade, the consumer will need to "delete information to make more space" yet there is no information disclosed as to how to do this (2AC para. 31).[8] More, Apple encourages iCloud users to copy their data to preserve it during the process (also data management), while not explaining how to do this either (2AC paras. 29-30).[9] The combination of promises and dead ends if one tries to hold Apple to its promises is breach of contract.

Apple's conduct is a breach of the express promise of downgrading, whether established by the Terms of Service themselves, the email, or the referenced web pages. If the Terms of Service are held to be the only express contract regarding iCloud, then the web pages are evidence of how the contract works in practice and the breach is of the promise of data management implied in fact in the term downgrading. And if Apple's promise was truly just that a consumer can stop paying for iCloud, then Apple's interfering with a consumer's ability to manage data in order to accomplish that narrow definition of downgrading (i.e., keep what one wants and disregard the rest) is a breach of the covenant of good faith and fair dealing implied in

---

[8] Apple continues to distinguish between downgrading and canceling on its web pages (2AC para. 28).

[9] Apple's email echoes these promises. It is disingenuous for Apple to argue (MTD 11:7-17) that the email's language "you need to upgrade your iCloud storage plan **or reduce the amount of storage you are using**" (emphasis added) has nothing to do with the downgrading discussed by Apple elsewhere.

that contract – for it is surely incontrovertible that the "pro" for the "quid" of the iCloud contract is preservation of data (2AC, COA 5).

Apple's conduct at this second step is to impose a contract that is unconscionable under the law. Such a contract is not only unenforceable, it is a violation of the CLRA, Civil Code section 1770(a)(19) and thereby also unfair competition as an "unlawful ...business act or practice" under Business and Professions Code section 17200 (2AC, COA 4). It is procedurally unfair to bind consumers to the iCloud Terms of Service unknowingly: not only is iCloud not prominently mentioned as something that will be activated by establishing an Apple ID, that failure is conspicuous in light of the other services (both bundled and optional) that were advertised in connection with the computer purchase itself. No reasonable consumer would look through the links to find and read the iCloud contract, especially since no payment is involved (yet). It is procedurally unfair to induce people into a service they are not reasonably likely to know about until after they are dependent upon it and cannot manage it, requiring them to pay increasingly for that service. And it is substantively unfair to bind consumers to a never-ending contract for computer storage at a cost that will dwarf commercially available alternatives.

Apple's conduct at this second step is also a "continuous service" offer that violates the Auto Renewal Law, Business and Professions Code section 17600 et seq. (and thereby also constitute unfair competition under section 17200 as an "unlawful ... business act or practice") (2AC, COA 3). A "continuous service" offer "means a plan or arrangement in which a subscription or purchasing agreement continues until the consumer cancels the service." Business and Professions Code section 17601(e). Under that statute, the iCloud service begins as a free subscription agreement without term the moment the consumer activates the Apple ID and continues running in the background collecting more and more data until the consumer cancels

the service or pays for increased storage at which point it is also a purchasing agreement. Because (as Apple itself insists), the iCloud Terms of Service apply before payment is required or made, the ARL disclosure obligations are keyed to the Apple ID process that automatically enables the Terms of Service. Yet Apple disclosed nothing about iCloud at this time, much less that it begins with free storage of up to 5GB and that when this is reached, there is a pricing tier and the consumer will be required to either purchase storage, downgrade, cancel or terminate – with the particular steps and consequences of these steps. When the consumer activates the Apple ID, Apple has failed to present the continuous service offer terms at all, much less in a clear and conspicuous manner before fulfillment. Even where, as here, iCloud is a free trial, the eventual pricing tiers must be disclosed "before the subscription ... agreement is fulfilled," i.e., either before the consumer activates the Apple ID or immediately thereafter, before iCloud is enabled. Business and Professions Code section 17602(1) & (3).

Step Three: Paying for iCloud post-iCloud Disclosures

When the consumer's accumulated data approaches the 5GB limit, Apple fully discloses iCloud in a customer email. That email confirms the consumer is subject to the iCloud Terms of Service: the message "Your iCloud storage is almost full" clearly conveys that the consumer is using iCloud, that the consumer has the free 5GB level of storage is clear from the fact the consumer knows there has been no charge to date, that there is an existing "storage plan" that must be either upgraded or managed (by reducing storage), and that the existing level is "5GB total storage" (2AC, paras. 12-14), while the statement at the bottom of the email containing the

link to "Terms of Service" indicates that the iCloud contract is already in place.[10] The language that you "may reduce the amount of storage you are using" (2AC, para. 13) is consistent with the downgrading promised in the Terms of Service: it both clarifies the Terms of Service and serves as a supplemental contractual promise.

At this third and final step, Apple induces consumers to pay for the iCloud service by way of two different sorts of misrepresentations. The first is an affirmative misrepresentation: that the consumer can downgrade. The second is an omission: there is no indication of how to downgrade or that it will be impossible to downgrade. Both misrepresentations, Plaintiffs allege, were made by Apple to induce customers to purchase a service they believed they could manage but was one which Apple knew they could not, such that they would be locked into an increasingly expensive tier of data storage. That violates the FAL, Business and Professions Code 17500, and the CLRA, specifically Civil Code sections 1770(a)(5) (representing iCloud with characteristics it did not have), (9) (representing iCloud with intent not to sell as advertised) and (14) (representing iCloud conveys rights it does not), along with breach of contract, and as such it is unfair competition under Business and Professions Code section 17200 as an "unlawful ... business act or practice" (2AC, COA 1, 2, and 5). Separately the conduct is unfair competition under that statute in that the benefits gained by failing to help consumers manage data helps consumers not at all but helps Apple's bottom line by making sure consumers retain the increasingly costly service (2AC, COA 2).

---

[10] Exhibit 2 to the Amezcua Declaration. But regarding authenticity, *see* the hearsay objection to the RJN, note 5 *supra*.

III. <u>Apple's legal arguments do not defeat the amended complaint</u>

Above, we applied Plaintiff's five causes of actions to the three steps in Apple's increasing pressure to bind a consumer to its iCloud service. Now, we group the five causes of action by core legal theory to address Apple's arguments:

**Breach of contract (2AC, COA 5)**

At the purchase of the computer (step one), Plaintiffs allege that they purchased computers that were priced inaccurately, specifically that the purchase price did not include the soon to be added cost of iCloud, a material breach of the purchase price component of the contract of purchase and sale.

At the sign up for Apple ID (step two), Plaintiffs allege that Apple's conduct is a breach of the express promise of downgrading, of the promise of data management implied in fact in the term downgrading, and a breach of the covenant of good faith and fair dealing to permit data management implied in any downgrading contract. As such, Plaintiffs have also sufficiently alleged unfair competition ("any unlawful ... business act or practice").

*Apple argues* (beginning at MTD 17:19), that Plaintiffs have not identified any specific provision of a contract breached. That is not so. Plaintiffs have identified the price term of the contract for the purchase and sale of the Apple computer Plaintiffs have purchased, as well as the "downgrading" term of the iCloud Terms of Service that communicated ability to manage data, as well as that expressed in the customer email (not to mention the various web pages cited). Apple's contention that the covenant of good faith and fair dealing adds no substantive duties beyond those expressed in the contract terms themselves is true, but to a point: the covenant prohibits a party invested with power of affecting the other's rights under the contract from acting to "unfairly frustrate the other party's right to receive the benefits of their agreement."

*Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 779 (9th Cir. 2003). Where, as here, Apple is alleged to have interfered with the Plaintiffs' ability to realize promised benefits of their contract – whether it was a fixed price for a computer or the promise of data management – claims of interference are sufficient allegation that Apple has breached the covenant of good faith and fair dealing. *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342, 372 (1992).

**Apple's unfair conduct (2AC, COA 2, 3, 4, & 5)**

Plaintiffs also allege that Apple's omission of the fact that the purchase price of computers did not include the soon to be added cost of iCloud (step one) was a material misrepresentation inducing the purchase and sale of the computer. This violates the FAL, Business and Professions Code section 17500, and as such it is also unfair competition under Business and Professions Code section 17200 as an "unlawful ... business act or practice" (2AC, COA 1, 2,[11] and 5). Separately, the conduct is unfair competition under 17200 in that the benefits gained by failing to mention iCloud and its eventually significant pricing belong exclusively to Apple; the consumer gets nothing out of this except an inadvertent obligation that they will need to pay to keep (2AC, COA 2).

Plaintiffs allege that Apple's application of the Terms of Service of the iCloud service to unsuspecting consumers at the time they sign up for an Apple ID (step two) is the imposition of a contract that is unconscionable under the CLRA, Civil Code section 1770(a)(19) and as such it is also unfair competition under Business and Professions Code section 17200 as an

---

[11] The label of the cause of action mistakenly refers to "fraud."

"unlawful ...business act or practice" (2AC, COA 4). Apple's conduct is also a continuous service offer that violates the Auto Renewal Law, Business and Professions Code section 17601(e) and as such it is also unfair competition under Business and Professions Code section 17200 as an "unlawful ... business act or practice" (2AC, COA 3).

Plaintiffs allege that Apple's affirmative misrepresentation that the consumer can downgrade and its omission of any indication of how to downgrade or that it will be impossible to downgrade (decision point three) violates the FAL, Business and Professions Code section 17500, and as such it is also unfair competition under Business and Professions Code section 17200 as an "unlawful ... business act or practice" (2AC, COA Nos. 1, 2 and 5). Separately the conduct is unfair competition under section 17200 in that the benefits gained by failing to help consumers manage data helps consumers not at all but helps Apple's bottom line by making sure consumers retain the increasingly costly service (2AC, COA No. 2).

*Apple argues* that Plaintiffs have not alleged unfair conduct under the FAL (starting at MTD 6:1), the UCL (starting at MTD 13:3), the ARL (starting at MTD 13:16), and the CLRA [unconscionability] (starting at MTD 15:10). First, Apple ignores the fundamental difference between alleging claims for unfair conduct and claims for fraud. Claims for unfair conduct are broader than claims for misrepresentation. And to the extent they overlap, claims for unfair conduct are focused on the conduct of the defendant and how that would affect a reasonable person, not on how the particular Plaintiffs were affected.

One consequence of this failure to distinguish is Apple's misplaced emphasis upon the first portion of Rule 9(b). The particularity requirement of that Rule does not apply to "unfair" conduct (as opposed to "fraudulent" conduct), because when dealing with the defendant's mindset, as opposed to how that mindset affected the plaintiff, the Defendant has sufficient

OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINTDATE: JANUARY 12, 2023TIME: 2:00 PMDEPT.: COURTROOM 2 – 4TH FLJUDGE: HON. HAYWOOD S. GILLIAM, JR. -

13

notice of what it did or did not do. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally"); *Punian v. Gillette Co.*, 2015 U.S. Dist. LEXIS 111208, at *32-33 (N.D. Cal. Aug. 20, 2015) (finding that Rule 8, not Rule 9(b), governs allegations regarding Defendant's knowledge of a defect in a CLRA/UCL claim); *Carrillo v. BMW of N. Am.,* 2020 U.S. Dist. LEXIS 260076, at *10, fn. 4 (C.D. Cal.) (same).

Apple has nothing to say about FAL unfairness claims.

Regarding UCL unfairness claims, Apple simply states in a conclusory fashion that there is no legislative policy and nothing "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" (*Speigler*, at 1045) (internal quotations omitted) alleged by Plaintiffs. Apple is certainly entitled to prove that its iCloud service is carefully tailored to "users' individual choice and storage needs," but Plaintiffs quite plainly have alleged the reverse.

Regarding ARL unfairness claims, Apple is flatly wrong that the ARL does not apply to continuous service offers. While the auto-renewal portion of the ARL deals with continual recurring charges, the continuous service offer portion of the ARL deals explicitly with offers that start out free and then cost money. *See* Business and Professions Code sections 17602(1) & (3). *See, e.g., Arnold v. Hearst Magazine Media, Inc*., 2021 U.S. Dist. LEXIS 25706, at *18-19 (S.D. Cal.) (allegations defendant failed to present terms of continuous service program at time plaintiffs signed up for free issues of magazines or subscriptions sufficient to state a claim). The ARL is specifically designed to avoid trapping consumers into spending money involuntarily, however it happens. *See generally* Business and Professions Code section 17602.

Regarding CLRA unfairness, Apple focuses exclusively upon the unconscionability section of the CLRA. Apple says Plaintiffs fail to identify any specific provision of their contracts that is unconscionable. That is not true: Plaintiffs argue that the *entire* iCloud contract

is unconscionable because it is imposed by Apple upon consumers who have no reason to know it exists much less read it – they are signing up for an Apple ID, not intending to activate a service lurking in the background which will ultimately cost them money.[12] Procedurally, they have no notice. "Procedural unconscionability concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. It focuses on factors of oppression and surprise." *Kinney v. United Healthcare Services, Inc.*, 70 Cal.App.4th 1322, 1329 (1999); *see also Morris v. Redwood Empire Bancorp,* 128 Cal.App.4th 1305, 1319 (2005). Substantively, Plaintiffs are unknowingly signing up for a painful choice: an obligation to either pay for something they did not intent to pay for or somehow manage their data in circumstances in which it is virtually impossible to do so. That is a contractual obligation that is "so one-sided as to shock the conscience, or that impose[s] harsh or oppressive terms." *Bayol v. Zipcar, Inc.*, 78 F. Supp. 3d 1252, 1261 (N.D. Cal. 2015) (internal quotations omitted).

### Apple's intentional misrepresentations and omissions (2COA, COA 1)

Apple's omission of any reference to the iCloud service at the time of the purchase and sale of its computer to Plaintiffs (decision point one) violates the CLRA, specifically Civil Code section 1770(a)(9) (representing computer with intent not to sell as advertised). Apple's affirmative misrepresentation that the consumer can downgrade and its material omission regarding how to downgrade or that downgrading is effectively impossible (decision point three)

---

[12] To be clear, the iCloud contract is not unconscionable when it is explicitly presented, at the time a consumer is asked to pay for the service. (There are other problems, but not unconscionability.)

violate the CLRA, specifically Civil Code sections 1770(a)(5) (representing iCloud with

characteristics it did not have), (9) (representing iCloud with intent not to sell as advertised) and

(14) (representing iCloud conveys rights it does not).

*Apple argues* that Plaintiffs have not alleged fraud with sufficient particularity, grouping

the CLRA, FAL and UCL claims together (starting at MTD 6:1).[13] Plaintiffs have provided

sufficient specificity to put Apple on notice of the claimed misrepresentations. *See Kearns v.

Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009) ("specific enough to give defendants

notice of the particular misconduct . . . so that they can defend against the charge and not just

deny that they have done anything wrong"); *see, e.g., Robinson v. J.M. Smucker Co.,* 2019 U.S.

Dist. LEXIS 78069, at *8-9 (N.D. Cal.) (Gilliam, J.) (allegations sufficient, if "cursory").

The two fraud claims that Plaintiffs are pursuing are (1) that Apple sold computers to

Plaintiffs concealing their true price and so did not sell them as advertised, in violation of the

FAL, Civil Code section 17500, and the CLRA, Civil Code section 1770(a)(9), and (2) that

Apple misrepresented that consumers could downgrade their iCloud storage and omitted[14] both

how to do it and that it would be virtually impossible to do, in violation of the FAL and the

CLRA, specifically Civil Code sections 1770(a)(5) (representing iCloud with characteristics it

_____

[13] As noted above in note 11, Plaintiffs state claims under the FAL for misrepresentation
but not for fraud. The fraud label was in error.

[14] The standard for omissions is "lessened," meaning alleging facts "raising a plausible
inference" of knowledge and a "duty to disclose." *Hien Bui v. Mercedes-Benz USA, LLC*, 2021
U.S. Dist. LEXIS 13409, at *5-6 (S.D. Cal.). The duty to disclose is easy to allege here: Apple
meets three of the four independent criteria: exclusive knowledge, active concealment, and
partial representation. *See Duttweiler v. Triumph Motorcycles (America) Ltd.*, 2015 U.S. Dist.
LEXIS 109805, at *12-15 (N.D. Cal.) (Gilliam, J.).

did not have), (9) (representing iCloud with intent not to sell as advertised) and (14) (representing iCloud conveyed rights it does not). Regarding fraud at the purchase of the Apple computers, it is true that Plaintiffs could try to state the particular date on which they purchased the computer and where they did so, but because only Apple sells Apple computers and Apple itself will have precise records of this level of specificity, Plaintiffs have provided enough information. Regarding fraud at the presentation of the iCloud agreement, the relevant customer email and web pages directed by both, Plaintiffs have been quite specific, citing specific language from the Terms of Service, the email, and various web pages.

Apple argues that Plaintiffs do not sufficiently allege reliance upon these misrepresentations and omissions. That is not so. Regarding the downgrading misrepresentations, Plaintiffs have alleged reliance under the CLRA (2AC, para. 63) ("Because Plaintiffs could not understand how to downgrade, as Apple represented they could, Plaintiffs either chose to pay for the iCloud storage service or are resigned to having to do so in the near future"). The "who" (Plaintiffs), "what" (identified misrepresentations), "where" (Terms of Service, email, web pages), and how (reasonable reliance on material affirmative representations and omissions) are clear; all that could be more specific is "when" – but Apple knows when iCloud was enabled and when any of the Plaintiffs neared the 5GB limit (or any other limit). A general sense of timing is sufficient. *See also Punian v. Gillette Co.*, 2015 U.S. Dist. LEXIS 111208, at *32-33 (N.D. Cal. Aug. 20, 2015) (finding that Rule 8, not Rule 9(b), governs allegations regarding Defendant's knowledge of a defect in a CLRA/UCL claim); *cf. Robinson v. J.M. Smucker Co.*, 2019 U.S. Dist. LEXIS 78069, at *8-9 (N.D. Cal.) (Gilliam, J.) ("multiple times in 2017 and 2018" sufficient allegation).

Regarding the computer purchase misrepresentations, Plaintiffs have alleged reliance as well (2AC, para. 45, incorporated by reference into para. 54) ("Apple's representations of what services it included and omissions regarding iCloud were substantial material factors in Plaintiffs' inadvertent acquisition and activation of the iCloud service").[15] *See also* 2AC, para. 86 ("Apple did not disclose anything about the iCloud service to Plaintiffs before [they registered their Apple ID with Apple]") and 2AC, para. 87 ("As a result of Apple's failure to disclose, Plaintiffs purchased their Apple computers and inadvertently subscribed to the iCloud storage service").[16] As above, Apple knows when Plaintiffs purchased their computers from Apple.

Reliance need *not* be alleged under the FAL and UCL: what must be alleged is materiality, from which reliance will be inferred. Plaintiffs have alleged materiality, viz., (2AC, para. 43) ("None of these Plaintiffs can downgrade their iCloud service as Apple has represented"); (2AC, para. 44) ("None of these Plaintiffs would have chosen iCloud if they had known it would be so unmanageable and expensive as it has turned out for each of them; each would have looked for a different product or service and would and could easily have chosen a cheaper manner of storing their data. Each would do so still"); (2AC, para. 45) ("Apple's representations of what services it included and its omissions regarding iCloud were substantial

---

[15] Allegations of reliance in a fraud by omission claim is "low," *see Madani v. Volkswagen Grp. of Am., Inc.*, 2019 U.S. Dist. LEXIS 133926, at *31-32 (N.D. Cal.) (Gilliam, J.); *see Falk v. GMC*, 496 F.Supp.2d 1088, 1099 (N.D. Cal. 2007) ("easily satisfied," because the focus is on whether a reasonable consumer would have paid the same with the knowledge concealed).

[16] These allegations are incorporated by reference into COA 4 (see para. 96), stating unconscionable conduct under the CLRA.

material factors in Plaintiffs' inadvertent acquisition and activation of the iCloud service");
(2AC, para. 78) ("Plaintiffs were likely to be deceived by Apple's representations and
omissions"). *See Chapman v. Skype Inc.*, 220 Cal.App.4th 217, 229-230 (2013) ("To satisfy the
requirement of pleading actual reliance, or causation, in connection with false advertising for
purposes of the UCL and the false advertising law, a plaintiff need only allege a
misrepresentation of a material fact"); *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir.
2017) ("actual reliance ... is inferred from the misrepresentation of a material fact") (internal
quotation marks omitted). *See also Lona's Lil Eats, LLC v. Doordash, Inc.*, 2021 U.S. Dist.
LEXIS 8930, at *40 (N.D. Cal.) (unfair representations have the "capacity, likelihood or
tendency to deceive or confuse the public") (internal quotation marks omitted).

Apple makes a number of claims about its disclosure (MPA beginning at 8:18), each of
which can be quickly answered. Apple says it disclosed the iCloud service prior to users nearing
the limit on the free 5GB. Plaintiffs agree, but that is not relevant to their claims of fraud.

Apple asserts, without basis, that it would not be actionable if it concealed that Plaintiffs
were expected to reach the 5GB limit and either have to pay for storage or downgrade. That is
nonsense. An offer of a free service known to cost money is nothing more than a partial
representation of truth and omission of material information. *See, e.g., Obertman v. Electrolux
Home Care Prods.*, 482 F.Supp.3d 1017, 1024-25 (E.D. Cal. 2020) (product packaging implied
use as dehumidifier without disclosing a defect "that could result in the [p]roducts being
rendered completely useless") (internal quotation marks omitted). It is also active concealment
which Apple was duty-bound to disclose to its customers. *See Falk v. GMC*, 496 F.Supp.2d

1088, 1099 (N.D. Cal. 2007) (allegations that "defendant actively concealed and failed to disclose material facts that were in its exclusive knowledge").[17]

And Apple asserts that its representations about downgrading were sufficient. The problems with this argument have been discussed at length above.

IV.     Conclusion

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Apple's motion to dismiss their complaint in its entirety. In the event that this Court grants the motion, in whole or in part, Plaintiffs seek leave to amend their complaint. As identified above, there is information clearly within Apple's knowledge that Plaintiffs themselves could provide, if necessary to state claims for relief, including estimates of the dates of computer purchases, establishing Apple IDs, and attempts to downgrade.


Dated this 1st of August, 2022.


                                        /s/ David M. Rosenberg-Wohl
                                        David M. Rosenberg-Wohl
                                        HERSHENSON ROSENBERG-WOHL
                                        A PROFESSIONAL CORPORATION

---

[17] Apple's attempt to attack the factual premise of the claim is premature; this is a motion to dismiss. *See Falk, supra.*