ALEXIS A. AMEZCUA (CA SBN 247507)
AAmezcua@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WILLIAM RUTTER, JACQUELINE TABAS, NATASHA GARAMANI, CONNIE TABAS, TRISTAN YOUNG, KASRA ELIASIEH ROBERT BARKER, AND CINDY RUTTER, on behalf of themselves and all others similarly situated, | Case No. 4:21-cv-04077-HSG |
| Plaintiffs, | **DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |
| v. | Date: January 12, 2023 |
| APPLE INC., and DOES 1-10, | Time: 2:00 p.m. |
| Defendants. | Department: Courtroom 2 – 4th Floor |
| | Judge: The Honorable Haywood S. Gilliam, Jr. |
| | SAC Filed: May 27, 2022 |

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT
CASE NO.: 4:21-CV-04077-HSG
NY-2431309

i

# TABLE OF CONTENTS

                                                                                                **Page(s)**

I.      INTRODUCTION ..................................................................................................... 1

II.     ARGUMENT ............................................................................................................ 3

        A.      Plaintiffs' Claims Under the CLRA, FAL, and UCL Fail ................................ 3

                1.      Rule 9(b) Applies to Plaintiffs' Fraud-Based Claims and Plaintiffs
                        Do Not Meet This Heightened Pleading Standard..................................... 3

                        a.      Plaintiffs Do Not Allege Exposure to or Reliance on Any
                                Specific Statement.......................................................................... 3

                        b.      Plaintiffs Have Not Alleged How Any Statement Apple
                                Made is Misleading or False ........................................................ 7

                        c.      Plaintiffs' Omissions Claims Fail ................................................. 8

                2.      Plaintiffs' UCL Claims Fail for Additional Reasons ................................ 9

        B.      Plaintiffs Do Not State An ARL Violation ..................................................... 10

        C.      Plaintiffs Do Not State an Unconscionability Claim Under the CLRA ............... 11

        D.      Plaintiffs' Breach of Contract Claim Fails...................................................... 12

                1.      Plaintiffs Do Not State a Claim for Breach of Any Contract................... 13

                2.      Plaintiffs' Implied Covenant Claim Fails ............................................... 14

III.    CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Appling v. State Farm Mut. Auto. Ins. Co.*,
340 F.3d 769 (9th Cir. 2003)........................................................................................15

*Arnold v. Hearst Magazine Media, Inc.*,
No. 19-cv-1969-WQH-MDD, 2021 WL 488343 (S.D. Cal. Feb. 10, 2021) ...........11

*Baker v. Osborne Dev. Corp.*,
159 Cal. App. 4th 884 (2008)........................................................................................12

*Brackett v. Am. Airlines Grp. Inc.*,
No. 21-cv-02681-HSG, 2022 WL 282529 (N.D. Cal. Jan. 31, 2022) ......................13

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
2 Cal. 4th 342 (1992) ......................................................................................................15

*Chapman v. Skype Inc.*,
220 Cal. App. 4th 217 (2013).........................................................................................6

*Davidson v. Apple, Inc.*,
No. 16-CV-04942-LHK, 2017 WL 976048 (N.D. Cal. Mar. 14, 2017) .................5, 8

*Falk v. Gen. Motors Corp.*,
496 F. Supp. 2d 1088 (N.D. Cal. 2007) ......................................................................9

*Friedman v. AARP, Inc.*,
855 F.3d 1047 (9th Cir. 2017)........................................................................................6

*Harris v. Rudin, Richman & Appel*,
74 Cal. App. 4th 299, 307 (1999) ...............................................................................13

*Haskins v. Symantec Corp.*,
654 Fed. Appx. 338 (9th Cir. 2016)..............................................................................4

*Herskowitz v. Apple Inc.*,
940 F. Supp. 2d 1131 (N.D. Cal. 2013) .....................................................................10

*Hodges v. Apple Inc.*,
No. 13-cv-01128-WHO, 2013 WL 4393545 (N.D. Cal. Aug. 12, 2013) ..................9

*Johnson v. Glock, Inc.*,
No. 3:20-cv-08807-WHO, 2021 WL 428635 (N.D. Cal. Feb. 8, 2021) ....................6

*Jones v. Nutiva, Inc.*,
No. 16-cv-00711-HSG, 2017 WL 3617104 (N.D. Cal. Aug. 23, 2017)....................6

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT
CASE NO.: 4:21-CV-04077-HSG
NY-2431309

iii

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)...............................................................................3, 4

*Lee v. Ticketmaster L.L.C.*,
  817 Fed. Appx. 393 (9th Cir. 2020) ..............................................................................5

*Lona's Lil Eats, LLC v. DoorDash, Inc.*,
  No. 20-cv-06703-TSH, 2021 WL 151978 (N.D. Cal. Jan. 18, 2021) ........................6

*Madani v. Volkswagen Grp. of Am., Inc.*,
  No. 17-cv-07287-HSG, 2019 WL 3753433 (N.D. Cal. Aug. 8, 2019) .......................8

*Obertman v. Electrolux Home Care Prods., Inc.*,
  482 F. Supp. 3d 1017 (E.D. Cal. 2020)........................................................................9

*Palmer v. Apple*,
  No. 5:15-cv-05808-RMW, 2016 WL 1535087 (N.D. Cal. Apr. 15, 2016)..................6

*Rice v. City & Cty. of San Francisco*,
  No. 19-cv-04250-LB, 2019 WL 11753722 (N.D. Cal. Oct. 19, 2019) ........................5

*Rodriguez v. Kwok*,
  No. C 13–04976 SI, 2014 WL 889570 (N.D. Cal. Mar. 3, 2014)............................15

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985)........................................................................................4

*Van Dusen v. City of Oakland*,
  No. 13–cv–05023–HSG, 2015 WL 1800587 (N.D. Cal. Apr. 20, 2015)................................15

*Watkins v. MGA Entm't, Inc.*,
  550 F. Supp. 3d 815 (N.D. Cal. 2021) ......................................................................3, 9

**Statutes**

Cal. Bus. & Prof. Code § 17600 ...............................................................................10

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT
CASE NO.: 4:21-CV-04077-HSG
NY-2431309

iv

## I.    INTRODUCTION

Plaintiffs' Opposition demonstrates that the Second Amended Complaint ("SAC") does not and—even after three attempts—cannot state a claim against Apple. Plaintiffs seek to use their Opposition to amend their complaint a *fourth* time, adding facts and claims not in the SAC. As a matter of law, they may not do so. Plaintiffs' claims must be dismissed, again.

While Plaintiffs' claims primarily fail for the reasons detailed below, it is worth noting that the entire SAC is based on the false premise that it is inevitable that a user will exceed the 5GB of iCloud storage provided at no cost. This assertion is not only baseless, but contradicted by Plaintiffs' own allegations as two named plaintiffs never exceeded 5GB of iCloud data and Plaintiffs previously alleged the same was true for 80% of iCloud users. Without this underlying assertion, Plaintiffs' entire theory falls apart. The SAC should be dismissed given this and a number of other, independently fatal pleading deficiencies.

Plaintiffs' fraud and misrepresentation claims all fail because Plaintiffs do not identify any alleged misrepresentation that Plaintiffs saw or relied on. Notwithstanding the Court's finding that Plaintiffs failed to allege that they read or relied on the iCloud Terms & Conditions, the SAC *still* fails to include any allegation that any one of the eight named plaintiffs were exposed to, let alone relied on, the Terms & Conditions. Indeed, Plaintiffs now *concede* this fatal flaw. Similarly, no plaintiff alleges that they were exposed to, read, or relied on the iCloud Capacity Email. Nevertheless, Plaintiffs concede that the email provided complete disclosures regarding iCloud, independently defeating their fraud claims. (Opp'n at 9-10.) Plaintiffs' attempt to salvage their fraud claims by purportedly alleging "omissions" claims fails for the same reason. An omission claim still requires Plaintiffs to allege that they were exposed to and relied on specific documents or communications that, had they contained allegedly omitted disclosures, would have alerted Plaintiffs to the alleged issue. Plaintiffs do not identify any communication that they personally saw and read from which disclosures were omitted.

Plaintiffs also purport to base their fraud claims on a supposed "contract of purchase and sale" for their devices, claiming that the price term should have included the price of iCloud storage in excess of 5GB. (Opp'n at 11-12.) But Plaintiffs never identify this "contract," never

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT
CASE NO.: 4:21-CV-04077-HSG
NY-2431309

1

allege the "price component" or term at issue, and never allege when, where or whether they ever saw the supposed "contract." (*See generally* SAC and Opp'n.) Moreover, Plaintiffs' suggestion that Apple should have predicted that *some* users might ultimately choose to download and retain more than 5GB of data (and, to include the cost, *how much* additional data they would require) is meritless on its face and contradicted by two of the eight plaintiffs' experience.

Plaintiffs' fraud-based claims fail for an additional reason: Plaintiffs do not identify anything that was misrepresented or omitted. Indeed, Plaintiffs admit that their "new theory," based on representations regarding "downgrading" storage, is simply their old theory that Apple did not manage their storage for them, masquerading under another name. (Opp'n at 6-7, 11-13.) But Plaintiffs still do not point to any representation by Apple that it would (or even could) manage Plaintiffs' individual choices about storage for them.

Plaintiffs argue that the iCloud Terms & Conditions support their claims, but the Terms & Conditions simply informed users that those who elected to pay for more than 5GB of storage could later "downgrade" to reduce or eliminate storage charges, or upgrade to more storage. The Terms & Conditions in no way represented that Apple had any obligation, or even ability, to manage users' personal storage choices to enable them to "downgrade," and Plaintiffs point to no such representation. The same is true for the iCloud Capacity Email, which does not use the term "downgrade," makes no representations about users' "downgrading," and simply explains that users have the option to reduce their stored data to stay within 5GB. Plaintiffs also concede that this email contained all required disclosures. As for the unidentified "contract of purchase and sale," Plaintiffs' arguments all depend on the erroneous premise that Apple should have disclosed the price of future iCloud storage that device purchasers might or might not ever want or need based on their personal choices regarding their data. Plaintiffs' contract claims fail for similar reasons: Plaintiffs still do not and cannot point to any specific term in any of these documents supporting their contract claims, or allege how Apple breached such terms. Nor do Plaintiffs allege procedural or substantive unconscionability as to the iCloud Terms & Conditions.

Plaintiffs' ARL claim fails because the ARL applies to the "ongoing charging" for products or services without required disclosures and consent. But as Plaintiffs concede and this

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
CASE NO.: 4:21-CV-04077-HSG
NY-2431309

2

Court already held, there is *no charge* for iCloud unless and until the user elects to pay for storage in excess of the free 5GB, and Plaintiffs admit that the iCloud Capacity Email contains disclosures that comply with the ARL. Further, the Court has already held that the iCloud Terms & Conditions, presented when the user first enables iCloud, provides the required disclosures. (Dkt. No. 37 ("Order") at 9-10.)

Plaintiffs have now had three chances to amend their complaint to state a viable claim for relief, and have impermissibly made a fourth attempt to amend through their Opposition. It is clear beyond doubt that they cannot do so. The SAC should be dismissed with prejudice.

## II. ARGUMENT

### A. Plaintiffs' Claims Under the CLRA, FAL, and UCL Fail

#### 1. Rule 9(b) Applies to Plaintiffs' Fraud-Based Claims and Plaintiffs Do Not Meet This Heightened Pleading Standard

Courts in the Ninth Circuit have repeatedly found that claims sounding in fraud must comply with the heightened pleading requirements of Rule 9(b) regardless of the label of the claim. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009). Rule 9(b) thus applies to claims for fraud, misrepresentation, or nondisclosure, as well as "unfairness" claims predicated on an underlying theory that sounds in fraud. *Id.* (finding Rule 9(b) applied to entirety of complaint, including claims for misrepresentation, nondisclosure and "unfairness" as plaintiff alleged a "unified course of fraudulent conduct"); *Watkins v. MGA Entm't, Inc.*, 550 F. Supp. 3d 815, 822 (N.D. Cal. 2021) (dismissing complaint where CLRA and UCL claims, including those alleging "unlawful" and "'unfair' conduct," failed to meet Rule 9(b) as the gravamen of the claims was that defendant misrepresented or concealed material information). Here, Plaintiffs cannot dispute that the entirety of their SAC is based on Apple's alleged misrepresentations or omissions regarding the iCloud service and therefore sounds in fraud. (SAC ¶¶ 12, 21-24, 55, 57-61, 75, 77.)

##### a. Plaintiffs Do Not Allege Exposure to or Reliance on Any Specific Statement

Rule 9(b) requires that Plaintiffs allege, at a minimum, that they were exposed to, read,

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
CASE NO.: 4:21-CV-04077-HSG
NY-2431309

3

and relied on specific misrepresentations.  (Dkt No. 41 ("Mot.") at 6-8); *see also Haskins v. Symantec Corp.*, 654 Fed. Appx. 338, 339 (9th Cir. 2016) ("[b]ecause Haskins's complaint did not allege that she read and relied on a specific misrepresentation by Symantec, she failed to plead her fraud claims with particularity as required by Rule 9(b)"); *Kearns*, 567 F.3d at 1126 (finding pleadings failed to satisfy the requirements of Rule 9(b) where, for example, plaintiff did not "specify when he was exposed to [ads or sales material] or which ones he found material" and "failed to specify which sales material he relied upon in making his decision to buy a CPO vehicle").  But even after this Court's Order specifically identified Plaintiffs' failure to allege that they read the iCloud Terms & Conditions, no Plaintiff alleges in the SAC that they saw and read that document, the iCloud Capacity Email, the unspecified device "contract of purchase and sale," or any other communication from Apple.  (Order at 10; *see generally* SAC.)  And with regard to the alleged device "contract of purchase and sale," the SAC offers no specifics of any kind to identify the "contract" Plaintiffs are referring to, the "price component" or term contained therein, or any other "what, when, where, and how" allegations sufficient to identify the agreement.  (*See generally* SAC); *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge").

Plaintiffs attempt to avoid their pleading obligations by arguing that users would not read the iCloud Terms & Conditions, but that argument is meritless.  (Opp'n at 8, 15.)  Plaintiffs have already conceded that, at the time iCloud is activated, Apple presented users with the iCloud Terms & Conditions which begins with the large, bolded heading "**Welcome to iCloud**," (Dkt. No. 17 ("FAC") ¶¶ 99, 114.), immediately followed by a large type warning that "IT IS IMPORTANT THAT YOU READ AND UNDERSTAND THE FOLLOWING TERMS.  BY CLICKING 'AGREE,' YOU ARE AGREEING THAT THESE TERMS WILL APPLY IF YOU CHOOSE TO ACCESS OR USE THE SERVICE."  (*See* Dkt. No. 41-1 ("Amezcua Decl."), Ex. A, iCloud Terms & Conditions, Introduction.)[1]  Given this clear and prominent language,

---

[1] Plaintiffs did not file an opposition to Apple's Request for Judicial Notice.  (*See* Dkt. No. 41-2.)  At most, Plaintiffs attempt to dispute the authenticity of the iCloud Terms &

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
CASE NO.: 4:21-CV-04077-HSG
NY-2431309

4

1    Plaintiffs' prior admission that the iCloud Terms & Conditions were presented to users, and the

2    Court's finding regarding the same, Plaintiffs' argument fails.  (Order at 9.)  In any event,

3    Plaintiffs' argument ignores settled law that a party cannot avoid clear disclosures because they

4    failed to read them.  *Lee v. Ticketmaster L.L.C.*, 817 Fed. Appx. 393, 395 (9th Cir. 2020) (a party

5    "'cannot avoid the terms of [the] contract on the ground that he . . . failed to read it before

6    signing,' especially when he 'had a legitimate *opportunity* to review it,'" (quoting *Marin Storage*

7    *& Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001) and

8    *Mohamed v. Uber Tech., Inc.*, 109 F. Supp. 3d 1185, 1198 (N.D. Cal. June 9, 2015), *rev'd in part*

9    *on other grounds*, 848 F.3d 1201 (9th Cir. 2016)).

10         Plaintiffs' vague references in their Opposition to purported, unspecified "web pages" also

11    do not provide a basis for their claims.  (Opp'n at 6-7, 11, 17.)  Not only do Plaintiffs fail to cite

12    URLs, attach, or otherwise specifically identify any "web pages" in the SAC, Plaintiffs do not

13    identify any specific representation or omission in these documents that any individual Plaintiff

14    saw or relied on.  (*See generally* SAC.)

15         Plaintiffs' argument that their generalized allegations are sufficient to establish reliance

16    under Rule 9(b) also fails.  (*See* Opp'n 12-14.)  Courts require that named plaintiffs sufficiently

17    allege specific statements that they *personally* saw and relied on and how those statements are

18    false.  *Palmer v. Apple*, Inc., No. 5:15-cv-05808-RMW, 2016 WL 1535087, at *5 (N.D. Cal.

19    Apr. 15, 2016) (holding that a plaintiff's allegations were insufficient to state a claim under

20

_____

21    Conditions in a footnote of their Opposition to Apple's Motion to Dismiss.  (Opp'n at 3 n.5.)
      This is not proper.  Plaintiffs themselves acknowledged this document was the relevant Terms &

22    Conditions in their FAC.  (FAC ¶ 99 ("Apple's Terms of Service, most recently dated 9/19/19,
      entitled 'Welcome to iCloud,' is a 'legal agreement' that Apple has designed that 'governs your

23    use of the iCloud product, software, services, and websites'").)  Plaintiffs do not object to the
      iCloud Capacity Email, stating only "regarding authenticity, *see* the hearsay objection to the

24    RJN" and pointing to footnote 5 of their Opposition, which discusses only the iCloud Terms &
      Conditions.  (Opp'n at 10 n.10.)  The iCloud Capacity Email includes the exact language

25    Plaintiffs argue created a contractual promise and that forms the basis of Plaintiffs' breach of
      contract claim; the email is incorporated by reference into the SAC and should thus be judicially

26    noticed.  *Rice v. City & Cty. of San Francisco*, No. 19-cv-04250-LB, 2019 WL 11753722, at *1
      n.5 (N.D. Cal. Oct. 19, 2019) (judicial notice of contractual agreement relied on by plaintiff under

27    the incorporation by reference doctrine); *Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2017
      WL 976048, at *3 n.2 (N.D. Cal. Mar. 14, 2017) (judicial notice of Apple's online warranty

28    where plaintiffs quoted from and relied on it in the complaint).

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT
CASE NO.: 4:21-CV-04077-HSG
NY-2431309

5

Rule 9(b) where the plaintiff did not allege "which specific advertisements or statements he personally saw or when they were made" or "how those statements were false"); *Jones v. Nutiva, Inc.*, No. 16-cv-00711-HSG, 2017 WL 3617104, at *3 (N.D. Cal. Aug. 23, 2017) (dismissing UCL, FAL, and CLRA for failure to meet Rule 9(b) where "[r]ather than list the specific statements upon which she relied, [plaintiff] only identifies two illustrative statements," the complaint "d[id] not state that [the plaintiff] relied on any of" the labels included in the complaint, and had "not sufficiently alleged when she was exposed to Defendant's alleged misrepresentations" but "merely state[d] that she purchased Defendant's products 'over the past several years'") (J. Gilliam); *Johnson v. Glock, Inc.*, No. 3:20-cv-08807-WHO, 2021 WL 428635, at *4 (N.D. Cal. Feb. 8, 2021) (finding FAC failed to meet Rule 9(b) where the complaint identified defendant's website, "[b]ut there [wa]s no pleading that [plaintiff] ever saw, let alone relied on, the website prior to purchas[e]"). Here, there are no such allegations in the SAC, despite multiple opportunities for Plaintiffs to amend their pleading. Plaintiffs also argue that reliance for their claims may be inferred from material terms. But Plaintiffs must first allege they were exposed to and read such "material terms."[2] Plaintiffs do not do so in the SAC.[3]

---

[2] For this and other reasons, the cases Plaintiffs rely on regarding the materiality of a misrepresentation are not applicable here. *Chapman v. Skype Inc.*, 220 Cal. App .4th 217, 229-230, 233 (2013) (finding plaintiff "read and relied on a representation in the subscription agreement that the plan was 'Unlimited'"); *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1056 (9th Cir. 2017) (no dispute that plaintiff read and relied on the misrepresentations alleged in his complaint); *Lona's Lil Eats, LLC v. DoorDash, Inc.*, No. 20-cv-06703-TSH, 2021 WL 151978, at *8, *8 n.2 (N.D. Cal. Jan. 18, 2021) (addressing reliance requirement in a competitor, not consumer, case).

[3] Each of Plaintiffs' additional arguments to demonstrate that they have sufficiently plead claims for purposes of Rule 9(b) under the CLRA, FAL, and UCL fails. For example, Plaintiffs argue that "[a] general sense of timing is sufficient" to meet Rule 9(b), but they fail to acknowledge that the SAC contains absolutely no mention of timing as related to any Plaintiffs' purchase, iCloud sign-up, or iCloud upgrade. (Opp'n at 17; *see generally* SAC); *Johnson*, 2021 WL 428635, at *4 (dismissing FAC where "[n]ot only does [plaintiff] fail to allege when he purchased his gun, he fails to allege the time period he was shopping for it—and therefore would allegedly have seen any disclosures"). Plaintiffs also make conclusory and inaccurate statements in their Opposition, which are not in the SAC and are indisputably false. For instance, Plaintiffs argue in the Opposition that they need not allege the "who, what, when, where, how" because "only Apple sells Apple computers" so Apple has information regarding Plaintiffs' purchases. (Opp'n at 17.) It is common knowledge that Apple products may be purchased from businesses other than Apple. Moreover, Plaintiffs miss the point: Plaintiffs offer neither any hint as to the

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
CASE NO.: 4:21-CV-04077-HSG
NY-2431309

6

Plaintiffs' Opposition fails to point to any allegation in the SAC setting forth how any statement by Apple regarding the iCloud service is false or misleading. Plaintiffs attempt to base their claims on references to "downgrading" storage in the iCloud Terms & Conditions. That attempt fails. The Opposition makes clear that Plaintiffs' argument depends on reading "downgrading" storage to mean that Apple will "manage their storage" for them or provide data management advice that will enable Plaintiffs to stay within 5GB of storage. (*See* Opp'n at 6, 10, 13 (conceding that their "downgrade" theory is simply their "manage storage" theory, and Apple "fail[ed] to help consumers manage data").) But that is not what the term provides, nor does anything in the Terms & Conditions suggest that Apple is obligated to, or even can, determine or reduce the type and amount of data an individual user chooses to download and retain. As Apple explained in its opening brief, and as the language of the Terms & Conditions makes clear, the relevant terms simply permit users to change their iCloud storage plan and pay less for a downgraded plan or more for a higher storage plan, if preferred. (*See* Amezcua Decl., Ex. A., iCloud Terms & Conditions, Section III.) Plaintiffs do not allege how this statement is false or that they were not permitted to downgrade. (*See generally* SAC.)

Similarly, Plaintiffs' reference to a statement in the iCloud Capacity Email that a user needs to upgrade their storage plan or "reduce the amount of storage you are using," does not support Plaintiffs' misrepresentation claims. The email does not mention "downgrading" and does not make any promise concerning a user's ability to downgrade iCloud storage in the future if they choose to upgrade. (*See* Amezcua Decl., Ex. B., iCloud Capacity Email.) The email merely alerts users that they are approaching surpassing the 5GB of iCloud storage that is provided for free. Plaintiffs do not identify any representation Apple made in the iCloud Capacity Email, iCloud Terms & Conditions, or elsewhere that provides Apple will manage

---

date of their purchases nor any other information whatsoever to identify the purported device "contract of purchase and sale."

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
CASE NO.: 4:21-CV-04077-HSG
NY-2431309

7

Plaintiffs' storage choices for them or provide data storage advice.  (*See generally* SAC.)

Further, whether a user is able to "reduce the amount of storage you are using" depends on the

user's individual choices about the particular data they want to retain or delete, which Apple does

not and cannot control.  The experiences of the named Plaintiffs themselves, however, makes

clear that some users *can* make data choices that keeps their data within 5GB.

### c. Plaintiffs' Omissions Claims Fail

Plaintiffs' effort to rescue the SAC by converting their theory to one of "omissions" fails.

Plaintiffs must still plead their claim with particularity under Rule 9(b) and identify a document

or other communication that Plaintiffs saw and read in order to establish that they would have

seen the allegedly omitted information if it were disclosed.  *Davidson*, 2017 WL 976048, at *10

(finding omissions claims deficient where plaintiffs "d[id] not allege that they reviewed or were

exposed to any information, advertisements, labeling, or packaging by Defendant," and only

provided allegations "too vague to provide Defendants with the 'who, what, when, and where' of

the allegedly fraudulent omissions, as required by Rule 9(b)"); *Madani v. Volkswagen Grp. of

Am., Inc.*, No. 17-cv-07287-HSG, 2019 WL 3753433, at *11 (N.D. Cal. Aug. 8, 2019) (finding

plaintiffs failed to plead reliance to support their CLRA and UCL claims where plaintiffs "plead

no facts whatsoever to establish that they would have been aware of the safety defect, if it were

disclosed").  As noted above, Plaintiffs never allege they read the iCloud Terms & Conditions,

the iCloud Capacity Email, or any other document or engaged in any interaction that would give

rise to a plausible finding that Plaintiffs would have been aware of any given disclosure if it had

been made.

Even if Plaintiffs did allege that they read a specific document, Plaintiffs' claims still fail

because Plaintiffs do not allege any omitted information.  As the Court has held, the iCloud

Terms & Conditions, which Plaintiffs admit are provided to users when they first enable iCloud,

contained sufficient disclosures.  (Order at 9-10.)  Indeed, the Terms & Conditions explain what

the iCloud service is, how it operates, including that users are provided 5GB of storage at no cost,

and that users may change their iCloud subscriptions, among other topics.  (*See* Amezcua Decl.,

Ex. A., iCloud Terms & Conditions, Introduction, Sections I.C. and III.)  Further, Plaintiffs

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT
CASE NO.: 4:21-CV-04077-HSG
NY-2431309

8

concede in their Opposition that the iCloud Capacity Email, which all users receive *before* they pay for iCloud storage, contained complete disclosures. (Opp'n at 9-10) (stating "[w]hen the consumer's accumulated data approaches the 5GB limit, Apple fully discloses iCloud in a customer email" and describing contents of the email).

Plaintiffs' other omissions theory, that Apple should have disclosed at the time users purchased their device that they were "expected" to reach 5GB at some time in the future, remains meritless for the reasons discussed above and in Apple's opening brief.[4] (Mot. at 9-10.)

### 2. Plaintiffs' UCL Claims Fail for Additional Reasons

Plaintiffs' UCL "unlawful" claims fail because their predicate CLRA, FAL, ARL, and breach of contract claims fail, and the Opposition does nothing to remedy these deficiencies. *Hodges v. Apple Inc.*, No. 13-cv-01128-WHO, 2013 WL 4393545, at *6 (N.D. Cal. Aug. 12, 2013) ("Because Hodges fails to plead with particularity how Apple violated any statute, he also fails to adequately plead a violation under the UCL's 'unlawful' prong.").

Plaintiffs' UCL "unfairness" claims fare no better. The SAC makes clear that these claims are grounded in fraud. (*See e.g.*, SAC ¶¶ 75, 91 (alleging misrepresentation regarding downgrading in iCloud Terms & Conditions is an unfair business act).) As such, these claims must meet Rule 9(b)'s heightened pleading mandate, but Plaintiffs do not plead either fraudulent conduct or actual reliance with sufficient particularity. *Watkins*, 550 F. Supp. 3d at 833 (finding plaintiffs' UCL claims, including unfairness claims, and CLRA claims sounded in fraud and must be pled with particularity). Plaintiffs' UCL "unfairness" claims fail for the additional reason that Plaintiffs do not meet any applicable "unfairness" standard. Despite Apple highlighting that Plaintiffs have not alleged any public policy violation and how that policy is tethered to any

---

[4] With no support in their SAC, Plaintiffs attempt to argue in their Opposition that Apple had exclusive knowledge of unspecified facts, actively concealed Plaintiffs were expected to reach 5GB, and made an unidentified partial misrepresentation. This case is not like *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007) or *Obertman v. Electrolux Home Care Prods., Inc.*, 482 F. Supp. 3d 1017 (E.D. Cal. 2020), as Plaintiffs do not allege any material facts that are exclusively within Apple's knowledge or how Apple actively concealed such a fact. In fact, Plaintiffs do not allege how Apple would know or could predict how much data a given user would choose to download and retain or how a user chooses to manage their own data.

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
CASE NO.: 4:21-CV-04077-HSG
NY-2431309

9

specific constitutional, regulatory, or statutory provisions, Plaintiffs' Opposition makes no attempt to identify such allegations. (Mot. at 12-13.) As for the "balancing testing," Plaintiffs still have not identified conduct that comes close to being "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145-47 (N.D. Cal. 2013); (Order at 14-15 (finding the consumer protection claims, including the "unfairness" claims, were based on Apple's alleged misrepresentations, but the pleading "entirely fail[ed] to allege where or when Apple in any way indicated that consumers will require more or less than 5GB of data storage"); (*see generally* SAC.) Requiring that users pay for the type and amount of data that they choose to download and retain does not come close to alleging such conduct, and the fact that Plaintiffs Rutter and Barker have remained within the 5GB of free storage belies Plaintiffs' theory that users cannot do so.

### B. Plaintiffs Do Not State An ARL Violation

Plaintiffs' Opposition continues to misconstrue the ARL's fundamental purpose and application; Plaintiffs' ARL claim fails. Section 17600 of the ARL makes clear that the statute's purpose is "to end the practice of *ongoing charging* of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent." *See* Cal. Bus. & Prof. Code § 17600 (emphasis added). Thus, based on the express language of the statute itself, the ARL does not apply to the free 5GB of iCloud for which there is no charge, let alone an ongoing charge. (*See* Order at 8 (explaining that Section 17602(a)(2) focuses on "charging consumers' credit cards" without obtaining consent).) Indeed, the Court explicitly addressed this point: "Because Apple provides the first 5GB for free, *the only users who pay for iCloud are those who choose to upgrade their account for more storage*." (Order at 9 (emphasis added).) Contrary to the Opposition's attempts to once again suggest otherwise (Opp'n at 13), the 5GB of free storage is *not* a free trial. Users may stay at the 5GB level forever as two named Plaintiffs have done to date.

Plaintiffs' Opposition similarly makes clear that they cannot state an ARL claim with regard to the iCloud service for which there may be a charge. Plaintiffs *concede* that the iCloud Capacity Email, which all users receive before they agree to any iCloud storage service for a fee,

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
CASE NO.: 4:21-CV-04077-HSG
NY-2431309

10

complies with all disclosure requirements of the ARL. (Opp'n at 9-10 (stating email fully discloses iCloud and discussing contents).) Further, Plaintiffs' contortions to avoid the Court's prior holding that the iCloud Terms & Conditions provide the required ARL disclosures regarding paid iCloud storage are equally unavailing. (*See* Order at 9 (finding that the Terms & Conditions disclosed that for users who upgrade their storage, "Apple will automatically charge on a recurring basis the storage fee for the storage plan you choose")).) Plaintiffs' Opposition argues that at the time users enable their Apple ID and iCloud, Apple "disclosed nothing about iCloud" or the iCloud "pricing tiers." (Opp'n at 9.) But, as the Court's Order recognizes, the Terms & Conditions *did* include those disclosures. And, as discussed above and recognized by the Court, the Terms & Conditions were prominently disclosed (Order at 9-11); that Plaintiffs did not read them does not avoid them or create an ARL violation.

Plaintiffs also attempt to argue a violation of the "continuous service" requirements of the ARL. As Plaintiffs' Opposition concedes, however, "the continuous service offer portion of the ARL deals explicitly with offers that start out free *and then cost money*." (Opp'n at 14 (emphasis added).) The 5GB of free iCloud service *never* costs money. The authority on which Plaintiffs purport to rely, *Arnold v. Hearst Magazine Media, Inc.*, No. 19-cv-1969-WQH-MDD, 2021 WL 488343, at *6-7 (S.D. Cal. Feb. 10, 2021), makes this point clear. Unlike here, the plaintiffs in *Arnold* were later charged for auto renewals of the *same* magazines for which they either received a single free copy or believed they were paying for only a single one-year subscription. *Id.* at *1-3. Here, by contrast, the 5GB of iCloud is free and remains free. Moreover, the iCloud Terms & Conditions, which Plaintiffs characterize as the beginning of the "continuous service," disclosed that users who later subscribed for higher levels of service would incur charges that would automatically renew until canceled. Plaintiffs' ARL claim fails.

### C. Plaintiffs Do Not State an Unconscionability Claim Under the CLRA

Plaintiffs cannot state an unconscionability claim under the CLRA. As this Court explained in its order dismissing Plaintiffs' FAC, unconscionability has both procedural and substantive elements. The procedural element addresses "how the parties negotiated and formed the contract—with an emphasis on oppression and unfair surprise due to unequal bargaining

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT
CASE NO.: 4:21-CV-04077-HSG
NY-2431309

11

power—while the substantive element addresses the fairness of the agreement's actual terms."
(Order at 13 (citing *Von Nothdurft v. Steck*, 227 Cal. App. 4th 524, 535 (2014) (citations omitted)).)  The SAC fails to allege facts sufficient to establish either element.  *See Baker v. Osborne Dev. Corp.*, 159 Cal. App. 4th 884, 894 (2008) (California law requires both procedural and substantive unconscionability to invalidate a contract).

Plaintiffs have not identified any procedural unconscionability.  Plaintiffs argue that the iCloud Terms & Conditions are unconscionable "because it is imposed by Apple upon consumers who have no reason to know it exists much less read it."  (Opp'n at 15.)  Plaintiffs, however, do not dispute that users receive the iCloud Terms & Conditions when they register their Apple ID— a fact they conceded in their FAC and the Court has already recognized.  (*See* FAC at ¶¶ 26-28; Order at 9.)  And, as set forth in Section II.A.1.a above, the iCloud Terms & Conditions, including the fact that they impose binding legal terms, are prominently disclosed.  Further, Plaintiffs do not counter, or even address, the fact that the availability of reasonable market alternatives to iCloud—some of which Plaintiffs identified themselves in their SAC—dooms their procedural unconscionability claim.  (*See* SAC ¶ 19 ("[r]ight now, at Walmart, you can buy a 64 GB flash drive for $8.97"); ¶ 48 (alleging Plaintiffs would have paid a "minimal amount for a thumb drive or stand-alone hard drive"); Mot. at 15-17.)  There is no "surprise" here.

Plaintiffs also fail to allege which, if any, provision of the iCloud Terms & Conditions is substantively unconscionable.  Plaintiffs vaguely argue that they "unknowingly sign[ed] up for a painful choice" to either pay for additional iCloud storage or manage their data to stay within the free 5GB tier.  (Opp'n at 15.)  But, as set forth above, each user is presented with the iCloud Terms & Conditions when they first enable iCloud.  (Order at 9.)  The Terms & Conditions detail that a user can upgrade or downgrade their storage, and critically, that they can "stop using the Service at any time."  (*See* Amezcua Decl., Ex. A, iCloud Terms & Conditions, Section VII.A (emphasis added).)  Plaintiffs do not address these terms in any way, and do not identify how these terms, or any others, are substantively unconscionable.

### D.    Plaintiffs' Breach of Contract Claim Fails

Even after three complaints, Plaintiffs still do not identify any specific contractual

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
CASE NO.: 4:21-CV-04077-HSG
NY-2431309

12

provision that Apple allegedly breached.  Their breach of contract claim must be dismissed.

### 1.    Plaintiffs Do Not State a Claim for Breach of Any Contract

Plaintiffs do not allege breach of any specific provision of any contract.  *First*, Plaintiffs'
theory that Apple purportedly breached a "purchase and sale" contract is a non-starter.  Plaintiffs
do not describe, attach, or identify any alleged device "purchase and sale contract" to support
their claim.  Instead, Plaintiffs vaguely argue that Apple breached "the purchase price component
of the contract of purchase and sale."  (Opp'n at 4, 9.)  This is not enough.  "In an action for
breach of a written contract, a plaintiff must allege the specific provisions in the contract creating
the obligation the defendant is said to have breached."  *Brackett v. Am. Airlines Grp. Inc.*, No. 21-
cv-02681-HSG, 2022 WL 282529, at *3 (N.D. Cal. Jan. 31, 2022) (J. Gilliam) (citing
*Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011); *see also Harris v. Rudin,
Richman & Appel*, 74 Cal. App. 4th 299, 307 (1999) ("If the action is based on alleged breach of
a written contract, the terms must be set out verbatim in the body of the complaint or a copy of
the written agreement must be attached and incorporated by reference.")).  Plaintiffs do not do so.
(*See generally* SAC.)  Even if Plaintiffs' vague allegation contends that the unspecified price
should have included the later cost of iCloud storage, that theory is not a breach of contract claim,
but an omissions claim, which fails for the reasons set forth above.  Moreover, the suggestion that
*at the time a user purchases their device*, Apple should know whether the user will later desire
additional iCloud storage, how much storage, and at what price, in order to include it in the
contract price, is untenable on its face.[5]

*Second*, Plaintiffs do not identify a specific contractual provision that Apple allegedly
breached in the iCloud Terms & Conditions.  Plaintiffs point to the "downgrading" term of the
iCloud Terms & Conditions, but this neither promises what Plaintiffs contend—management of
Plaintiffs' storage of their data to stay within 5GB—nor alleges a breach.  This term provides
only that users are permitted to downgrade their iCloud storage plan and reduce their payments,

---

[5] To the extent Plaintiffs seek to allege breach of an implied promise of "a fixed price for
a computer" (Opp'n at 12), this claim fails for the same reasons.

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT
CASE NO.: 4:21-CV-04077-HSG
NY-2431309

13

or alternatively upgrade storage. (Mot. at 17.) Plaintiffs do not allege they did not have the option to downgrade, but only that they did not "understand how to downgrade," and it was "difficult." (SAC ¶¶ 63, 97.) These allegations concerning Plaintiffs' data management choices fall well short of establishing any contractual breach by Apple in failing to assist them in downgrading.

*Third*, Plaintiffs similarly fail to identify which provision within the iCloud Capacity Email Apple allegedly breached. The iCloud Capacity Email does not contain a "downgrading" term; it does not even include the word "downgrade." (Opp'n at 11; *Compare with* Amezcua Decl., Ex. B, iCloud Capacity Email.) It states only that "[t]o continue to use iCloud and back up your photos, documents, contacts, and more, you need to upgrade your iCloud storage plan or reduce the amount of storage you are using." (Amezcua Decl., Ex. B, iCloud Capacity Email.) Plaintiffs do not identify any language that contains an express or implied promise concerning users' ability to downgrade their iCloud storage later if they choose to upgrade in response to the email. Further, as Plaintiffs admit, users receive this email "once customers *approach* having 5 GB of their data uploaded" to iCloud. (SAC ¶ 12 (emphasis added).) Accordingly, at that time, the user has not upgraded to additional storage and has nothing to downgrade. (*See* Amezcua Decl., Ex. A, iCloud Terms & Conditions, Section III (discussing downgrading and cancellation in the context of "Subscription Storage Upgrades").) The iCloud Capacity Email is not a promise or future contractual undertaking of any kind, and Plaintiffs have not shown otherwise. (Mot. at 19.) Plaintiffs' breach of contract claim fail.

### 2. Plaintiffs' Implied Covenant Claim Fails

Plaintiffs now argue that Apple breached an implied promise of data management because Apple "interfered with the Plaintiffs' ability to realize promised benefits of their contract." (Opp'n at 11-12; *see also id.* at 7-8.) This claim is nowhere in the SAC, and must be dismissed for this reason alone. Further, it fails for reasons the Court has already recognized.

As this Court previously found, Plaintiffs "failed to identify a provision in the iCloud Terms and Conditions that promises users any form of data storage advice" and "Plaintiffs' claim for breach of the implied covenant fails for the same reason." (Order at 12.) In the SAC and their

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
CASE NO.: 4:21-CV-04077-HSG
NY-2431309

14

Opposition, Plaintiffs seek to rely on the term in the iCloud Terms & Conditions providing "[y]ou can change your subscription by upgrading or downgrading your storage under the iCloud section of Settings on your device," to support their claim that Apple promised "data management." (Opp'n 5; *see also id.* at 11-12.) But Plaintiffs do not identify any specific contractual provisions where Apple promised to help users manage their data or downgrade their storage, or to otherwise provide data storage advice. Nor do Plaintiffs allege any facts in the SAC that support a claim that Apple "interfered with" their ability to manage their data. A provision that users are *permitted* to downgrade or upgrade their storage plan does not create or even suggest an obligation for Apple to assist users in managing their personal data. As Plaintiffs' own cited case law makes clear, "implied terms should never be read to vary express terms." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992); *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 779 (9th Cir. 2003) (implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement"). And, to the extent Plaintiffs attempt to use their Opposition to amend their breach of contract claim to include an alleged breach of "various web pages" never alleged in the SAC, Plaintiffs may not do so. *See Rodriguez v. Kwok*, No. C 13–04976 SI, 2014 WL 889570, at *6 (N.D. Cal. Mar. 3, 2014) ("Statements made in an opposition brief cannot amend the complaint.") (citing *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998).

## III.   CONCLUSION

This is Plaintiffs' third attempt at a pleading—fourth, given Plaintiffs' attempts to amend the SAC in the Opposition. Plaintiffs have had ample opportunity to state a claim, and it is clear that they cannot do so. The SAC should be dismissed with prejudice in its entirety. *See e.g.*, *Van Dusen v. City of Oakland*, No. 13–cv–05023–HSG, 2015 WL 1800587, at *6 (N.D. Cal. Apr. 20, 2015) (granting motion to dismiss without leave to amend where Plaintiff had "multiple opportunities to cure deficiencies in her complaint" and it was "clear that any such amendment would be futile") (citation and internal quotation marks omitted) (J. Gilliam).

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT
CASE NO.: 4:21-CV-04077-HSG
NY-2431309

15

Dated:  August 29, 2022

ALEXIS A. AMEZCUA
MORRISON & FOERSTER LLP


By:   /s/ Alexis A. Amezcua
        ALEXIS A. AMEZCUA

        Attorneys for Defendant
        APPLE INC.

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT
CASE NO.: 4:21-CV-04077-HSG
NY-2431309

16

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of August, 2022, a true and accurate copy of this document was e-filed and served via ECF notification to the following:

David M. Rosenberg-Wohl
Hershenson Rosenberg-Wohl
A Professional Corporation
3080 Washington Street
San Francisco, CA 94115
Tel: (415) 317-7756
Email:  david@hrw-law.com

Patrick C. Cooper
Ward & Cooper, LLC
2100 Southbridge Parkway, Suite 645
Birmingham, AL 35209
Tel: (205) 871-5404
Email: patrickcharles003@yahoo.com

By:   */s/ Alexis A. Amezcua*
        ALEXIS A. AMEZCUA

Defendant Apple Inc.'s Reply In Support Of Motion To Dismiss Plaintiffs' Second Amended Complaint
Case No.: 4:21-CV-04077-HSG
NY-2431309

17