DAVID M. ROSENBERG-WOHL (Cal. Bar No. 132924)
HERSHENSON ROSENBERG-WOHL,
A PROFESSIONAL CORPORATION
3080 Washington St.
San Francisco, CA 94115
(415) 317-7756
david@hrw-law.com

PATRICK C. COOPER (Cal Bar No.142349)
WARD & COOPER, LLC
2100 Southbridge Parkway, Suite 645
Birmingham, AL 35209
(205) 871-5404
patrickcharles003@yahoo.com

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| WILLIAM RUTTER, et al., | Case No.: 4:21-cv-04077-HSG |
| Plaintiffs, | |
| vs. | **THIRD AMENDED COMPLAINT [CLASS ACTION]** |
| APPLE INC., et al., | |
| Defendants. | |

Plaintiffs, Cindy Rutter, William Rutter, Connie Tabas, Jacqueline Tabas, Tristan Young and Robert Barker ("Plaintiffs"),[1] by and through the undersigned counsel, bring this Complaint on behalf of themselves and all other consumers similarly situated throughout the United States (as described in the Class Action Allegations below) against Defendant, Apple Inc., and Does 1-

---

[1] Plaintiffs Garamani and Eliasieh are omitted from this Third Amended Complaint.
THIRD AMENDED COMPLAINT [CLASS ACTION] - 1

10 ("Defendants") for damages, restitution, declaratory and injunctive relief, along with attorneys' fees.

Plaintiffs are ignorant of the true names and capacities of defendants sued herein as Does 1-10, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will amend this complaint to allege the true names and capacities of these fictitiously named defendants when that information is ascertained. Plaintiffs are informed and believe and thereon allege that each of these fictitiously names defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiffs' injuries as herein alleged were directly and legally caused by the aforementioned Defendants. Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, each of these Defendants was the agent and employee of each of the remaining defendant and, in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment.

Plaintiffs allege as follows:

## Apple and Its iCloud Service

1. Defendant Apple Inc. ("Apple") is a California corporation headquartered in Cupertino, in Silicon Valley.

2. Formerly known as Apple Computer Company (then Apple Computer, Inc.), Apple developed a strong market presence through its consumer-friendly computers such as the iMac. Recently, Apple dropped "Computer" from its name and broadened its reach into developing cellular telephones and offering computer-based services (for example, Apple Pay, Apple Music, iTunes, App Store, iCloud).

3. At present, Apple's services business is its second-largest segment, following the iPhone. And that services segment is huge.

THIRD AMENDED COMPLAINT [CLASS ACTION] - 2

4.      Apple's revenue in 2020 was approximately $285 billion. As of the first quarter of this year, 2021, Apple's services business generated over $15.76 billion in revenue.

5.      As of 2018, iCloud was responsible for 15% of Apple's service revenue, approximately $5.1 billion, annually.

6.      iCloud is a computer data storage service through which Apple consumers are able to store their continually generated data (both that generated on Apple products and non-Apple products) with Apple remotely, i.e., "in the cloud," as a supplement or alternative to storing data on personal computer devices such as computers themselves or external hard drives.

7.      Apple guarantees 5 GB of storage of this continually generated data, not just the consumer's first 5 GB. And yet, once the consumer's data in storage exceeds 5 GB, Apple

**NO DISCLOSURE THAT ICLOUD BUILT INTO COMPUTER PURCHASE**

8.      Since October 12, 2011, Apple has sold all of its computing devices such as desktops, laptops, iPads and iPhones ("computers") with iCloud built in, but not disclosed to the purchaser either before or at the time of sale. Apple does advertise other services that come with the computer, such as Time Machine, FaceTime, Safari, Apple Music and TV.[2] These are ubiquitous, whether on the Web or in Apple stores. But not iCloud. iCloud does not appear on purchase orders or invoices, nor is there any Apple email

_____

[2] Other services are identified as available to download from the App Store if not installed, such as GarageBand, iMovie, Keynote, Numbers and Pages.

THIRD AMENDED COMPLAINT [CLASS ACTION] - 3

explaining that it is present or that it is free for 5 GB of consumer data uploaded and stored.

9. This is intentional. Apple wants the consumer to become dependent upon the convenience of comprehensive data storage before the consumer is presented with the choice to pay to continue storage.

10. When the consumer's Apple computer has stored enough data to exceed the 5 GB level, Apple asks the consumer to pay what appears to be a modest amount, $0.99/month, for its data storage service. If the consumer does this, over months and years, as data accumulates, the price becomes quite large. In the US market, that is at least $12/year over the use of a customer's Apple computers (at the initial level of paid subscription of $0.99/month), but depending upon the customer's computer usage, that amount will rise to $24/year (at the 200 GB level, $1.99/month) and then to $120/year (at the 2 TB level, $9.99/month). Over the lifetime usage of customers' usage of Apple computers, this amount becomes gargantuan.

11. Alternatives for data storage are ubiquitous and less expensive. Right now, at Walmart, a consumer can buy a 64 GB flash drive for $8.88. That's 30% more storage than the 50 GB level of iCloud for less than *one month* of its cost. And the cost of storage continues to drop. At the time of the filing of the prior complaint, one could purchase a 64 GB flash drive at Walmart for $8.97. And that's a brick-and-mortar store. Amazon's price for a 64 GB flash drive is currently $5.49.

**CREATION OF AN APPLE ID: INADVERTENTLY TURNING ON ICLOUD**

12. Once consumers have purchased an Apple computer, they are required to create an "Apple ID" to operate within Apple's product and service ecosystem. Ordinarily, the

THIRD AMENDED COMPLAINT [CLASS ACTION] - 4

consumer's email is the Apple ID. Both the "Get started" screen and the "Create Your

Apple ID" screen are registrations screen asking for name and email address – and once

consumers enter their email address, their email now doubles as their Apple ID.

13.     Once the consumer creates his or her Apple ID, iCloud is automatically turned on, and

Apple begins uploading and storing consumer data to its remote servers.[3]

14.     Apple provides no notice to its consumers that it has begun uploading and storing their

data with iCloud.

15.     The initial iCloud service is free, so logically Apple would advertise this to induce its

consumers to purchase. Why doesn't it? Apple conceals the presence of that built-in

service, even though it is free, because Apple wants its consumers dependent upon Apple

for storage of their data before Apple asks for payment. Apple knows that a sizeable

amount of its consumers will generate enough data to be presented with iCloud's cost

structure and pay.

16.     Apple even obfuscates the meaning of the iCloud service by suggesting it is an email

account. Apple prompts the consumer to "Get a free iCloud email address," suggesting

that there is no relationship between the Apple ID and iCloud but rather that the

consumer would need to click that "Get a free iCloud email address" in order to activate

iCloud. Apple could have selected any name for its email address, such as "Apple." It

chose "iCloud" to mislead.

------

[3] Apple also sells the iCloud service to PC users by way of "iCloud for Windows." At present, the Complaint does not encompass plaintiffs who purchased iCloud for use on a PC.

THIRD AMENDED COMPLAINT [CLASS ACTION] - 5

17.   The purchase of an Apple computer thus renders all Apple computer purchasers inadvertent iCloud consumers, consumers inadvertently storing the data on their computers with an Apple cloud service. This happens automatically. Apple provides no notice that this will happen, that this has happened, that it will continues to happen while consumers use their computers.

18.   All consumers would want to know that their purchase of their Apple product has hidden, built-in costs for a sizeable percentage of them that may continue and grow throughout the time of ownership of all Apple computer products. Apple knows that many consumers use enough data (such as Plaintiffs here) that presentation with these costs is certain to them along with a certain revenue stream.

19.   For these consumers (like Plaintiffs here), facing the cost structure of iCloud is a certainty. <u>That is because the iCloud service is for 5 GB storage of consumers' continually generated data, not the consumers first 5 GB of data</u>. For these consumers, the 5 GB of data is not free; they have to pay for it if they want to use it (as well as keeping what they stored inadvertently to date). (*See* , *e.g*., paragraphs 45-49, below.)

20.   Disclosure of iCloud and its incipient and escalating cost structure would inform the reasonable consumer whether or not to purchase the Apple computer in the first place, as well as provoke investigation about computer storage data and the various stand-alone products (such as thumb drives, hard drives and zip drives) and online services for Cloud storage (including now Google Drive, Microsoft OneDrive, Box and Dropbox).

**APPLE'S FIRST PROVIDES NOTICE ABOUT ICLOUD WHEN TIME TO PAY**

21.   Only once consumers approach having 5 GB of their data uploaded to and held by Apple does Apple disclose to its consumers, by an email, that they have been enrolled in the

THIRD AMENDED COMPLAINT [CLASS ACTION] - 6

iCloud subscription service, that the initial 5 GB of storage was free, that if they continue

to use their computer as they have, they will imminently run out of the "free" storage

provided by that service, and that they must now begin monthly payments if they want to

keep not just what they have already stored unknowingly with Apple but want to

knowingly use the built in iCloud 5 GB service. This is the "iCloud warning email."

22.     A copy of the form of the "iCloud warning email" sent to all Plaintiffs is incorporated

immediately below

Dear []

**Your iCloud storage is almost full. You have [] MB remaining of 5 GB total storage.**

**Upgrade to 50 GB for $0.99 per month**

Your iCloud storage is used for iCloud Photo Library and to keep the most important things on your iPhone, iPad, and iPod touch safe and available, even if you lose your device. iCloud Drive, and apps like Keynote, Pages, and Numbers also use iCloud storage to keep your files up-to-date everywhere.

To continue to use iCloud and to back up your photos, documents, contacts, and more, you need to upgrade your iCloud storage plan or reduce the amount of storage you are using.

The iCloud Team

**Important:** If you exceed your storage plan, new photos and videos will not upload to iCloud Photo Library and your devices will stop backing up to iCloud. iCloud Drive and iCloud-enabled apps will no longer update across your devices.

THIRD AMENDED COMPLAINT [CLASS ACTION] - 8

23.  The email directs consumers to "upgrade" to pay for the storage they have already stored, so that they can continue to access it, and if they want to use iCloud to store any further data. Apple has taken away its 5 GB of storage of continually generated data as soon as Apple has announced it to the consumer, rendering the 5 GB limited to the first 5 GB of data the consumer has stored inadvertently.

24.  There are two links presented to consumers for them to do this, both prominently displayed: one in blue bold underlining and one black bold underlining.

25.  The only alternative, Apple explains, is to "reduce the amount of storage you are using." That text is undistinguished from the general text of the email; there is no link, no explanation of how to do that.

26.  The email is designed to pressure a reasonable consumer to pay: the "upgrade" is just $0.99/month. The representation that a consumer can "reduce the amount of storage [he or she is] using" is not presented in a way to be readily selected: a choice without a means to make it is no "choice" at all. It is a promise that Apple does not intend to keep and one it has thwarted its consumers from making.

27.  Were a consumer motivated to probe Apple's Legal Agreement, the consumer would find their fear of data loss not just reasonable but specifically threatened: if consumers do not pay, Apple is likely to delete what its consumers have already saved: "If a device has not backed up to iCloud for a period of one hundred and eighty (180) days, Apple reserves the right to delete any backups associated with that device."

28.  Further, were a consumer to search through Apple's website looking for how to reduce storage, so as to retain the promised 5 GB of storage, it would not be found.

THIRD AMENDED COMPLAINT [CLASS ACTION] - 9

29.  While the Legal Agreement directs the consumer to look "under the iCloud section of Settings on your device, or under the iCloud pane of System Preferences on your Mac," nothing evident under either the iCloud section of Settings on the iPhone, for example, nor under the iCloud pane of System Preferences on the Mac provides this information.

30.  If one looks for the iCloud pane of System Preferences on the Mac, there is no such iCloud pane to be found. There is only a button showing "Apple ID."

31.  If a consumer chooses to open Apple ID in the hopes this is the path, the consumer will not find any link to do "reduce storage." The path is to cancellation only: there is a button identifying iCloud, and pushing that button leads to a button called "Manage," and pushing that button leads to "Change Storage Plan" but while Apple now presents the consumer with the present storage plan and a button entitled "Downgrade Options," including the 5 GB free option, but one cannot select that option or learn how to reduce data. Instead, Apple directs the consumer who wants to "learn more" about *cancellation*, which leads to the Apple page "Downgrade or cancel your iCloud" page. But that page simply repeats that the consumer should get to "Manage Storage" and links to the same process leading nowhere.

32.  If one looks at the iCloud section of Settings on an iPhone, on the other hand, that setting shows only a Manage Storage button that leads to a Change Storage Plan button, that leads to Downgrade Options, which then requires an Apple ID, which then leads to the Choose Downgrade option of 5GB, which does not lead anywhere at all. Again, only if the consumer selects "Learn More" about the *cancellation* process at the bottom of the page, can the consumer reach the "Downgrade or cancel your iCloud" page. But that page

THIRD AMENDED COMPLAINT [CLASS ACTION] - 10

repeats that the consumer should get to "Manage Storage" and links to the same process leading nowhere.

33. Apple does more than make it difficult to find the path to "reduce storage" or "downgrade": it makes it difficult for the consumer to copy what they have stored in iCloud and save it elsewhere, as to the consumer's computer – a process Apple warns should be undertaken before a consumer attempts to downgrade.

   a. Consider iCloud Drive files: You are instructed to click the iCloud Drive in the sidebar of any Finder window. But clicking either of the two iCloud icons in the iCloud Drive does nothing. There is an "options" button associated with the iCloud Drive, but all that does is identify apps that store documents and data in iCloud – there is no way to find any files to download, much less see their size so as to determine which to download onto your computer and which to keep in iCloud.

   b. Consider the iPhone: You are instructed to open the Files app and tap iCloud Drive. But there is no Files app on an iPhone. And Apple's instructions if you don't see it on your phone? Swipe down and search for it. But if you swipe down, it's not there either.

   c. Consider iCloud.com: You are instructed to sign on. There you are to sign in with Apple's password to continue. But that doesn't work. Rather, despite its name, you need to enter the non-Apple password for your computer itself.

34. Because the copying process is virtually impossible to accomplish, in light of Apple's warning, consumers are dissuaded from downgrading at all.

35. If a consumer takes matters into their own hands and searches for how to reduce storage or downgrade, Apple further dissuades consumers by suggesting the consumer can only

THIRD AMENDED COMPLAINT [CLASS ACTION] - 11

do this by *deleting* their data from iCloud, not by transferring some of it elsewhere. Search for "reduce storage" leads to "Manage your iCloud storage." "To Make More Space Available in iCloud," the choices are to "Reduce the size of your iCloud Backup" and 5 categories of how to delete. If one clicks on "Reduce the size of your iCloud Backup," again, the information provided is how to "delete."

36.    All of this explains why once a consumer has made the reasonable choice to pay for the continuing storage service of iCloud, that consumer remains locked into the Apple system and its increasing price tier as the consumer's storage continues to accumulate on iCloud indiscriminately. This is fundamentally unfair.

37.    There is no choice to "reduce" just to delete. Given that choice, a reasonable consumer agrees to pay the continuing small monthly fee.

38.    That this negation of choice is intentional on Apple's part is underscored by the fact that Apple used to provide the "iCloud warning notice" in a way that provided both instructions as to how to upgrade and a link to reduce storage: "Learn to manage your iCloud storage" was featured prominently in blue. An example sent to Plaintiff Tristan Young is set forth immediately below:

**From:** iCloud <noreply@insideicloud.icloud.com>
**Subject: Your iCloud storage is almost full.**
**Date:** Sep 19, 2014 at 10:07 AM
**To:** tristanmarae@icloud.com

Dear Tristan young,

**Your iCloud storage is almost full. You are currently using 4.8 GB of 5 GB total storage.**

Your iCloud storage is used for iCloud Mail and to automatically back up the most important data on your iPhone, iPad, and iPod touch — the photos and videos in your Camera Roll, device settings, app data, messages, and more. Learn more about iCloud Backup >

iCloud-enabled apps, like Keynote, Pages, and Numbers, use iCloud storage to automatically keep your documents — and other important data used by your apps — up to date across your devices. Learn more about Documents in the Cloud >

To continue using these iCloud features without interruption, you can purchase additional storage on your iPhone, iPad, or iPod touch:

    **1** Go to Settings and tap iCloud.

    **2** Tap Storage & Backup.

    **3** Tap Buy More Storage and choose an upgrade.

Or you can reduce the amount of iCloud storage you're using. Learn how to manage your iCloud storage >

**Note:** If you exceed your storage plan, your devices will no longer back up to iCloud, iCloud-enabled apps will no longer update documents and data between your devices, and you will no longer be able to send or receive messages with your iCloud email address, **tristanmarae@icloud.com.**

The iCloud Team

THIRD AMENDED COMPLAINT [CLASS ACTION] - 13

1   39.      Compare the former notice with the current one:



**From:** iCloud <noreply@insideicloud.icloud.com>
**Subject:** Your iCloud storage is almost full.
**Date:** Sep 19, 2014 at 10:07 AM
**To:** tristanmarae@icloud.com

Dear Tristan young,

Your iCloud storage is almost full. You are currently using 4.8 GB of 5 GB total storage.

Your iCloud storage is used for iCloud Mail and to automatically back up the most important data on your iPhone, iPad, and iPod touch — the photos and videos in your Camera Roll, device settings, app data, messages, and more. Learn more about iCloud Backup >

iCloud-enabled apps, like Keynote, Pages, and Numbers, use iCloud Drive to automatically keep your documents — and other important data used by your apps — up to date across your devices. Learn more about Documents in the Cloud >

To continue using these iCloud features without interruption, you can purchase additional storage on your iPhone, iPad, or iPod touch:

1 Go to Settings and tap iCloud.
2 Tap iCloud & Backup.
3 Tap Buy More Storage and choose an upgrade.

Or you can reduce the amount of iCloud storage you're using. Learn how to manage your iCloud storage >

**Note:** If you exceed your storage plan, your devices will no longer back up to iCloud, iCloud-enabled apps will no longer update documents and data between your devices, and you will no longer be able to send or receive messages with your iCloud email address, tristanmarae@icloud.com.

The iCloud Team

**From:** noreply@email.apple.com.
**To:** tabas4@aol.com.
**Subject:** Your iCloud storage is full.
**Date:** Sun, Jul 24, 2016 6:11 pm
**Attachments:**

Dear Constance TABAS,

Your iCloud storage is full. Because you've exceeded your storage plan, your photos, documents, contacts, mail, and device data are no longer backing up to iCloud. iCloud Drive and iCloud-enabled apps are not updating across your devices.

To continue using these iCloud services, you need to upgrade your iCloud storage plan or reduce the amount of storage you are using.

Upgrade to 50 GB for $0.99 per month

Important: If you do not upgrade your storage or reduce the amount of storage you're using soon, you will not be able to send or receive messages with your iCloud email address, tabas4@icloud.com.

The iCloud Team

iCloud

The iCloud Team

THIRD AMENDED COMPLAINT [CLASS ACTION] - 14

1

## THE CONFIRMATION OF ICLOUD SERVICE EMAIL

2

40.   At each time the consumer purchases a level of iCloud service, Apple sends a confirming

3

email which further thwarts a consumer's ability to "reduce storage." In this email, Apple

4

changes terms, no longer identifying even the option to reduce storage but only to

5

"cancel." That process is by "downgrading to the free storage plan," which is now

6

presented with a link. But that link does not provide any mechanism to "reduce storage."

7

Rather the instruction is either "[t]o downgrade your storage plan, choose a new storage

8

9

amount" or [t]o cancel iCloud+, choose the free 5GB plan or choose None." This is the

10

"iCloud purchase email."

11

41.   A copy of the form of the "iCloud warning email" sent to all Plaintiffs is incorporated

12

immediately below:

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Your receipt from Apple.**
1 message

**Apple** <no_reply@email.apple.com>                                               [date] at [time]
To: []

Receipt

APPLE ID
[]                                                  BILLED TO
                                                    [credit card number]
DATE                                                [address]                          TOTAL
[]                                                                                      **$0.99**

ORDER ID                    DOCUMENT NO.
[]                          []

iCloud                                              TYPE        PURCHASED FROM         PRICE

**iCloud: 50 GB Storage Plan**                      iCloud Storage                     **$0.99**
Monthly | Dec 25, 2016

                                                                Subtotal  **$0.99**
                                                                     Tax  **$0.00**

                                                    **TOTAL**                          **$0.99**

If you have any questions about your bill, visit iTunes Support. This email confirms payment for the iCloud storage plan
listed above. You will be billed each plan period until you cancel by downgrading to the free storage plan from your iOS
device, Mac or PC.

You may contact Apple for a full refund within 15 days of a monthly subscription upgrade or within 45 days after a yearly
payment. Partial refunds are available where required by law.

Learn how to manage your password preferences for iTunes, iBooks, and App Store purchases.

THIRD AMENDED COMPLAINT [CLASS ACTION] - 16

42. Reducing storage necessarily implies that consumers can keep what they want of the data previously saved for free and eliminate the rest so as to manage the level they prefer, whether the promised free 5 GB level or paid.

43. Apple simply explains that a consumer may elect a less expensive level and how to do that. Nothing about saving some data and discarding other data so as to make that less expensive level a real choice.

## APPLE'S PROMISE CONSUMERS CAN RETAIN 5 GB OF STORAGE FOR FREE (THE LEGAL AGREEMENT)

44. When a consumer agrees to pay the $0.99/month iCloud continuing subscription fee (and any successive storage level fee), Apple promises that the consumer will be able to reduce storage back to the 5 GB free level of service if desired.

45. In its "Welcome to iCloud" legal agreement ("Legal Agreement" or "Terms and Conditions"), Apple promises that the consumer can always go back to the free 5 GB level.

46. First, Apple makes a general, unqualified promise: the consumer can specifically choose to return to any previous level, including the 5 GB level. "You can change your subscription by … *downgrading* your storage ...". That means that whatever the level of storage, 50 GB, or 2 TB, the consumer can elect to stop paying and resume the free service. Implicit in this promise is that the consumer can select what data to save and which to delete to achieve this reduced level.

47. Second, Apple makes this promise clear by stating that even if the consumer wishes to cancel iCloud entirely, Apple will still provide the default 5GB of free data storage: the

THIRD AMENDED COMPLAINT [CLASS ACTION] - 17

"effect of cancellation" is a return to the 5 GB level: "[w]e will reduce your storage back to 5 GB and reimburse you ...".

48.   "Reduce" is not "cancel" or "delete" or "start over." The reasonable meaning of Apple's promise that consumers can reduce storage is that if their storage needs are relatively modest, they can keep what they want within the 5 GB free level and discard the rest. That is certainly what each of the Plaintiffs here believed.

49.   And yet for the reasons stated above, there is no meaningful choice to reduce storage. Rather, while the promise was that storage can be reduced, in reality what Apple offers to the consumer is just the choice to delete all their data and start over. No reasonable consumer interprets Apple's promise of reduced storage to go back to the 5 GB level in that manner.

**Plaintiffs**

50.   Plaintiffs here are US residents, consumers who have purchased Apple computer devices on which iCloud was installed, don't remember ever signing up for iCloud, encountered it first when their data accumulation pushed against the 5 GB cap for free storage, and have been unable to reduce or downgrade their data use of the service so as to obtain the 5 MB storage level that Apple represented they could.

**<u>Cindy Rutter</u>**

51.   Cindy Rutter is currently a resident of Wyoming over the age of 65. She spends time in California regularly and keeps a rented apartment there. Her Apple ID is <u>csrutter@mac.com</u>. Her email address is: <u>cindy@cwrutter.com</u>

52.   Ms. Rutter has asked Apple to help her identify the Apple product she owned when she created her Apple ID. She does not whether her first Apple purchase was by the internet

THIRD AMENDED COMPLAINT [CLASS ACTION] - 18

or at a store, nor does she remember the particular store that might have been, though most likely it was the Stonestown Mall in San Francisco or the Apple store in the Stanford Shopping Center, in Palo Alto California. She regularly deletes her old email, so her email account is of no help to her. The Apple Store app does not identify what this purchase would have been, nor has the person at the 800 number able to help.

53. That said, she has managed to find the following proofs of purchase:

- On March 8, 2008 Ms. Rutter purchased at the Apple Store, Aspen Grove, 7301 S Santa Fe Drive STE 440, Littleton, CO, 80120, aspengrove@apple.com, 720-283-7930, www.apple.com/retail/aspengrove, a MacBook 13.3/2.4/2X1GB/250/SD-DL – Black, Part No. MB404LL/A, Serial No. W88087020P2, for $1,499.00.

- On February 23, 2013 Ms. Rutter purchased at the Boylston Street Apple store, 815 Boylston St., Boston MA boylstonstreet@apple.com, 617-385-9400, www.apple.com/retail/boylstonstreet, a MPB 13.3/2.6/8GB/256GB Flash, Part No. ME662LL/A, Serial No. C02K67EWFFRP, for $1,699.00.

- On January 16, 2016 Ms. Rutter purchased at the Apple Store, Chestnut Street, 2125 Chestnut Street, San Francisco CA 94123, chestnutstreet@apple.com, 415-848-4445, www.apple.com/retail/chestnutstreet, Web Order No. W444982686, an IMAC 27"/M390/CTO, Part No. Z0SD, Serial No. D25R308NGQ18, for $2,649.00, and MB 12.0 Space Gray/1.3GHZ/8GB/512GB-USA, Part No. Z0RN0LL/A, Serial No. C02QM0H0GL6F, for $1,749.00.

54. The foregoing product information is the only computer product information Ms. Rutter has been able to locate.

THIRD AMENDED COMPLAINT [CLASS ACTION] - 19

55.    At no time does Ms. Rutter recall any mention by Apple of the iCloud service at or around the time of her purchase of a computer. She relied upon the product description available near the computers in the store that identified what Apple had built into the computer such as power, memory, screen and ports. The documents she has found supporting her purchase confirm that these were the details advertised in written form near the computer and that iCloud was not mentioned, as well as her recollection to that effect.

56.    Ms. Rutter expects her receipts to indicate the cost she has paid for a product and for it to indicate any future cost involved. Hers don't indicate either the presence of iCloud or the eventual escalating cost of that service. She has a lot of experience shopping for and purchasing Apple products and would have expected iCloud to be featured (or at least explained) in the context of computer purchases, whether online or in the stores. Posters and product information are ubiquitous in the Apple stores. The website indicates various services available for the Apple ecosystem, with links to obtain more information. She does not recall seeing anything regarding iCloud in connection with a computer purchase.

57.    Ms. Rutter would have acted differently if Apple had made her aware of iCloud and its increasing service cost. She bought Apple computers for the computers, not for the storage of her data. If Apple had disclosed the nature of iCloud, Ms. Rutter would have considered alternative forms of storage so she would not become dependent upon Apple for that purpose.

58.    It would have been an easy matter for Apple to indicate on the Apple Store quotation that iCloud was prepackaged. It would have been an easy matter for Apple to indicate on the invoice or in advertising, whether online or in-store, that the computer came with iCloud

installed. Links could have been provided in the online setting to provide further detail, including what the service is, how it is installed automatically upon a consumer's creation of an Apple ID, how it runs in the background saving data without any notice, and that at the point that 5GB of data is stored, Apple will offer a choice of paying for more storage or of downgrading or canceling, and explain how to do so while keeping the data the consumer wants to keep.

59. Ms. Rutter first recalls learning about iCloud when she received the email asking if she wanted to pay for more storage. She purchased iCloud at the 50 GB level for $0.99/month on October 3, 2018. She has managed to locate an invoice to csrutter@mac.com dated March 15, 2010, Order Id. MLT3Z508TM, Doc. No. 127257904388, which indicates her monthly subscription to iCloud+ with 200 GB of Storage at the cost of $2.38/month. She has located an invoice to csrutter@mac.com dated April 15, 2019, Order Id. MLT5X54MWN, Doc. No. 148262777270, reflecting iCloud+ with 200 GB of Storage for $2.99/month. She has located an invoice to csrutter@mac.com, Order Id. March 26, 2020, Order Id. MLTKW2YZ3W, Doc. No. 131330840851, reflecting iCloud+ with 2 TB of Storage at $7.96/month. She has located an invoice to csrutter@mac.com, dated April 26, 2020, Order Id. MLTL54KZMD, Doc. No. 192338166702, reflecting iCloud+ with 2 TB of Storage at $9.99/month. She continues to pay $9.99/month for storage.

60. Ms. Rutter could not figure out how to reduce her storage and even sought out help from Apple to reduce her storage but could not understand the steps sufficiently to reduce her storage. She tried at least once to have a Genius at the Genius Bar help with other solutions, but they were only successful in losing some photos. At this time, she does not

recall specifically what steps she took when, but the steps leading nowhere identified above are familiar to her and among the steps she tried. She felt compelled to pay the $0.99 level and then jump directly to the 2 TB level to avoid further hassle.

61.     The foregoing information is the only iCloud information Ms. Rutter has been able to locate in her csrutter@mac.com email account (she also tried her cindy@cwrutter.com and cynrut@gmail.com accounts), and all she could locate through the "reportaproblem.apple.com" site that tracks software purchases.

**William Rutter**

62.     William Rutter is presently an Illinois resident (residing in Pennsylvania when this suit was originally filed) but formerly a California resident. His Apple ID is wrutter@wryelab.com.

63.     On February 11, 2019, via Web Order No. W507674820, William Rutter ordered an iMac Pro at the cost of $7,199.00, estimated tax of $616.93, for pickup at Apple Chestnut Street, identified as:

- 3.0GHz 10-core Intel Xeon W processor, Turbo Boost up to 4.5GHz
- 128GB 2666MHz DDR4 ECC memory
- Radeon Pro Vega 64 with 16 GB of HBM2 memory
- 2TB SSD
- Magic Mouse 2 – Space Gray
- Magic Keyboard with Numeric Keypad – US English – Space Gray

64.     The order was confirmed to William Rutter at wrutter@wryelab.com.

THIRD AMENDED COMPLAINT [CLASS ACTION] - 22

65. Mr. Rutter picked up the order on February 22, 2019, Web Order No. W50764820, IMAC PRO 27"/CTO, Part No. Z0UR, Serial No. C02Y70C0HX8F, for $7,199.00 plus $611.92 tax.

66. On March 11, 2019 William Rutter purchased by Order No. W517026306 an 11-inch iPad Pro Wi-Fi 256 GB – Space Gray, for $712.00, for pickup at Apple Chestnut Street. He picked up the product that day at Apple Chestnut Street, 2125 Chestnut Street, San Francisco CA 94123, chestnutstreet@apple.com, 415-848-4445, www/apple.com/retail/chestnutstreet, IPAD PRO 11 WIFI 256 GP SPACE GRAY-USA, Part No. MTXQ2LL/A, Serial No. DMPY3CWHKD6L.

67. The foregoing information is the only product information Mr. Rutter has been able to locate in his wrutter@wryelab.com email account. He has asked the members of his family who purchased his other Apple products; however, they have been unable to identify the Apple product he owned when he created his Apple ID and nobody within Apple with whom the family has spoken has been able to help, saying that records do not go that far back. The Apple Store app does not identify earlier products purchased, nor is the 800 number able to help.

68. At no time does Mr. Rutter recall any mention by Apple of the iCloud service at or around the time of his purchase of a computer. He relied upon the product description associated with the computers on Apple's website that identified what Apple had built into the computer such as power, memory, screen and ports. The documents he has found supporting his purchase confirm that these were the details advertised in written form near the computer and that iCloud was not mentioned, as well as his recollection to that effect.

69.   Mr. Rutter expects his receipts to indicate the cost he has paid for a product and for it to indicate any future cost involved. His don't indicate either the presence of iCloud or the eventual escalating cost of that service. He has a lot of experience shopping for and purchasing Apple products and would have expected iCloud to be featured (or at least explained) in the context of computer purchases, whether online or in the stores. Posters and product information are ubiquitous in the Apple stores. The website indicates various services available for the Apple ecosystem, with links to obtain more information. He does not recall seeing anything regarding iCloud in connection with a computer purchase.

70.   Mr. Rutter would have acted differently if Apple had made him aware of iCloud and its increasing service cost. He bought Apple computers for the computers, not for the storage of his data. If Apple had disclosed the nature of iCloud, Mr. Rutter would have considered alternative forms of storage so he would not become dependent upon Apple for that purpose.

71.   It would have been an easy matter for Apple to indicate on the Apple Store quotation that iCloud was prepackaged. It would have been an easy matter for Apple to indicate on the invoice or in advertising, whether online or in-store, that the computer came with iCloud installed. Links could have been provided in the online setting to provide further detail, including what the service is, how it is installed automatically upon a consumer's creation of an Apple ID, how it runs in the background saving data without any notice, and that at the point that 5GB of data is stored, Apple will offer a choice of paying for more storage or of reducing data and explain how to do so (i.e., how to keep the data the consumer wants to keep and discard the rest).

THIRD AMENDED COMPLAINT [CLASS ACTION] - 24

72.  Mr. Rutter first actively used iCloud when he chose to mirror the storage of his desktops across the two machines he uses. That was in 2019.

73.  Mr. Rutter is a sophisticated customer who for a time figured out how to manage his computer data so that he could keep within the 5 GB limit. Even so, he had to dig deep into Apple's website to figure out how to do this; remaining within the 5 GB was at one time a puzzle to solve an exciting challenge. Nonetheless, he considers Apple's representations and omissions regarding iCloud to be deceptive and unfair, most specifically in that despite the promise of being able to reduce his data usage, it cannot be done.

74.  When Mr. Rutter moved most of his storage over to Dropbox in 2018, he had no idea if he lost any information because he could not see and, to the best of his recollection, did not know, exactly what had been automatically stored in iCloud.

75.  iCloud is often set to automatically store the contents of certain folders, such as documents, or store data from certain applications, such as photos, keynote, or iA Writer (a third-party app purchased from the App Store). Mr. Rutter is a sophisticated user of technology, yet in the past, despite making his choices, he has regularly received emails from Apple about reaching the end of his iCloud space *without ever intending to use iCloud at all*.

76.  On January 14, 23 and January 31, 2020, and again on February 13, 2020, he received an email from noreply@email.apple.com advising him "Your iCloud storage is almost full." The choice Apple provided was either to "Upgrade to 50 GB for $0.99" or "reduce the amount of storage you are using." While the upgrade offer was provided by two separate links, there was no link to either downgrade or cancel. Even if they did exist, these

THIRD AMENDED COMPLAINT [CLASS ACTION] - 25

options were also largely unworkable as Mr. Rutter had come to rely on the desktop mirroring in his work by that time.

77. He chose to pay. On February 12, 2020, by Order Id: MVKZG41QFM, Doc, Id: 170320982101, he enrolled in iCloud+ with 50 GB of Storage, at $0.99, monthly renewal. That invoice too did not provide any indication of how to reduce data/downgrade or cancel and save the data Apple had been storing.

78. The foregoing information is the only iCloud information Mr. Rutter has been able to locate in his wrutter@wryelab.com email account, and all he could locate through the "reportaproblem.apple.com" site that tracks software purchases.

79. Mr. Rutter continues to work to keep the storage on his desktop as low as possible, off-loading stored data to other storage services in order to stay under the 50 GB limit.

80. He has elected not to use iCloud to whatever degree he can because, despite his belief that Apple runs the most privacy-centered and likely secure cloud data storage appropriate for someone with his needs, he cannot figure out how to effectively manage what goes onto iCloud and what does not when he uses my computer(s) so as to reduce his data usage and stay with iCloud's data limits.

81. Mr. Rutter still uses several apps that store data on iCloud, such a VoiceMemos, which will not store information elsewhere (as far as he can tell). When his usage of these apps exceeds the space he has available for free on iCloud, he will be forced to either pay Apple even more for the promised 5 GB of storage or delete information he wants to keep.

**Connie Tabas**

82. Ms. Tabas is a California resident over the age of 65. Her Apple ID is tabas4@aol.com.

83.     As of 2014, Ms. Tabas used the following Apple computer: a MacBook Pro i5 2.8GHz
        13" (Mid 2014) 512GB SSD. She purchased it either at Apple Chestnut Street or Apple
        Union Square in 2014.

84.     Ms. Tabas presently uses an iMac (24-inch, M1, 2021) (model), Serial No.
        H4TFL13KQ6W6. Her husband, Eric Tabas, purchased it 6/7/21 from Apple Chestnut
        Street, 415-848-4445. She has the service confirmation, which she received at
        tabas4@aol.com from "donotreply@email.apple.com. At that time, the prior computer
        was out of warranty (the information she has does not identify whether that prior
        computer was the MacBook Pro i5); Apple provided a data transfer (item no.
        S1768LL/A) for $0.00.

85.     The Apple Store Quotation (SC100000006723094302), received at tabas4@aol.com,
        from aos_sales_quotes@email.apple.com, November 6, 2021 at 12:19 pm, identified,
        among other products:

(1) 14-inch MacBook Pro – Space Gray, priced at $1,849.00 ($154.08/month). The

Configuration was identified below:

- Apple M1 Pro with 8-core CPU, 14-core GPU, 16-core Neural Engine
- 16GB unified memory
- 512GB SSD storage
- Three Thunderbolt 4 ports, HDMI port, SDXC card slot, Mag Safe 3 port
- 14-inch Liquid Retina XDR display
- Backlit Magic Keyboard with Touch ID – US English
- Accessory Kit

(1) 14-inch MacBook Pro – Space Gray, priced at $1,849.00 (price after trade-in re received,

$1,549.00) ($129.08/month). The Configuration was identified below:

- Apple M1 Pro with 8-core CPU, 14-core GPU, 16-core Neural Engine
- 16GB unified memory
- 67W USB-C Power Adapter
- 512GB SSD storage

THIRD AMENDED COMPLAINT [CLASS ACTION] - 27

- Three Thunderbolt 4 ports, HDMI port, SDXC card slot, Mag Safe 3 port
- 14-inch Liquid Retina XDR display
- Backlit Magic Keyboard with Touch ID – US English
- Accessory Kit

86.     On November 6, 2021, Ms. Tabas ordered more products from the Apple Store, this time

online.

87.     The Apple Store Quotation (SC1000000067244147705) received at tabas4@aol.com,

from aos_sales_quotes@email.apple.com, November 6, 2021 at 12:28 pm, identified

these computer products:

(1) 14-inch MacBook Pro – Space Gray, priced at $1,849.00 ($154.08/month). The

Configuration was identified below:

- Apple M1 Pro with 8-core CPU, 14-core GPU, 16-core Neural Engine
- 16GB unified memory
- 512GB SSD storage
- Three Thunderbolt 4 ports, HDMI port, SDXC card slot, Mag Safe 3 port
- 14-inch Liquid Retina XDR display
- Backlit Magic Keyboard with Touch ID – US English
- Accessory Kit

(1) 14-inch MacBook Pro – Space Gray, priced at $1,849.00 (price after trade-in re received,

$1,549.00) ($129.08/month). The Configuration was identified below:

- Apple M1 Pro with 8-core CPU, 14-core GPU, 16-core Neural Engine
- 16GB unified memory
- 67W USB-C Power Adapter
- 512GB SSD storage
- Three Thunderbolt 4 ports, HDMI port, SDXC card slot, Mag Safe 3 port
- 14-inch Liquid Retina XDR display
- Backlit Magic Keyboard with Touch ID – US English
- Accessory Kit

THIRD AMENDED COMPLAINT [CLASS ACTION] - 28

88.   A trade-in device was identified. That device was a MacBook Pro i5 2.8GHz 13" (Mid 2014) 512GB SSD with an estimated refund of $300.00.

89.   The device that Connie Tabas traded in was identified as a MacBook Pro i5 2.8GHz 13" (Mid 2014) 512GB SSD with an estimated refund of $300.00.

90.   On November 7, 2021, Ms. Tabas picked up the two computers from Apple Union Square (300 Post Street, San Francisco, CA 94108), unionsquaresf@apple.com, 415-486-4800, www.apple.com/retail/unionsquare/. Web Order No. W86959715: MBP 14.2 SG/8C/14C GPU/512G-USA, Part No. MKGP3LL/A, Serial No. P7L22JN9R4, at $1,849.00 (tax of $159.48) & MBP 14.2 5G/8C CPU/14C GPU/512G-USA, Part No. MKGP3LL/A, Serial No. P4T6MN64MT, at $1,849.00 (tax of $159.48).

91.   Ms. Tabas has asked Apple to help her identify the Apple product she owned when she created her Apple ID and nobody with whom she has spoken has been able to tell her that, saying that records do not go that far back. The Apple Store app does not identify earlier products purchased, nor is the 800 number able to help.

92.   Ms. Tabas first went to Apple.com and looked under Orders but that offered no help.

93.   She then searched under her aol account (tabas4@aol.com) for the word Apple and reviewed every email that she received from Apple. She was able to obtain the invoice for her current iMac and her daughter, Jackie's, current laptops (2021), but attempting to go further back was more of a challenge and ultimately fruitless. Because at least one earlier computer was purchased by Eric Tabas, Connie's husband, with whom she shares the tabas4@aol.com email, using a discount provided to UCSF (at which he is a physician), Mr. Tabas searched the email accounts associated with UCSF for the words "computer" and "ucsf" and "Apple" but to no avail. He then contacted by phone Apple

THIRD AMENDED COMPLAINT [CLASS ACTION] - 29

computer at 1-800-myapple and they attempted to research under the shared email address, and name but that too came up with nothing. With the serial number of a current computer purchased at Apple Chestnut, that particular store was to find the receipt for that computer only (already found, as explained above). Perhaps if the Tabases still had the serial number for the prior computers they might have been able to find the computer receipt at that store, but they no longer have either the computers or the serial numbers.

94.   The foregoing information is the only computer product information Ms. Tabas has been able to locate.

95.   At no time does Ms. Tabas recall any mention by Apple of the iCloud service at or around the time of her purchase of a computer. She relied upon the product description available near the computers in the store that identified what Apple had built into the computer such as power, memory, screen and ports. The documents she has found supporting her purchase confirm that these were the details advertised in written form near the computer and that iCloud was not mentioned, as well as her recollection to that effect.

96.   Ms. Tabas expects her receipts to indicate the cost she has paid for a product and for it to indicate any future cost involved. Hers don't indicate either the presence of iCloud or the eventual escalating cost of that service. She has a lot of experience shopping for and purchasing Apple products and would have expected iCloud to be featured (or at least explained) in the context of computer purchases, whether online or in the stores. Posters and product information festoon the Apple stores. The website indicates various services available for the Apple ecosystem, with links to obtain more information. She does not recall seeing anything regarding iCloud in connection with a computer purchase.

THIRD AMENDED COMPLAINT [CLASS ACTION] - 30

97.   Ms. Tabas would have acted differently if Apple had made her aware of iCloud and its increasing service cost. She bought Apple computers for the computers, not for the storage of her data. If Apple had disclosed the nature of iCloud, Ms. Tabas would have considered alternative forms of storage so she would not become dependent upon Apple for that purpose.

98.   It would have been an easy matter for Apple to indicate on the Apple Store quotation that iCloud was prepackaged. It would have been an easy matter for Apple to indicate on the invoice or in advertising, whether online or in-store, that the computer came with iCloud installed. Links could have been provided in the online setting to provide further detail, including what the service is, how it is installed automatically upon a consumer's creation of an Apple ID, how it runs in the background saving data without any notice, and that at the point that 5GB of data is stored, Apple will offer a choice of paying for more storage or of reducing data and explain how to do so (i.e., how to keep the data the consumer wants to keep and discard the rest).

99.   Ms. Tabas first recalls learning about iCloud when she received the email asking if she wanted to pay for more storage. That was on or about July 24, 2016, when she received an email at tabas4@gmail.com from noreply@email.apple.com at 6:11 pm stating "Your iCloud storage is full" and asking if she wanted to upgrade to 50 GB for $0.99/month. The choice to "upgrade" was provided by two separate links, one in blue. There was no link to "reduce the amount of storage you are using," which was the only alternative.

100.  Ms. Tabas understood that her documents were no longer backing up at that time. That did not concern her, nor did the imminent loss of access to her iCloud email account. She uses another one. Rather, she feared the loss of what had been stored without her

knowledge up to that point. Faced with having to review her entire database to see what had been stored, and without any instructions as to how to do that, the choice that Apple provided to "reduce the amount of storage [she had been] using" was illusory. Apple had chosen to provide no less than two links assisting her upgrade and pay them, but no help at all to reduce storage and keep the promised free 5 GB build into the computer.

101.   Ms. Tabas paid. On July 25, 2016, by Order Id: MMHWKJ9BZM, Document No. 202132516067, she enrolled in iCloud+ with 50 GB of Storage, at $0.99, monthly renewal. That invoice too did not provide any indication of how to reduce her storage and save some of the data Apple had been storing.

102.   As of September 24, 2018, Ms. Tabas had purchased 200 GB of storage for $2.99 a month. She located a receipt referencing the 200 GB data level that date. And she located an invoice dated October 24, 2018 providing the price, Order No. MMJZ9H5YY8, Doc. No. 180233268549.

103.   The foregoing is the only iCloud information Ms. Tabas has been able to locate in her email accounts and through Apple's website.

104.   Before choosing to purchase each storage level upgrade, Ms. Tabas has tried to manage her account, achieved a modicum of success, only to lose that in short order and chose to purchase the successive level. At this time, she does not recall specifically what steps she took when, but the steps leading nowhere identified above are familiar to her and among the steps she tried. She has felt compelled to pay as Apple tells her.

**Jacqueline Tabas**

105.   Jacqueline Tabas, a California resident, has the following Apple ID: jackietabas@gmail.com.

THIRD AMENDED COMPLAINT [CLASS ACTION] - 32

106.   Ms. Tabas first used a 2008 laptop, purchased at the Apple Store location Apple Chestnut in San Francisco.

107.   Ms. Tabas has been unable to find an invoice for that product, either via the Apple Store app or by speaking with an Apple representative at the 800 number. (The Apple Store app does reflect computer purchases in 2014 and 2020.) The agent at the 800 number told her to call the Chestnut Street location, which in turn told her to contact the sales team at the 800 number. While the store could identify the 2014 purchase, and saw a purchase in 2008, but Apple required her to provide the credit card number she had used to make that 2008 purchase. Thinking that the credit card number was the same as the one she had recently used, she provided that, but then the store manager said that records just went back 10 years so it could not be provided to her. (Another manager later told her it was just 3 years.)

108.   The Apple Store app indicated to Ms. Tabas that there are the following Apple computer products associated with Ms. Tabas' Apple ID:

- iPhone (21) / iPhone 11 Pro 64 GB Gold
- Connie's MacBook Pro / 14-inch MacBook Pro – Space Gray
- Jacqueline Tabas' MacBook (14063) / 13.3-inch MacBook Pro 2.8GHz Dual-core Intel i5 with Retina Display
- Jacqueline Tabas' MacBook (14063) / 14-inch MacBook Pro – Space Gray
- Jacqueline Tabas's iPhone / iPhone 5c 32GB Pink (GSM)
- iMac / Refurbishes 21/4-inch iMac 3.0GHz quad-core Intel Core i5 with Retina 4K display

109.   The foregoing information is the only computerproduct information Ms. Tabas has been able to locate.

110.   At no time does Ms. Tabas recall any mention by Apple of the iCloud service at or around the time of her purchase of a computer. She relied upon the product description

available near the computers in the store that identified what Apple had built into the computer such as power, memory, screen and ports. The documents she has found supporting her purchase confirm that these were the details advertised in written form near the computer and that iCloud was not mentioned, as well as her recollection to that effect.

111.   Ms. Tabas expects her receipts to indicate the cost she has paid for a product and for it to indicate any future cost involved. Hers don't indicate either the presence of iCloud or the eventual escalating cost of that service. She has a lot of experience shopping for and purchasing Apple products and would have expected iCloud to be featured (or at least explained) in the context of computer purchases, whether online or in the stores. Posters and product information festoon the Apple stores. The website indicates various services available for the Apple ecosystem, with links to obtain more information. She does not recall seeing anything regarding iCloud in connection with a computer purchase.

112.   Ms. Tabas would have acted differently if Apple had made her aware of iCloud and its increasing service cost. She bought Apple computers for the computers, not for the storage of her data. If Apple had disclosed the nature of iCloud, Ms. Tabas would have considered alternative forms of storage so she would not become dependent upon Apple for that purpose.

113.   It would have been an easy matter for Apple to indicate on the Apple Store quotation that iCloud was prepackaged. It would have been an easy matter for Apple to indicate on the invoice or in advertising, whether online or in-store, that the computer came with iCloud installed. Links could have been provided in the online setting to provide further detail, including what the service is, how it is installed automatically upon a consumer's creation

THIRD AMENDED COMPLAINT [CLASS ACTION] - 34

of an Apple ID, how it runs in the background saving data without any notice, and that at the point that 5GB of data is stored, Apple will offer a choice of paying for more storage or of reducing data and explain how to do so (i.e., how to keep the data the consumer wants to keep and discard the rest).

114.   Ms. Tabas first recalls learning about iCloud when she received the email asking if she wanted to pay for more storage. That would have been in late 2016.

115.   Ms. Tabas has not been able to figure out how to reduce her storage so as to stay either at the free 5GB level or at any successive level. At this time, she does not recall specifically what steps she took when, but the steps leading nowhere identified above are familiar to her and among the steps she tried. She has simply paid as needed – she figures she's just stuck in Apple's net and having begun to use iCloud, forever stuck with the system and its increasing price.

116.   Ms. Tabas made her first iCloud purchase on October 30, 2016, Order No. MT313W0Y95, Doc. No. 216140661475, for iCloud+ with 50 GB of Storage at $0.99/month. She was still at that level as of September 30, 2017, Order Id. MT3DLV7G75, Doc. No. 207177899734. As of October 10, 2017, she was paying for iCloud+ with 2 TB of Storage at $9.33, Order Id. MT3F1N1DS8, Doc. No. 148178910243. That was $9.99/month as of November 10, 2017, Order Id. MT3GGHF6JQ, Doc. No. 202183340435.

117.   The foregoing is the only iCloud information Ms. Tabas has been able to locate in her email account and through the "reportaproblem.apple.com" site that tracks software purchases.

**Tristan Young**

THIRD AMENDED COMPLAINT [CLASS ACTION] - 35

118.   Tristan Young is currently an Arizona resident but formerly a Georgia and Colorado resident. Her Apple ID is: tristanyoung00@gmail.com. Her iCloud email address is: tristanmarae@icloud.com , which was a prior Apple ID.

119.   Ms. Young purchased a MacBook purchased 5/12/12 at the Apple Store, Flatirons Crossing Mall, Broomfield CO. It is a late 2011 MacBook Pro, 17-inch., with a 2.4 GHz Intel Core i7 processor, Memory of 4 GB 1333 MHz DDR3, Startup Disk: Macintosh HD, Graphics: Intel HD Graphics 3000 384 MB, Serial No. C02H23T4DV11. She still uses it.

120.   Ms. Young has owned a number of iPhones and one iPad, purchased at T Mobile in Phoenix AZ. She gave away the iPad in 2014. Her current iPhone is iPhone XR, Model No. NT322LL/A, Serial no: GQRGR00VKXKQ. Because the iPad and possibly one or more of the iPhones were purchased from TMobile, she called them to find out her purchase history, and they said the only information they had concerned her current iPhone. The other possibility was Verizon; she called them too, but nothing.

121.   Because the MacBook was the first Apple computer Ms. Young purchased after the iCloud was introduced in late 2011, Ms. Young believes this is the computer on which iCloud was pre-installed, on which she created her iCloud email address, and on which iCloud was activated. (Her Apple ID may have been created earlier, in connection with an iPhone.)

122.   The foregoing information is the only computer product information Ms. Young has been able to locate.

123.   Ms. Young does not recall any mention by Apple of the iCloud service at or around the time of her purchase of her MacBook or any computer. She relied upon the product

THIRD AMENDED COMPLAINT [CLASS ACTION] - 36

description available near the computers in the store that identified what Apple had built into the computer such as power, memory, screen and ports. The documents she has found supporting her purchase confirm that these were the details advertised in written form near the computer purchased and that iCloud was not mentioned, as well as her recollection to that effect.

124.   Ms. Young expects her receipts to indicate the cost she has paid for a product and for it to indicate any future cost involved. Hers don't indicate either the presence of iCloud or the eventual escalating cost of that service. She has a lot of experience shopping for and purchasing Apple products and would have expected iCloud to be featured (or at least explained) in the context of computer purchases, whether online or in the stores. Posters and product information are ubiquitous in the Apple stores. The website indicates various services available for the Apple ecosystem, with links to obtain more information. She does not recall seeing anything regarding iCloud in connection with a computer purchase.

125.   Ms. Young would have acted differently if Apple had made her aware of iCloud and its increasing service cost. She bought Apple computers for the computers, not for the storage of her data. If Apple had disclosed the nature of iCloud, Ms. Young would have considered alternative forms of storage so she would not become dependent upon Apple for that purpose.

126.   It would have been an easy matter for Apple to indicate in its in-store computer advertisements that iCloud was prepackaged. It would have been an easy matter for Apple to indicate on the invoice that the computer purchased came with iCloud installed, what the service is, how it is installed automatically upon a consumer's creation of an Apple ID, how it runs in the background saving data without any notice, and that at the

point that 5GB of data is stored, Apple will offer a choice of paying for more storage or of downgrading, with the necessarily included explanation of how to do so while keeping the data the consumer wants to keep.

127.  Ms. Young first recalls learning about iCloud when she received the "iCloud warning email" advising her she was approaching the 5 GB limit of iCloud. The only such email she can locate in her email accounts is dated September 19, 2014, advising her that she was using 4.8 GB of the 5 GB. (See image in paragraph 38, above.)

128.  Ms. Young did not feel Apple gave her any real choice as to whether to continue using iCloud, which required paying something, and reducing the amount of the storage that had inadvertently accumulated in iCloud.

129.  In particular, Ms. Young remembers that she could not figure out how to stay within the 50 GB level she had paid for and having had previous trouble keeping her data with the 5 GB level, simply chose to pay for the 2 TB level to minimize the risk of having the problem again. She did this on March 25, 2020, Order Id. MLXYQDSX5M, Document No. 16330919627

130.  Ms. Young began to pay and continues to do so. Her data accumulation means that she presently pays $9.99/month for 2 TB of storage.

131.  The foregoing information is the only iCloud information Ms. Young has been able to locate.

**Robert Barker**

132.  Robert Barker is a California resident. His Apple ID is: robertbarkercnmt@gmail.com, which is his email.

133.   Mr. Barker has looked at his phone and at the Apple.com website extensively for his device purchase history. He purchased a MacBook Air (13"), Serial No. C02WJP2RJ1WK, at BestBuy in San Rafael California 5/21/18. (He purchased his first iPad earlier, in 2011, at the Missoula Montana Best Buy and believes that his Apple ID was activated at that time. The serial number of his current iPad is GG7FFFDNQ1GC.) Mr. Barker has also owned a number of iPhones, the most recent is serial number FD2YN2TEJCLY.

134.   Mr. Barker has asked Apple (800 number) to help him identify the earliest Apple product he purchased; at that time he learned that Apple does not have records to provide to consumers that are more than 3 years old.

135.   The foregoing information is the only computer product information Mr. Barker has been able to locate.

136.   Mr. Barker does not recall any mention by Apple of the iCloud service at or around the time of his purchase of a computer. He relied upon the product description available near the computers in the store that identified what Apple had built into the computer such as power, memory, screen and ports. The documents he has found supporting his purchase confirm that these were the details advertised in written form near the computer purchased and that iCloud was not mentioned, as well as his recollection to that effect.

137.   Mr. Barker expects his receipts to indicate the cost he has paid for a product and for it to indicate any future cost involved. His don't indicate either the presence of iCloud or the eventual escalating cost of that service. He has a lot of experience shopping for and purchasing Apple products and would have expected iCloud to be featured (or at least explained) in the context of computer purchases, whether online or in the stores. Posters

and product information are ubiquitous in the Apple stores. The website indicates various services available for the Apple ecosystem, with links to obtain more information. He does not recall seeing anything regarding iCloud in connection with a computer purchase.

138. Mr. Barker would have acted differently if Apple had made him aware of iCloud and its increasing service cost. He bought Apple computers for the computers, not for the storage of her data. If Apple had disclosed the nature of iCloud, Mr. Barker would have considered alternative forms of storage so he would not become dependent upon Apple for that purpose.

139. It would have been an easy matter for Apple to indicate in its in-store computer advertisements that iCloud was prepackaged. It would have been an easy matter for Apple to indicate on the invoice that the computer purchased came with iCloud installed, what the service is, how it is installed automatically upon a consumer's creation of an Apple ID, how it runs in the background saving data without any notice, and that at the point that 5GB of data is stored, Apple will offer a choice of paying for more storage or of downgrading or canceling, and explain how to do so while keeping the data the consumer wants to keep.

140. Mr. Barker first recalls learning about iCloud when he received the "iCloud warning email" advising him he was approaching the 5 GB limit of iCloud. He regularly deletes his emails, so he can only find one such email now, that dated July 13, 2020 stating he has 270.9 MB remaining. He is still under the 5 GB limit and is still receiving the occasional "iCloud warning email."

141. The foregoing information is the only iCloud information Mr. Barker has been able to locate.

THIRD AMENDED COMPLAINT [CLASS ACTION] - 40

142. Mr. Barker has tried to remove data from his phone so as to be sure to stay within the 5 GB limit and even spoken with Apple support about the matter but regardless of the advice regularly buts up against the 5 GB limit and expects simply to have to bite the bullet and pay for the next level if he wants to keep iCloud.

**All Plaintiffs**

143. Each of these Plaintiffs has acquired the iCloud service in accord with the factual allegations above. Each purchased Apple computers in which iCloud was pre-installed and for which each received no notice. Each received the "iCloud warning email" and the successive "iCloud purchase email."

144. Each of these Plaintiffs would have preferred to reduce their data or downgrade their iCloud service as Apple has represented they could.

145. None was able to do so.

146. None of these Plaintiffs would have chosen iCloud if they had known they could not reduce their data storage so as to remain within iCloud's free 5 GB level and that it would lead to significant and increasing costs. Each would have looked for a different product or service for data storage and could easily have chosen a cheaper manner of storing their data. Each would do so still.

147. Apple's representations of what services it included with its computer purchased by Plaintiffs and its omissions regarding iCloud specifically were substantial material factors in Plaintiffs' inadvertent acquisition and activation of the iCloud service.

148. Apple's representations that consumers could reduce dying or downgrade from a paid iCloud level of storage back to the free 5 GB level of storage, and thwarting its

THIRD AMENDED COMPLAINT [CLASS ACTION] - 41

consumers from doing just that, were substantial material factors in Plaintiffs' agreement to begin to pay for the iCloud service and their continued (and increasing) payments.

149. Had iCloud been accurately advertised, it would have been presented as a standalone option, separately priced. Because any consumer turning on an Apple product activates iCloud, it is necessarily the case that the revenue and/or profit that Apple stands to make from iCloud is necessarily incorporated, in part, into the price of the computers purchased by Plaintiffs.

150. Were Apple to honestly advertise how iCloud presently actually allow its consumers to reduce their storage/downgrade, the likely result would be that the vast majority of Apple consumers would choose to manage their data in a fashion to stay within the free 5 GB of storage Apple offered and not feel compelled to pay for storing data that inadvertently accumulated, and to the extent they needed more storage pay a minimal amount for a thumb drive or stand-alone hard drive.

151. Were Apple to honestly advertise how iCloud presently works and how to reduce storage/downgrade, the likely result would be that the vast majority of Apple consumers who chose initially to pay for storage would have reduced storage/downgraded to the free 5 GB level. They too, to the extent they needed more storage, would pay a minimal amount for a thumb drive or stand-alone hard drive.

152. The consequence of far fewer consumers paying for the iCloud service would necessarily have led to a lower cost of the particular computer product hosting the iCloud service that each of the Plaintiffs purchased.

153. It would be easy for Apple to advertise, in the context of the computers it sells, what iCloud is, that it begins as a free service and that it continues as a paid service unless

consumers opt to reduce data. It would be easy for Apple to provide to each consumer who is approaching their 5 GB data limit a link describing how a consumer can accomplish the promised "reduce data" option – just as it has provided (twice) links to "upgrade" in its "iCloud warning email." It would be easy for Apple to provide to each consumer who has purchased each level of iCloud service a link in the "iCloud purchase email" named "reduce data" which (unlike the "downgrade" post-purchase option) focuses exclusively on cancellation and the implicit loss of all stored data.

154.   Doing any or all of this is a far less burdensome to Apple than the system Apple has created is burdensome on its consumers.

## Venue

155.   Under the iCloud Legal Agreement, both Apple and all of its U.S. consumers of the iCloud service "agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Santa Clara, California, to resolve any dispute or claim arising from this Agreement" (Section X.B.). *See also* Cal. Civ. Proc. Code § 395.5.

156.   Apple has removed this action to federal court.

## California Law Applies Nationwide

157.   Under the iCloud Terms and Conditions agreement, both Apple and all of its U.S. consumers of the iCloud service agree that "this Agreement and the relationship between you and Apple shall be governed by the laws of the State of California."

## CAUSES OF ACTION

## First Cause of Action: CLRA Misrepresentation

158.   Plaintiffs reallege paragraphs 1-157 above and incorporate them here.

Sale of computers

THIRD AMENDED COMPLAINT [CLASS ACTION] - 43

159.  Apple sold computers to Plaintiffs, each of which contained the iCloud service.

160.  Apple did not advertise, either to Plaintiffs or generally, that iCloud was pre-installed in the computer they purchased. Apple did, however, advertise other product features that were pre-installed as well as services that Plaintiffs could elect to purchase.

161.  Apple had a duty to disclose the existence and terms of iCloud.

162.  This omission was material, in that each of Plaintiffs would have wanted to know this information and upon knowing it would have acted differently, exploring non-Apple and non-cloud-based methods of storing data. (They purchased the computer, not its cloud-based storage.)

163.  The omission was central to the function of the service, in that the service is a continually accumulating data storage service where the consumer purportedly has choice over how much to use and for what purpose.

164.  The existence of iCloud was affirmatively concealed by Apple through its choice to not advertise a free service that was built into the computer and only mentioning its existence and ultimate cost structure deep in its Legal Agreement. Apple's reference to an iCloud email account at or about the time the consumer purchases the computer is similarly an intentional sleight of hand, in that it suggests to the reasonable consumer that iCloud is a proprietary email account, not a data storage service with strings attached. (And to the extent it is important when, precisely iCloud was turned on in association with a consumer's Apple ID, that knowledge is within the exclusive control of Apple itself, as the consumer gets no notice that iCloud is up and running but only when storage in iCloud reaches the 5 GB level.)

165.    A consumer has no reason to look at the Legal Agreement to see what has been purchased; that should appear in advertising that surrounds the product purchased, on the product order form, and at the very least on the purchase invoice.

166.    Apple did not disclose that upon Plaintiffs registering (or entering) their Apple ID, the iCloud service would begin to automatically store Plaintiffs' data in iCloud.

167.    Apple did not disclose that iCloud would regularly and continually save Plaintiffs' data and that it would accumulate.

168.    Apple did not disclose at the time Plaintiffs purchased their Apple computers, whether by way of invoice or welcome email, that Plaintiffs were expected to reach the 5 GB amount of storage, and that shortly before that point, Apple would tell Plaintiffs that in order to continue using the computer as had been used, Plaintiffs would either need to begin to pay for iCloud or figure out how to reduce storage.

169.    Because Plaintiffs lacked meaningful information about the costs associated with the built-in iCloud, Plaintiffs purchased their computer products independent of their concerns about data storage. Had they been made aware, they would have acted differently, exploring non-Apple and non-cloud-based methods of storing data. (They purchased the computer, not its cloud-based storage.)

170.    On information and belief, every computer purchased with iCloud built into it was sold by Apple and purchased by consumers at a premium, incorporating the projected revenue Apple expected to gain from its consumers over time.

        Sale of iCloud

171.    Apple only disclosed that Plaintiffs were expected to reach the 5 GB amount of storage shortly before that point, and at that time Apple told Plaintiffs by email that in order to

continue using the computer as they had been using it, Plaintiffs would either need to begin to pay for iCloud (something that could be easily accomplished by clicking on one of two links) or figure out on their own how to reduce storage (no link or instructions provided). This is the "iCloud warning email."

172.   Because Plaintiffs could not understand how to reduce storage back to the free 5 GB level (or otherwise), as Apple represented they could in this "iCloud warning email," Plaintiffs chose to pay for the iCloud storage service (and each successive service level paid for) and are resigned to having to do so in the near future. (Barker has not yet paid but has been receiving "iCloud warning emails" and is resigned to having to lose access to iCloud soon.)

173.   Because Plaintiffs could not understand how to reduce storage back to the free 5 GB level (or otherwise), as Apple represented they could in their "iCloud purchase email," having chosen to pay for iCloud, Plaintiffs have continued to pay for the iCloud storage service and are resigned to having to do so in the near future. (Barker has not yet paid , so this allegation does not apply to him.)

174.   Because Apple represented that its computers (at time of sale) and its iCloud service (right before the time of sale) had characteristics that they did not have, because Apple represented its computers and its iCloud service with intent not to sell it as advertised, and because Apple represented that the transactions by which it signed consumers up for iCloud subscriptions conferred or involved rights, [and/or] remedies … that it did not have or involve," Apple violated the CLRA in committing acts that are illegal under Civil Code 1770(a)(5), (9) and (14) respectively.

175. Plaintiffs designate the County of Santa Clara, a county in which Apple "is doing business" under California Civil Code § 1780(d). *See* Declarations stating these facts, attached to this Complaint as Exhibit 1.

176. More than 30 days prior to the commencement of this action, on November 14, 2018, the undersigned counsel wrote, by certified mail, return receipt requested, to Apple at One Apple Park Way in Cupertino, California, 95014, demanding that Apple correct, repair, replace or otherwise rectify the goods or services in violation of unlawful practices detailed by CLRA section 1770. *See* Exhibit 2 hereto. Apple responded by way of counsel on January 9, 2019. By that letter, Apple did not communicate any appropriate correction, repair, replacement, or other remedy of the matters identified in the letter and now set forth in this complaint, or agreed to make such response within a reasonable time. Following considerable additional work and investigation, the undersigned counsel has decided to proceed with this action. *See id*.

177. Any consumer who has paid for an Apple computer and, separately, any consumer who is paying any fee for the iCloud service (beyond the free 5 GB storage rate) has lost money as a result of Apple's conduct and so has suffered injury in fact.

178. Any consumer subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/month for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to reduce storage.

179. Any such consumer is entitled under the CLRA to, among other relief, actual monetary damages, restitution, punitive damages, an injunction, and recovery of attorney's fees and may pursue relief as a class action.

1

## Second Cause of Action: UCL Unfairness

2   180.   Plaintiffs reallege paragraphs 1-179 above and incorporate them here.

3
4   181.   This is not a claim for fraud, but rather a claim for unfair conduct under the UCL.

5   182.   Apple's conduct described herein, is oppressive, unscrupulous, and substantially

6           injurious.

7   183.   To affirmatively conceal, as with a Trojan Horse, a program that is running without a

8           consumer's knowledge in the background and which will at a certain defined point

9
10          prompt the consumer to pay to continue the service the consumer is now accustomed to

11          and (it may not be too much to say, addicted to) is oppressive and unscrupulous

12          regardless of any utility the consumer may gain in Apple's view. Apple should disclose

13          what a consumer is purchasing.

14  184.   Separately, Apple should disclose what service a consumer is likely to become obliged to

15
16          purchase to keep the product the consumer has purchased in the same working order as it

17          was upon its initial purchase.

18  185.   The ability of Apple to disclose the iCloud service cannot be doubted. It advertises many

19
20          products and services in its stores and on its website. It could disclose iCloud on the

21          purchase order and on the invoice. The costs of doing so pale in comparison to the benefit

22          gained by consumers. Why Apple made the choice is clearly alleged: active suppression

23          during the Apple computer purchase leads to continuing iCloud customers and revenue.

24  186.   The cost/benefit inquiry is the same when Apple first discloses and confirms the purchase

25          of iCloud. While in its "iCloud warning emails" it provides a link to "upgrade" – two, in

26          fact, one in blue font -- Apple provides no link and no explanation about how to "reduce

27          storage." More, in the "iCloud purchase emails," Apple changes the name from "reduce

28
THIRD AMENDED COMPLAINT [CLASS ACTION] - 48

storage" to "downgrade," doubling down on the presentation to consumers that their only choice to avoid paying a fee is to choose to lose all their data and start over.

187. The costs of inserting a "how to reduce storage" link, and/or making sure that the link (whether ultimately called "downgrade" or not, explains how to pick and choose among the data to be saved pale in comparison to the injury to consumers, who are not provided the promised choice.

188. Each of the Plaintiffs would have wanted to explore meaningfully the promised "reduce storage" option so as to try to maintain the promised built-in free 5 GB level. If, having done so, they learned that they needed more, they could have made the choice to pay. Each of the Plaintiffs believes, and on that basis each alleges, that they have never wanted to store data on in excess of the 5 GB level on iCloud. Had they wanted to store data at a GB level beyond the 5 GB level, they would have compared options, both hardware and cloud options) before choosing freely to pay Apple.

189. The foregoing conduct is unfair under section 17200 of the California Business and Professions Code.

190. Each plaintiff who owns an Apple computer with iCloud built in and/or has subscribed to iCloud has paid more than they bargained for, has lost money as a result of Apple's unfair competition, and thus has suffered injury in fact under section 17204.

191. Any plaintiff subscribing to iCloud has an imminent risk of using up their particular amount of storage (whether the free 5 GB, the $0.99/mo. for 50 GB or otherwise) and being presented with either having to pay an increasing amount of money for the next highest level or taking affirmative steps to downgrade.

192.   Any such plaintiff is entitled to declaratory relief that Apple's conduct is illegal, injunctive relief, at least nominal damages in compensation, and restitution under California Business and Professions Code section 17203 and may pursue representative claims or relief on behalf of others because these consumers meet the standing requirements of section 17204 and comply with section 382 of the California Code of Civil Procedure.

### Third Cause of Action: Contract Breach

193.   Plaintiffs reallege paragraphs 1-192 above and incorporate them here.

194.   This is neither a fraud claim nor a claim that Apple's conduct is unfair.

195.   Apple's Legal Agreement is an offer to Plaintiffs that upon paying for iCloud storage, each could downgrade so as to keep the built-in free 5 GB level of storage.

196.   Apple's provision of links to upgrade in its "iCloud warning emails" makes clear that by failing to provide a link to "reduce storage" Apple has breached its contract.

197.   Apple's provision of a link to "downgrade" in its "iCloud purchase emails" makes clear that by failing to provide a link to "reduce storage" Apple has breached its contract.

198.   Apple's failure to provide a way to save certain data while discarding the rest is an express violation of its promise in its "iCloud warning emails" that consumers may "reduce storage" to avoid upgrading and paying.

199.   Apple only provides a way to delete data and start over, which is not what Plaintiffs believed and is not what any reasonable consumer would believe Apple had promised.

200.   Alternatively, Apple's failure to provide a way to save certain data while discarding the rest is a violation of the covenant of good faith and fair dealing implied in the contract term in its "reduce storage" in its "iCloud warning email" because Apple interferes with its consumers' ability to achieve what Apple has promised.

THIRD AMENDED COMPLAINT [CLASS ACTION] - 50

201. Each Plaintiff has subscribed to iCloud but has not been able to reduce storage as promised and has therefore suffered injury and lost money.

202. Any such plaintiff is entitled to the full panoply of relief for breach of contract, including damages, reformation, and rescission.

## Class Action Allegations

203. **Class definition:** All U.S. consumers who have subscribed to the iCloud service, from 4 years prior to the filing of this complaint to the present.

204. **Subclasses**:

A. All U.S. consumers who have subscribed to the iCloud service and never exceeded the 5 GB level, from 4 years prior to the filing of this complaint to the present.

B. All U.S. consumers who have subscribed to the iCloud service and exceeded the 5 GB level, paying for iCloud service, from 4 years prior to the filing of this complaint to the present.

C. All U.S. consumers who have subscribed to the iCloud service, who relied upon Apple's representations and material omissions regarding iCloud when they made their computer purchases:

   1. Before product purchase;

   2. At the time of signing up for or entering an Apple ID;

   3. At the time of iCloud service activation

D. All U.S. consumers who have subscribed to the iCloud service, who relied upon Apple's representations and material omissions regarding iCloud when they made their iCloud purchases:

      1. When they received Apple's email alerting them that free storage was almost exhausted; or

      2. When they began to pay for the iCloud service storage.

E. All U.S. consumers who have paid for the iCloud service, who upon learning of the iCloud service and its incipient cost:

      1. were dissuaded from reducing data because they:

          a) did not know the policy to reduce data or downgrade;

          b) could not find the policy to reduce data or downgrade;

          c) did not know how to downgrade;

          d) did not know how to copy data in preparation for downgrading; or

      2. tried to downgrade but could not do so; or

      3. succeeded in downgrading but lost data.

F. All U.S. consumers who have subscribed to the iCloud service, who upon learning of the incipient increase from one paying level of iCloud to another:

      1. were dissuaded from reducing data because they:

          e) did not know the policy to reduce data or downgrade;

          f) could not find the policy to reduce data or downgrade;

          g) did not know how to downgrade;

          h) did not know how to copy data in preparation for downgrading; or

      2. tried to downgrade but could not do so; or

      3. succeeded in downgrading but lost data.

G. Other subclasses include:

THIRD AMENDED COMPLAINT [CLASS ACTION] - 52

1. Those who obtained iCloud through the purchase of particular products (e.g., iPhone, iMac);

2. Those who made in-store or online purchase of products;

3. California residents; and

3. Those presently (or at the time) grouped by applicable monthly charges (e.g., $0.99/$2.99/$9.99/other) or annual charges.

205. Numerosity. There are so many potential class members that individual joinder of class members is impractical.

206. Commonality. As is clear from paragraphs 1-190, there are questions of law or fact that apply equally to all subscribers to the iCloud service and are therefore common to class members.

207. Typicality. The claims of the Plaintiffs here, putative class representatives, are typical of those of absent class members.

208. Adequacy of representation. Class counsel is experienced in litigating class actions, and Plaintiffs intend to fairly and adequately protect the interests of absent class members.

**PUBLIC INJUNCTIVE RELIEF AND ATTORNEYS' FEES UNDER CCP 1021.5**

209. Plaintiffs reallege paragraphs 1-196 above and incorporate them here.

210. Plaintiffs are informed, and on that basis alleges that relief addressing the procedures that are the subject of this claim will provide a significant benefit, both pecuniary and nonpecuniary, on the general public; that the necessity for and financial burden of private enforcement are such as to make an award of attorneys' fees appropriate – for how else would an attorney ever go the effort and expense of bringing an action simply focused on requiring Apple to change its policies to comply with the law; and such fees would not be

paid out of any recovery for Plaintiffs, as Plaintiffs to the extent they seek public injunctive relief seek no damages at all.

211.   Accordingly, as demonstrated, an award of attorneys' fees under California Code of Civil Procedure section 1021.5 is appropriate and merited.

### DEMAND FOR RELIEF

212.   WHEREFORE, Plaintiffs prays for judgment against all Defendants that:

a.   Defendants be declared in violation of the aforementioned laws;

b.   Defendants be preliminarily and permanently enjoined from committing the acts alleged herein;

c.   Defendants be ordered to pay Plaintiffs' actual, consequential, incidental and special damages.

d.   Defendants be ordered to provide restitution to Plaintiffs;

e.   Defendants be ordered to pay Plaintiffs' attorneys' fees and costs to the extent available under the statutes sued hereunder, and pursuant to Cal. Code Civ. Proc. section 1021.5;

f.   Plaintiffs be entitled to rescind their contracts;

g.   Plaintiffs be entitled to reform their contracts;

h.   Defendants be ordered to pay statutory damages and/or civil penalties as may be applicable;

i.   Defendants be ordered to pay punitive damages;

j.   Plaintiffs be awarded costs of suit;

k.   Plaintiffs be entitled to pre-judgment (and, if appropriate, post-judgment) interest;

l.   Plaintiffs be awarded such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs respectfully request a jury trial on all issues triable thereby.

Dated this 25th of May, 2023.

/s/ David M. Rosenberg-Wohl
David M. Rosenberg-Wohl
HERSHENSON ROSENBERG-WOHL
A PROFESSIONAL CORPORATION

## DECLARATION OF WILL RUTTER

1. I am Will Rutter.
2. I know the facts in this declaration from my own experience and knowledge and would testify to them if called as a witness.
3. I currently live in Pennsylvania.
4. I grew up in the San Francisco Bay Area.
5. I regularly have used Apple products and received email from Apple Inc., which I understand to be located in Santa Clara County.
6. Due to the fact that Apple Inc.- as evidenced by its advertising generally - has its principal place of business in Cupertino, California, I state on information and belief that Apple Inc. has done and continues to do substantial business in California.

I declare under penalty of perjury under the laws of the United States of American and the State of California that the foregoing is true and correct.

Executed on December 19, 2020

Will Rutter

EXHIBIT 1

DECLARATION OF JACQUELINE TABAS

1.  I am Jacqueline Tabas. I know the facts in this declaration from my own experience and knowledge and would testify to them if called as a witness.

2.  I live in San Francisco, which is situated in the County of San Francisco, State of California. I regularly receive and respond to email in this county. I signed up for my Apple ID, and began using iCloud while living in California.

3.  Due to the fact that Apple Inc. – as evidenced by its advertising generally and its email message to me concerning iCloud – has its principal place of business in Cupertino, California, I state on information and belief that Apple Inc. has done and continues to do substantial business in California.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on October 21, 2018

_____

Jacqueline Tabas

1

EXHIBIT 1

DECLARATION OF CONNIE TABAS

1. I am Connie Tabas. I know the facts in this declaration from my own experience and knowledge and would testify to them if called as a witness.

2. I live in San Francisco, which is situated in the County of San Francisco, State of California. I regularly receive and respond to email in this county. I signed up for my Apple ID, and began using iCloud while living in California.

3. Due to the fact that Apple Inc. – as evidenced by its advertising generally and its email message to me concerning iCloud – has its principal place of business in Cupertino, California, I state on information and belief that Apple Inc. has done and continues to do substantial business in California.


I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.


Executed on October 21, 2018

*Connie Tabas*

Connie Tabas

1

EXHIBIT 1

DECLARATION OF TRISTAN YOUNG

1.   I am  Tristan Young. I know the facts in this declaration from my own experience and

knowledge and would testify to them if called as a witness.

2.   I currently live in Arizona. I regularly receive email from Apple Inc., which I understand to

be located in Santa Clara County.

3.   Due to the fact that Apple Inc. - as evidenced by its advertising generally and its email

message to me concerning iCloud - has its principal place of business in Cupertino,

California, I state on information and belief that Apple Inc. has done and continues to do

substantial business in California.


I declare under penalty of perjury under the laws of the United States of American and the State

of California that the foregoing is true and correct.

Executed on December 6th 2020

DocuSigned by

Tristan Young

Tristan Young

EXHIBIT 1

## DECLARATION OF ROBERT BARKER

1. I am Robert Barker. I know the facts in this declaration from my own experience and
   knowledge and would testify to them if called as a witness.

2. I live in Cobb, which is situated in the County of Lake, State of California. I regularly
   receive and respond to email in this county. I signed up for my Apple ID, and began
   using iCloud while living in California.

3. Due to the fact that Apple Inc. – as evidenced by its advertising generally and its email
   message to me concerning iCloud – has its principal place of business in Cupertino,
   California, I state on information and belief that Apple Inc. has done and continues to do
   substantial business in California.


I declare under penalty of perjury under the laws of the United States of America and
the State of California that the foregoing is true and correct.


Executed on October 26, 2018

Robert Barker

EXHIBIT 1

1

## DECLARATION OF CYNTHIA RUTTER

1. I am Cynthia Rutter. I know the facts in this declaration from my own experience and knowledge and would testify to them if called as a witness.

2. I began using Apple's iCloud product sometime after obtaining my Apple ID.

3. Due to the fact that Apple Inc. – as evidenced by its advertising generally and its email messages to me concerning iCloud – has its principal place of business in Cupertino, California, I state on information and belief that Apple Inc. has done and continues to do substantial business in California, particularly within the county of Santa Clara, and that this is the place where the transaction or a substantial portion of the transaction in which I was provided iCloud took place.

4. I live in Wyoming. Nonetheless, the Apple Terms and Conditions agreement explains that I must bring any action that I have arising out the iCloud product in courts located within the county of Santa Clara County and that this dispute is to be governed by California law.


I declare under penalty of perjury under the laws of the United States of America and the State of Wyoming that the foregoing is true and correct.


Executed on December 20, 2018

*Cynthia Rutter*

Cynthia Rutter

1

EXHIBIT 1

**HERSHENSON
ROSENBERG-WOHL**
A PROFESSIONAL CORPORATION
315 Montgomery St., 8th Fl.
San Francisco, CA 94104
(415) 829-4330

November 14, 2018

Apple Inc.
One Apple Park Wy
Cupertino, CA 95014

*VIA CERTIFIED/REGISTERED MAIL, RETURN RECEIPT REQUESTED*

Re:      <u>Notice under California's CLRA, section 1782</u>

To Whom It May Concern:

This office represents Connie Tabas, Jacqueline Tabas, Kasra Eliasieh, Robert Barker and Tristan Young, on behalf of themselves and others similarly situated ("Plaintiffs"). Plaintiffs are consumers who risk paying, have paid, and continue to pay Defendants on a monthly basis to store documents, photographs and other data through the iCloud product offered by Apple Inc. ("Apple").

No consumer purchases the iCloud product by itself. When a consumer purchases any product or service from Apple, Apple provides the consumer with an Apple ID and a free iCloud product. It is difficult, if not impossible, to choose to have the iCloud product – the choice is made for the consumer by Apple. As stated in the iCloud Terms and Conditions: "iCloud is automatically enabled when you are running devices on iOS 9 or later and sign in with your Apple ID during device setup, unless you are upgrading the device and have previously chosen not to enable iCloud." iCloud remains enabled on all consumer accounts unless turned off. "You can disable iCloud in Settings. When iCloud is enabled, your content will be automatically sent to and stored by Apple, so you can later access that content or have content wirelessly pushed to your other iCloud-enabled devices or computers."

When it provides the consumer the iCloud product, Apple does not tell the consumer what the product is, what it does, and that it is free for only a small amount of data/period of time. Apple first notifies the consumer concerning the possible cost of the iCloud product when the consumer reaches the limit of the 5GB storage that is provided for free. At that point, Apple announces that the consumer may "upgrade" to 50GB for $0.99/month and that if the consumer wants to continue to use the service to back up data s/he must either upgrade and begin to pay of "reduce the amount of storage you are using." There is a link highlighted in blue to "Upgrade" but there is no link, nor even small print, indicating how a consumer might go about reducing storage, so as to continue using the product as provided. Once the consumer agrees to upgrade, the consumer now receives monthly receipts to the email associated with the Apple ID. This receipt indicates the amount of storage (i.e., 50 GB Storage Plan), the term of the plan (i.e., monthly), and the price (i.e., $0.99). The payments are automatically charged to the consumer's credit card associated with the Apple ID.

The consumer is told that Apple will bill the consumer each plan period until the consumer cancels "by downgrading to the free storage plan" but neither provides a link nor explains just how a consumer might do that. Nor does Apple indicate that data presently stored by the consumer on the iCloud product can be preserved if the consumer were to downgrade. Nor does Apple explain what happens in terms of a refund (whether full or partial) if a consumer downgrades in response to the notice. Apple does, however, encourage a consumer to upgrade. It states that Apple will provide a full refund within 15 days of a monthly subscription upgrade (or within 45 days after a yearly payment). While Apple notes that partial refunds are available "where required by law," there is no link allowing a consumer to know if that applies in the consumer's jurisdiction and if so, what that might mean.

EXHIBIT 2

Questions about the bill? Apple directs the consumer to "Official Apple Support," but it is an iTunes page that has nothing clearly to do with iCloud. If the consumer types "iCloud" into the "What can we help you with?" "Search Support" bar, nothing about the "bill" appears. The consumer can further click on either "iCloud Support" or "Manage your iCloud storage." Two other options deal with the iCloud Keychain. Nothing about a bill. iCloud support leads a consumer to "Find my iPhone," "iCloud storage, "iCloud Photos," "iCloud backup" and "iCloud Drive." Again, nothing about a bill.

Questions about how to downgrade? If the consumer clicks "downgrading," Apple directs the consumer to an "iCloud help" page. Nothing about downgrading. If a consumer clicks the large icon that is the focus of the page, nothing happens. If the consumer clicks the small icon on the very left of the screen at the top of a list of icons, entitled "iCloud basics," the consumer sees "What is iCloud?", "Ways to use iCloud," "Set up iCloud," "Use iCloud.com," "Change iCloud feature settings," and "Trouble signing in." Again, nothing about downgrading. (Nor do any of the links, when clicked, actually lead to anything about downgrading.) If a consumer types "downgrading" into the "Search iCloud Help" bar, the answer is "0 results for 'downgrading.'" The same for "downgrade."

In the course of using Apple products, Plaintiffs have involuntarily been signed up to receive iCloud and either have run out of the free iCloud storage and have been presented with the need to pay (at first) $0.99 to upgrade or will be in this situation shortly. Because the price is small and there is no easy alternative explained, Plaintiffs have been or will be compelled to purchase any upgrade or risk losing stored material, becoming locked into the monthly contract. Because Apple provides neither advance notice of the monthly charge nor any way to understand how to withdraw from the monthly cost of the product, Plaintiffs have continued paying for the product. Plaintiffs cannot figure out how to avoid having to pay Apple for this product, whether by keeping/going back to the smaller amount of free storage, or otherwise. iCloud appears to be a cheaper and more intuitive way to save data than alternatives offered by Apple such as Time Machine or external hard drives that require set up and which are offered at a single lump sum that appears far more significant than anything that is likely to be spent on a monthly iCloud product.

The conduct set forth constitutes statements representing that goods or services have characteristics they do not have, advertising goods or services with intent not to sell them as advertised, representing that a transaction confers or involves rights, remedies or obligations that it does not have or involve, and representing that a part or service is needed when it is not, in violation of Cal. Civ. Code §§ 1770(a)(5), (9), (14) and (15), all to the damage of Plaintiffs here.

Plaintiffs are entitled to actual damages, an injunction, restitution, rescission, civil penalties, punitive damages, attorneys' fees, as well as any relief a court deems proper under section 1780(a). Because the conduct described above has caused damage to other consumers similarly situated, Plaintiffs may bring an action for the relief described on behalf of not just themselves but other consumers under section 1781(a). Under section 1782(a)(2), Plaintiffs demand that Apple correct, replace or otherwise rectify the goods/services described above in a way that makes them whole, makes similarly situated consumers whole, and makes sure that no other consumers are subject to this conduct.

Thank you very much.

Very truly yours,

HERSHENSON ROSENBERG-WOHL, a Professional Corporation

By: _____

David M. Rosenberg-Wohl

EXHIBIT 2

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA  94105-2482

TELEPHONE: 415 268 7000
FACSIMILE: 415-268-7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS,
DENVER, HONG KONG, LONDON,
LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI,
SINGAPORE, TOKYO, WASHINGTON, D.C.

January 9, 2019

Writer's Direct Contact
+1 (415) 268.6557
AAmezcua@mofo.com

**CONFIDENTIAL**

*Via U.S. Mail and E-Mail*

David M. Rosenberg-Wohl
Hershenson Rosenberg-Wohl, PC
315 Montgomery St., 8th Fl.
San Francisco, CA 94104
David@hrw-law.com

Re:     *Tabas, et al. v. Apple Inc.*, Response to CLRA Demand Letter

Dear Mr. Rosenberg-Wohl:

This letter responds to your November 14, 2018 letter regarding Connie Tabas, Jacqueline Tabas, Kasra Eliasieh, Robert Barker, and Tristan Young's request for relief based on California's Consumers Legal Remedies Act, California Civil Code Section 1750, *et seq.* ("CLRA").  In the letter, you contend that Apple has violated the CLRA with respect to Apple's alleged statements regarding iCloud storage.  Apple denies that contention.

Your clients cannot plead or prove any violation of the CLRA.  The CLRA requires a prospective claimant to notify the potential defendant "of the particular alleged violations" Cal. Civ. Code § 1782(a)(1), but your letter fails to identify any conduct by Apple that violated the statute.  Your letter does not identify any specific misrepresentation or omission by Apple regarding iCloud, as required for a violation of the CLRA.  Moreover, your contention that it is difficult to downgrade to free iCloud storage or that consumers are not provided with information on how to reduce iCloud storage not only does not establish a violation of the CLRA, it is simply incorrect.  The iCloud Terms & Conditions, which you quote, provide instructions on how to cancel and/or downgrade, and you acknowledge that consumers are offered 5GB of storage for *free*.  Further, information about how to downgrade and manage or reduce storage is readily accessed through Settings on the device itself, as well as by simply typing search terms such as "downgrade iCloud," "manage storage" or "manage iCloud" on the Apple Support website (or, indeed, in Google or on the general Apple.com website itself).  (*See, e.g.,* https://support.apple.com/en-us/HT207594; https://support.apple.com/en-us/HT207689; and https://support.apple.com/en-us/HT204247.)

sf-3976558

EXHIBIT 2

MORRISON | FOERSTER

January 9, 2019
Page Two

There is thus no harm to consumers (and, consequently, no standing for any of your clients), since they can choose not to upgrade to receive additional iCloud storage—and therefore continue to receive 5GB of free storage—and those that have opted for a higher storage amount may cancel or downgrade.  Rather than identifying any CLRA violation, the gravamen of your clients' claims appears to be that they were "compelled" to purchase iCloud storage because "the price is small" and iCloud is a "cheaper and more intuitive way to save data" than any available alternative.  Your letter offers no authority for your clients' apparent claims that Apple violated the CLRA by offering its customers first *free*, then, for a "small" fee, "intuitive" storage, particularly given your admission that iCloud is the least expensive and easiest storage option available.  In short, there was no injury.

If you would like Apple to further assess your clients' claims, please provide us with documentation and details regarding Connie Tabas, Jacqueline Tabas, Kasra Eliasieh, Robert Barker, and Tristan Young's iCloud purchases and any other related iCloud upgrades, monthly fees, or refunds.  If the intent of this letter is to secure a refund for your clients' iCloud purchases or to obtain help for their use of iCloud, let us know.

Finally, because you have indicated that your letter constitutes a notice and demand pursuant to Section 1782(a), this letter serves as Apple's response in accordance with Sections 1782(b), (c), and (e).  Evidence Code Section 1152 protects this response, and nothing in this response is intended as, or constitutes, an admission or a waiver of any of Apple's defenses, rights, or remedies.  This response is confidential and is entitled to all applicable protections of law.  This letter is not intended to comprehensively list all of the reasons your clients' CLRA claims are without merit, and Apple is prepared to vigorously defend against their claims.

If you have any questions regarding the matters set forth in this letter or would like to discuss this issue further, please do not hesitate to contact me.

Sincerely,

Alexis A. Amezcua

cc:   Penelope A. Preovolos, Ashley Nakamura (via e-mail only)

sf-3976558

EXHIBIT 2