1
2
3
4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    WILLIAM RUTTER, et al.,                Case No. 21-cv-04077-HSG

8                    Plaintiffs,            **ORDER GRANTING DEFENDANT'S
                                            MOTION TO DISMISS**
9           v.
                                            Re: Dkt. No. 58
10   APPLE INC.,

11                   Defendant.

12

13          Pending before the Court is Defendant Apple Inc.'s Motion to Dismiss Plaintiffs' Third

14   Amended Complaint.  Dkt. No. 58.  The Court finds this matter appropriate for disposition without

15   oral argument and the matter is deemed submitted.  *See* Civil L.R. 7-1(b).  For the reasons

16   discussed below, the Court **GRANTS** the motion.

17   **I.     BACKGROUND**

18          The Court dismissed Plaintiffs' first amended complaint ("FAC") on May 6, 2022.  Dkt.

19   No. 37 ("MTD FAC Order").[1]  Plaintiffs filed a second amended complaint ("SAC") on May 27,

20   2022, Dkt. No. 38, which the Court dismissed on May 5, 2023.  Dkt. No. 51 ("MTD SAC Order").

21   Plaintiffs filed a third amended complaint ("TAC") on May 25, 2023, bringing claims under the

22   California Consumers Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL"), and

23   alleging breach of contract.  *See generally* Dkt. No. 52 ("TAC").  On June 27, 2023, Defendant

24   moved to dismiss the TAC in its entirety.  Dkt. No. 58 ("Mot.").

25   **II.    LEGAL STANDARD**

26          Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain

27
     _____

28   [1] The parties are familiar with the facts of the case and the Court provided a summary in a prior
     order, see MTD FAC Order at 1–2, so it does not repeat it here.

United States District Court
Northern District of California

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

defendant may move to dismiss a complaint for failing to state a claim upon which relief can be

granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the

complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule

12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible

on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible

when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the

complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless,

courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Federal Rule of Civil Procedure 9(b) heightens these pleading requirements for all claims

that "sound in fraud" or are "grounded in fraud."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125

(9th Cir. 2009) (citation omitted); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must

state with particularity the circumstances constituting fraud or mistake.").  The Ninth Circuit has

interpreted Rule 9(b) to require that allegations of fraud are "specific enough to give defendants

notice of the particular misconduct which is alleged to constitute the fraud charged so that they can

defend against the charge and not just deny that they have done anything wrong."  *Neubronner v.

Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation marks and citation omitted).

In short, a fraud claim must state "the who, what, when, where, and how" of the alleged

conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (internal citations and quotations

omitted), and "set forth an explanation as to why [a] statement or omission complained of was

false and misleading."  *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en

banc) (internal citations and quotations omitted), *superseded by statute on other grounds as stated*

United States District Court
Northern District of California

*in Ronconi v. Larkin*, 252 F.3d 423, 429 & n.6 (9th Cir. 2001). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## III.   DISCUSSION

Defendant's third motion to dismiss Plaintiffs' case will be its last. Because Plaintiffs again fail to state any plausible claim, the Court **GRANTS** Defendant's motion and **DENIES** Plaintiffs any further leave to amend their complaint.

### A.   CLRA and UCL CLAIMS

In their TAC, Plaintiffs advance yet another evolution of CLRA and UCL claims, this time focused on the purported difficulty of reducing stored data. In a nutshell, and generously interpreted, Plaintiffs argument is that Apple misled them with a two-step scheme. Step 1: Offer 5 GB of free data storage as a taste to "addict" Plaintiffs to Apple's data storage service. TAC ¶ 183. Step 2: Make it virtually impossible for users to reduce stored data below the 5 GB limit, necessitating their purchase of paid storage tiers. For the reasons described previously, the Court continues to find that these allegations sound in fraud and are subject to the heightened Rule 9(b) pleading standard. *See* MTD SAC Order at 6. And, as before, the Court finds that Plaintiffs fail to make out a cognizable claim under this standard. *See* MTD FAC Order; MTD SAC Order.

#### i.   The Representations at Issue

To ground its analysis, the Court begins by identifying the representations with which Plaintiffs appear to take issue. To the best of the Court's understanding, Plaintiffs' arguments rest on the following representations made in the iCloud Terms & Conditions (also referred to by Plaintiffs as the "Legal Agreement"), the iCloud Capacity Email, and the iCloud Confirmation Email[2]:

//

//

---

[2] Plaintiffs refer to an "iCloud Warning Email," but since prior orders referred to that communication as the "iCloud Capacity Email," the Court will continue to do so here. Plaintiffs also make allegations concerning the "iCloud Purchase Email," which the Court refers to as the "iCloud Confirmation Email."

United States District Court
Northern District of California

- iCloud Terms and Conditions:

> You can change your subscription by upgrading or downgrading your storage under the iCloud section of Settings on your device, or under the iCloud pane of System Preferences on your Mac or iCloud for Windows on your PC.

*See* Dkt. No. 41-1 ("T&Cs") at 8; TAC ¶ 46.[3]

> **Effects of cancellation**
>
> We will reduce your storage back to 5 GB and reimburse you no later than 14 days from the day on which we receive your cancellation notice. If you have used more than 5GB of storage during this period, you may not be able to create any more iCloud backups or use certain features until you have reduced your storage. We will use the same means of payment as you used for the transaction, and you will not incur any fees for such reimbursement.

*See* T&Cs at 9; TAC ¶ 47.

- iCloud Capacity Email:

> Dear []
>
> **Your iCloud storage is almost full. You have [] MB remaining of 5 GB total storage.**
>
> **Upgrade to 50 GB for $0.99 per month**
>
> Your iCloud storage is used for iCloud Photo Library and to keep the most important things on your iPhone, iPad, and iPod touch safe and available, even if you lose your device. iCloud Drive, and apps like Keynote, Pages, and Numbers also use iCloud storage to keep your files up-to-date everywhere.
>
> To continue to use iCloud and to back up your photos, documents, contacts, and more, you need to **upgrade your iCloud storage plan** or reduce the amount of storage you are using.
>
> The iCloud Team
>
> **Important:** If you exceed your storage plan, new photos and videos will not upload to iCloud Photo Library and your devices will stop backing up to iCloud. iCloud Drive and iCloud-enabled apps will no longer update across your devices.

*See* TAC ¶ 22.  Most relevant to Plaintiffs' complaint is the representation within this email that: "To continue to use iCloud and to back up your photos, documents, contacts, and more, you need to upgrade your iCloud storage plan or **reduce** the amount of storage you are using." (Emphasis added).

---

[3] The Court previously took judicial notice of the iCloud Terms & Conditions at Dkt. No. 41-1. *See* MTD FAC Order at 4–5; *see also* MTD SAC at 4 (taking judicial notice of the same document).

- <u>iCloud Confirmation Email</u>:

*See* TAC ¶ 41.  Most relevant to Plaintiffs' complaint is the representation within this email that: "You will be billed each plan period until you **cancel by downgrading** to the free storage plan from your iOS device, Mac or PC." (Emphasis added.)

### ii.    Analysis

As a preliminary matter, the Court finds that Plaintiffs still have not alleged that they even read and relied on the iCloud T&Cs, which Plaintiffs previously conceded are presented to customers when they create an Apple ID and before they subscribe to iCloud.  *See* FAC ¶¶ 25–26; MTD SAC Order at 15, n. 13.  Plaintiffs' failure to plead reliance on the T&Cs and the representations in them is one the Court previously assessed as "itself warrant[ing] dismissal." MTD SAC Order at 7.  The Court's assessment has not changed, and it accordingly declines to further analyze the representations made in the T&Cs since Plaintiffs have not alleged they ever relied on them.[4]

---

[4] Plaintiffs also argue – again – that Apple should have disclosed the built-in iCloud data service at the time of product purchase because the service "would end up costing each of them a considerable amount of money as each would be forced to pay for data storage they did not ask or

United States District Court
Northern District of California

United States District Court
Northern District of California

1          As for the language in the iCloud Capacity and Confirmation Emails, Plaintiffs simply

2   cannot plausibly explain how the representations in either of these communications were

3   misleading (under the CLRA) or unfair (under the UCL).  Take the iCloud Confirmation Email,

4   which informs a user that "You will be billed each plan period until you cancel by downgrading to

5   the free storage plan from your iOS device, Mac or PC."  Plaintiffs have not alleged that it is not

6   possible to downgrade (i.e. mechanically toggle) to a lower storage plan.  Instead, they have

7   alleged that the ability to downgrade "necessarily implies that consumers can keep what they want

8   of the data previously saved for free and eliminate the rest so as to manage the level they prefer,

9   whether the promised free 5 GB level or paid."  TAC ¶ 42.  But nothing in the documents even

10  plausibly – let alone *necessarily* – implies this.  The Confirmation Email makes no such promise

11  (or *any* promise about data management) and therefore cannot plausibly have misled Plaintiffs into

12  believing that they could manage their data in certain ways that allegedly were not possible.

13          The theory based on the iCloud Capacity Email fares no better.  This email, in relevant

14  part, states that "To continue to use iCloud and to back up your photos, documents, contacts, and

15  more, you need to upgrade your iCloud storage plan or reduce the amount of storage you are

16  using."  Plaintiffs allege that this statement, which holds out "reduc[tion]" of stored data as

17  possible, misleads consumers because reducing stored data is an "illusory" choice.  TAC ¶ 100.

18  They further allege that the lack of "meaningful choice to reduce storage" in turn creates a one-

19

20  _____

21  pay for."  TAC ¶¶ 8–11.  But the Court already rejected this theory.  As the Court previously
    explained and the current allegations do not change, Apple simply had no obligation at the time of
22  device purchase to disclose the future costs for an optional data storage service that a consumer
    might or might not incur, depending on her individual data management preferences.  *See* MTD
23  SAC Order at 7–9.  In this context, a *possible* future expense depending on whether a purchaser
    ultimately activates and uses the service is not a material fact.  The notion that paid storage is
24  somehow an inevitability awaiting every prospective purchaser of an Apple device is not
    supported by either the current allegations (since not even every Plaintiff pays for data storage) or
25  by Plaintiffs' own prior allegations, which averred that only "20% of [Apple] users end up
    paying" for iCloud data storage (as of 2018).  MTD SAC Order at 11, n.10; FAC ¶ 8.  Regardless,
26  the storage service is disclosed in the T&Cs that users agree to before upon subscribing to iCloud,
    undermining the notion that Apple conceals it.  *See* FAC ¶¶ 25-26.  For these and the reasons
27  already detailed in prior orders, the Court again rejects this so-called "iCloud Omission Theory."
    *See* MTD SAC Order at 7–9.
28

way ratchet that unfairly forces users to upgrade to paid tiers.[5]  *Id.* ¶ 49.

To illustrate the notion that Apple makes upgrading tiers easy but reducing stored data difficult, Plaintiffs point to the contrast in the iCloud Capacity Email between the prominent blue, hyperlinked language promoting plan upgrades and the plain text language just informing users that they can reduce their plans.  *Id.* ¶¶ 24–25.  The implication of this contrast is that users are "pressured" to upgrade since Apple gives them clear guidance about how to do so, but leaves them in the dark about the mechanics of reducing their stored data.  But to the extent that Plaintiffs' allegations rest on discontent with the amount of direction and assistance Apple provided them, the Court reiterates its prior observation that Plaintiffs have not identified any representations in which Apple promises to assist users with managing their stored data.  *See, e.g.*, MTD SAC Order at 14, n. 11; *see also* Mot. at 14, 16–17, 18.  This remains true.  Apple's choice not to provide detailed instructions in the email or to otherwise help with data management may be objectionable to Plaintiffs, but based on the representations pled, is not a violation of any legal duty.

To be potentially viable, then, Plaintiffs would need to plausibly allege that aside from just not proactively helping users reduce their stored data, Apple's conduct actually prevented them from doing so.  This is because Apple *does* represent that users can "reduce the amount of iCloud storage" they use.  *See, e.g.*, ¶ 38.  Even if Apple has no obligation to *help* users achieve reduction, in other words, it arguably would be misleading for Apple to represent that reduction is possible if it is not.  But Plaintiffs' allegations do not plausibly contend that Apple's conduct precludes a user from "reduc[ing] the amount of iCloud storage [she] is using" as represented – especially not under the heightened pleading standard required by Rule 9(b). [6]

---

[5] Given allegations that describe Plaintiffs' "fear" of losing stored data, *see, e.g.*, TAC ¶ 100, the Court finds it worth reiterating that the Apple service at issue is a data *backup* service.  *See generally* T&Cs.  In other words, the data stored through this service is not a user's original data, and the consequence of not upgrading storage tiers is that no *additional* data will be backed up.  T&Cs at 6; .  And even if Apple were to act on its right to delete "any backups" where "a device has not backed up to iCloud for a period of one hundred and eighty (180) days," the deletion of backups does not plausibly imply the deletion of original data.  T&Cs at 3.

[6] In their allegations, Plaintiffs appear to rely on a definition of the word "reduce" that has no basis in the cited representations, or common sense.  They insist that the ability to reduce data cannot mean "cancel" or "delete," but rather the ability, "if [a user's] storage needs are relatively modest .

1   The allegations that Plaintiffs make to support this "impossible to reduce" theory can be
2   characterized as follows: (1) imprecise descriptions of technical steps that supposedly "lead to
3   nowhere" (TAC ¶¶ 25-34, 60) and (2) vague plaintiff-specific allegations that simultaneously
4   disclaim an ability to recall details about data reduction efforts while asserting that various
5   technical steps were certainly attempted.  Neither claim makes plausible the notion that reducing
6   stored data is not possible.

7   In describing the steps "leading to nowhere," Plaintiffs provide no screenshots or visual
8   aids, only lawyer-drafted and imprecise characterizations of the technical interface.  For example,
9   they assert (without at any point identifying whether the description is applicable to the relevant
10  time period alleged in the complaint) that there is "nothing evident under either the iCloud section
11  of Settings on the iPhone, for example, nor under the iCloud pane of System Preferences on the
12  Mac" about how to reduce stored data – which could mean there was no relevant information, or
13  that the relevant information was present but not immediately apparent.  TAC ¶ 29.  Similarly,
14  they describe that selecting "Choose Downgrade option of 5GB . . . does not lead anywhere at all"
15  – which could mean that it did not exist, that Plaintiffs could not figure it out, or anything in
16  between.[7]  *Id*. ¶ 32.  Statements like these are attorney conclusions masquerading as factual
17  allegations, and the Court declines to simply credit the conclusion that the technical interfaces led
18  nowhere without detailed supporting facts, especially given the repeated shapeshifting of

19
20  . . [to] keep what they want within the 5 GB free level and discard the rest."  TAC ¶ 48.  Again,
21  this characterization finds no support in the relevant documents or anything else identified by
    Plaintiffs.
22  [7] Even putting aside the existence of built-in iCloud tools for reducing stored data, the Court finds
    it relevant that, based on the allegations, reduction of stored data can be accomplished by saving
23  data *elsewhere* and deleting the stored iCloud data.  Plaintiffs do not allege that this is not a
    workable solution, or that Apple somehow prevents it.  Indeed, Mr. Rutter describes that he "off-
24  load[s]" stored data to other storage services as a means of maintaining his stored data at a desired
    threshold.  TAC ¶ 79.  Nevertheless, Plaintiffs suggest that "copying" the already-saved data is
25  somehow "virtually impossible to accomplish."  TAC ¶ 34.  Why Plaintiffs would need to
    specifically "copy" the first 5 GB of data is not clear to the Court, especially where the whole
26  thrust of Plaintiffs' suit is that they *never intended* for iCloud to back up first 5 GB of data they
    generated on their new devices.  Regardless, Plaintiffs have not alleged how any purported
27  difficulty *copying* data undermines Apple's representation that users can reduce the amount of
    stored data.
28

United States District Court
Northern District of California

Plaintiffs' theories.

Regardless, the very relevance of these technical steps "leading nowhere" is highly questionable given that they do not plausibly reflect the specific steps *Plaintiffs* allegedly took to reduce their stored data. *See* TAC ¶¶ 60, 74–77, 99–101, 115, 128–129, 142. This is because Plaintiffs' allegations on this topic are not particularized. Instead, they just plead a general conclusion about the outcome of their supposed data reduction efforts, rather than alleging with specificity what they tried to achieve that result. *See*, *e.g.*, TAC ¶¶ 60 ("Ms. Rutter could not understand the steps sufficiently to reduce her storage"), 115 ("Ms. Tabas has not been able to figure out how to reduce her storage"), 129 (Ms. Young "remembers that she could not figure out how to stay within the 50 GB level she paid for"); *see also* Mot. at 15. Despite the fuzziness of their recollections, Plaintiffs assure the Court that "the steps leading nowhere identified above are familiar to [them] and among the steps [the Plaintiffs] tried." *Id.* ¶ 115.[8]

The Court therefore understands Plaintiffs' individual allegations concerning their efforts to reduce data to amount, essentially, to this: "I know I tried or at least wanted to reduce my stored data, but can't remember the details since it was years ago. Despite this, I do know that the specific steps described in the complaint are ones I attempted." The Court finds this contradictory position implausible and inadequate under Rule 9(b). It also finds significant that the descriptions of Plaintiffs' attempts to reduce stored data actually highlight their *personal* inability to reduce storage (rather than Apple's efforts to intentionally conceal this information), and harp on the notion that it would have been "easy" for Apple to do more to proactively assist with storage reduction. *See* TAC ¶¶ 58, 60, 100, 115, 129 ("[*Ms. Rutter*] *could not understand* the steps sufficiently to reduce her storage"), ("Apple had chosen to provide . . . no help at all to reduce storage"); ("*Ms. Tabas has not been able to figure out* how to reduce her storage"); ("Ms. Young

---

[8] Despite the supposed "illusory" nature of the choice to reduce stored data within desired limits, both William Rutter and Robert Barker allege that they managed to do so. *See* TAC ¶¶ 73, 140, 172. Mr. Barker manages his data within the free 5 GB tier. And Mr. Rutter, after managing his data within the free 5 GB limit, "chose to pay" for more storage in 2020. *Id.* ¶ 73. He now manages his data so as to stay within the 50 GB limit, including by "off-loading stored data to other storage services." *Id.* ¶ 79.

1  remembers that *she could not figure out* how to stay within the 50 GB level she had paid for.");

2  ("Links could have been provided in the online setting" explaining how to manage data)

3  (emphases added).

4    Allegations like these do not adequately support the contention that Apple's conduct

5  compelled paid upgrades by making it tantamount to impossible to reduce stored data.  The

6  experiences of certain Plaintiffs also belie Plaintiffs' allegations: two of the six Plaintiffs

7  successfully manage their data at consistent levels, one of whom cites direction from "Apple's

8  website" as helpful in doing so.  TAC ¶ 73.  The fact that four out of five iCloud users apparently

9  manage to keep their data within the free tier further undermines the plausibility of Plaintiffs'

10  theory that Apple makes it virtually impossible to do so.  Ironically, the reality that around 80% of

11  Apple users do not pay for storage reflects the outcome Plaintiffs view as the "likely result" "were

12  Apple to honestly advertise" how iCloud works: a status quo where "the vast majority of Apple

13  consumers . . . choose to manage their data in a fashion to stay within the free 5 GB of storage

14  Apple offered and [do] not feel compelled to pay for storing data that inadvertently accumulated."

15  *Id.* ¶ 150.

16    It may be true that Apple "could have . . . provided" additional information, and it even

17  might be "easy for Apple to provide to each consumer who is approaching their 5 GB data limit a

18  link describing how a consumer can accomplish the promised 'reduce data' option," as Plaintiffs

19  allege.  TAC ¶ 153.  But, a lawsuit is not a vehicle for a wish list or a recitation of "coulds."  It is

20  an instrument for articulating and remedying a legal shortcoming, and Plaintiffs have not plausibly

21  pled that Apple's conduct constitutes one – especially under the heightened pleading standard

22  demanded by Rule 9(b).

23    Accordingly, the Court **GRANTS** Defendant's motion to dismiss claims brought under the

24  CLRA and UCL without leave to amend.

25     **B.**  **Breach of Contract Claims**

26    Plaintiffs again raise breach of contract claims.  Some of their claims rest on Apple's

27  purported breach of the iCloud Terms & Conditions, which states "You can change your

28  subscription by . . . downgrading your storage" to the free 5 GB tier.  TAC ¶ 195.  They allege that

United States District Court
Northern District of California

Apple breached this contract by (1) providing links to upgrade but not to reduce storage in its iCloud Capacity Email; and (2) providing a link to downgrade but not to reduce storage in its iCloud Confirmation Email. *Id.* ¶¶ 196–97. They also allege claims based on the purported contract formed in the iCloud Confirmation Email which promised consumers the ability to "reduce storage" to avoid upgrading and paying, and which Apple supposedly breached by "fail[ing] to provide a way to save certain data while discarding the rest." *Id.* ¶ 198. They allege that that same failure violated an implied covenant of good faith and fair dealing from the iCloud Capacity Email. *Id.* ¶ 200. The Court previously rejected very similar theories, and will do so again here.

### i.   Terms and Conditions

As the Court previously explained, the provision at issue in the Terms & Conditions is "not an adequate basis for Plaintiffs' breach of contract theory because [it does] not reflect an enforceable promise, and Plaintiffs have not plausibly alleged any breach." MTD SAC Order at 13. Since Plaintiffs have not made substantively different allegations concerning the alleged contract and breach, the claim again fails for the reasons the Court articulated in its prior order. *See id.* at 12–14. If anything, the current argument is weaker than before: Plaintiffs argue that Apple breached the T&Cs by failing to provide links to reduce storage in the iCloud Capacity and Confirmation emails, but the cited provision does not even bear on "reducing" storage, but rather "downgrading" storage. Even if this language were promissory (and it is not, for the reasons the Court previously described), Plaintiffs have not alleged that Apple prevents users from downgrading tiers, only reducing stored data. Since the T&Cs do not create a contractual promise that users can reduce their stored data, Apple's "failure" to include links to reduce that data in certain communications is not a breach of contract, or any actionable "failure."

### ii.   iCloud Capacity Email

Plaintiffs next allege that by "fail[ing] to provide a way to save certain data while discarding the rest," Apple breached a contractual promise in the iCloud Capacity Email that users may "reduce storage." TAC ¶ 198. The Court already found that this email "provides information—not commitments—regarding users' options for data management," such that the

allegations do not support the existence of a contract that is subject to breach.  MTD SAC Order at 15.  The Court sees no reason to disturb that conclusion.  But even if the iCloud Capacity Email did extend a contractual promise that users can "reduce" their data, the Court has already concluded that Plaintiffs have not plausibly pled that Apple "interferes" with that ability.  TAC ¶ 200.  For this reason, any implied convent of good faith and fair dealing claim necessarily fails, too.

Having failed to adequately plead the existence of a contract or its breach, the Court **DISMISSES** Plaintiffs' breach of contract claims without leave to amend.

## IV.   CONCLUSION

The Court **GRANTS** Defendant's motion to dismiss, Dkt. No. 58, without leave to amend. Plaintiffs have now drafted four complaints, and the Court has dismissed three of them.  Plaintiffs have had ample opportunities to state a claim for relief, but have repeatedly failed to do so.  The Court concludes that this shortcoming flows from a string of deficient theories, not from any imprecision in their articulation.  Given Plaintiffs' established inability to plead a cognizable (or even coherent) theory on these facts, the Court finds that granting leave to amend would be futile. It therefore **DISMISSES** the case without leave to amend.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the Plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad." (quotation omitted)).

The Clerk is **DIRECTED** to enter judgment in favor of Defendant Apple, Inc. and to close the case.

**IT IS SO ORDERED.**

Dated:   1/11/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge